**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:20-cv-3747-NRN

KEVIN O'ROURKE, NATHANIEL L. CARTER,
LORI CUTUNILLI, LARRY D. COOK,
ALVIN CRISWELL, KESHA CRENSHAW,
NEIL YARBROUGH, and AMIE TRAPP,

Plaintiffs, on their own behalf
and of a class of similarly
situated persons,

v.

DOMINION VOTING SYSTEMS INC.,
a Delaware corporation, FACEBOOK, INC.,
a Delaware corporation, CENTER FOR TECH
AND CIVIC LIFE, an Illinois non-profit organization,
MARK E. ZUCKERBERG, individually,
PRISCILLA CHAN, individually,
BRIAN KEMP, individually, BRAD
RAFFENSPERGER, individually, GRETCHEN WHITMER,
individually, JOCELYN BENSON, individually,
TOM WOLF, individually, KATHY BOOCKVAR,
individually, TONY EVERS, individually,
ANN S. JACOBS, individually, MARK L. THOMSEN,
individually, MARGE BOSTELMAN, individually,
JULIE M. GLANCEY, DEAN KNUDSON,
individually, ROBERT F. SPINDELL, JR,
individually, and DOES 1-10,000,

Defendants.

---

**MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT
TO F.R.C.P. 12(b)(1) AND 12(b)(6) OR, IN THE ALTERNATIVE,
TO STRIKE PURSUANT TO F.R.C.P. 23**

---

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

STANDARDS OF REVIEW ............................................................................................... 4

ARGUMENT ....................................................................................................................... 5

     I.     This Court Lacks Subject-Matter Jurisdiction over Plaintiffs' Implausible
           Claims ........................................................................................................... 5

     II.    Plaintiffs Lack Standing .............................................................................. 7

           a.     No cognizable injury-in-fact .................................................... 7

           b.     No traceability ....................................................................... 10

           c.     Lack of redressability and mootness ..................................... 10

     III.   Plaintiffs Fail to State a Plausible Claim for Relief ............................. 12

           a.     Plaintiffs fail to state a claim under Section 1983 ................. 12

                   i.     Dominion did not act under color of law ..................... 12

                   ii.    Plaintiffs fail to plausibly allege claims that their
                            constitutional or federal rights were violated ................ 14

           b.     Plaintiffs fail to state a claim under Sections 1985, 1986, and 1988 ....... 17

           c.     Plaintiffs fail to plead a claim for declaratory judgment ......... 18

           d.     Permanent injunctive relief is not a valid claim for relief ........ 19

CONCLUSION ................................................................................................................... 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Addisu v. Fred Meyer, Inc.*,
 198 F.3d 1130 (9th Cir. 2000) ...........................................................................17

*Alabama v. U.S. Army Corps of Eng'rs*,
 424 F.3d 1117 (11th Cir. 2005) .........................................................................19

*Allen v. Wright*,
 468 U.S. 737 (1984).............................................................................................10

*Already, LLC v. Nike, Inc.*,
 568 U.S. 85 (2013)...............................................................................................11

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)...............................................................................................4

*Bally v. Whitmer*,
 No. 1:20-cv-1088 (W.D. Mich.) ...........................................................................6

*Bauge v. Jernigan*,
 669 F. Supp. 348 (D. Colo. 1987)........................................................................18

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)...............................................................................................4

*Bognet v. Sec'y Commonwealth of Pa.*,
 980 F.3d 336 (3d Cir. 2020)....................................................................9, 10, 15

*Brooks v. Gaenzle*,
 614 F.3d 1213 (10th Cir. 2010) .....................................................................13, 17

*Brown v. Reardon*,
 770 F.2d 896 (10th Cir. 1985) .............................................................................17

*Bldg. & Constr. Dep't v. Rockwell Int'l Corp.*,
 7 F.3d 1487 (10th Cir. 1993) ...............................................................................11

*Byers v. City of Albuquerque*,
 150 F.3d 1271 (10th Cir. 1998) .............................................................................7

*Chiles v. Thornburgh*,
 865 F.2d 1197 (11th Cir. 1989) .............................................................................8

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Coomer v. Donald J. Trump for President, Inc.*,
No. 2020CV034319 (Denver Dist. Ct.) ......................................................................................4

*Corman v. Torres*,
287 F. Supp. 3d 558 (M.D. Pa. 2018) (per curiam) ................................................................10

*Curry v. Baker*,
802 F.2d 1302 (11th Cir. 1986) ...............................................................................................16

*Donald J. Trump for President, Inc. v. Boockvar*,
No. 2:20-cv-966, 2020 WL 5997680 (W.D. Penn. Oct. 10, 2020)..................................6, 8, 15

*Duggins v. Hunt*,
323 F.2d 746 (10th Cir. 1963) .................................................................................................18

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006)..................................................................................................................19

*Edwards v. Zenimax Media Inc.*,
No. 12-cv-00411-WYD-KLM, 2012 WL 4378219 (D. Colo. Sept. 25, 2012) .........................5

*Faustin v. City, Cnty. of Denver, Colo.*,
268 F.3d 942 (10th Cir. 2001) ...................................................................................................7

*Feehan v. Wis. Elections Comm'n*,
No. 20-cv-1771-pp, 2020 WL 7250219 (E.D. Wis. Dec. 9, 2020)......................................6, 11

*Gallagher v. Neil Young Freedom Concert*,
49 F.3d 1442 (10th Cir. 1995) .................................................................................................13

*Griffin v. Burns*,
570 F.2d 1065 (1st Cir. 1978)...................................................................................................16

*Grove v. Groome*,
817 Fed. App'x 551 (10th Cir. 2020) ......................................................................................17

*Hollingsworth v. Perry*,
570 U.S. 693 (2013)....................................................................................................................7

*Johnson v. Benson*,
No. 1:20-cv-00948-PLM-PLG (W.D. Mich.)............................................................................6

*Kan. Penn Gaming, LLC v. Collins*,
656 F.3d 1210 (10th Cir. 2011) .................................................................................................5

