**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:20-cv-3747-NRN

KEVIN O'ROURKE, NATHANIEL L. CARTER, LORI CUTUNILLI, LARRY D. COOK, ALVIN CRISWELL, KESHA CRENSHAW, NEIL YARBROUGH, and AMIE TRAPP,

Plaintiffs, on their own behalf and of a class of similarly situated persons,

v.

DOMINION VOTING SYSTEMS INC., a Delaware corporation, FACEBOOK, INC., a Delaware corporation, CENTER FOR TECH AND CIVIC LIFE, an Illinois non-profit organization, MARK E. ZUCKERBERG, individually, PRISCILLA CHAN, individually, BRIAN KEMP, individually, BRAD RAFFENSPERGER, individually, GRETCHEN WHITMER, individually, JOCELYN BENSON, individually, TOM WOLF, individually, KATHY BOOCKVAR, individually, TONY EVERS, individually, ANN S. JACOBS, individually, MARK L. THOMSEN, individually, MARGE BOSTELMAN, individually, JULIE M. GLANCEY, DEAN KNUDSON, individually, ROBERT F. SPINDELL, JR, individually, and DOES 1-10,000,

Defendants.

---

**DEFENDANT FACEBOOK, INC.'S MOTION TO DISMISS**

---

Defendant Facebook, Inc. respectfully submits this Motion to Dismiss. Following efforts to confer pursuant to D.C.Colo.LCivR 7.1, Plaintiffs oppose the motion.

## I. INTRODUCTION

This case is the latest in a series of failed attempts to overturn the 2020 Presidential election. Plaintiffs bring suit against a wide array of individuals and companies, alleging that the Defendants' lawful and constitutionally protected activities "burden[ed] the voting rights of 160 million people." Compl. ¶ 1. Each Defendant supposedly "created a constitutional crisis, destroyed the people's faith in elections, violated the [voting] rights of millions of people, weakened national security, triggered financial uncertainty and mental anguish, and increased the possibility of civil and world war." *Id.* ¶ 126.

Courts around the country, including the U.S. Supreme Court, have already dismissed identical claims about the recent election—many of which are simply copied into Plaintiffs' Complaint. *See, e.g.*, *Texas v. Pennsylvania, et al.*, 592 U.S. 155 (2020) (denying petition to challenge election results for lack of a judicially cognizable interest); *Feehan v. Wisc. Elections Comm.*, 2020 WL 7250219, at *8 (E.D. Wisc. Dec. 9, 2020) (dismissing case as voter has no judicially cognizable interest in challenging acts to assist others' voting); *King v. Whitmer*, 2020 WL 7134198 (E.D. Mich. Dec. 7, 2020) (same); *Bowyer v. Ducey*, 2020 WL 7238261 (D. Ariz. Dec. 9, 2020) (same). This action should be dismissed for all of the same reasons.

Plaintiffs' allegations are facially insufficient either to assert personal jurisdiction over Facebook in Colorado or to establish Plaintiffs' standing to bring any constitutional claim. In none of the 84 pages and more than 400 paragraphs of their Complaint do Plaintiffs explain what their concrete, personalized injury is with any reasonable specificity, how any judicially sanctioned

remedy could redress it, or how Facebook's conduct in Colorado resulted in this unspecified injury such that the jurisdiction of this Court could be invoked.

The Complaint suffers from numerous other deficiencies that require it to be dismissed. Plaintiffs never explain how Facebook's alleged actions could be treated as those of a state actor—a preliminary requirement for their constitutional claims under 42 U.S.C. § 1983. Moreover, Facebook's alleged conduct, which includes fact-checking and removing user posts perpetuating misinformation, *see* Compl. ¶¶ 51–52, is the precise kind of editorial function protected by Communications Decency Act ("CDA") Section 230 immunity, which bars liability. Any purported donations that Facebook could have made to non-profit organizations are protected First Amendment activities. And the list of defects goes on.

For all of these reasons, Facebook should be dismissed from this case for lack of personal jurisdiction, or Plaintiffs' Complaint should be dismissed with prejudice.

## II. LEGAL STANDARD

The facts in Plaintiffs' Complaint, taken as true, must contain sufficiently plausible "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Plaintiffs fail to meet this standard.

## III. ARGUMENT

The Complaint fails for a host of threshold jurisdictional reasons. Plaintiffs have alleged no facts to support personal jurisdiction over Facebook in Colorado, and Plaintiffs have failed to plead any injury or remedy that could meet the minimum necessary to establish Article III standing.

