**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:20-cv-03747-NRN

KEVIN O'ROURKE, NATHANIEL L.
CARTER, LORI CUTUNILLI, LARRY D.
COOK, ALVIN CRISWELL, KESHA
CRENSHAW, NEIL YARBROUGH, and
AMIE TRAPP,

                Plaintiffs, on their own behalf
                and of a class of similarly
                situated persons,

     v.

DOMINION VOTING SYSTEMS, INC., a
Delaware corporation, FACEBOOK, INC., a
Delaware corporation, CENTER FOR TECH
AND CIVIC LIFE, an Illinois non-profit
organization, MARK E. ZUCKERBERG,
individually, PRISCILLA CHAN,
individually, BRIAN KEMP, individually,
BRAD RAFFENSPERGER, individually,
GRETCHEN WHITMER, individually,
JOCELYN BENSON, individually, TOM
WOLF, individually, KATHY BOOCKVAR,
individually, TONY EVERS, individually,
ANN S. JACOBS, individually, MARK L.
THOMSEN, individually, MARGE
BOSTELMAN, individually, JULIE M.
GLANCEY, DEAN KNUDSON,
individually, ROBERT F. SPINDELL, Jr.,
individually, and DOES 1-10,000,

                Defendants.

---

**DEFENDANT CENTER FOR TECH AND CIVIC LIFE'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... 1

BACKGROUND ................................................................................................... 2

LEGAL STANDARD............................................................................................ 3

ARGUMENT ........................................................................................................ 3

I.       Plaintiffs lack Article III standing...................................................................4

         A.       Plaintiffs do not allege an injury-in-fact. ...........................................4

         B.       Any asserted injury-in-fact is not fairly traceable to CTCL's
                  actions. ................................................................................................7

         C.       Plaintiffs fail to allege redressability. ................................................7

II.      The Complaint fails to state a claim. ..............................................................8

         A.       The Complaint fails to state a claim under § 1983. ............................8

                  1.       Plaintiffs do not allege state action. .......................................8

                  2.       Plaintiffs do not allege a constitutional violation. ...............10

         B.       The Complaint fails to state a claim under any of the other statutes
                  cited...................................................................................................13

CONCLUSION.....................................................................................................14

CERTIFICATE OF SERVICE ..............................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACLU of New Mexico v. Santillanes*,
   546 F.3d 1313 (10th Cir. 2008) ............................................... 11

*Already, LLC v. Nike, Inc.*,
   568 U.S. 85 (2013) ................................................................... 7

*Am. Humanist Ass'n, Inc. v. Douglas Cty. Sch. Dist. RE-1*,
   859 F.3d 1243 (10th Cir. 2017) ............................................... 4

*Bognet v. Sec'y of Commonwealth of Pa.*,
   980 F.3d 336 (3d Cir. 2020) ........................................... 5, 6, 7, 11

*Bowyer v. Ducey*,
   No. 20 Civ. 2321, 2020 WL 7238261 (D. Ariz. Dec. 9, 2020) ........... 6, 12

*Brereton v. Bountiful City Corp.*,
   434 F.3d 1213 (10th Cir. 2006) ............................................... 14

*Brown v. Reardon*,
   770 F.2d 896 (10th Cir. 1985) ............................................... 13

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ................................................................ 8

*Crissman v. Dover Downs Entm't Inc.*,
   289 F.3d 231 (3d Cir. 2002) ...................................................... 9

*Donald J. Trump for President, Inc. v. Boockvar*,
   No. 20 Civ. 966, 2020 WL 5997680 (W.D. Pa. Oct. 10, 2020) ............. 12

*Election Integrity Fund v. City of Lansing*,
   No. 20 Civ. 950, 2020 WL 6605987 (W.D. Mich. Oct. 19, 2020) ......... 1, 6

*Election Integrity Fund v. City of Lansing*,
   No. 20-2048 (6th Cir. Oct. 30, 2020) .......................................... 1

*Feehan v. Wis. Elections Comm'n.*,
   No. 20 Civ. 1771, 2020 WL 7250219 (E.D. Wis. Dec. 9, 2020) ......... 6, 11

*Ga. Voter All. v. Fulton Cty.*,
   No. 20 Civ. 4198, 2020 WL 6589655 (N.D. Ga. Oct. 28, 2020) ....... 1, 11, 14

*Gallagher v. Neil Young Freedom Concert*,
    49 F.3d 1442 (10th Cir. 1995) ................................................. 9

*Griffin v. Breckenridge*,
    403 U.S. 88 (1971)................................................................ 13

*Iowa Voter All. v. Black Hawk Cty*,
    No. 20 Civ. 2078, 2020 WL 6151559 (N.D. Iowa Oct. 20, 2020) ...................................... 1, 11

*Iowa Voter All. v. Black Hawk Cty.*,
    No. 20 Civ. 2078, 2021 WL 276700 (N.D. Iowa Jan. 27, 2021)...................................... 2, 6, 13

