1

<pre>
 1                    UNITED STATES DISTRICT COURT
                       DISTRICT OF COLORADO
 2

 3   KEVIN O'ROURKE, NATHANIEL L.   .  Case No. 20-cv-03747-NRN
     CARTER, LORI CUTUNILLI,        .
 4   LARRY D. COOK, ALVIN           .
     CRISWELL, KESHA CRENSHAW,      .
 5   NEIL YARBROUGH, and AMIE       .
     TRAPP, on their own behalf     .
 6   and of a class of similarly    .
     situated persons,             .
 7                                  .
                 Plaintiffs,        .
 8                                  .
     vs.                            .
 9                                  .
     DOMINION VOTING SYSTEMS,       .
10   INC., a Delaware               .
     corporation, FACEBOOK,         .
11   INC., a Delaware               .
     corporation, CENTER FOR        .
12   TECH AND CIVIC LIFE, an        .  United States District Court
     Illinois non-profit            .  1929 Stout Street
13   corporation, MARK E.           .  Denver, CO  80294
     ZUCKERBERG, Individually,      .
14   PRISCILLA CHAN,                .
     Individually, BRIAN KEMP,      .
15   Individually, BRAD             .
     RAFFENSPERGER, Individually,   .
16   GRETCHEN WHITMER,              .
     Individually, JOCELYN          .
17   BENSON, Individually, TOM      .
     WOLF, Individually, KATHY      .
18   BROCKVAR, Individually,        .
     TONY EVERS, Individually,      .
19   ANN S. JACOBS, Individually,   .
     MARK L. THOMSEN,               .
20   Individually, MARGE            .
     BOSTELMAN, Individually,       .
21   JULIE M. GLANCEY,              .
     Individually, DEAN KNUDSON,    .
22   Individually, ROBERT F.        .
     SPINDELL, JR., Individually,   .
23   and DOES 1-10,000,             .
                                    .
24               Defendants.        .
                                    .  March 11, 2021
25   . . . . . . . . . . . . . . .  .  10:59 a.m.
</pre>

```
 1           TRANSCRIPT OF PROCEEDINGS HELD BEFORE THE HONORABLE
             N. REID NEUREITER, UNITED STATES MAGISTRATE JUDGE
 2
     APPEARANCES:
 3
     For the Plaintiff:          Ernest J. Walker Law Offices
 4                               By:  Ernest J. Walker*
                                 3368 Riverside Road
 5                               Benton Harbor, MI  49022
                                 (303) 995-4835
 6
     For the Defendant, Dominion Brownstein Hyatt Farber
 7   Voting Systems, Inc.:          Schreck, LLP
                                 By:  Stanley L. Garnnett*
 8                               By:  Bridget C. DuPey*
                                 By:  David Meschke*
 9                               410 17th Street
                                 Suite 2200
10                               Denver, CO  80202
                                 (303) 223-1100
11
     For Defendant, Facebook,    Gibson Dunn & Crutcher, LLP
12   Inc.:                       By:  Craig B. Streit*
                                 555 Mission Street
13                               Suite 3000
                                 San Francisco, CA  94105
14                               (415) 393-8225

15                               Gibson Dunn & Crutcher, LLP
                                 By:  Joshua S. Lipshutz*
16                               1050 Connecticut Avenue N.W.
                                 Third Floor
17                               Washington, DC  20036
                                 (202) 955-8217
18
                                 Gibson Dunn & Crutcher, LLP
19                               By:  Ryan T. Bergsicker*
                                 1801 California Street
20                               Suite 4200
                                 Denver, CO  80202
21                               (303) 298-5774

22   For the Center for Tech and Kaplan Hecker & Fink, LLP
     Civic Life:                 By:  Joshua A. Matz*
23                               By:  Louis W. Fisher*
                                 By:  Marcella E. Coburn*
24                               350 Fifth Avenue, Suite 7110
                                 New York, NY  10118
25                               (646) 761-3270
```

```
 1   Appearances continued:

 2   For Defendant Brian Kemp:      Georgia Attorney General
                                    By:  Charlene S. McGowan*
 3                                  40 Capitol Square S.W.
                                    Atlanta, GA  30334
 4                                  (404) 458-3658

 5   For Defendant Gretchen        Michigan Attorney General
     Whitmer and Jocelyn Benson:   By:  Heather S. Meingast*
 6                                  P. O. Box 30736
                                    Lansing, MI  48909
 7                                  (517) 335-7659

 8   For Defendant Tom Wolf:       Pennsylvania Attorney General
                                    By:  Jacob B. Boyer*
 9                                  1600 Arch Street
                                    Suite 300
10                                  Philadelphia, PA  19103
                                    (267) 768-3968
11
     Court Recorder:               Clerk's Office
12                                  U.S. District Court
                                    1929 Stout Street
13                                  Denver, CO  80294

14   Transcription Service:        AB Litigation Services
                                    216 16th Street, Suite 600
15                                  Denver, CO  80202
                                    (303) 296-0017
16
     *All appearances telephonic.
17

18

19

20

21

22

23

24
     Proceedings recorded by electronic sound recording;
25   transcript produced by transcription service.
```

1       (Time noted:  10:59 a.m.)