# TABLE OF AUTHORITIES
(continued)

Page

*King v. Whitmer*,
No. CV 20-13134, 2020 WL 7134198 (E.D. Mich. Dec. 7, 2020).....................................11, 14

*Lance v. Coffman*,
549 U.S. 437 (2007)........................................................................................................7, 8, 10

*Ex parte Levitt*,
302 U.S. 633 (1962)..................................................................................................................8

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)........................................................................................................4, 7, 10

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007)................................................................................................................18

*Morman v. Campbell Cnty. Mem'l Hosp.*,
632 F. App'x 927 (10th Cir. 2015) ...........................................................................................4

*Pearson v. Kemp*,
831 Fed. App'x 467 (11th Cir. 2020) ........................................................................................6

*Reynolds v. Sims*,
377 U.S. 533 (1964)..................................................................................................................9

*Richardson v. Tex. Sec'y of State*,
978 F.3d 220 (5th Cir. 2020) ..................................................................................................16

*Romstad v. City of Colo. Springs*,
650 F. App'x 576 (10th Cir. 2016) ..........................................................................................19

*S. Disposal, Inc. v. Tex. Waste Mgmt.*,
161 F.3d 1259 (10th Cir. 1998) ..............................................................................................16

*Schneller v. Phila. Newspapers, Inc.*,
No. 11-5071, 2012 WL 3704758 (E.D. Pa. Aug. 28, 2012) ...................................................13

*Seneca-Cayuga Tribe of Okla. v. Nat'l Indian Gaming Comm'n*,
327 F.3d 1019 (10th Cir. 2003) ..............................................................................................11

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998).............................................................................................................5, 8

*Surefoot LC v. Sure Foot Corp.*,
531 F.3d 1236 (10th Cir. 2008) ..........................................................................................18, 19

# TABLE OF AUTHORITIES
(continued)

Page

*Texas v. Pennsylvania*,
No. 155, 2020 WL 7296814 (Dec. 11, 2020) ..............................................................................6

*The Wilderness Soc. v. Kane Cnty., Utah*,
632 F.3d 1162 (10th Cir. 2011) ..............................................................................10

*United States v. Price*,
383 U.S. 787 (1966)..............................................................................12

*United States v. Richardson*,
418 U.S. 166 (1974)..............................................................................7

*US Dominion, Inc. v. Giuliani*,
No. 1:21-cv-00213 (CJN) (D.D.C. Jan. 25, 2020) ....................................................4

*US Dominion Inc. v. Powell*,
No. 1:21-cv-00040-CJN (D.D.C. Jan. 8, 2020) ......................................................4

*West v. Atkins*,
487 U.S. 42 (1988)..............................................................................12

*Wittner v. Banner Health*,
720 F.3d 770 (10th Cir. 2013) ..............................................................12, 13

*Wolotsky v. Huhn*,
960 F.2d 1331 (6th Cir. 1992) ..............................................................13

*Wood v. Raffensperger*,
981 F.3d 1307 (11th Cir. 2020) ............................................................6, 9

**Statutes**

3 U.S.C., ch. 1 ..............................................................................10

28 U.S.C. § 2201 ..............................................................................18

28 U.S.C. § 2202 ..............................................................................18

42 U.S.C. § 1986 ..............................................................................18

42 U.S.C. § 1988 ..............................................................................18

U.S. CONST. art. I, § 4, cl. 1 ..............................................................10

**TABLE OF AUTHORITIES**
(continued)

**Page**

**Other Authorities**

Fed. R. Civ. P. 5...............................................................................................................20

Fed. R. Civ. P. 11(c) ........................................................................................................20

Fed. R. Civ. P. 12(b)(1).................................................................................................4, 5

Fed. R. Civ. P. 12(b)(6).................................................................................................4, 5

Fed. R. Civ. P. 23(d)(1)(D)................................................................................................5

Fed. R. Civ. P. 23(c)(1)(A)................................................................................................5

Defendant Dominion Voting Systems, Inc. ("Dominion"), by and through its counsel, hereby moves this Court to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Consistent with its conferral obligation, Dominion has conferred with Plaintiffs' counsel on multiple occasions regarding the bases for this motion, including Dominion's positions that Plaintiffs lack standing and that amending the Complaint would not resolve the Complaint's flaws. Plaintiffs oppose this motion. In support of this motion, Dominion states as follows:

## **INTRODUCTION**

The 2020 election was the "most secure in American history."[1] The U.S. Justice Department has uncovered no evidence of widespread voter fraud that could change the outcome of the 2020 election.[2] Since Election Day, former President Trump's campaign and others have filed at least 42 legal challenges to the results of the presidential election. They have not been successful.[3] The lies, misinformation, and defamatory statements have sparked insurrection but have fallen well short of overturning the will of the voters.

---

[1] *Joint statement from the Election Infrastructure Government Coordinating Council & the Election Infrastructure Sector Coordinating Executive Committees*, Cybersecurity & Infrastructure Security Agency (Nov. 12, 2020), *available at* https://www.cisa.gov/news/2020/11/12/joint-statement-elections-infrastructure-government-coordinating-council-election (concluding that "[t]here is no evidence that any voting system deleted or lost votes, changed votes, or was in any way compromised"). The Joint Statement was signed and endorsed by, among others, the National Association of State Election Directors, the National Association of Secretaries of State, and the U.S. Cybersecurity & Infrastructure Security Agency—then led Chris Krebs, an appointee of former President Trump.
[2] *See, e.g.*, Katie Benner & Michael S. Schmidt, *Barr Acknowledges Justice Dept. Has Found No Widespread Voter Fraud*, N.Y. Times (Dec. 14, 2020), *available at* https://www.nytimes.com/2020/12/01/us/politics/william-barr-voter-fraud.html.
[3] Jacob Shamsian & Sonam Smith, *Trump and Republican officials have won zero out of at least 42 lawsuits they've filed since election day*, Business Insider (Jan. 5, 2021), *available at* https://www.businessinsider.com/trump-campaign-lawsuits-election-results-2020-11.