Plaintiffs also cannot establish that Facebook is a state actor subject to Section 1983 merely

because Facebook has performed editorial functions over its private social media platform or based on allegations of donations to causes or organizations that Plaintiffs disfavor. And, even if Plaintiffs had met any of these burdens, Section 230 of the CDA still would bar liability on their claims—none of which are cognizable as pleaded in any event, for a host of other reasons.

**A. This Court Does Not Have Personal Jurisdiction Over Facebook**

A complaint must be dismissed where the Court lacks jurisdiction over the defendant. *See, e.g.*, *Daimler AG v. Bauman*, 571 U.S. 117, 126–28 (2014). Personal jurisdiction cannot be established over a non-resident corporation like Facebook unless an "applicable statute authorizes the service of process on defendants" *and* "the exercise of such statutory jurisdiction comports with constitutional due process demands." *Anzures v. Flagship Restaurant Group*, 819 F.3d 1277, 1279 (10th Cir. 2016). In evaluating whether a plaintiff has met its burden of establishing personal jurisdiction, "mere conclusory allegations" are not accepted as true. *BASF Corp. v. Willowood, LLC*, 359 F. Supp. 3d 1018, 1025 (D. Colo. 2019).

There are two forms of personal jurisdiction—general and specific—neither of which exists here. There is no general jurisdiction over Facebook in Colorado because Facebook is not "at home" in the state. *Daimler*, 571 U.S. at 127 (quotation omitted). Plaintiffs acknowledge that neither Facebook's "place of incorporation" nor its "principal place of business" are in Colorado. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011); Compl. ¶ 15.

Plaintiffs therefore must show that this Court has specific jurisdiction over Facebook arising from its "minimum contacts" with Colorado, such that "the in-state activities of the corporate defendant had not only been continuous and systematic, but also gave rise to the liabilities sued on." *Daimler*, 571 U.S. at 126 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S.

310, 317 (1945) (alterations omitted)). Plaintiffs fail to make any allegation that Facebook's allegedly unlawful conduct took place in Colorado, was "continuous or systematic" in the state, or that any conduct in Colorado "gave rise to the liabilities sued on." *Id.* In fact, Plaintiffs do not allege Facebook engaged in any relevant conduct at all in Colorado. Plaintiffs therefore have failed to establish any basis for this Court to exercise personal jurisdiction over Facebook here.

## B. Plaintiffs Do Not Have Standing to Sue

The Article III standing requirements "ensure that the Federal Judiciary respects the proper—and properly limited—role of courts in a democratic society" by preventing an individual from "invok[ing] federal-court jurisdiction unless he can show a personal stake in the outcome of the controversy." *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018) (citation omitted). The "irreducible constitutional minimum of standing," requires Plaintiffs establish an injury that is: (1) concrete, particularized, and actual or imminent, not conjectural or hypothetical; (2) causally connected to the defendant's alleged wrongdoing; and (3) redressable. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Plaintiffs fail to meet any of these standing requirements.

### 1. Plaintiffs Do Not Allege a Concrete Injury Traceable to Facebook

Plaintiffs must allege an "injury in fact" that is "concrete," "real," and "particularized," such that it "affect[s] the plaintiff in a personal and individual way"—and it cannot be merely "abstract." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). "A plaintiff [thus] cannot show a particularized or concrete injury by claiming 'that he has merely a general interest common to all members of the public.'" *Feehan.*, 2020 WL 7250219, at *7 (quoting *Ex parte Levitt*, 302 U.S. 633, 634 (1937)). To the contrary, a plaintiff cannot "use a 'federal court as a forum in which to air his generalized grievances about the conduct of government.'" *Id.* (quoting *United States v.*

*Richardson*, 418 U.S. 166, 174 (1974)); *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (per curiam) (injury cannot be "generally available grievance about government") (citation omitted).

Plaintiffs allege no specific or concrete injury they have suffered as a result of Facebook's purported editorial conduct and fail to draw any plausible, traceable connection between Facebook's alleged role in running its social media platform and any supposed constitutional injury they may have suffered. They summarily assert that Facebook "has burdened the Plaintiffs' rights to free speech, free press, and online assembly, based upon the favored political and health related preferences of Defendants, Mr. Zuckerberg and Ms. Chan" because it removes misleading posts, allows a third party to fact-check election content, and "disseminate[s] political and health related content." Compl. ¶¶ 51–52. But nowhere do Plaintiffs allege that their individualized constitutional rights were harmed in any concrete or specific way by Facebook's conduct.