*Johnson ex rel. Johnson v. Columbia Univ.*,
    No. 99 Civ. 3415, 2003 WL 22743675 (S.D.N.Y. Nov. 19, 2003) ........................................... 9

*King v. Whitmer*, 20 Civ. 13134,
    2020 WL 7134198 (E.D. Mich. Dec. 7, 2020) .................................... 6, 10

*Kinnell v. Graves*,
    265 F.3d 1125 (10th Cir. 2001) ................................................. 12

*Lance v. Coffman*,
    549 U.S. 437 (2007)............................................................. 4, 6

*Lansing v. City of Memphis*,
    202 F.3d 821 (6th Cir. 2000) ................................................. 9

*Logan v. Pub. Employees Ret. Ass'n*,
    163 F. Supp. 3d 1007 (D.N.M. 2016) ...................................... 12

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992).............................................................. 4

*Minn. Voters All. v. City of Minneapolis*,
    No. 20 Civ. 2049, 2020 WL 6119937 (D. Minn. Oct. 16, 2020)...................................... 1, 6, 13

*Moore v. Bd. of Cty. Comm'rs*,
    507 F.3d 1257 (10th Cir. 2007) ................................................. 12

*Pa. Voters All. v. Centre Cty.*,
    No. 20 Civ. 01761, 2020 WL 6158309 (M.D. Pa. Oct. 21, 2020)........................................ 1, 6

*Pa. Voters All. v. Centre Cty.*,
    No. 20A82 (U.S. Nov. 3, 2020) ................................................. 2

*Pa. Voters All. v. Centre Cty.*,
    No. 20-3175 (3d Cir. 2020).......................................................... 1

*Reynolds v. Sims*,
  377 U.S. 533 (1964)............................................................................................. 5

*S.C. Voter's All. v. Charleston Cty.*,
  No. 20 Civ. 3710 (D.S.C. Oct. 26, 2020)......................................................... 1, 11

*Safe Streets All. v. Hickenlooper*,
  859 F.3d 865 (10th Cir. 2017) ........................................................................... 3

*Schroder v. Volcker*,
  864 F.2d 97 (10th Cir. 1988) ............................................................................ 13

*Scott v. Hern*,
  216 F.3d 897 (10th Cir. 2000) ............................................................................ 9

*SECSYS, LLC v. Vigil*,
  666 F.3d 678 (10th Cir. 2012) .......................................................................... 11

*Shipley v. Chi. Bd. of Election Comm'rs*,
  947 F.3d 1056 (7th Cir. 2020) ......................................................................... 10

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016).......................................................................................... 4

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014).......................................................................................... 4, 8

*Tex. Voters All. v. Dallas Cty.*,
  No. 20 Civ. 775, 2020 WL 6146248 (E.D. Tex. Oct. 20, 2020).................. 1, 6, 11, 14

*Texas v. Pennsylvania*,
  No. 155, 2020 WL 7296814 (U.S. Dec. 11, 2020) ................................................ 6

*Tilton v. Richardson*,
  6 F.3d 683 (10th Cir. 1993) .............................................................................. 13

*Warth v. Seldin*,
  422 U.S. 490 (1975)............................................................................................. 5

*West v. Atkins*,
  487 U.S. 42 (1988)............................................................................................... 8

*Wis. Voters All. v. City of Racine*,
  No. 20 Civ. 1487, 2020 WL 6129510 (E.D. Wis. Oct. 14, 2020) ............... 1, 11, 13

*Wis. Voters All. v. City of Racine*,
  No. 20-3002 (7th Cir. Oct. 23, 2020).................................................................. 1

*Wis. Voters All. v. City of Racine*,
  No. 20A75 (U.S. Oct. 29, 2020) ................................................................... 1

*Wis. Voters All. v. City of Racine*,
  No. 20 Civ. 1487, 2021 WL 179166 (E.D. Wis. Jan. 19, 2021).......................... 2, 6

*Wittner v. Banner Health*,
  720 F.3d 770 (10th Cir. 2013) ................................................................... 8, 9

*Wood v. Raffensperger*,
  981 F.3d 1307 (11th Cir. 2020) ................................................................... 5

**Statutes**

Const. Art. I, § 4............................................................................................ 11

Const. Art. II, § 1........................................................................................... 10

42 U.S.C. § 1983 ................................................................................ 3, 8, 10, 13

42 U.S.C. § 1985 ........................................................................................... 13

42 U.S.C. § 1986 ........................................................................................... 13

42 U.S.C. § 1988 ........................................................................................... 13

52 U.S.C. § 20510 ......................................................................................... 13

**Rules**

Federal Rule of Civil Procedure 12 ....................................................................... 3

## INTRODUCTION

This is the latest (and hopefully the last) case in which plaintiffs without any concrete or particularized injury seek to raise outlandish, disreputable, and discredited conspiracy theories about the 2020 election. Like every other similar case to precede it, this one should be dismissed.