2              THE COURT:  This is United States Magistrate Judge

3       Reid Neureiter.  I'm calling in from the Rogers Courthouse in

4       downtown Denver.

5              Is the courtroom deputy on the line?

6              THE COURT CLERK:  Hi, Judge.  I'm here, and we're

7       ready.

8              THE COURT:  All right.  I'm calling the case 20-

9       cv-03747, Kevin O'Rourke versus Dominion Voting Systems, et

10      al.

11             Appearances for the Plaintiffs, please?

12             MR. WALKER:  Good morning, Judge.  This is Ernie

13      Walker on behalf of the Plaintiffs.  And I also have Jeff, my

14      assistant, on the line to help me take notes.

15             THE COURT:  Okay.  Let's go through the various

16      Defendants.

17             Appearances for Dominion Voting Systems, Inc.?

18             MR. GARNETT:  Good morning, Your Honor.  Stan

19      Garnett at Brownstein Hyatt Farber & Schreck, appearing on

20      behalf of Dominion Voting Systems.

21             And I also have with me two lawyers in our office:

22      David Meschke and Bridget DuPey.

23             THE COURT:  Okay, thank you.  For Facebook, Inc.?

24             MR. BERGSICKER:  Good morning, Your Honor.  Ryan

25      Bergsicker from Gibson Dunn for Facebook.  With me on the

1   line is my colleague, Craig Streit.

2           THE COURT:  Thank you.  The Center for Tech and

3   Civic Life?

4           MR. MATZ:  Good morning, Your Honor.  This is

5   Joshua Matz from Kaplan Hecker & Fink.  And I'm joined by my

6   colleagues Marcella Coburn, who will speak for us, and Louis

7   Fisher.

8           THE COURT:  All right.  Thank you very much.

9           We then have a number of individual Defendants,

10  some of whom have not yet appeared.  Mr. Zuckerberg and Ms.

11  Chan, are they represented?

12      (No response)

13          THE COURT:  Doesn't sound like it.  Next we've got

14  Mr. Kemp, so is someone from the Georgia Attorney General's

15  Office on the line?

16          MS. MCGOWAN:  Yes, Your Honor.  This is Charlene

17  McGowan from the Georgia Attorney General's Office.  I'm

18  representing both Governor Kemp and Secretary of State

19  Raffensperger.

20          THE COURT:  Thank you.  And then Governor Whitmer,

21  is she represented?

22          MS. MEINGAST:  Yes, Your Honor.  This is Heather

23  Meingast from the Attorney General's Office in Michigan,

24  representing Governor Whitmer and Secretary of State Jocelyn

25  Benson.

1            THE COURT:  All right.  And next, Tom Wolf?

2            MR. BOYER:  Good morning, Your Honor.  This is

3    Jacob Boyer from the Pennsylvania Office of Attorney General.

4            And I'd also like to note at the outset that we

5    are appearing without waiving any objections to personal

6    jurisdiction.

7            THE COURT:  And that's noted.  Okay.  And then

8    we've got Tony Evers, Ann Jacobs, Mark Thomsen, Marge

9    Bostelman, Julie Glancey, Dean Knudson, and Robert Spindell.

10            Anybody appearing for any of those Defendants?

11        (No response)

12            THE COURT:  Looks like no.  Okay.  So a couple of

13    initial matters.

14            First is you all who have entered appearances

15    appear to have stipulated to my jurisdiction as a United

16    States Magistrate Judge to take this case for all purposes.

17            Under the Federal statute, that has to be

18    unanimous.  And so if a new Defendant does enter -- is served

19    and then enters an appearance, they can sort of veto that and

20    it can be later reassigned to an Article III Judge.

21            I just want to make sure that everybody who is

22    currently in the case now understands that might happen if

23    somebody enters an appearance and doesn't consent.  There is

24    a possibility under our Local Rules that that would then be

25    reassigned.

1          And when I see John Does 1-10,000 in the case, if

2   those Does are ever identified and served, they could have

3   the case reassigned to an Article III.