Plaintiffs' lawsuit must join the list. Plaintiffs seek to overturn the 2020 presidential election results in at least four states—Michigan, Georgia, Pennsylvania, and Wisconsin—and to receive $160 billion in damages by filing implausible claims in federal court in Colorado against Dominion, Facebook, several elected officials, and others. Plaintiffs rely upon as "evidence," their feelings (as expressed in affidavits), debunked conspiracy theories, dismissed lawsuits, and accusations in a tweet from then-President Trump. They specifically allege without support that Dominion participated in a conspiracy to alter the results of the presidential election, and that Dominion intentionally designed its voting systems to create errors that allowed votes to be changed from Mr. Trump to President Biden. These allegations are not based on evidence; the only connection alleged between Dominion and any of the other Defendants is that Dominion contracts with states and local governments to provide voting systems that count paper ballots.

The Complaint's flaws are many. Plaintiffs lack standing, are seeking relief that is not redressable or has been rendered moot, fail to adequately state claims for relief against Dominion (and the other Defendants), and fail to adequately plead a class action. Plaintiffs' recycled, rejected claims are frivolous and may justify sanctions and attorneys' fees. Like the plethora of other lawsuits alleging fraud in the 2020 election, this case must be dismissed.

## **BACKGROUND**

Dominion is a company headquartered in Denver, Colorado, that provides local election officials with tools they can use to run elections, such as voting machines that count paper ballots. Compl., ¶¶ 14, 36–37.[4] Its voting systems are certified under standards promulgated by the U.S. Election Assistance Commission ("EAC") and reviewed and tested by independent

---

[4] Dominion accepts as true—for the purposes of this motion only—the allegations in the Complaint cited in this motion.

testing laboratories accredited by the EAC. Dominion provided voting systems used across the country for the November 4, 2020 election. *See* Compl., ¶ 125.

Despite Plaintiff's insinuations (but not specific allegations), Dominion's voting systems were not subject to widespread manipulation during the 2020 election. The accuracy of these voting systems can be verified by matching machine counts with the number of paper ballots. Indeed, hand and machine recounts in states such as Georgia and Michigan, as well as audits in states such as Colorado, have universally reaffirmed the accuracy of Dominion's voting systems used in the election. *See infra* III.a.ii (referencing recount results in various states).[5]

Plaintiffs, some of whom did not even vote, nevertheless have asserted five claims against Dominion—violation of the Electors Clause for burdening the right to vote (Count I), violation of equal protection (Count II), violation of due process (Count III), declaratory judgment (Count VI), and permanent injunctive relief (Count VII). Despite the fact that Dominion is a private company and not a state actor, Plaintiffs allege that Dominion acted in concert with the other Defendants to dilute votes to ensure that Mr. Trump lost the 2020 presidential election and to damage all registered voters in the amount of $160 billion for "mental anguish," fear, and other emotional harm. *See* Compl., ¶ 290. Tellingly, Plaintiffs allege no facts connecting Dominion to this fictional narrative. None exist. The Complaint simply states

---

[5] *See also* Final Audit Reports and Affirmations, Colo. Sec'y of State, *available at* https://www.sos.state.co.us/pubs/elections/RLA/files/2020/general/finalReports.html (last visited Feb. 12, 2021) (providing links to Risk Limiting Audits from Colorado counties that give a statistical level of confidence that the outcome of the 2020 election was correct); Casey Van Divier, *Wayne Williams Stands by Dominion Voting Systems Results . . . in Colorado*, WESTWORD, Nov. 20, 2020, https://www.westword.com/news/former-secretary-of-state-defends-dominion-voting-systems-resultsin-colorado-11847518 (quoting former Colorado Secretary of State Wayne Williams, a Republican, stating: "Since its adoption, Dominion machines have been tested in 62 Colorado counties at least 807 times. They have passed every test.").

the benign allegation that Dominion contracted with Pennsylvania and Georgia to provide voting systems for the 2020 election. *See* Compl., ¶¶ 192, 246. Dominion does not have any role in creating or modifying election laws and procedures; rather, it simply follows the law and its contracts with each state in which it operates.[6]

## **STANDARDS OF REVIEW**

Rule 12(b)(1) provides for dismissal of an action for "lack of subject matter jurisdiction." *See* Fed. R. Civ. P. 12(b)(1). To survive a motion to dismiss under Rule 12(b)(1), Plaintiff bears the burden of establishing that the Court has subject matter jurisdiction under Rule 12(b)(1). *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' are insufficient." *Morman v. Campbell Cnty. Mem'l Hosp.*, 632 F. App'x 927, 931 (10th Cir. 2015). Thus, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

---

[6] Allegations in the Complaint regarding statements made by Dominion employees are the subject of ongoing defamation lawsuits. *See , e.g.*, *Coomer v. Donald J. Trump for President, Inc.*, No. 2020CV034319 (Denver Dist. Ct.); *US Dominion Inc. v. Powell*, No. 1:21-cv-00040-CJN (D.D.C. Jan. 8, 2020); *US Dominion, Inc. v. Giuliani*, No. 1:21-cv-00213 (CJN) (D.D.C. Jan. 25, 2020). Many of the media outlets that helped spread this false information in the wake of the 2020 election have since retracted their coverage about Dominion voting systems and its employees. Joey Bunch, *American Thinker joins conservative outlets walking back voter fraud claims*, COLO. POLITICS (Jan. 15, 2021), *available at* https://www.coloradopolitics.com/2020-election/american-thinker-joins-conservative-outlets-walking-back-voter-fraud-claims/article_29bcd852-5782-11eb-96fe-0f94e3dae8d0.html.

## **ARGUMENT**

All five of Plaintiffs' claims for relief against Dominion—Counts I, II, III, VI, and VII—must be dismissed because this Court lacks subject-matter jurisdiction under Rule 12(b)(1) and Plaintiffs fail to state a claim for relief that survives Rule 12(b)(6).[7]

## **I. This Court Lacks Subject-Matter Jurisdiction over Plaintiffs' Implausible Claims.**

As an initial matter, this Court lacks subject-matter jurisdiction over Plaintiffs' claims against Dominion because they are substantially similar to other claims that have been consistently dismissed and are based on implausible allegations. Federal courts lack subject-matter jurisdiction "when the claim is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quotation omitted)).