They allege instead, only in the abstract, that Facebook's alleged removal or flagging of posts about the election hurt "160 million" citizens writ large by diluting their votes or decreasing their faith in the results. This is the type of alleged abstract injury that cannot satisfy Article III standing. *See Spokeo*, 136 S. Ct. at 1548; *Lujan*, 504 U.S. at 573–74 (a "generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws . . . does not state an Article III case or controversy"). Indeed, numerous courts have rejected standing based on similar allegations that plaintiffs—as voters—were discouraged to vote, concerned about the election results, or felt their votes were diluted or diminished by the fact that others were allowed to vote or engage in election-related speech. *E.g., Feehan*, 2020 WL 7250219, at *9; *Bognet v. Secretary Commonwealth of Penn.*, 980 F.3d 336, 354–55 (3d Cir. 2020) ("conceptualization of vote dilution" meaning "state actors

counted other ballots … is not a concrete harm"); *Wood v. Raffensperger*, 981 F.3d 1307, 1314–15 (11th Cir. 2020) (rejecting "vote dilution" theory based on counting of others' votes or "arbitrary and disparate treatment" theory based on alleged "preferred class" of voters); *Bowyer*, 2020 WL 7238261, at *5 (voter dilution "allegations are nothing more than generalized grievances that any . . . who voted could make if they were so allowed" and collecting cases); *King*, 2020 WL 7134198, at *9–11 (same); *Trump v. Kemp*, 2021 WL 49935, at *4–6 (N.D. Ga. Jan. 5, 2021) (same); *Shipley v. Chicago Bd. of Election Comm'rs*, 947 F.3d 1056, 1062 (7th Cir. 2020) (similar).[1] Many of the allegations in these failed cases are parroted in Plaintiffs' Complaint. *See, e.g.*, Compl. ¶¶ 282–87 (copying *Feehan* allegations).

Moreover, nowhere do Plaintiffs allege how these generalized injuries over the election results are "fairly traceable to" Facebook's "challenged action" of removing or failing to remove certain content from its platform. *Lujan*, 504 U.S. at 560. Article III requires a dismissal in this action for the same reason other courts have unanimously rejected nearly identical suits.

**2. Plaintiffs Do Not Allege Facts to Support Redressability**

"An injury is redressable if it is likely to be redressed by a favorable decision." *Citizen Ctr. v. Gessler*, 770 F.3d 900, 914 (10th Cir. 2014). "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability

[1] *See also Minnesota Voters All. v. City of Minneapolis*, 2020 WL 6119937, at *1 (D. Minn. Oct. 16, 2020) (denying TRO challenging CTCL grants because "Plaintiffs allege no injury to their right to vote"); *Texas Voters All. v. Dallas Cty.*, 2020 WL 6146248, at *1 (E.D. Tex. Oct. 20, 2020) (denying TRO challenging CTCL grants because plaintiffs failed to allege injury in fact, causation, or redressability and unreasonably delayed); *Wisconsin Voters All. v. City of Racine*, 2021 WL 179166, at *1 (E.D. Wis. Jan. 19, 2021) (dismissing complaint); *Georgia Voter All. v. Fulton Cty.*, 2020 WL 6589655, at *5 (N.D. Ga. Oct. 28, 2020) (similar); *Iowa Voter All. v. Black Hawk Cty.*, 2021 WL 276700, at *8 (N.D. Iowa Jan. 27, 2021) (dismissing voting case for lack of standing).

requirement." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 107 (1998). Plaintiffs must show that it is "likely," not merely "speculative," that the injury they allege will be "redressed by a favorable decision." *Lujan*, 504 U.S. at 561. And any requested relief must be "tailored to redress the plaintiff's particular injury." *Gill*, 138 S. Ct. at 1934; *see also Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("The remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established."). Nowhere do Plaintiffs define the specific relief they seek, even assuming they obtain a favorable decision. For example, Plaintiffs do not explain what an injunction against Facebook would address other than to request "permanent injunctive relief to remedy the ongoing effects of Defendants' unconstitutional conduct." Compl. at 83.