Plaintiffs here assert that a vast cabal of government officials, private organizations, and private citizens somehow conspired to massively manipulate the 2020 presidential election. As damages for this alleged plot, Plaintiffs seek $160 billion. But Plaintiffs' case against Defendant Center for Tech and Civic Life (CTCL)—a non-profit organization that offered grants to support local election administrators during the COVID-19 pandemic—fails on every level. Plaintiffs lack Article III standing because they assert only generalized grievances, fail to connect their supposed harms to anything that CTCL allegedly did, and fail to demonstrate redressability. And Plaintiffs also fail to state a claim upon which relief can be granted: the constitutional violations that Plaintiffs allege are not cognizable against a private entity like CTCL, and they lack merit regardless.

Over the past several months, eight federal district courts, three unanimous appellate panels, and two Supreme Court Justices have rejected attacks on the legality of CTCL's COVID-19 response grant program.[1] This challenge fares no better. It should be dismissed.

---

[1] *See Wis. Voters All. v. City of Racine*, No. 20 Civ. 1487, 2020 WL 6129510 (E.D. Wis. Oct. 14, 2020); *Minn. Voters All. v. City of Minneapolis*, No. 20 Civ. 2049, 2020 WL 6119937 (D. Minn. Oct. 16, 2020); *Election Integrity Fund v. City of Lansing*, No. 20 Civ. 950, 2020 WL 6605987 (W.D. Mich. Oct. 19, 2020); *Iowa Voter All. v. Black Hawk Cty.*, No. 20 Civ. 2078, 2020 WL 6151559 (N.D. Iowa Oct. 20, 2020); *Tex. Voters All. v. Dallas Cty.*, No. 20 Civ. 775, 2020 WL 6146248 (E.D. Tex. Oct. 20, 2020); *Pa. Voters All. v. Centre Cty.*, No. 20 Civ. 1761, 2020 WL 6158309 (M.D. Pa. Oct. 21, 2020); ECF 5, *S.C. Voter's All. v. Charleston Cty.*, No. 20 Civ. 3710 (D.S.C. Oct. 26, 2020); *Ga. Voter All. v. Fulton Cty.*, No. 20 Civ. 4198, 2020 WL 6589655 (N.D. Ga. Oct. 28, 2020); ECF 5, *Wis. Voters All. v. City of Racine*, No. 20-3002 (7th Cir. Oct. 23, 2020); ECF 20 & 28, *Pa. Voters All. v. Centre Cty.*, No. 20-3175 (3d Cir. 2020); ECF 10-2, *Election Integrity Fund v. City of Lansing*, No. 20-2048 (6th Cir. Oct. 30, 2020); *Wis. Voters All. v. City of*

## BACKGROUND

CTCL is a non-profit organization that provides training and logistical support to election administrators around the country "to make U.S. elections more inclusive and secure." Compl. ¶ 70 n.18; *see* Compl. ¶¶ 83-85. In preparation for the 2020 election, CTCL made "COVID-19 response grants" available to election administrators and encouraged "all U.S. local election jurisdictions" to apply. Compl. ¶¶ 94, 97. Many local governments participated (over 2500 in total), including the cities and counties in Michigan, Georgia, Pennsylvania, and Wisconsin singled out by the Complaint. Compl. ¶ 95; *see also* ECF. No. 1-4 at 2-3. Indeed, the grants identified by Plaintiffs here are just a small fraction of the thousands of grants that CTCL awarded to jurisdictions of all political and demographic stripes around the country.[2] *See* CTCL, *CTCL Program Awards Over 2,500 COVID-19 Response Grants* (Oct. 29, 2020), https://www. techandciviclife.org/grant-awards.

This lawsuit was filed on December 22, 2020 by registered voters from six states. Compl. ¶¶ 6-13. It asserts that CTCL and the other Defendants—an election technology vendor, a social media platform, two private individuals, a bi-partisan group of state officials from four "swing" states, and up to 10,000 unnamed co-conspirators—"engaged in concerted action to interfere with the 2020 presidential election through a coordinated effort to, among other things, change voting laws without legislative approval, use unreliable voting machines, alter votes through an

*Racine*, No. 20A75 (U.S. Oct. 29, 2020) (Kavanaugh, J.) (application for injunction denied); *Pa. Voters All. v. Centre Cty.*, No. 20A82 (U.S. Nov. 3, 2020) (Alito, J.) (same); *see also Wis. Voters All. v. City of Racine*, No. 20 Civ. 1487, 2021 WL 179166 (E.D. Wis. Jan. 19, 2021) (granting motion to dismiss); *Iowa Voter All. v. Black Hawk Cty.*, No. 20 Civ. 2078, 2021 WL 276700 (N.D. Iowa Jan. 27, 2021) (same).