4          So I just want to make sure everybody is aware of

5   that.  But unless somebody new comes in the case and objects

6   to my jurisdiction, I'm going to proceed as if I were an

7   Article III, and the case is proceeding under consent.

8          I think Judge Brimmer, as Chief Judge, will have

9   to issue a formal order of referral once his office processes

10  docket number 27, which is your consent to my jurisdiction.

11  But that should be forthcoming.

12         Any questions about that issue, or concerns?  And

13  the way I'll do this is I'll ask Plaintiffs first if they

14  have any issues, and then I'll ask defense counsel, so we'll

15  try not to speak over each other.

16         Plaintiffs, any questions or concerns about that?

17         MR. WALKER:  No questions, Your Honor.

18         THE COURT:  Okay.  Defense counsel, any issues

19  there?

20      (No response)

21         THE COURT:  Hearing none, we'll move on.

22         So I've seen there are a number of matters that

23  have been filed.

24         One is motion to dismiss the complaint by

25  Dominion, one filed by Facebook, one filed just yesterday by

1  the Defendant Center for Tech and Civic Life.

2          There's also a -- I think there's a motion to stay

3  discovery, which I have granted pending the decision on the

4  motions to dismiss.

5          And then yesterday I noted this without even

6  Facebook pointing it out.  But Plaintiffs, in their

7  opposition to the motion to dismiss, violated my practice

8  standards, which limit the page length.  The 15 pages on a

9  motion to dismiss, on motions and the replies, other than

10 summary judgment.

11          So I'm inclined to grant the motion to strike the

12 responses to the oppositions to the motions to dismiss and

13 require Plaintiffs' counsel to re-file, making it consistent

14 with my practice standards.

15          But, Plaintiffs' counsel, is there a reason why

16 you didn't comply with my practice standards in terms of page

17 length?  I note that all of the motions to dismiss did limit

18 themselves to the 15 pages.

19          MR. WALKER:  Judge, I don't know if that's exactly

20 accurate.  I think Dominion and Facebook exceeded 15 pages.

21          But nevertheless, I think we took this really from

22 the approach that this is more like a summary judgment

23 motion.  The motions that both Dominion and Facebook filed

24 essentially said we pled no facts and that we were frivolous.

25          And our efforts -- we tried to work out, I guess

1  beforehand, that we would file our amended complaint first

2  and then have these discussions, but it didn't work out that

3  way.

4          So we really felt compelled that we needed to

5  include as many facts as we could, and that we needed to, to

6  justify our case at least at that point.

7          We still plan to file an amended complaint.  We

8  really wanted to get it done before this fall, but we also

9  didn't want to be filing things in haste and not be complete

10 and thorough.

11         Our whole approach in this case has been to not

12 try to seek emergency orders or overturn elections or TROs,

13 and things like that, but really take this from a position

14 like a private attorney general would, and look at the facts

15 and try to articulate the facts as best we could.

16         And certainly looking back, I would concede that

17 what we filed back in December lacked clarity in certain

18 respects, and we wanted to not only clarify what we had

19 believed back in December, but there has been just an

20 abundance of information that has come out since December.

21         And we've been trying to update the facts of the

22 matter as we've gone along.

23         And also, and simultaneous to that, we've received

24 inquiries from hundreds and thousands, literally, of people

25 wanting to join this lawsuit.  We currently have 151

1  Plaintiffs who want to join this lawsuit and are prepared and

2  have filed affidavits, and are currently identified in our

3  amended complaint that we have prepared.

4        We would like to have at least until the end of

5  the day to file that.  We prepared a motion seeking leave.

6  We've also prepared a motion -- we're willing to prepare a

7  motion asking to seek leave to extend the 15 page limit,

8  because not only are the facts detailed, but the law is very

9  detailed, as well.

10       For example, in Facebook alone they raised

11 defenses of Section 230.  That's a serious legal issue just

12 in and of itself, and probably worthy of 20 pages of

13 briefing.

14       I'm confident that these kinds of issues, the

15 Section 230, and then Dominion's role and/or Facebook's role,

16 and/or CTCL's, or the State actor, is also a pretty

17 significant legal issue, I think, that is worthy of

18 significant briefing.

19       We tried to include as much of that in there, as

20 well.

21       THE COURT:  Well, let me -- hold on.

22       MR. WALKER:  Generally speaking, Judge --

23       THE COURT:  Let me stop you.

24       MR. WALKER:  Okay.

25       THE COURT:  If you file an amended complaint, the

1  motions to dismiss are moot.

2          When do you think you'll be able to file an

3  amended complaint?

4          MR. WALKER:  Honestly, Judge, we could have it

5  done today.  I would like to have until tomorrow just so that

6  we could make sure that we're thorough.