Here, Plaintiffs' allegations and claims are recycled from previous lawsuits. As described in greater detail below, the Complaint cites as support complaints and affidavits from a plethora of recent cases with nearly identical claims that have been consistently dismissed for lack of

---

[7] Although not addressed in this motion, even if this Court had subject-matter jurisdiction and Plaintiffs could state a claim, the class allegations should be stricken under Rules 23(c)(1)(A) and 23(d)(1)(D) because the Complaint fails to adequately plead a class action, Plaintiffs' proposed class is overbroad, and common issues do not predominate. Specifically, Plaintiffs' class definition in Paragraph 81 of the Complaint—"the registered voter"— is too broad because it improperly includes registered voters like Plaintiffs O'Rourke and Yarbrough, who admit in their affidavits that they did not vote and thus could not have had their votes diluted, *see* Compl., Ex. 1, ¶ 11; Ex. 7, ¶ 8, and voters for President Biden, who could not have been injured by the results of the election because their preferred candidate won. *See Edwards v. Zenimax Media Inc.*, No. 12-cv-00411-WYD-KLM, 2012 WL 4378219, at *5 (D. Colo. Sept. 25, 2012) (granting motion to strike pursuant to Rule 23(d)(1)(D) where the overbroad class included persons who purchased product "regardless of whether he or she was ever injured"). Indeed, Plaintiffs allege misconduct in only a few states—Michigan, Georgia, Pennsylvania, and Wisconsin—and thus only voters in those states could possibly have had their votes diluted based on the specific allegations in the Complaint. Dominion reserves the right to move to strike the class allegations in a separate motion.

standing and failure to state a claim. None of these lawsuits have been successful.[8]

Moreover, Plaintiffs' claims against Dominion are specifically based on allegations that it played a role in the manipulation of votes and also changed votes from Mr. Trump to President Biden. *See* Compl., ¶¶ 173–74, 196–98, 245–48 (allegations of ballot manipulation in Atrium County, Michigan, Fulton County, Georgia, and Pennsylvania). These allegations, however, have been consistently disproven. An audit conducted by bipartisan election officials using paper ballots recounted by hand has disproved allegations that Dominion voting systems erroneously tabulated 68 percent of the votes in Antrim County.[9] A different audit also confirmed that its systems accurately tabulated votes in Georgia.[10] And there is no evidence supporting Mr. Trump's tweet that Dominion deleted or switched votes in Pennsylvania or elsewhere.[11]

---

[8] *See, e.g.*, *Texas v. Pennsylvania*, No. 155, 2020 WL 7296814 (Dec. 11, 2020) (dismissed for lack of Article III standing); *Bally v. Whitmer*, No. 1:20-cv-1088 (W.D. Mich.) (voluntarily dismissed); *Johnson v. Benson*, No. 1:20-cv-00948-PLM-PLG (W.D. Mich.) (voluntarily dismissed); *Wood v. Raffensperger*, 981 F.3d 1307, 1314–15 (11th Cir. 2020) (dismissed for lack of standing and mootness); *Pearson v. Kemp*, 831 Fed. App'x 467 (11th Cir. 2020) (dismissed for lack of jurisdiction); *Donald J. Trump for President, Inc. v. Boockvar*, No. 2:20-cv-966, 2020 WL 5997680 (W.D. Penn. Oct. 10, 2020) (dismissed for lack of Article III standing and for failure to state a claim); *Feehan v. Wis. Elections Comm'n*, No. 20-cv-1771-pp, 2020 WL 7250219 (E.D. Wis. Dec. 9, 2020) (dismissed for lack of standing, mootness, and failure to state a claim).

[9] *Trump still wins small Michigan county after hand recount*, ASSOCIATED PRESS (Dec. 17, 2020), *available at* https://apnews.com/article/election-2020-joe-biden-donald-trump-michigan-elections-07e52e643d682c8033a0f26b0d863387 (explaining that the audit found that the small number of additional votes for Mr. Trump was attributable to human error and not the product of any issues with the Dominion voting systems).

[10] *Georgia Secretary of State, Historic First Statewide Audit of Paper Ballots Upholds Result of Presidential Race*, *available at* https://sos.ga.gov/index.php/elections/historic_first_statewide_audit_of_paper_ballots_upholds_result_of_presidential_race#:~:text=2020%20Qualifying%20Packet,Historic%20First%20Statewide%20Audit%20of%20Paper%20Ballots%20Upholds%20Result%20of,machine%20tally%20of%20votes%20cast.

[11] Ali Swenson & Amanda Seitz, *AP FACT CHECK: Trump tweets a tall tale of 'deleted' votes*, ASSOCIATED PRESS (Nov. 12, 2020), *available at* https://apnews.com/article/fact-check-trump-tweets-tall-tale-votes-13c104367924b8192b4fcecf334f7806.

Plaintiffs' claims are frivolous and facially implausible, and thus have no place in federal court.

## II.  Plaintiffs Lack Standing.

The claims asserted against Dominion must be dismissed for lack of Article III standing. Plaintiffs assert that they have standing pursuant to the Fourth and Tenth Amendments. Compl., ¶ 29. But to avoid dismissal on standing grounds, a plaintiff "must show injury in fact, a causal relationship between the injury and the challenged action of the defendant, and a likelihood that the injury will be redressed by a favorable decision." *Faustin v. City, Cnty. of Denver, Colo.*, 268 F.3d 942, 947 (10th Cir. 2001). Plaintiffs' claims fail on all three prongs, and thus the Complaint must be dismissed. *See Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) ("Standing is 'an essential and unchanging part' of the Article III case-or-controversy." (quoting *Lujan*, 504 U.S. at 560)).