Plaintiffs' generalized grievance with the election results is not redressable. The election is over. A new President has been inaugurated. Plaintiffs do not explain how an injunction or declaration against Facebook would redress their dissatisfaction with those facts—or how any such relief would "directly and tangibly benefit [them more] than it does the public at large." *Bowyer*, 2020 WL 7238261, at *6 (quoting *Lance*, 549 U.S 437 at 439). Nor do they explain how any relief could avoid either "destroying" or "disenfranchis[ing] the … million[s] . . . that voted in the 2020 General Election" for the inaugurated President. *Id.*; *see also King*, 2020 WL 7134198, at *9 ("Plaintiffs' alleged injury does not entitle them to seek [relief] because the harm of having one's vote invalidated or diluted is not remedied by denying millions of others *their* right to vote.").

Moreover, Plaintiffs purport to seek "equitable monetary relief, including restitution and disgorgement of all ill-gotten gains, and the imposition of a constructive trust upon, or otherwise restricting the proceeds of Defendant's [sic] ill-gotten gains." Compl. at 83. But Plaintiffs do not allege that Facebook made any money from enforcing its platform rules or that any money was

taken from them. Rather, at most, they seem to allege that Facebook may have *donated* money to unspecified organizations (or allowed its employees or their spouses to do so). *E.g.*, Compl. ¶¶ 70–71. They offer no explanation for why or how this Court could order Facebook to gift money to them or others—a patently unconstitutional ask that, as alleged and requested in the Complaint, would violate Facebook's First Amendment rights. *Infra* Section III.C.

The same is true for Plaintiffs' claims for declaratory relief, "because it fails to seek more than a retrospective opinion that [Plaintiffs were] wrongly harmed by the defendant." *Prison Legal News v. Federal Bureau of Prisons*, 944 F.3d 868, 880 (10th Cir. 2019) (internal citations and quotations omitted). Again, numerous courts have rejected these sorts of remedies as redressing any purported injury to voters writ large from alleged electoral influence. *E.g.*, *Feehan*, 2020 WL 7250219, at *10. At any rate, the state official defendants "already ha[ve] certified and transmitted the election[] results." *Id.* at *13. As the court observed in *Feehan*, "most of the relief [Plaintiffs] seek[] is beyond this court's ability to redress absent the mythical time machine." *Id.* at *14. So too, here, the Court can offer no relief to "restore" Plaintiffs' purported loss of faith in the election or democracy, or to lessen the chance of future civil strife.[2]

### C. Plaintiffs Fail to State a Claim Because Facebook Is Not a State Actor

To state a claim for relief under 42 U.S.C. § 1983, Plaintiffs must establish a "deprivation

---

[2] The deficiencies that cause Plaintiffs' claims to be non-redressable also render the claims moot. *E.g.*, *Bowyer*, 2020 WL 7238261, at *12 ("Because this Court cannot" change the election results, "it would be meaningless to grant Plaintiffs any of the remaining relief they seek"); *Wood*, 981 F.3d at 1316–18 (same); *King*, 2020 WL 7134198, at *5–6 (same). Laches also bars their belated election claims, including the alleged election-related donation activities. *See, e.g.*, *King*, 2020 WL 7134198, at *6–7 (denying claims related to alleged electoral interference and influence on laches ground where filed 21 days after the election and collecting cases); *Trump v. Wisc. Elections Comm'n*, 983 F.3d 919, 925–26 (7th Cir. 2020) (affirming dismissal of suit brought after election seeking to challenge rules' impact on election based on the doctrine of laches and collecting cases).

of a right secured by the Constitution or laws of the United States" "committed under color of state law." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1143 (10th Cir. 2014) (citing *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)). "[S]tate, not private, action is an irreducible minimum in a § 1983 action." *Id.* But federal courts have affirmed that Facebook is not a state actor and therefore cannot be sued under 42 U.S.C. § 1983 for actions taken on its platform. *See, e.g.*, *Zimmerman v. Facebook, Inc.*, 2020 WL 5877863, at *2 (N.D. Cal. Oct. 2, 2020) ("To the extent that the constitutional claims are free speech claims premised on the blocking of the plaintiffs' accounts, they fail because Facebook is not a state actor."); *Forbes v. Facebook, Inc.*, 2016 WL 676396, at *2 (E.D.N.Y. Feb. 18, 2016) (dismissing § 1983 claims because Facebook was not a state actor); *Nyabwa v. Facebook*, 2018 WL 585467, at *1–2 (S.D. Tex. Jan. 26, 2017) (same); *see also Manhattan Community Access Corp. v. Halleck*, 139 S. Ct. 1921, 1930 (2019) ("[W]hen a private entity provides a forum for speech, the private entity is not ordinarily constrained by the First Amendment because the private entity is not a state actor.").