[2] While dismissal is warranted on the face of the Complaint alone, and without reference to any facts outside the pleadings, CTCL highlights this context to underscore that the Complaint does not (and cannot) allege that the cherry-picked grants highlighted in the Complaint are the *only* grants CTCL made during the 2020 election.

illegitimate adjudication process, provide illegal methods of voting, count illegal votes, suppress the speech of opposing voices, disproportionately and privately fund only certain municipalities and counties, and other methods, all prohibited by the Constitution." Compl. ¶ 4. Plaintiffs claim that CTCL and the other Defendants violated the Constitution's Electors Clause, the Equal Protection Clause, and the Due Process Clause—all "as enforced by" federal civil rights statutes, including 42 U.S.C. § 1983. Compl. ¶¶ 292-362. Plaintiffs allege that these violations harmed them and "millions" of other voters. Compl. ¶ 126. They seek unspecified declaratory and injunctive relief and $160 billion in damages. Compl. ¶¶ 404-09 & Prayer for Relief.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Plaintiffs must allege non-conclusory facts that, if true, establish this Court's subject-matter jurisdiction and state a claim for relief that is "plausible on its face." *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017).

## ARGUMENT

The Complaint fails to establish standing and fails to state a claim. It should therefore be dismissed.[3]

---

[3] Pursuant to this Court's Practice Standards for Civil Cases, counsel for CTCL proposed on March 5, 2021 to meet and confer with counsel to Plaintiffs. On March 8, 2021, Plaintiffs' counsel responded to state that they "object to [CTCL's] request to dismiss at this point." Plaintiffs' counsel added that "we have an amended complaint that we plan to file tomorrow with our responses to motions to dismiss from Dominion and Facebook." However, notwithstanding references to an amended complaint in the briefs that they filed in opposition to the pending motions to dismiss, Plaintiffs did not actually file any amended complaint. Because they have missed the window in which to file an amended complaint as of right, CTCL has proceeded with filing this motion to dismiss the operative complaint, which is due today under the applicable rules.

## I.      Plaintiffs lack Article III standing.

Federal courts may decide only "actual cases or controversies" brought by litigants with a justiciable stake in the outcome. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Article III requires (1) a concrete and particularized injury-in-fact, (2) a causal connection between that injury and the challenged conduct, and (3) redressability. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014). Because Plaintiffs cannot establish any of these required elements, their Complaint must be dismissed for lack of Article III standing.

### A.      Plaintiffs do not allege an injury-in-fact.

Plaintiffs fail to allege a "concrete and particularized" injury-in-fact. *See Susan B. Anthony List*, 573 U.S. at 158. To be particularized, an injury-in-fact must "affect the plaintiff in a personal and individual way." *Spokeo*, 136 S. Ct. at 1547. A mere generalized grievance—"undifferentiated and common to all members of the public"—is insufficient to confer standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 575 (1992); *see Am. Humanist Ass'n, Inc. v. Douglas Cnty. Sch. Dist. RE-1*, 859 F.3d 1243, 1247 (10th Cir. 2017).

Plaintiffs assert only a generalized grievance. At bottom, they assert that "illegal votes and unconstitutional procedures dilute[d] the votes of the legally registered voter" in the 2020 presidential election. Compl. ¶ 320. But that alleged harm is too amorphous and too broadly shared to support jurisdiction. Plaintiffs' essential contention is simply that "the law . . . has not been followed," which is "precisely the kind of undifferentiated, generalized grievance about the conduct of government that [the Supreme Court has] refused to countenance in the past." *See Lance v. Coffman*, 549 U.S. 437, 442 (2007) (per curiam). Indeed, Plaintiffs admit that their grievances can be generalized to all registered voters in the United States—and even specifically allege in several places that the conduct they challenge "hurts every registered voter in the country." Compl. ¶ 319; *accord* Compl. ¶¶ 1, 76, 334, 357. "[W]hen the asserted harm is . . . shared in substantially

equal measure by . . . a large class of citizens," it is not a particularized injury that can support Article III standing. *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

To be sure, Plaintiffs articulate their generalized harm in varied ways throughout the Complaint—for example, they complain that the election was administered unconstitutionally in certain "swing" states (*see* Compl. ¶¶ 127-291), that their votes were somehow diluted (*see* Compl. ¶¶ 319, 320, 355), or that unspecified voters were treated unequally (*see* Compl. ¶ 331-32). But every single one of these complaints amounts to a general grievance about the totality of the 2020 presidential election. Nowhere do Plaintiffs identify any concrete and particularized harm that affected them in a personal, individualized way. While Plaintiffs assert that this case concerns their "individual and personal" right to vote (*see* Compl. ¶ 304), it obviously "does not follow from the labeling of the right to vote as 'personal' . . . that *any* alleged illegality affecting voting rights rises to the level of an injury in fact." *Bognet v. Sec'y of Commonwealth of Pa.*, 980 F.3d 336, 358 (3d Cir. 2020). "The key inquiry for standing is whether the alleged violation of the right to vote arises from an invidious classification . . . to which the plaintiff[s] [are] subject" and which causes their votes to be actually "discounted" when the votes of others are not. *Id.* (quoting *Reynolds v. Sims*, 377 U.S. 533, 555 n.29 (1964)). No such harm is alleged here. *See infra*, Part II.A.2.[4]