7          My colleague, Gary Fielder, got tied into a

8  criminal case that he has lingering that got reset for today

9  kind of at the last minute.  That's why he's not joining us

10 this morning.

11         And so we -- because of the complexity of the

12 cases or the claims specifically, we want to be thorough.

13         And honestly, I could give you what we have right

14 now and it would probably be sufficient under most cases.

15 But this is different.

16         And we really want to treat it different.  This is

17 historic, in our opinion, and we just want to be correct.

18         THE COURT:  Okay.  So, you're orally seeking leave

19 to file an amended complaint by tomorrow, is that correct?

20         MR. WALKER:  That's correct, Judge.

21         THE COURT:  Okay.  Let me hear from counsel for

22 the Defendants on the request to file an amended complaint by

23 tomorrow.

24         MR. GARNETT:  Your Honor, this is Stan Garnett on

25 behalf of Dominion.

 1          We would object to that.  And let me explain

 2   briefly why.

 3          Your Honor, Mr. Walker is right.  We have been in

 4   touch with counsel for the Plaintiffs for several weeks about

 5   this case and about our concerns about what has been pled.

 6   And, of course, as we've all noted in motions to dismiss,

 7   very similar cases have been pled and dismissed around the

 8   country.

 9          We filed our motion to dismiss the way that the

10   Rules appear to address the issue.  They would have had a

11   right to amend as a matter of right in response to our

12   motion, rather than file a response.  They filed a response.

13          And most of the time, I would not object, Your

14   Honor, for a client.  But let me stress that the mere

15   existence of this case and the nature of the far-reaching

16   and, frankly, completely unfounded allegations, is creating

17   significant problems for Dominion as Dominion continues to

18   address its relations with various entities around the

19   country.

20          And we believe that the case should be dismissed,

21   and should be dismissed with prejudice.

22          And had we read the response to the motion to

23   dismiss and come out of that with any sense that an amendment

24   would not be futile, we most likely would not object.

25          But I don't see any way that the Plaintiffs can

1  stay justiciable claims with appropriate standing, and so we

2  would object to a request for leave to amend.

3           THE COURT:  Let me ask you, Mr. Garnett, if -- and

4  if they file it tomorrow -- well, let's go back to

5  Plaintiffs' counsel.

6           Let me just ask Plaintiffs' counsel:  I did not

7  study carefully, but I read over the motions to dismiss.

8           One of the main issues appears to be this question

9  of standing that your individual Plaintiffs are somehow upset

10 that their voting right -- or their right to vote has been

11 somehow interfered with because, you know, you've got a

12 Plaintiff from Colorado who you don't say she didn't get to

13 vote.  You don't say she -- that somehow her ballot wasn't

14 counted, but you say that somehow because officials in other

15 states used Dominion to -- in their vote counting processes,

16 and officers in the Executive Departments of other states,

17 and courts in other states, expended voting in advance of --

18 because of COVID, or for other reasons, you know, used

19 absentee ballots.

20          But somehow your -- and I'll use her as an

21 example.  Your Colorado Plaintiff's right to vote was

22 adversely affected.

23          And my sense from one of the arguments in the

24 motion to dismiss is:  That's not a -- the Colorado Plaintiff

25 who voted in Colorado can't object, doesn't have standing to

1   object, to what may have happened in some other -- in other

2   states.

3           What about your amended complaint addresses that

4   particular concern?  The standing question.

5           MR. WALKER:  Well, I think there are -- it's more

6   even broader than that, Judge.

7           We're not having a group of individuals,

8   necessarily, seek their individual remedy.  What we have is a

9   group of individuals seeking to represent a class of

10  similarly situated people who all were registered voters

11  across the country.

12          And so, therefore, we're the participants of the

13  election that we believe was corrupted by the actions of the

14  Defendant.

15          And so, therefore, we believe that at a

16  fundamental level, the rights of every voter were violated by

17  the process.

18          THE COURT:  Okay, let me stop you for a second.

19  What I'm asking is:  You read and responded to Mr. Garnett

20  and the other Defendants' various arguments in their motions

21  to dismiss.

22          What about your amended complaint that you intend

23  to file tomorrow responds to or corrects the deficiencies

24  that defense counsel has pointed out in the original

25  complaint?

1          I mean, that's why you amend complaints after a

2    motion to dismiss.  It's like "Okay, we didn't adequately

3    plead jurisdiction," or "we got this wrong and we're going to

4    fix that in the amended complaint."

5          Is there anything in the amended complaint that --

6    allegations that addresses some of the objections raised by

7    Mr. Garnett?

8          MR. WALKER:  Yes.  There are additional claims,

9    first of all, that we have added that we believe will obviate

10   the need for these jurisdictional questions.