### a.  No cognizable injury-in-fact.

Plaintiffs cannot establish that they have suffered an injury-in-fact sufficient to maintain any of their claims against Dominion because their alleged injuries are non-cognizable generalized grievances—the kind of injury "that is 'plainly undifferentiated and common to all members of the public.'" *Lance v. Coffman*, 549 U.S. 437, 440–41 (2007) (quoting *United States v. Richardson*, 418 U.S. 166, 176–77 (1974)); *see also Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013) (explaining that "a 'generalized grievance,' no matter how sincere," cannot support standing). Specifically, Plaintiffs' first three claims against Dominion—violations of the Electors Clause, equal protection, and due process—are based on allegations that their votes were "diluted" by Defendants' actions to manipulate the results of the 2020 president election in violation of election laws (and Plaintiffs' claims for declaratory judgment and injunctive relief

stem from those alleged constitutional violations).[12] *See* Compl., ¶¶ 319–320, 334, 343, 353, 355.

Not only did Plaintiffs O'Rourke and Yarbrough not vote in the 2020 president election and thus

by definition cannot have had their vote diluted, *see* Compl., Ex. 1, ¶ 11; Ex. 7, ¶ 8, but Plaintiffs

do not (and cannot) explain how their interests in compliance with election laws are different

from that of any other voter. *Cf. Lance*, 549 U.S. at 440 ("To have standing . . . a plaintiff must

have more than 'a general interest common to all members of the public.'" (quoting *Ex parte

Levitt*, 302 U.S. 633, 633 (1962))); *Chiles v. Thornburgh*, 865 F.2d 1197, 1205–06 (11th Cir.

1989) (explaining that an injury to the right "to require that the government be administered

according to the law" is a generalized grievance). In fact, by Plaintiffs' own admission, any voter

in any state could bring the same claims. *See* Compl., ¶ 319 ("The evidence establishes that the

Defendants have engaged in a scheme to dilute the votes of some, and count illegal ballots to the

benefit of another. This hurts every registered voter in the country, no matter whose side the

voter is on."). Accordingly, vote dilution cannot be a basis that confers Plaintiffs standing. *See

Wood v. Raffensperger*, 981 F.3d 1307, 1314–15 (11th Cir. 2020) (holding that plaintiff's injury

of vote dilution based on his interest in compliance with state election laws "is a 'paradigmatic

generalized grievance that cannot support standing'" because it lacks a point of comparison)

(quoting *Bognet v. Sec'y Commonwealth of Pa.*, 980 F.3d 336, 354, 356 (3d Cir. 2020)

(dismissing similar equal protection and Elections Clause claims for lack of standing and

---

[12] If Plaintiffs are alleging that they have been injured by Defendants' actions as to future
elections, such injury is speculative and not concrete, and thus does not constitute an injury-in-
fact. *See, e.g.*, *Boockvar*, 2020 WL 5997680, at *31–33 (holding that the risk of vote dilution
from the risk of potential voter fraud from mail-in voting was too speculative to give rise to a
concrete injury because it was based on evidence of past injury and a series of events that may
not ever occur). Any such claims based on future injury, such as Plaintiffs' "claim" for
permanent injunctive relief, are not ripe. *Texas*, 523 U.S. at 300.

specifically holding that "state actors counting ballots in violation of state election law . . . is not a concrete harm under the Equal Protection Clause of the Fourteenth Amendment")).[13]

Plaintiffs' allegation that they have standing to sue because a person's right to vote is individual and personal in nature similarly fails. *See* Compl., ¶ 304. The Third Circuit recently rejected this very argument because "it does not follow from the labeling of the right to vote as 'personal' . . . that *any* alleged illegality affecting voting rights rises to the level of an injury in fact." *Bognet*, 980 F.3d at 358. Rather, "[t]he key inquiry for standing is whether the alleged violation of the right to vote arises from an invidious classification" where "'the favored group has full voting strength and the groups not in favor have their votes discounted.'" *Id.* (quoting *Reynolds v. Sims*, 377 U.S. 533, 555 n.29 (1964)). Here, however, no voter's vote counted for less because Plaintiffs allege that all voters were affected.[14]

Plaintiffs also lack prudential standing to bring their Electors Clause claim (Count I). Prudential standing "encompasses various limitations, including 'the general prohibition on a litigant's raising another person's legal rights.'" *The Wilderness Soc. v. Kane Cnty., Utah*, 632 F.3d 1162, 1168 (10th Cir. 2011) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). An Electors Clause claim belongs to a state's legislature, not individual citizens such as Plaintiffs. *See Lance*, 549 U.S. at 442 (rejecting notion that "private citizens acting on their own behalf" can bring an Elections Clause claim); *Corman v. Torres*, 287 F. Supp. 3d 558, 573 (M.D. Pa.

---

[13] Particularly as to Dominion, which provided voting systems used to tabulate votes, "irregularities in the tabulation of election results do not affect [a plaintiff] differently from any other person" and thus does not confer standing. *See Wood*, 981 F.3d at 1315.

[14] Although Plaintiffs attempt to allege some form of racial discrimination in Count II on the basis that Defendants allegedly aimed their election interference behind certain areas of concentrated demographic and racial groups, there is no allegation in the Complaint that Plaintiffs are part of one demographic or racial group that allegedly had its votes diluted.

2018) (per curiam) ("[T]he Elections Clause claims asserted in the verified complaint belong, if they belong to anyone, only to the Pennsylvania General Assembly."); *Bognet*, 980 F.3d at 349–50 (same). No exception to this rule applies.

### b. No traceability.

As it pertains to the Electors Clause claim, Plaintiffs' allegations that Defendants "acted in concert with each other, and other persons, to unconstitutionally legislate rules, change procedures, and implement a scheme and device to interfere and manipulate the Election," *see* Compl., ¶ 311, are not traceable to Dominion. *See Lujan*, 504 U.S. at 561–61 (requiring causal connection between injury and defendant's conduct). Dominion can neither legislate nor change procedures governing elections. Administering elections is a state matter. *See* U.S. Const. art. I, § 4, cl. 1; 3 U.S.C., ch. 1. Dominion has no authority over the manner in which the election was held or the certification of results; Dominion simply provides the machinery.