Nor can Plaintiffs show that "there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). While a private party can be treated as a state actor if "state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights," Plaintiffs make no plausible allegations of such a conspiracy or agreement here. *Wittner v. Banner Health*, 720 F.3d 770, 777 (10th Cir. 2013) (finding no state action where "Plaintiffs have not alleged that any state officials conspired with or acted jointly in making the decision to medicate [Plaintiff]").

The Tenth Circuit applies a stringent pleading requirement to Section 1983 claims alleging

a conspiracy between private individuals and state officials. *Scott v. Hern*, 216 F.3d 897, 907 (10th Cir. 2000); *see also Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998) ("a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants" to state a valid § 1983 claim). Conclusory allegations "with no supporting factual" allegations are insufficient. *Raiser v. Kono*, 245 F. App'x 732, 736 (10th Cir. 2007). Plaintiffs never even allege Facebook *interacted* with any state actor here pursuant to its alleged efforts to prevent misinformation on its platform, and Plaintiffs make no allegations whatsoever of any actual conspiracy or agreement between state actors and Facebook to deny their constitutional rights. *Am. Mfrs. Mut. Ins. Co.*, 526 U.S. at 52 ("[M]ere approval or acquiescence of the State[,]" does not transform a private party's actions into state action.). Nor do they allege that Facebook "reached an understanding" with a particular state official to violate Plaintiffs' rights in concert. *Harvey v. Harvey*, 949 F.2d 1127, 1130, 1133 (11th Cir. 1992) ("Only in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes.").[3]

Finally, Plaintiffs allege that Facebook became a state actor "[b]y becoming intricately involved in the funding of the non-profit organizations that worked closely with targeted cities and counties, against state law and with federal regulation, which involved the machinery of the elections." Compl. ¶ 380. This allegation is frivolous. As an initial matter, Plaintiffs never allege that *Facebook itself* donated money—their allegations focus on alleged donations by two other

[3] Even if Plaintiffs could show that Facebook might be treated as a state actor (which they cannot), Plaintiffs' claims are not cognizable because Plaintiffs do not allege that any violation of their constitutional rights occurred through the adoption of some "official policy or practice" as required for *Monell* liability, or that there was a violation of a well-established constitutional right to overcome qualified immunity. *See, e.g.*, *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *see also Glisson v. Indiana Dep't of Corrections*, 849 F.3d 372, 379 (7th Cir. 2017) ("private corporation … is subject to at least the same rules that apply to public entities").

Defendants. More fundamentally, mere allegations regarding the donation of money are not sufficient to allege concerted activity between a private individual and a state actor for purposes of Section 1983. Multiple federal courts have already concluded that allegations regarding donations of Defendant Center for Tech and Civic Life like those set forth in the Complaint are insufficient to adequately plead a constitutional violation. *See, e.g.*, *Texas Voters Alliance*, 2020 WL 6146248, at *5 (rejecting Plaintiffs' argument "that the grants create a public-private partnership between the Counties and the CTCL that is constitutionally impermissible"); *Iowa Voter Alliance*, 2021 WL 276700, at *5 n.3 (N.D. Iowa Jan. 27, 2021) (observing Court was "thoroughly unconvinced that the counties violated any particular law by accepting the CTCL grants"); *Wisc. Voters All.*, 2021 WL 179166 at *3 (same). No federal court has ever held that donating money to non-profits that work with local agencies transforms a financial donor into a state actor or creates a conspiracy based on how that money is then used. *Cf. Poel v. Webber*, 899 F. Supp. 2d 1155, 1161 (D.N.M. 2012) (allegations of innocuous communications between lawyers and judges through pleadings and motions insufficient to allege Section 1983 claim); *Harvey*, 949 F.2d at 1133 (activities like resort to judicial process are not "state actions" for Section 1983 purposes simply because they implicate later state action).

Nor could the rule be any different. Imposing liability on an entity simply by virtue of its charitable donations would impermissibly burden core First Amendment rights. *Cf. NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958) (recognizing right to donate to non-profits implicates First Amendment rights); *Bates v. City of Little Rock*, 361 U.S. 516, 523 (1960) ("freedom of association for the purpose of advancing ideas and airing grievances is protected by the Due Process Clause of the Fourteenth Amendment from invasion by the States"); *Citizens*

*United v. FEC*, 558 U.S. 310 (2010) (corporations have First Amendment speech rights).[4] Indeed, the very objective of a suit like this one is to chill Defendants' conduct.