For that reason, this case is just like many others in which federal courts dismissed challenges to the 2020 election for lack of any alleged concrete and particularized injury. In *Wood v. Raffensperger*, for instance, the Eleventh Circuit concluded that a plaintiff had no standing to challenge alleged unlawful processing of ballots under the Electors Clause, Equal Protection Clause, and Due Process Clause. The *Wood* court explained that "no single voter is specifically

---

[4] Plaintiffs' allegation that "[t]his claim is not a generalized grievance" is a conclusory recitation of the legal standard that merits no weight under *Iqbal* and *Twombly*. Compl. ¶ 317.

disadvantaged if a vote is counted improperly" and that therefore "[v]ote dilution in this context is a paradigmatic generalized grievance." 981 F.3d 1307, 1314-15 (11th Cir. 2020). The Third Circuit has likewise explained that "an alleged 'dilution' is suffered equally by all voters and is not 'particularized' for standing purposes," *Bognet*, 980 F.3d at 356-57, while further clarifying that an alleged "right to have government administered in compliance with the . . . Electors Clause" is a generalized grievance that cannot support standing. *Id.* at 349.[5]

In fact, courts have repeatedly invoked these principles to reject (for lack of standing) constitutional challenges to the receipt of CTCL grants—including challenges where the alleged harms involved vote dilution, partisan favoritism, the use of improper election procedures, and/or denial of individual rights to vote. *See, e.g.*, *Minn. Voters All.*, 2020 WL 6119937, at *7-8; *Election Integrity Fund*, 2020 WL 6605987, at *2; *Tex. Voters All.*, 2020 WL 6146248, at *4-5; *Pa. Voters All.*, 2020 WL 6158309, at *4-5, *appeal dismissed*, ECF 28, No. 20-3175 (3d Cir. Nov. 23, 2020) ("The appeal is summarily dismissed for lack of standing, as there is no injury-in-fact."); *Wis. Voters All.*, 2021 WL 179166, at *2-3; *Iowa Voter All.*, 2021 WL 276700, at *4-8. Because all of those theories of injury amounted to claims that "the law has not been followed," courts repeatedly rejected them as "precisely the kind of undifferentiated, generalized grievance" that cannot confer Article III standing. *Lance*, 549 U.S. at 442.

---

[5] *See also Feehan v. Wis. Elections Comm'n*, No. 20 Civ. 1771, 2020 WL 7250219, at *9 (E.D. Wis. Dec. 9, 2020) (finding no "particularized, concrete injury sufficient to confer standing" where plaintiff alleged "injuries that any . . . voter suffers if the [state's] election process were, as the plaintiff alleges, 'so riddled with fraud, illegality, and statistical impossibility'"); *Bowyer v. Ducey*, No. 20 Civ. 2321, 2020 WL 7238261, at *5 (D. Ariz. Dec. 9, 2020) (voter dilution "allegations are nothing more than generalized grievances that any[one] . . . who voted could make if they were so allowed" and collecting cases); *King v. Whitmer*, 20 Civ. 13134, 2020 WL 7134198, at *9-11 (E.D. Mich. Dec. 7, 2020) (same); *cf. Texas v. Pennsylvania*, No. 155, 2020 WL 7296814, at *1 (U.S. Dec. 11, 2020) ("Texas has not demonstrated a judicially cognizable interest in the manner in which another State conducts its elections.").

**B.** **Any asserted injury-in-fact is not fairly traceable to CTCL's actions.**

An independent basis for dismissal is that the injuries Plaintiffs allege are not "fairly traceable" to CTCL's challenged actions. The Complaint is devoid of any allegations connecting CTCL's grant program to any cognizable harm to any specific plaintiff—be it alleged vote dilution, denial, or discrimination. *Cf. Bognet*, 980 F.3d at 352 (candidate lacked standing because his "expenditures" were not "'fairly traceable' . . . to the actions that [he] challenges"). To the contrary, the Complaint alleges that CTCL offered "grants to local election jurisdictions . . . to help ensure [they] have the staffing, training, and equipment necessary so this November every eligible voter can participate in a safe and timely way and have their vote counted." Compl. ¶ 94. No Plaintiffs allege that CTCL's grants stopped them from voting or having their votes counted, much less harmed them based on membership in a protected class. Nor do Plaintiffs allege that CTCL's grants themselves changed states' rules for selecting Electors. In other words, Plaintiffs do not allege that CTCL's provision of election administration grants to make voting easier and to improve election efficiency actually caused them any concrete injury.