11         So that's one.  We've got additional claims.

12         But for a second matter, I think we've really kind

13   of restated almost the entire complaint.  So for me to kind

14   of pick through what specific changes we did to maybe address

15   specific things that Dominion or others might think were

16   deficient, I don't even know that I could have pointed those

17   out from the original complaint, because there was no

18   specific reference to anything.  They were just vague claims,

19   that we didn't present a case, that we didn't have

20   jurisdiction.

21         But "this case is just like every other one,"

22   which it's not.  It's nothing like any of the other ones.

23         And so I don't know that I could even really truly

24   respond over the phone to that question, Judge.

25         THE COURT:  Okay.  All right.  Let me hear from --

1  Mr. Garnett on behalf of his client has stated his position

2  on leave to amend.  Can I hear for the next Defendant?

3          Mr. Bergsicker?

4          MR. BERGSICKER:  Thank you, Your Honor.  Facebook

5  also would object to any amendment of the complaint, for the

6  reasons that Mr. Garnett had stated broadly on behalf of

7  Dominion.

8          The complaint was filed in December.  Facebook was

9  served on January 6th  Facebook filed its motion to dismiss

10  on February 16th.

11          The Plaintiffs have had an ample opportunity under

12  Rule 15 to amend their complaint as of right.

13          At this point, there are such fundamental

14  deficiencies in the case with relation to personal

15  jurisdiction over Facebook in Colorado, with respect to

16  standing, with respect to Facebook being a state actor, and

17  with respect to CDA 230, among other arguments, that we don't

18  believe those deficiencies can be amended -- can be fixed in

19  an amended complaint.

20          Nothing about the response to Facebook's motion to

21  dismiss suggests that the Plaintiffs have new arguments or

22  new facts that they can plead that would address those

23  fundamental deficiencies.

24          And so we believe that the case should be

25  dismissed, and that dismissal should come quickly.  The

1  longer that this case goes on the more of a distraction and

2  expense to Facebook it presents.  And it merely presents a

3  platform, or provides a platform, for making unfounded

4  accusations about the company rather than litigating the

5  legal issues at stake here.

6              THE COURT:  Okay.

7              MR. WALKER:  May I respond, Judge?

8              THE COURT:  No.  I'm going to hear from all

9  Defendants first.

10             MR. WALKER:  Okay.

11             THE COURT:  And then you'll have an opportunity to

12 respond.

13             MR. WALKER:  I'm sorry, I just didn't want to

14 forget what I was thinking about.

15             THE COURT:  Okay.  You might take out a notepad.

16 We have a lot of Defendants to go.

17             MR. WALKER:  Yes, sir.

18             THE COURT:  The Center for Tech and Civic Life.

19 Your position?

20             MS. COBURN:  Yes, Your Honor.  This is Marcella

21 Coburn for CTCL.

22             We agree with counsel for Dominion and Facebook,

23 and we would also object for many of the same reasons.

24             There are fundamental deficiencies with respect to

25 standing, with respect to allegations about an injure-in-

1   face.   There is nothing here connecting any injury to what

2   CTCL did.   It's inconceivable that CTCL is a state actor.

3          And as we note in our motion to dismiss, there are

4   numerous other courts that have held that similar complaints

5   about CTCL's COVID-19 response grant program lacks standing

6   to bring those claims.

7          And whether they have one Plaintiff or a hundred

8   thousand Plaintiffs, those fundamental deficiencies can't be

9   remedied by what they're proposed to add in the amended

10  complaint.

11         And we agree with Dominion and Facebook that this

12  is advancing some very outlandish events or theories about

13  the election that, as we note in our motion to dismiss, many

14  other courts have already rejected.

15         THE COURT:  Okay.  And the Georgia Attorney

16  General's Office?

17         MS. MCGOWAN:  Thank you, Your Honor.  I'd like to

18  say at the outset that Governor Kemp and Secretary

19  Raffensperger have not even yet been served properly with the

20  original complaint, although we were preparing to file a

21  motion to dismiss for various reasons.

22         First of all, being that there's no basis for

23  personal jurisdiction over either Governor Kemp or Secretary

24  Raffensberger, either in their official or individual

25  capacity.

1          So we don't believe that any amendment to the

2   original complaint can cure that jurisdictional defect.

3          We're also planning to raise the same standing

4   objections as the other Defendants that have already filed a

5   motion to dismiss, and we would join in their objections to

6   any leave to amend the complaint.