### c. Lack of redressability and mootness.

Plaintiffs' alleged injury in Counts I through III related to the certification of election results also is not redressable. Even if Plaintiffs could establish that their meritless claims asserted more than generalized grievances, they have not established that the Court can redress their claims. Rather, the relief Plaintiffs seek, such as de-certifying the results of the 2020 presidential election, would disenfranchise not only Plaintiffs' votes (or at least the votes of the named Plaintiffs that actually voted), but also the nearly 160 million others who voted in the 2020 presidential election. *See King v. Whitmer*, No. CV 20-13134, 2020 WL 7134198, at *9 (E.D. Mich. Dec. 7, 2020) ("Plaintiffs' alleged injury does not entitle them to seek their requested remedy because the harm of having one's vote invalidated or diluted is not remedied

by denying millions of others *their* right to vote."); *Feehan v. Wis. Elections Comm'n*, No. 20-cv-1771-pp, 2020 WL 7250219, at *10 (E.D. Wis. Dec. 9, 2020).

Moreover, since the filing of this lawsuit, the electors have cast their votes, Congress confirmed those votes, and President Biden was sworn into office. To the extent there was ever any possibility that this Court could grant Plaintiffs' requested relief, there no longer is, and thus mootness strips this Court of subject-matter jurisdiction. *See Already, LLC v. Nike, Inc*., 568 U.S. 85, 91 (2013) (explaining that a case becomes moot "'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome'" (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curium))). There is simply no "actual, ongoing case or controversy" pertaining to vote dilution in the 2020 presidential election or the certification of results for this Court to decide. *See Seneca-Cayuga Tribe of Okla. v. Nat'l Indian Gaming Comm'n*, 327 F.3d 1019, 1028 (10th Cir. 2003) ("Constitutional mootness doctrine is grounded in the Article III requirement that federal courts may only decide actual, ongoing cases or controvers[ies]." (quoting *Blgd. & Constr. Dep't v. Rockwell Int'l Corp*., 7 F.3d 1487, 1491 (10th Cir. 1993))).

Plaintiffs' declaratory judgment claim and prayer for relief similarly asks this Court to declare Defendants' actions in connection with the 2020 presidential election as unconstitutional and *ultra vires*, such that the certifications of the presidential election in Michigan, Georgia, Pennsylvania, and Wisconsin are legal nullities. *See* Compl., ¶¶ 404–06. This issue likewise is not redressable and/or has been rendered moot by the casting of votes by the electors, the counting of those votes by Congress, and President Biden's subsequent inauguration.

### III. Plaintiffs Fail to State a Plausible Claim for Relief.

#### a.   Plaintiffs fail to state a claim under Section 1983.

Counts I, II and III are brought under Sections 1983, 1985, 1986, and 1988 of Title 42 of the United State Code. To survive, a claim brought under Section 1983 must include plausible allegations: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person or entity acting under the color of law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Plaintiffs fail to do either.

##### i.   Dominion did not act under color of law.

As a threshold matter, Plaintiffs fail to allege sufficient facts that plausibly show Dominion was acting under color of law with regard to the 2020 presidential election.

For claims brought under Section 1983, "'under color' of law has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment." *United States v. Price*, 383 U.S. 787, 794 n.7 (1966). The four ways a private actor can become a state actor are: (1) if "the state exercises sufficient 'coercive power' over the challenged action"; (2) if "the challenged action is a traditional and exclusive function of the state"; (3) if the "state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights"; and (4) if "the state has so far insinuated itself into a position of interdependence with a private party [that] it must be recognized as a joint participant in the challenged action" (*i.e.*, through a conspiracy or "symbiotic relationship" with the state). *Wittner v. Banner Health*, 720 F.3d 770, 775, 776–77 (10th Cir. 2013) (internal quotations and citations omitted).

Here, Plaintiffs only allege conclusory allegations that Dominion acted under color of

law. *See* Compl., ¶¶ 314, 344. The only factual support alleged is that Dominion entered into contracts with several states to provide voting systems for the 2020 election. Compl., ¶¶ 192, 245. In other words, Dominion was a vendor to various states, and then the states used the machines to count votes. *Id.* But the existence of a government contract alone is simply insufficient to establish that Dominion acted under color of law. *See, e.g.*, *Wittner*, 720 F.3d at 778 ("Payments under government contracts and the receipt of government grants and tax benefits are insufficient to establish a symbiotic relationship between the government and a private entity" (quoting *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1453 (10th Cir. 1995))); *Wolotsky v. Huhn*, 960 F.2d 1331, 1336 (6th Cir. 1992) ("Acts of private contractors do not become the acts of the government by reason of their significant or even total engagement in performing public contracts."); *Schneller v. Phila. Newspapers, Inc.*, No. 11-5071, 2012 WL 3704758, at *4 (E.D. Pa. Aug. 28, 2012) ("Simply having to adhere to the statutory directive of the Constitution of the United States of America and acts of Congress and the [state] does not create a sufficient nexus with the state." (internal quotations omitted)). Moreover, Plaintiffs do not provide even a single fact to support their allegation that Dominion willfully participated in a conspiracy with government actors. *See Brooks v. Gaenzle*, 614 F.3d 1213, 1228 (10th Cir. 2010) (noting that "a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants because conclusory allegations of a conspiracy are insufficient to state a valid [section] 1983 claim" (internal quotations omitted)). At best, Plaintiffs point to alleged "vulnerabilities" in Dominion's voting systems, but do not allege any facts that Dominion took specific *action* to manipulate or change votes. *See* Compl., ¶¶ 42, 43, 162, 173, 196, 197. Accordingly, Plaintiffs' Section 1983 claims must fail because

Plaintiffs have not put forth sufficient facts establishing that Dominion acted under color of law.