### D. Section 230 of the Communications Decency Act Bars Plaintiffs' Claims

Plaintiffs' claims also fail under Section 230 of the CDA, which "facilitate[s] the use and development of the Internet by providing certain services an immunity from civil liability arising from content provided by others." *FTC v. Accusearch Inc.*, 570 F.3d 1187, 1195 (10th Cir. 2009). "The prototypical service qualifying for this statutory immunity is an online messaging board (or bulletin board) on which Internet subscribers post comments and respond to comments posted by others." *Id.* Under 47 U.S.C. § 230(c)(1), immunity from liability thus attaches 1) to a "provider of an interactive computer services" ("ICS"),[5] where 2) the purported liability is "based on the defendant's having acted as a publisher or speaker," and 3) the immunity is "claimed only with respect to information provided by another information content provider." *Accusearch*, 510 F.3d at 1195. Thus, "Section 230 protects a publisher from liability for exercising its editorial and self-regulatory functions." *Silver v. Quora, Inc.*, 666 F. App'x 727, 729 (10th Cir. 2016). Facebook's conduct alleged in the Complaint falls well within the scope of this immunity from liability.

*First*, it is well-established that Facebook is a provider of interactive computer services. *E.g.*, *Force v. Facebook, Inc.*, 934 F.3d 53, 64 (2d Cir. 2019); *see also Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014).

*Second*, Plaintiffs' claims seek to hold Facebook liable as a publisher of third-party content, which Section 230 bars. *See* Compl. ¶ 400 ("Facebook . . . interfered in the public election process,

---

[4] Facebook reserves the right to file an anti-SLAPP motion. *See* C.R.S. § 13-20-1101.

[5] 47 U.S.C. § 230(f)(2) defines an ICS as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server.".

by blocking and censoring content in opposition to, and by actively publishing content in support of one political ideology."). For purposes of Section 230, Facebook allegedly would have been "acting as a publisher" when it removed misinformation from its online platform or flagged posts to alert users to their potential falsity. In *Barnes v. Yahoo!, Inc.*, the Ninth Circuit explained that "publication involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." 570 F.3d 1096, 1102 (9th Cir. 2009); *see Klayman*, 753 F.3d at 1359 (publisher is "reproducer of a work intended for public consumption" and "very essence of publishing is making the decision whether to print or retract a given piece of content"). Section 230 was specifically enacted to "forbid the imposition of publisher liability on a service provider for the exercise of its editorial and self-regulatory functions," including the removal of misleading or harmful user posts. *Ben Ezra, Weinstein & Company, Inc. v. America Online, Inc.*, 206 F.3d 980, 986 (10th Cir. 2000); *see Doe v. MySpace, Inc.*, 528 F.3d 413, 419 (5th Cir. 2008) ("so long as a third party willingly provides the essential published content, the interactive service provider receives full immunity, regardless of the specific editing or selection process"). As the D.C. Circuit observed in *Klayman*, "[i]t would make nonsense of [Section 230] to say that interactive computer services must lack the capacity to police content when the Act expressly provides them with immunity for doing just that." 753 F.3d at 1358.

*Third*, Plaintiffs' allegations relate to "information provided by another information content provider." Plaintiffs' Complaint faults Facebook for publishing or removing certain information, all of which was provided by third-party Facebook users. Plaintiffs do not and cannot allege that Facebook had any role in creating or publishing the content on which their Complaint is based. The CDA therefore applies. *See, e.g.*, *Klayman*, 753 F.3d at 1358 ("Indeed, the complaint