**C.** **Plaintiffs fail to allege redressability.**

Finally, Plaintiffs' requests for declaratory and injunctive relief cannot redress their alleged harms. Much of their requested relief is moot. Plaintiffs seek a declaratory judgment that "the actions of the Defendants" are "unconstitutional and ultra vires, thereby making them legal nullities." Compl., Prayer for Relief; *accord* Compl. ¶¶ 404-06. They also seek "permanent injunctive relief to remedy the ongoing effects of Defendants' unconstitutional conduct." Compl., Prayer for Relief; *accord* Compl. ¶ 408. None of that relief is available. The election is over and a new President has been inaugurated. Those facts strip this Court of subject-matter jurisdiction to declare Michigan, Georgia, Pennsylvania, and Wisconsin's certifications of the presidential election "legal nullities." *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (case becomes

7

moot when the issues before the Court are "no longer 'live'"). And it obviously prohibits "permanent injunctive relief" to "remedy the ongoing effects" of Defendants' alleged misconduct—which would presumably be an injunction requiring a do-over of the election.[6]

## II.     The Complaint fails to state a claim.

### A.        The Complaint fails to state a claim under § 1983.

The Complaint asserts various constitutional claims against CTCL, principally under 42 U.S.C. § 1983. To succeed on their § 1983 claims, Plaintiffs must allege (1) "the violation of a [constitutional] right" and (2) that those violations were attributable to a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988). Plaintiffs' claims satisfy neither requirement. We first address the state actor requirement and then turn to the merits of their legal allegations.

#### 1.        Plaintiffs do not allege state action.

Because CTCL is a private non-profit organization, not a government entity, Plaintiffs' allegations must be dismissed unless they can satisfy one of the four recognized bases for treating a private actor's conduct as state action under § 1983. *See Wittner v. Banner Health*, 720 F.3d 770, 775 (10th Cir. 2013). But Plaintiffs meet none of these tests.

*First*, Plaintiffs do not allege that CTCL acted under the "coercive power" of a governmental entity. *See id. Second*, Plaintiffs' claims that CTCL provided monetary grants to

---

[6] In their opposition to Facebook's motion to dismiss, Plaintiffs disclaim any attempt to nullify the 2020 presidential election and implicitly concede that any request "for such extraordinary relief" would be moot. ECF 40 at 2. It is thus unclear what equitable relief (if any) Plaintiffs seek in this case. To the extent Plaintiffs' claims for declaratory and injunctive relief instead seek to challenge the conduct of *future* elections, Plaintiffs would still lack Article III standing because they cannot allege prospective injury that is "actual or imminent, not conjectural or hypothetical." *Susan B. Anthony List*, 573 U.S. at 158. Any such claim would improperly rest on speculative inferences about how various actors might behave and what collective impact those myriad decisions might have on election results. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013) (no standing where plaintiffs relied on "a highly attenuated chain of possibilities").

local governments to support their administration of the 2020 election do not indicate that CTCL itself assumed "a traditional and exclusive function of the state." *Id.* at 777. *Third*, Plaintiffs' threadbare assertions of a conspiracy among Defendants are "conclusory allegations with no supporting factual averments." *Scott v. Hern*, 216 F.3d 897, 907 (10th Cir. 2000). They are therefore insufficient to show that public and private actors "share[d] a specific goal to violate the plaintiff's constitutional rights by engaging in a particular course of action." *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1455 (10th Cir. 1995). *Finally*, Plaintiffs' allegations that CTCL offered (and some local governments accepted) COVID-19 response grants do not establish that CTCL and state actors have "commingled their responsibilities" to the point where they are so "interdependen[t]" and "entwine[d]" as to form a "symbiotic relationship." *Wittner*, 720 F.3d at 777-78. *Cf. Gallagher*, 49 F.3d at 1453 ("Payments under government contracts and the receipt of government grants and tax benefits are insufficient to establish a symbiotic relationship between the government and a private entity.").

It is no surprise that Plaintiffs' claims fail any version of the test for state action. The only alleged interaction between CTCL and any government actor is CTCL's provision of funds to various local government entities to support ongoing election administration efforts. That is not a sufficient basis for treating a private actor as though they are the government. *See Crissman v. Dover Downs Entm't Inc.*, 289 F.3d 231, 244 (3d Cir. 2002) ("[I]t would be a radical concept if the state's receipt of funds from private actors were to convert them into state actors."); *Lansing v. City of Memphis*, 202 F.3d 821, 831 (6th Cir. 2000) (explaining that the fact that a defendant "confers an economic benefit" on the government is "insufficient to establish that the [defendant] is a state actor"); *Johnson ex rel. Johnson v. Columbia Univ.*, No. 99 Civ. 3415, 2003 WL 22743675, at *6 (S.D.N.Y. Nov. 19, 2003) (holding that the "mere allegation that [a defendant]

provided funding" for an allegedly unconstitutional program did not make the defendant a state actor).

Because CTCL was not a state actor when it created and administered the grant program described in the Complaint, all of Plaintiffs' § 1983 claims against CTCL must be dismissed.