7          THE COURT:  And Pennsylvania Attorney General's

8   Office?

9          MR. BOYER:  Thank you, Your Honor.  I don't need

10  to belabor the jurisdictional defects that have already been

11  covered.

12         We also would object because none of those

13  problems can be addressed with an amended complaint.

14         I do want to also add that Plaintiffs' counsel has

15  represented that the case before Your Honor is nothing like

16  any other litigation about the 2020 election.

17         At least as it pertains to Pennsylvania,

18  Plaintiffs' complaint quite extensively sums up the

19  complaints filed against Pennsylvania.  So not only is there

20  no jurisdiction for a number of reasons in this Court, but

21  the complaint contains the things that have all been alleged

22  and have been litigated and all been resolved, and there's no

23  need to continue on with litigation.

24         THE COURT:  Okay.  And will the Pennsylvania

25  Defendants be filing motions to dismiss?

1          MR. BOYER:  Yes, Your Honor.  We were served on

2  February 25th, so just a week or so ago.  So I think we need

3  to file our motion to dismiss by no later than next Thursday.

4          THE COURT:  Okay.  And let me just ask Mr.

5  Garnett, because he went first, you mentioned that

6  Plaintiffs' opportunity to amend by right has passed, because

7  there's a period of time after the filing of your motion to

8  dismiss which has come and gone under the Rules, and so now

9  he needs to -- Plaintiff needs to seek leave of Court to

10 amend.

11         If additional Defendants file subsequent motions

12 to dismiss, for example, Pennsylvania files theirs in the net

13 week, does Plaintiff get an opportunity to amend by leave of

14 right because of the filing of a new Defendant's motion to

15 dismiss?  Or has that time come and gone with the first

16 motion?

17         I just don't know.  I was wondering if you or Mr.

18 Bergsicker, or somebody, knows the answer to that question.

19         MR. GARNETT:  Your Honor, thank you for the

20 question.  This is Stan Garnett on behalf of Dominion.

21         And I have to admit that that's getting into the

22 outer reaches of Federal Civil Procedure, and I'm not sure

23 off the top of my head whether they would have that right.

24         And, again, most of the time it doesn't come up

25 because motions to amend are simply trying to correct

1  relatively minor defects, or party's names, that kind of

2  thing.

3          So I have to be honest.  I don't now, Your Honor.

4  We could certainly research that if you want.

5          Let me just say one quick thing:  And that is that

6  obviously the Federal Courts have very strict rules that are

7  well known by all of us about justiciability and jurisdiction

8  and standing.

9          And particularly with a case of this consequence,

10  and the nature of what's being alleged, the idea of amendment

11  is not intended to give the Plaintiff sort of an endless

12  opportunity to tinker around with the complaint and see if

13  they can get it right.

14          So that's the core of our objection, but I stated

15  the objection, Your Honor.  I understand you have a lot of

16  parties to deal with here, and I'm sure the Court will enter

17  a ruling that's fair to all of them.

18          THE COURT:  Okay.  Well, let me -- I do give

19  everybody a chance to state their piece.

20          Plaintiffs' counsel, you get to rebut now.

21          MR. WALKER:  Sure, Judge.  Just real brief.

22          Both to the issue of Section 230 and state actor

23  in general, those -- the way those cases turn are very

24  factually specific.

25          And to render a judgment based on Dominion's or

1   Facebook's or CTCL's factual involvement with the case, and

2   whether or not that factual involvement elevated it to the

3   point of state actor, is clearly a question of fact.

4           And I would certainly concede that our initial

5   complaint lacked at least as many facts as we know today.  We

6   know a lot more today than we did back then.

7           And I would just direct everybody to Molly Ball's

8   *Time* article if you want to get any kind of sense of what

9   really happened here.

10          And so that's all I would respond, Judge.

11          THE COURT:  Here's what we're going to do:  You're

12  going to -- I'm going to require you to fulfill your

13  obligations under the Rules.  You're going to need to file a

14  motion for leave to file.

15          I do think that your time to amend by right has

16  passed.  So file your motion for leave to file an amended

17  complaint, along with the copy of the amended complaint, by

18  tomorrow.  You said it's ready for tomorrow.

19          And you say it will be ready by tomorrow.  Anyway,

20  I will give you until Monday to file your motion for leave to

21  amend, with a copy of the amended complaint, and under our

22  Rules it has to be redlined so that people can easily see

23  what you've added or what you've deleted from the original

24  complaint.

25          And I will give defense counsel an opportunity to

1   object to your motion for leave.  I think it's a complicated

2   enough issue that I'm not going to decide it orally based on

3   folks sort of being -- having this sprung on them during this

4   argument.