### ii. Plaintiffs fail to plausibly allege claims that their constitutional or federal rights were violated.

Equally fatal is Plaintiffs' failure to sufficiently allege that Dominion violated their rights under the Electors, Equal Protection, or Due Process Clauses.

As to Count I, Plaintiffs allege that Dominion, acting in concert with the other Defendants, violated the Electors Clause by "unconstitutionally legislat[ing] rules, chang[ing] procedures, and implement[ing] a scheme and device to interfere with and manipulate the Election" by "dilute[ing] the votes of some, and count[ing] illegal ballots to the benefit of another." Compl., ¶¶ 311, 319. However, Plaintiffs do not—and indeed, cannot—set forth even a single factual allegation explaining how Dominion was involved in any of the allegations that Defendants altered voting laws without legislative approval. *See* Compl., ¶¶ 4, 120, 272(b), 272(dd), 311. Dominion had no hand in determining election laws and procedure. And even if it did, Plaintiffs' Electors Clause claim is not based on federal law, as is required under Section 1983. *See King*, 2020 WL 7134198, at *11 (explaining, after analyzing previous cases interpreting the clauses, that raising Electors and Election Clause claims under Section 1983 based on violations of state election laws was inappropriate as they were "state law claims disguised as federal claims"). Plaintiffs' claim is based on allegations that Defendants likewise altered election laws and procedures and thus also presents state law claims in federal clothing. And even if Plaintiffs could assert a constitutional claim on the basis that Dominion interfered in the counting of votes during the 2020 presidential election, the supporting allegations are not only implausible but have been proven false. *See supra* I.

As to Count II, although the Equal Protection Clause "protects the People from arbitrary

discrimination at the hands of the state," it certainly "does not forbid classifications." *Boockvar*, 2020 WL 5997680, at *10. While less than clear, Plaintiffs' equal protection claim appears to center on allegations of vote dilution through manipulation of voting laws, illegal administration of the federal election process, unequal distribution of ballot boxes, and other conclusory allegations. *See* Compl., ¶¶ 331–32, 334–35. As described above, this is not an equal protection injury that can support standing. Vote dilution is a viable basis for federal law claims only in particular contexts that are not present here. *See, e.g.*, *Bognet*, 980 F.3d at 355 ("[V]ote dilution under the Equal Protection Clause is concerned with votes being weighed differently."). And even if Plaintiffs had standing to assert an equal protection claim on the basis that "equal protection violations in one state can and do adversely affect and diminish the weight of votes cast by citizens of other states that lawfully abide by the election structure set forth in the Constitution," Compl., ¶ 343, they do not allege how these votes were purportedly diluted or how Dominion took part in such purported dilution. Plaintiffs' attempt to fashion an argument that there was racial discrimination also has no merit. Although Plaintiffs contend that Defendants took certain steps, such as unequally distributing ballot boxes, that were "designed to defend any challenge thereto as 'racist,'" Compl., ¶ 335, they make no allegations tying Dominion to these purported actions. Regardless, Plaintiffs' allegations of racial discrimination do not fit within the paradigm of equal protection—Plaintiffs' claim is that all votes were diluted, not that a certain class of people's votes were diluted. *See* Compl., ¶ 334 (alleging that Defendants' actions damaged "every registered voter in America"). Thus, Plaintiffs' attempt to use Section 1983 as a sword to assert a frivolous equal protection claim, rather than as shield to protect against racial discrimination, fails.

As to Count III, Plaintiffs appear to raise both procedural and substantive due process challenges. As to the procedural due process challenge, Plaintiffs cannot show that they were deprived of some "definite liberty or property interest . . . without appropriate process." *S. Disposal, Inc. v. Tex. Waste Mgmt.*, 161 F.3d 1259, 1265 (10th Cir. 1998). First, the right to vote is neither a property nor liberty interest. *See, e.g.*, *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 230–33 (5th Cir. 2020) (noting that it could not identify any courts treating the right to vote as a property interest, and holding that the right also is not a liberty interest). Second, Plaintiffs have not set forth any allegations regarding constitutionally insufficient *procedures*. *See* Compl., ¶¶ 351–61. It is entirely unclear what procedures Plaintiffs take issue with beyond the alleged failure to follow state election laws. *See* Compl., ¶ 360. Nevertheless, as explained above, Plaintiffs have alleged no facts that Dominion participated in altering state election laws.

Plaintiffs' substantive due process claim, which is premised upon Plaintiffs' right to vote, fares no better. There is no dispute that the right to vote is fundamental. However, "[c]ircuit courts have uniformly declined to endorse actions under [section] 1983 with respect to garden variety election irregularities." *Griffin v. Burns*, 570 F.2d 1065, 1076 (1st Cir. 1978). In fact, to implicate substantive due process, the situation "must go well beyond the ordinary dispute over the counting and marking of ballots." *Curry v. Baker*, 802 F.2d 1302, 1314, 1315 (11th Cir. 1986) (noting that "[o]nly in extraordinary circumstances will a challenge to a state election rise to the level of a constitutional deprivation"). Plaintiffs attempt to allege election irregularities of epic proportions, utilizing debunked and misconstrued expert reports and alleged "evidence" that has been disproven. These speculative allegations are simply insufficient to state a plausible claim for relief. In fact, it is entirely unclear from the Complaint how Dominion itself had any

role in causing these alleged irregularities beyond merely serving as a vendor to various states.

### b.   Plaintiffs fail to state a claim under Sections 1985, 1986, and 1988.

Counts I through III also fail to state a claim under Sections 1985, 1986, and 1988. Section 1985(3) creates a civil action for damages caused by two or more persons who "conspire . . . for the purpose of depriving" the injured person of "the equal protection of the laws or of equal privileges or immunities under the laws." *See Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1141 (9th Cir. 2000) (explaining that the elements of a 1985 claim are: (1) the existence of a conspiracy to deprive the plaintiff of equal protection of the laws; (2) an act in furtherance of the conspiracy; and (3) a resulting injury). Critically, plaintiffs bringing a claim under Section 1985 must "show that the conspiracy was targeting [them] based on class-wide or racial discrimination." *Grove v. Groome*, 817 Fed. App'x 551, 557 (10th Cir. 2020).