nowhere alleges or even suggests that Facebook provided, created, or developed any portion of the content that Klayman alleges harmed him."). Nor do Plaintiffs accurately describe the *third party* fact-checking of content published by others on Facebook's platform, but regardless, such conduct alone does not transform the content into material *provided by Facebook*. *See, e.g.*, *Force*, 934 F.3d at 68 ("consistent with broadly construing 'publisher' under Section 230(c)(1), … a defendant will not be considered to have developed third-party content unless the defendant directly and 'materially' contributed to what made the content itself unlawful"); *Jones v. Dirty World Entertainment Recordings LLC*, 755 F.3d 398, 416 (6th Cir. 2014) (The CDA expressly bars "lawsuits seeking to hold a service provider liable for … deciding whether to publish, withdraw, postpone or alter content.") And there can be no argument that Facebook's *removal* of content provided by a third-party user somehow makes Facebook a material contributor to the alleged illegality of that content. Accordingly, Plaintiffs' claims fail under Section 230. *Batzel v. Smith*, 333 F.3d 1018, 1031 (9th Cir. 2003) ("The 'development of information' therefore means something more substantial than merely . . . selecting material for publication."); *Federal Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1120 (N.D. Cal. 2020) (similar).

**E. Plaintiffs Fail to State Any Cognizable Claim**

None of Plaintiffs' constitutional claims are cognizable for a litany of other reasons.

Count I fails to explain how Facebook's conduct violated any right Plaintiffs hold. "The [Electors] clause confers on the *state* the right to appoint electors, and confers on the *legislature* the right to decide the way those electors will be appointed," but does not confer any "right on the *electors* themselves"—much less citizens. *Feehan*, 2020 WL 7250219, at *12. Nor do Plaintiffs explain how they were barred from voting by Facebook; in fact, some attest they chose not to vote.

Counts II–III similarly fail to allege how Facebook discriminated against Plaintiffs on the basis of race or denied their right to vote. They appear to allege that the ability of *others* to vote somehow discriminated against them, which is not cognizable. Compl. ¶¶ 326–62; *Bowyer*, 2020 WL 7238261, at *5–6 (allegations that other votes were counted, even in opposition to rules or laws, does not state a viable due process or equal protection claim).

Count V fails because, to the extent that Plaintiffs allege an as-applied constitutional challenge to Section 230, Plaintiffs never allege how Section 230 has been applied to deny their protected speech or any other constitutional right. Moreover, they cannot rest a challenge on Facebook's purported violation of their First Amendment rights because, as shown *supra* in Section III.C, Facebook is not a state actor. *Prager University v. Google*, 951 F.3d 991, 999 (9th Cir. 2020) ("state action doctrine precludes constitutional scrutiny of YouTube's content moderation"); *Green v. America Online (AOL)*, 318 F.3d 465, 472 (3d Cir. 2003) (same).[6]

## IV. CONCLUSION

The Court should dismiss Facebook for lack of jurisdiction, or dismiss the Complaint with prejudice as amendment would be futile. *E.g.*, *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1126 (10th Cir. 1997). Plaintiffs cannot cure the standing defects given the nature of their claims, nor can they allege any facts that would make Facebook a state actor.

---

[6] To the extent Plaintiffs assert a claim under the Help America Vote Act or CDA, neither provides a private right of action. *See, e.g.*, *Cain v. Christine Valmy Int'l Sch. of Esthetics, Skin Care, & Makeup*, 216 F. Supp. 3d 328, 334–35 (S.D.N.Y. 2016) ("Case law is unanimous that a private right of action is not available under the [CDA]"); *Sandusky Cty. Democratic Party v. Blackwell*, 387 F.3d 565, 572 (6th Cir. 2004) ("HAVA does not itself create a private right of action.").

Dated: February 16, 2021

Respectfully submitted,

*/s/ Joshua S. Lipshutz*

Joshua S. Lipshutz
**GIBSON DUNN & CRUTCHER LLP**
1050 Connecticut Avenue, NW
Washington, DC 20036
Telephone: 202.955.8217
Facsimile: 202.530.9614
Email: jlipshutz@gibsondunn.com

Ryan T. Bergsieker
Natalie J. Hausknecht
**GIBSON, DUNN & CRUTCHER LLP**
1801 California Street, Suite 4200
Denver, CO 80202-2642
Telephone: 303.298.5700
Facsimile: 303.298.5907
Email: rbergsieker@gibsondunn.com
nhausknecht@gibsondunn.com

Craig B. Streit
**GIBSON, DUNN & CRUTCHER LLP**
555 Mission Street, Suite 3000
San Francisco, CA 94105
Telephone: 415.393.8225
Facsimile: 415.374.8487
Email: cstreit@gibsondunn.com

*Attorneys for Facebook, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 16, 2021, I electronically filed a copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to the e-mail addresses denoted on the Court's Electronic Mail Notice List.

*/s/ Joshua S. Lipshutz*____________
Joshua S. Lipshutz