### 2. Plaintiffs do not allege a constitutional violation.

Alternatively, Plaintiffs' § 1983 claims against CTCL must be dismissed because they fail to allege any cognizable constitutional violation.

In Count I, Plaintiffs assert that Defendants (including CTCL) violated their rights under the Electors Clause, which provides for each state to appoint presidential electors "in such Manner as the Legislature thereof may direct." Const. Art. II, § 1, cl. 2. While the nature of this claim is hard to discern, Plaintiffs appear to contend that the Electors Clause forbids any state or local entity from adopting any rule or taking any action while administering a Presidential election that the state's legislature has not expressly authorized. Plaintiffs also appear to contend that any registered voter anywhere in the country has a private cause of action to vindicate the Clause as they understand it. These theories suffer from several fundamental defects.

*First*, the Electors Clause cannot plausibly be understood to mean "that *any* alleged deviation from state election law . . . opens the door to federal review." *King*, 2020 WL 7134198, at *12 (emphasis added); *see also id.* ("Plaintiffs cite to no case—and this Court found none—supporting such an expansive approach."); *Shipley v. Chi. Bd. of Election Comm'rs,* 947 F.3d 1056, 1062 (7th Cir. 2020) ("[A] deliberate violation of state election laws by state election officials does not transgress against the Constitution."). *Second*, regardless, Plaintiffs have not alleged any specific action taken by CTCL or any CTCL grant recipient that plausibly violated any particular state law. *Third*, Plaintiffs have failed to articulate any coherent theory of the Electors Clause that would apply to the conduct of private entities, rather than the state or local officials who actually

implemented the challenged policies. *Finally*, even if the Complaint cleared all those hurdles, any federal cause of action under the Electors Clause would belong to the relevant state and its legislature, not to individual voters. *See, e.g.*, *Feehan*, 2020 WL 7250219, at *12. For these and related reasons, federal courts across the country repeatedly and uniformly ruled against analogous challenges to the legality of CTCL's grant program under the Elections Clause, Const. Art. I, § 4, cl. 1, in litigation surrounding the election.[7] *See Bognet*, 980 F.3d at 349 (applying the "same logic" to analysis of Elections Clause and Electors Clause claims due to their "considerable similarity"). In short, Plaintiffs fail to allege that CTCL violated the Electors Clause of the Constitution.

In Count II, Plaintiffs allege that Defendants (including CTCL) violated the Equal Protection Clause of the Fourteenth Amendment. Specifically, they assert that Defendants engaged in "arbitrary and disparate treatment" of voters in different jurisdictions. *See* Compl. ¶¶ 331-32. But the Complaint does not establish any of the familiar predicates of a cognizable equal protection claim. There is no allegation of invidious discriminatory intent. *See SECSYS, LLC v. Vigil*, 666 F.3d 678, 685 (10th Cir. 2012). There is no allegation that Plaintiffs' personal rights to vote or any other fundamental rights were burdened. *See ACLU of New Mexico v. Santillanes*, 546 F.3d 1313,

---

[7] *See Iowa Voter All.*, 2020 WL 6151559, at *3 ("Plaintiffs have not provided any authority, nor have I found any, suggesting that the Elections Clause imposes specific limits or restrictions as to how a federal election must be funded."); ECF 5 at 3, *S.C. Voter's All.*, No. 20 Civ. 3710 (D.S.C. Oct. 26, 2020) (denying TRO on Elections Clause and other claims because "Plaintiffs appear to lack a private right of action for any of their causes of action and their underlying legal premises are dubious, at best"); *Ga. Voter All.*, 2020 WL 6589655, at *3 ("Fulton County's acceptance of private funds, standing alone, does not impede Georgia's duty to prescribe the time, place, and manner of elections, and Plaintiffs cite no authority to the contrary."); *Tex. Voters All.*, 2020 WL 6146248, at *12 ("Supreme Court precedent directly precludes Plaintiffs' Election Clause claim."); *Wis. Voters All.*, 2020 WL 6129510, at *2 (plaintiffs failed to establish likelihood that "defendant Cities are prohibited from accepting and using 'private federal election grants' by the Elections and Supremacy Clauses of the United States Constitutions").

1321-22 (10th Cir. 2008). At most, the Complaint alleges that some of the challenged conduct reduced barriers to voting for *other* people. But it is not clear what classification CTCL itself, or any other Defendant, may have adopted that allegedly resulted in the arbitrary and irrational differential treatment of plaintiffs. *See Kinnell v. Graves*, 265 F.3d 1125, 1128 (10th Cir. 2001) ("The threshold requirement of an Equal Protection claim is a showing that the government discriminated among groups. Unless a legislative classification either burdens a fundamental right or *targets a suspect class*, it need only bear a rational relation to some legitimate end . . . ."); *Donald J. Trump for President, Inc. v. Boockvar*, No. 20 Civ. 966, 2020 WL 5997680, at \*41 (W.D. Pa. Oct. 10, 2020) (differential treatment is "a necessary predicate for an equal-protection claim"); *Bowyer*, 2020 WL 7238261, at \*5 (alleged deviations from state election law or other irregularities do not make out an Equal Protection claim).[8]