5           So if that motion is filed on Monday the 15th, can

6   the Defendants get a response in by the 29th of March?

7           MR. GARNETT:  Dominion can, Your Honor.  That date

8   is fine.

9           THE COURT:  And then I assume all the -- hearing

10  no objection from anybody else, that if anybody else has an

11  objection to the -- in opposition to the motion for leave to

12  amend, file it by the 29th of March.

13          And then Plaintiffs' counsel, can you file a

14  response to the -- or a reply in support of your motion for

15  leave to amend by, say, the 8th of April?  Is that doable?

16          MR. WALKER:  I believe so, Judge.

17          THE COURT:  Okay.  And then I would hope to have a

18  determination on that promptly, because I do think, you know,

19  unless there -- I think the nature of the objections to your

20  complaint don't have to do with specifics of what may or may

21  not have been done.  They have to do with fundamental

22  questions about whether a voter has standing to, you know,

23  sue the Governor of Pennsylvania or the Governor of Georgia,

24  or Facebook, over alleged election outcomes.

25          So those are fundamental questions that I'm not

1    sure particular factual allegations are going to change.

2    Those are fundamental legal questions.

3            And I do think that significant effort has been

4    made responding to your original complaint, and making people

5    analyze  your amended -- without good reason, making people

6    analyze your amended complaint, and then re-filing additional

7    motions to dismiss, which are likely to be filed, without

8    seriously looking at the amended complaint and seeing whether

9    it would make meaningful differences to your claims.  That's

10   a different thing.

11           So we've got a briefing schedule on the motion for

12   leave to amend.  I think people need to fulfill the briefing

13   schedule on the original motions to dismiss on the original

14   complaint, so people need to be filing their motions and

15   their replies consistent with the normal schedule there.

16           And we'll -- if the motion for leave to amend is

17   denied, then I will address the original complaint and the

18   motions to dismiss the original complaint.

19           I hear you, Plaintiffs' counsel, on the issue of

20   the length of your opposition to the motions.  If you had

21   filed a motion for leave to exceed the 15 page, I probably

22   would have granted it.

23           Let me just ask.  It's Facebook's counsel who

24   moved to strike the opposition to the motion to dismiss.  If

25   they had originally asked to exceed the 15 pages, woud you

1    have opposed -- I'm asking Facebook's counsel, Mr.

2    Bergsicker.  Would you have opposed them getting 20 or 22

3    pages, or how ever many pages they used to respond to your

4    motion to dismiss?

5             MR. BERGSICKER:  Your Honor, if it were a request

6    for 18 or 20 pages, it is one we certainly would have

7    considered.

8             But here, a 25-page response, more than 40 percent

9    over the limit that the Court has set, strikes us as a bridge

10   too far, and would have opposed it.

11            We think that the issues are -- while they are

12   weighty, they can be -- they have been well settled and they

13   can be briefed very efficiently in 15 pages, as Facebook and

14   CTCL certainly did in our motions to dismiss.

15            THE COURT:  Okay.  Here's what we're going to do

16   on docket number 42, which is the motion to strike the brief

17   in opposition to the motion to dismiss:

18            I will deny that.  Having read the oppositions to

19   the motion to dismiss, I'll note that the first 10 or 12

20   pages were factual recitations from the complaint.

21            I'll just tell Plaintiffs' counsel, you just need

22   to -- you don't need to re-write your whole complaint.  You

23   can just cite to paragraphs of your complaint.

24            I don't think that it's so prejudicial to the

25   Defendants to have those extra few pages in the motions to

1   dismiss.  If you want extra pages in your replies, those will

2   -- I'll grant that.  You can have up to -- I think replies

3   are normally 10 pages, but all Defendants in reply to the

4   motions -- their replies in support of their motions to

5   dismiss, you can have up to 15 pages in a reply rather than

6   the 10 that I think my practice standards require.

7          But I'll deny docket number 42.

8          And then, finally, -- so that's -- let me just ask

9   if there are any questions about where we're going.

10         So on number 1, on the leave to amend, Plaintiffs'

11  counsel, you're going to have to formally seek leave to amend

12  via motion, and the Defendants are going to get an

13  opportunity to respond to that once they see your amended

14  complaint.

15         And then the briefing schedules on the various

16  motions to dismiss, and to the extent that some of the

17  Defendants haven't answered yet, they need to go ahead and

18  answer or otherwise respond by filing their own motions to

19  dismiss.  So we're going to have sort of parallel tracks on

20  leave to amend the amended complaint, and then motions to

21  dismiss in the original complaint.

22         Okay.  Any questions, Plaintiffs' counsel, about

23  that plan?