Here, not only do Plaintiffs fail to plausibly allege the existence of a conspiracy, *see supra*,[15] but their grievances also do not fall within the class-wide or race-based animus required under Section 1985. The Complaint principally relies on political affiliations as a means of establishing class-based animus, alleging that Defendants acted "to defeat an incumbent, with who [sic] they so vehemently oppose." Compl., ¶ 361. Political-based animus, however, does not fall within the ambit of Section 1985. *See, e.g.*, *Brown v. Reardon*, 770 F.2d 896, 905 (10th Cir. 1985); *Bauge v. Jernigan*, 669 F. Supp. 348, 354 (D. Colo. 1987). Plaintiffs' attempt to fashion a race-based argument in relation to their equal protection claim, *see* Compl., ¶¶ 326–50, likewise fails because they do not allege any race-based animus, as required under section 1985. Because

---

[15] For example, there are no factual allegations that there was an agreement between Dominion and the other Defendants or any sort of meeting of the minds. *See Brooks*, 614 F.3d at 1227–28 (explaining that to bring a Section 1985 action, there must be "an allegation of a meeting of the minds, an agreement among the defendants, or a general conspiratorial objective").

Plaintiffs fail to state a claim under Sections 1983 or 1985, their Section 1986 and 1988 claims

must be dismissed as well. *See* 42 U.S.C. § 1986; 42 U.S.C. § 1988; *Bauge*, 669 F. Supp. at 353

(explaining that the existence of a claim under Section 1986 is dependent upon the survival of a

Section 1985 claim).

### c.   Plaintiffs fail to plead a claim for declaratory judgment.

Plaintiffs' sixth claim for relief, as it pertains to Dominion, appears to be a vague request

for a declaratory judgment that Defendants' actions in connection with the 2020 presidential

election were unconstitutional and *ultra vires*. To assert a claim under the Declaratory Judgment

Act, 28 U.S.C. §§ 2201, 2202, a "plaintiff must present the court with a suit based on an 'actual

controversy,' a requirement the Supreme Court has repeatedly equated to the Constitution's case-

or-controversy requirement." *Surefoot LC v. Sure Foot Corp*., 531 F.3d 1236, 1240 (10th Cir.

2008) (citing 28 U.S.C. § 2201(a)). Plaintiffs cannot meet this requirement because, as explained

above, their theory lacks redressability and has been rendered moot, and Plaintiffs' other

allegations fail to state a claim for relief that Dominion has acted unconstitutionally. *See Duggins

v. Hunt*, 323 F.2d 746, 748 (10th Cir. 1963) (explaining that the purpose of the Declaratory

Judgment Act "is to provide an immediate forum for the adjudication of rights and obligations in

actual controversy where such controversy may be settled in its entirety and with expediency and

economy"). Moreover, to the extent that Plaintiffs are seeking a declaratory judgment as to future

elections, this claim is speculative and unripe. *See MedImmune, Inc. v. Genentech, Inc*., 549 U.S.

118, 126–27 (2007) (explaining that a declaratory judgment suit must "admi[t] of specific relief

through a decree of a conclusive character, as distinguished from an opinion advising what the

law would be upon a hypothetical state of facts" (internal quotations omitted)). Therefore, this

claim must be dismissed for lack of an actual controversy.[16]

### d. Permanent injunctive relief is not a valid claim for relief.

Plaintiffs' seventh claim for relief—permanent injunctive relief—must be dismissed not only because it is not ripe but also because "[a]n injunction is not an independent cause of action; it is a 'remedy potentially available only after a plaintiff can make a showing that some independent legal right is being infringed—if the plaintiff's rights have not been violated, he is not entitled to any relief, injunctive or otherwise.'" *Romstad v. City of Colo. Springs*, 650 F. App'x 576, 585 n.7 (10th Cir. 2016) (quoting *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005)). Regardless, Plaintiffs' lack of standing and failure to state a plausible claim against Dominion is fatal to their request for permanent injunctive relief.[17]

## <u>CONCLUSION</u>

For the foregoing reasons, the claims against Dominion in the Complaint must be dismissed with prejudice. No amendment could cure its deficiencies. Due to the frivolous nature of the Complaint, Dominion reserves the right to seek attorneys' fees and costs pursuant to Rules 5 and 11(c) of the Federal Rules of Civil Procedure.

---

[16] Even if Plaintiffs had pleaded an actual controversy, this Court is under no duty to address it. *See Surefoot*, 531 F.3d at 1240 (explaining that the Act stipulates that federal district courts "may"—not "must"—make a declaration and setting forth factors under which to make that determination). A declaration here fails under the relevant factors because it would not settle any controversy and would increase friction between federal and state courts.

[17] Plaintiffs also cannot meet the standard for injunctive relief because irreparable injury is speculative at best as to future elections, and Plaintiffs nevertheless allege that they are entitled to monetary damages. *See, e.g.*, *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (elements of permanent injunctive relief include irreparable damage and that remedies at law, such as monetary damages, are inadequate).

Dated February 16, 2021

s/ *Stanley L. Garnett*_____
Stanley L. Garnett
David B. Meschke
Amanda K. Houseal
Bridget C. DuPey
Brownstein Hyatt Farber Schreck, LLP
410 Seventeenth Street
Suite 2200
Denver, CO  80202-4432
Phone: 303.223.1100
Email: sgarnett@bhfs.com
           dmeschke@bhfs.com
           ahouseal@bhfs.com
           bdupey@bhfs.com

Attorneys for Defendant Dominion Voting
Systems, Inc.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 16th day of February 2021, a true and correct copy of the foregoing Motion to Dismiss Plaintiffs' Complaint Pursuant to F.R.C.P. 12(b)(1) And 12(b)(6) or, in the Alternative, to Strike Pursuant to F.R.C.P. 23 was electronically filed with the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

s/ *Stanley L. Garnett*
Stanley L. Garnett