Finally, in Count III, Plaintiffs allege that Defendants (including CTCL) violated the Due Process Clause. But they do not identify any process they believe they were owed or denied, which forecloses any procedural due process claim. *See Moore v. Bd. of Cty. Comm'rs*, 507 F.3d 1257, 1259 (10th Cir. 2007). And because they have not alleged any burden on their right to vote, they cannot have alleged that any such burden gave rise to the "exceptional case where a state's voting system is [so] fundamentally unfair" as to constitute a substantive due process violation. *Logan v. Pub. Emps. Ret. Ass'n*, 163 F. Supp. 3d 1007, 1034 (D.N.M. 2016).[9]

---

[8] Plaintiffs' attempt to invoke the Fifteenth Amendment's prohibition on denial of the right to vote on account of race fails for the same reasons. *See* Compl. ¶ 336.

[9] Counts IV and V do not concern CTCL. Counts VI and VII purport to state separate causes of action for declaratory and injunctive relief based on the alleged violations discussed above. These fail with the substantive claims. The relief sought by these claims is also improper for the reasons discussed above and in Defendant Facebook's and Defendant Dominion Voting Systems' Motions to Dismiss: These claims were filed after the 2020 election concluded, and well before there is any nonspeculative basis to conclude that the alleged conduct will recur in future elections. *See supra* Part I.C; ECF No. 22 at 18-19; ECF No. 23 at 7-8 n.2.

**B.     The Complaint fails to state a claim under any of the other statutes cited.**

In addition to § 1983, Plaintiffs also invoke 42 U.S.C. §§ 1985, 1986, and 1988. To the extent Plaintiffs allege claims under these statutes, they fail for the reasons just given—and for additional, independent reasons. Any claim under § 1985 fails because the Complaint's allegations of conspiracy are conclusory and implausible, and because Plaintiffs have not alleged that CTCL or any other Defendant was motivated by "racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Tilton v. Richardson*, 6 F.3d 683, 684 (10th Cir. 1993) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). Any claims under § 1986 are "dependent upon the validity of a § 1985 claim." *Brown v. Reardon*, 770 F.2d 896, 905 (10th Cir. 1985). And § 1988 is a procedural provision that does not create any independent cause of action. *Id.* at 907; *Schroder v. Volcker*, 864 F.2d 97, 99 (10th Cir. 1988).

Plaintiffs also mention the Help America Vote Act (HAVA) and the National Voter Registration Act (NVRA) while discussing CTCL. *See* Compl. ¶¶ 99-118, 268-69. To the extent the Complaint is construed as alleging claims under these statutes, any such claims would be meritless. HAVA does not confer any private right of action, and the NVRA confers a private right of action only for voters "aggrieved" by its violation. *See* 52 U.S.C. § 20510(b) (NVRA). Individual plaintiffs whose own rights to register and vote have not been impeded are not "aggrieved" under the NVRA, for essentially the same reasons Plaintiffs lack Article III standing. For these and other reasons, every court to consider the legality of the CTCL grant program under these statutes has upheld it. *See, e.g.*, *Wis. Voters All.*, 2020 WL 6129510, at *2 ("[T]he Court finds nothing in the statutes Plaintiffs cite, either directly or indirectly, that can be fairly construed as prohibiting the defendant Cities from accepting funds from CTCL."); *Iowa Voter All.*, 2021 WL 276700, at *5 n.3 (Strand, C.J.) ("I remain thoroughly unconvinced that the counties violated any particular law by accepting the CTCL grants."); *see also Minn. Voters All.*, 2020 WL 6119937, at

*5-6 (no private cause of action under HAVA and no private cause of action under the NVRA in part because plaintiffs were not "aggrieved"); *Tex. Voters All.*, 2020 WL 6146248, at *10-12 (no private cause of action under HAVA); *Ga. Voter All.*, 2020 WL 6589655, at *4 (same).

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' claims against CTCL for lack of jurisdiction, or in the alternative for failure to state a claim. Because the Complaint's many fundamental deficiencies render amendment futile, the dismissal should be without leave to replead. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).

Respectfully submitted,

Joshua Matz
Michael Skocpol
Marcella Coburn
Louis W. Fisher
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, NY 10118
Telephone: 212.763.0883
Facsimile: 212.564.0883
Email: jmatz@kaplanhecker.com
        mskocpol@kaplanhecker.com
        mcoburn@kaplanhecker.com
        lfisher@kaplanhecker.com

*Attorneys for Defendant Center for Tech and Civic Life*

14

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on March 10, 2021, a true and correct copy of the foregoing Motion to Dismiss was electronically filed with the Court using the CM/ECF system which will send notifications of such filing to all counsel of record.

Joshua Matz