24         MR. WALKER:  I don't think so, Judge.

25         THE COURT:  All right.  Defense counsel, do any of

1    you have any questions about that plan going forward?

2            MR. GARNETT:  Your Honor, this is Stan Garnett.

3    Just so I'm clear, that would mean that we would go ahead and

4    file a reply on the motion to dismiss, which, frankly, we've

5    already got in-process consistent with your previous order on

6    that briefing schedule.  Is that right?

7            THE COURT:  That's correct, yes.

8            MR. GARNETT:  Okay, great.  We're fine then.  Yes.

9            THE COURT:  Okay.  All right.  Any of the other

10   Defendants have any questions at all?

11           MS. COBURN:  No, Your Honor.

12           THE COURT:  Okay.  Then the last thing that my law

13   clerk has point out, that of the Defendants who have entered

14   appearances, only Facebook, Dominion, and the Plaintiff, have

15   consented.

16           So I'm not sure that the Center for Tech and Civic

17   Life consented to my jurisdiction, or -- and I understand

18   that the various governors and state officials, they haven't

19   consented to my jurisdiction yet.

20           And everybody has a veto, so if anybody objects,

21   you get -- the way it works in our court is it will just be

22   reassigned to an Article III Judge, and then I would stay on

23   the case as a Magistrate Judge to manage the litigation.

24           And depending on who the Article III is, they

25   might refer non-dispositive motions to me to decide.  So like

1   a motion for leave to amend might be assigned to me.

2          And if it's Judge Jackson gets it, he doesn't

3   usually involve Magistrate Judges.  And other of the Article

4   IIIs would refer the dispositive motions to me for a report

5   and recommendation.

6          So, folks who have not yet consented, if you

7   intend to consent, go ahead and do that so that it's all

8   tidied up.  And if you're not going to consent, go ahead and

9   submit that form and let that be known so that it gets

10  reassigned to an Article III promptly.

11          You all should talk about that off-line as to

12  whether you want to consent, or not.

13          I think that's all I had for today.  Is there

14  anything else the Plaintiff wants to raise?

15          MR. WALKER:  Not at this time, Judge.

16          THE COURT:  Okay.  And defense counsel, anything

17  further?

18          MR. GARNETT:  Nothing from Dominion, Your Honor.

19  Thank you for your time.

20          THE COURT:  All right.

21          MR. BERGSICKER:  Nothing from Facebook, Your

22  Honor.  Thank you.

23          MS. COBURN:  Nothing further.

24          MS. MCGOWAN:  Nothing from the State of Georgia.

25          MR. BOYER:  Your Honor, this is Jacob Boyer from

1   the State of Pennsylvania.

2               One clarifying question, if I may.

3               Your minute order from February 26th staying the

4   case in response to a motion from Dominion, I understand that

5   at that time the only Defendant who appeared were Dominion

6   and Facebook.

7               But does that order apply to all Defendants once

8   they've appeared?

9               THE COURT:  Let me go back.  Which --

10              MR. BOYER:  It's docket entry 28, Your Honor,

11  entered on February 26th.

12              THE COURT:  Let me clarify.

13        (Pause)

14              THE COURT:  Yes, so the point was that -- I should

15  have clarified.  It was only discovery in the case, so we're

16  not going to enter a scheduling order.

17              But with respect to responding by either answering

18  or filing a motion to dismiss, with respect to other

19  Defendants, if other people file motions to dismiss it's all

20  stayed pending the resolution of all of the motions to

21  dismiss which are going to be anticipated in the case.

22              Does that clarify that a little bit?

23              MR. BOYER:  Yes.  Thank you, Your Honor.

24              THE COURT:  Okay.  It's not like if Pennsylvania

25  has a motion to dismiss still pending, and I decide the

1   Facebook one, Pennsylvania has to go forward with discovery.

2   We'll -- whether it's the initial complaint or the proposed

3   amended complaint, it looks to me like we're going to be

4   addressing motions -- whether it's me or an Article III,

5   somebody is going to be addressing motions to dismiss before

6   any substantive litigation work goes on in the case.

7           All right, hearing nothing further, we'll be in

8   recess.  Everybody stay safe.

9           MR. WALKER:  Thank you, Judge.

10          MS. COBURN:  Thank you.

11          MR. GARNETT:  Thank you, Your Honor.

12                (Time noted:  11:38 a.m.)

13                    *  *  *  *  *

14                      CERTIFICATE

15      I, RANDEL RAISON, certify that the foregoing is a

16  correct transcript from the official electronic sound

17  recording of the proceedings in the above-entitled matter, to

18  the best of my ability.

19

20

21  _____       March 15, 2021

22  Randel Raison

23

24

25