## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action NO. 1:20-cv-3747-NRN

KEVIN O'ROURKE, *et al.*,

Plaintiffs,

v.

DOMINION VOTING SYSTEMS INC., *et al.*,

Defendants.

---

## MOTION TO DISMISS OF DEFENDANTS BRIAN KEMP AND BRAD RAFFENSPERGER AND BRIEF IN SUPPORT

---

Brian Kemp, Governor of Georgia, and Brad Raffensperger, the Georgia Secretary of State (collectively, the "Georgia Defendants"), move to dismiss Plaintiffs' Complaint (Doc. 1) for lack of subject matter and personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1) and (b)(2), for the reasons shown in the following brief in support.

## INTRODUCTION

This action is the latest in a long line of baseless lawsuits challenging the results of 2020 Presidential Election in Georgia, none of which have been successful.[1] Plaintiffs' allegations are

---

[1] Numerous litigants, including former President Donald J. Trump, filed state election contests seeking to re-do the 2020 Presidential Election, in addition to federal lawsuits seeking stop or undo certification of the general election results. In all of these cases, injunctive relief was denied and/or the case was dismissed. *See, e.g., Trump v. Kemp*, No. 1:20-cv-05310-MHC, 2021 U.S. Dist. LEXIS 4185 (N.D. Ga. Jan. 5, 2021) (motion for injunction denied); *Trump v. Raffensperger*, No. 2020cv343255 (Fulton Superior Court) (election contest voluntarily dismissed by plaintiff on the day before trial); *Texas. v. Pennsylvania*, No. 155 (Orig.) 2020 WL 7296814 (U.S. Dec. 11, 2020) (denying petition to file original action challenging Georgia's general election results); *Wood v.*

not new—they rely on the same debunked myths, conspiracy theories, and outright lies regarding the election that have been repeatedly rejected by courts. The only difference between this action and the prior cases is that Plaintiffs are not asking the Court to undo the election results. Instead, Plaintiffs are asking to be paid $160 billion dollars because they are disappointed in Georgia's election results, even though none of the Plaintiffs are actually Georgia voters. There is no reason for this Court to seriously entertain Plaintiffs' claims and re-litigate the accuracy of Georgia's election results, which have been upheld over and over again under enormous scrutiny.

As a threshold issue, this Court lacks jurisdiction to consider Plaintiffs' claims against the Georgia Defendants. First, this Court lacks personal jurisdiction over the Georgia Defendants, who have no ties to the forum state of Colorado. It would certainly violate due process and "offend 'traditional notions of fair play and substantial justice" for this Court to exercise personal jurisdiction over the Georgia Governor and Secretary of State for actions they took in their capacity as elected officials of another state.

Second, Plaintiffs lack Article III standing.  Plaintiffs have alleged no set of facts that establishes that they have suffered an injury in fact that is traceable to the Georgia Defendants, or

---

*Raffensperger*, 981 F.3d 1307 (11th Cir. 2020) (affirming denial of motion to enjoin certification of general election results); *Pearson v. Kemp*, No. 1:20-cv-4809 (N.D. Ga.) (dismissed); *Wisconsin Voters Alliance, et al. v. Pence*, No. 20-3791, 2021 U.S. Dist. LEXIS 127 (D.D.C. Jan. 4, 2021) (*sua sponte* dismissal of a challenge to Georgia's general election results, in which the district court referred plaintiffs' counsel to the court's grievance commission for discipline for filing a frivolous action); *Wood v. Raffensperger*, No. 2020cv342959 (Fulton County Superior Court) (dismissed); *Della Polla v. Raffensperger*, No. 20-1-7490-46 (Cobb County Superior Court) (dismissed); *Boland v. Raffensperger*, No. 2020cv34018 (Fulton County Superior Court) (dismissed).

that this Court can redress any perceived injury caused by the Georgia Defendants. Accordingly, Plaintiffs' claims against the Georgia Defendants must be dismissed.

## FACTUAL BACKGROUND

I.  **Plaintiffs' Allegations against the Georgia Defendants have been Raised and Rejected by Federal and State Courts in Georgia**

The Plaintiffs, none of whom reside in Georgia or voted in Georgia, believe many things about the presidential election in Georgia that simply are not true. The truth is that the 2020 presidential election in Georgia was secure and the results are accurate. Cybersecurity experts at the federal agency charged with ensuring the security of elections determined that there is "*no evidence that any voting system deleted or lost votes, changed votes, or was in any way compromised*." [2] The accuracy of the presidential election results in Georgia was confirmed through: (1) a statewide risk-limiting audit; [3] (2) a hand recount; and (3) independent testing that confirmed that the security of the state's electronic voting equipment was not compromised. [4]

Despite these demonstrable facts, Plaintiffs perpetuate disinformation and conspiracy theories regarding the election that have been disseminated by unreliable, fringe internet media

---

[2] *See* Cybersecurity & Infrastructure Security Agency's Joint Statement, November 12, 2020. A copy of this statement is available at https://www.cisa.gov/news/2020/11/12/joint-statement-elections-infrastructure-government-coordinating-council-election.

[3] *See* Statement of Secretary Raffensperger, "Historic First Statewide Audit of Paper Ballots Upholds Results of Presidential Race," available at https://sos.ga.gov/index.php/elections/historic_first_statewide_audit_of_paper_ballots_upholds_result_of_presidential_race.

[4] *See* Statement of Secretary Raffensperger, "Secretary Raffensperger Announces Completion of Voting Machine Audit Using Forensic Techniques: No Sign of Foul Play," available at https://sos.ga.gov/index.php/elections/secretary_raffensperger_announces_completion_of_voting_machine_audit_using_forensic_techniques_no_sign_of_foul_play.

sources.[5] Plaintiffs have not alleged any independently verified facts in their Complaint; instead, they merely copied and pasted the same allegations levied against the Georgia Defendants by plaintiffs in other cases. Specifically, Plaintiffs allege that the Georgia Defendants violated their constitutional rights and the rights of "all Americans" by (1) using Dominion voting machines; (2) altering Georgia's election laws regarding the verification and counting of absentee ballots; and (3) allowing counties to accept money from private non-profit companies. (*See* Doc. 1 at ¶¶ 191-213).

None of these allegations are new, and Plaintiffs readily acknowledge that these allegations were lifted from prior lawsuits against the Georgia Defendants challenging the presidential election. (*See* Complaint at ¶ 199 (citing *Texas v. Pennsylvania, et al.*, S.C. Docket No. 22O155; ¶¶ 200 & 201 n. 43 (citing *Wood v. Raffensperger*, Civil Action File No. 1:19-cv-05028-WMR (N.D.Ga.)); ¶¶ 202 n. 44 & 203 (citing *Pearson v. Kemp*, Civil Action File NO. 1:20-cv-04809-TCM (N.D. Ga.); ¶ 204 (citing *Wood v. Raffensperger*, Ga. Superior Ct. Case No. 2020CV342959)). However, Plaintiffs fail to candidly disclose to the Court that all of these lawsuits have been dismissed, and no court has found any of the cited allegations to be supported by evidence or granted any type of relief.

For example, Plaintiffs recite the allegations raised in *Pearson v. Kemp* in support of their allegations that Georgia's election results are fraudulent because the software used by Dominion Voting Systems, one of Georgia's elections vendors, was "created to rig elections" as part of a

---

[5] Plaintiffs' Response to Dominion's Motion to Dismiss (Doc. 39) cites to fringe sources such as internet blogs World Net Daily and Gateway Pundit, and a video produced by My Pillow CEO Mike Lindell posted on the video sharing site Rumble. Citation to these types of sources, along with copying allegations from other failed lawsuits, hardly satisfies the requirement of Fed. R. Civ. P. 11 that factual contentions in a pleading have evidentiary support.

"common scheme, plan and *modus operandi*, concerning the creation of said software to manipulate elections, worldwide, e.g., in Venezuela." (Doc. 1 at ¶ 203). U.S. District Court Judge Timothy Batten stated how he viewed the plausibility of the claims before him in *Pearson*:

> In this case, the Plaintiffs are a group of disappointed Republican presidential electors. They assert that the 2020 presidential election in Georgia was stolen, and that the results, Joe Biden winning, occurred only because of massive fraud. Plaintiffs contend that this massive fraud was manifest primarily, but not exclusively, through the use of ballot stuffing. And they allege that this ballot stuffing has been rendered virtually invisible by computer software created and run by foreign oligarchs and dictators from Venezuela to China to Iran. The defendants deny all of Plaintiffs' accusations. They begin in their motions to dismiss by rhetorically asking what a lot of people are thinking, why would Georgia's Republican Governor and Republican Secretary of State, who were avowed supporters of President Trump, conspire to throw the election in favor of the Democratic candidate for President.

*See* **Exhibit A** at 2-3 (Transcript of Dec. 7, 2020 hearing). Judge Batten denied the *Pearson* plaintiffs' request that the presidential election results be de-certified and granted the State's motion to dismiss, holding that the court lacked jurisdiction to hear plaintiffs' claims and that the plaintiffs lacked standing. *See id.* at 42-43. Although the *Pearson* plaintiffs appealed the decision to the Eleventh Circuit Court of Appeals and sought emergency review with the U.S. Supreme Court, those appeals have been dismissed by the plaintiffs and the case has been terminated.

Plaintiffs' allegations regarding Georgia's procedures for verifying absentee ballots, *see* Doc. 1 at ¶¶ 200, 201, were rejected on the merits in *Wood v. Raffensperger*, No. 1:20-cv-04651-SDG, 2020 U.S. Dist. LEXIS 218058 (N.D. Ga. Nov. 20, 2020), *aff'd* 981 F.3d 1307 (11th Cir. 2020). In that case, attorney L. Lin Wood argued that the Georgia Secretary of State abrogated Georgia election law by agreeing in a settlement agreement to issue guidance to county elections officials that clarified the process for verifying voter signatures on absentee ballot envelopes. *Id.* at *8-9. U.S. District Court Judge Steven Grimberg rejected Wood's argument, finding that "the

5

Settlement Agreement is a manifestation of Secretary Raffensperger's statutorily granted authority. It does not override or rewrite state law." *Id.* at *31.[6] Judge Grimberg also held that Wood lacked Article III standing to assert his constitutional claims because his alleged injury was a generalized grievance that any Georgia voter could have asserted. *Id.* *13-15. The Eleventh Circuit Court of Appeals affirmed the decision that Wood lacked standing because he failed to allege a concrete and particularized injury, rather than a generalized grievance. 981 F.3d at 1314-15. Wood's petition for certiorari to the U.S. Supreme Court was denied, and that case has been terminated.

Finally, Plaintiffs' allegation that the Georgia Defendants impermissibly allowed counties to accept money from private non-profit company CTCL was rejected by a Georgia Superior Court in *John Wood v. Raffensperger*, Civil Action No. 2020CV342959 (Fulton Cty. Sup. Ct.). The court held that these claims against the Georgia Governor and Georgia Secretary of State were barred by sovereign immunity and were not the proper basis for an election contest under state law. *See* Order of Dec. 8, 2020, attached as **Exhibit B**.

In sum, all of Plaintiffs' allegations against the Georgia Defendants have been raised in prior cases by Georgia plaintiffs and have been rejected by numerous federal and state courts. That Plaintiffs cited these cases but failed to disclose to the Court the unsuccessful outcomes underscores the speciousness of their claims.

---

[6] Another federal judge reached the same conclusion in an action filed by former President Trump, which raised similar allegations with respect to the settlement agreement. *Trump v. Kemp*, No. 1:20-cv-05310-MHC, 2021 U.S. Dist. LEXIS 4185 at *25-26 (N.D. Ga. Jan. 5, 2021) ("State legislatures 'possess the authority to delegate their authority over elections to state officials in conformity with the Elections and Electors Clauses' like the Georgia General Assembly did in giving the Georgia Secretary of State authority to enter into the settlement agreement….").

## II.   Plaintiffs Fail to Allege any Facts Supporting Jurisdiction in this Judicial Forum

Notably absent from Plaintiffs' Complaint are any allegations that the Georgia

Defendants' actions were purposefully directed at residents of Colorado—or voters in any other

state for that matter—and that this litigation results from alleged injuries that arise out of or

relate to those actions, or that the Georgia Defendants have general business contacts with

Colorado, so as to provide this Court with personal jurisdiction over the Georgia Defendants.

Also absent from Plaintiffs' complaint are any facts supporting their standing to sue the Georgia

Defendants.  Specifically, the Plaintiffs have not alleged that the Georgia Defendants injured any

of the Plaintiffs in an individual particular way, and that any perceived injury is both traceable to

the Georgia Defendants and redressable.  Instead, Plaintiffs merely assert that they have

standing, which is insufficient, as discussed below. (*See* Complaint at ¶¶ 304, 320).

## ARGUMENT AND CITATION OF AUTHORITIES

## I.   This Court Lacks Personal Jurisdiction Over the Georgia Defendants

This Court lacks personal jurisdiction over the Georgia Defendants, as haling the Georgia

Defendants into Colorado courts for official actions conducted in Georgia to run a state election

would offend traditional notions of fair play and substantial justice. "Federal courts ordinarily

follow state law in determining the bounds of their jurisdiction over persons." *Walden v. Fiore*,

571 U.S. 277, 283 (2014) (quotations omitted). "This is because a federal district court's

authority to assert personal jurisdiction in most cases is linked to service of process on a

defendant 'who is subject to the jurisdiction of a court of general jurisdiction in the state where

the district court is located.'" *Id*. (quoting Fed. Rule Civ. Proc. 4(k)(1)(A)). This is only part of

the inquiry, however. Due process also "constrains a State's authority to bind a nonresident

7

defendant to a judgment of its courts," and thus, a federal court's exercise of personal jurisdiction through a state's long arm statue must also "comport with the limits imposed by federal due process." *Id*.

Due process requires a nonresident to have "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id*. (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). This inquiry "focuses on the relationship among 'the defendant, the forum, and the litigation.'" *Id*. at 284 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). Thus, "[f]or a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Id*. Furthermore, "[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, *not based on the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State*." *Id*. at 286 (quotation omitted) (emphasis added).

In regards to the "minimum contacts" standard, the Tenth Circuit has explained:

> The "minimum contacts" standard may be met in two ways. First, a court may, consistent with due process, assert *specific* jurisdiction over a nonresident defendant if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities. Where a court's exercise of jurisdiction does not directly arise from a defendant's forum-related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's general business contacts with the forum state.

*Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004) (quoting *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090-91 (10th Cir. 1998)) (internal citations and quotations omitted). According to the Tenth Circuit, "[t]he Colorado Supreme Court has interpreted Colorado's long-arm statute to extend jurisdiction to the fullest extent permitted by

the Due Process Clause of the Fourteenth Amendment," which "obviates the need for a long-arm

statutory analysis separate from the due process inquiry required by *International Shoe Co*. [. . .]

and its progeny." *Ast Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir.

2008).

The Georgia Defendants lack sufficient minimum contacts with Colorado for the exercise

of personal jurisdiction over them in this forum to comport with due process. Plaintiffs have pled

no facts to explain why a federal court in Colorado would have personal jurisdiction over the

Governor and the Secretary of State of Georgia for official actions taken in Georgia pertaining to

a Georgia election. Plaintiffs have failed to allege any facts that would support this Court's

exercise of specific or general personal jurisdiction over the Georgia Defendants, as they have

not even alleged that the Georgia Defendants' actions were purposefully directed at residents of

Colorado and that the litigation results from alleged injuries that arise out of or relate to those

activities alleged, or that the Georgia Defendants have general business contacts with Colorado.

*See Wisconsin Voters Alliance, et al. v. Pence*, No. 20-3791, 2021 U.S. Dist. LEXIS 127, at *4

(D.D.C. Jan. 4, 2021) (dismissing challenge to Georgia's election results brought against the

Georgia Governor and Georgia Secretary of State in part because of a lack of personal

jurisdiction over the Georgia Defendants in the District of Columbia).

The Supreme Court has repeatedly said that "[f]or a State to exercise jurisdiction

consistent with due process, the defendant's suit-related conduct must create a substantial

connection with the forum State." *Walden*, 571 U.S. at 284. This is certainly not the case here.

The Georgia Defendants did not create contacts with Colorado by overseeing and certifying an

election in Georgia.  And to the extent that Plaintiffs allege that the Georgia Defendants'

certification of the results of the Georgia election had an effect on the election nationwide, such conduct and any resultant harm would merely be "a random, fortuitous, or attenuated contact," which is not sufficient to bring them within the jurisdiction of Colorado courts. *Id.* at 286 (quotation omitted). Because there is no purposeful availment of the privilege of conducting activities within Colorado by the Georgia Defendants, exercising personal jurisdiction over them would violate their due process rights and "offend 'traditional notions of fair play and substantial justice.'" *Id*. at 283 (quoting *International Shoe Co*., 326 U.S. at 316). Therefore, this Court must dismiss the Georgia Defendants from this action.

## II.    Plaintiffs Lack Standing.

Plaintiffs' claims suffer from another fatal jurisdictional defect: lack of standing. Article III of the Constitution limits the subject-matter jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. A party invoking federal jurisdiction bears the burden of establishing standing at the commencement of the lawsuit. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). As an irreducible constitutional minimum, Plaintiffs must demonstrate a "[1] concrete, particularized, and actual or imminent [harm]; [2] fairly traceable to the challenged action; and [3] redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010); *see also Lujan*, 504 U.S. at 561.  As the party invoking federal jurisdiction, Plaintiffs bear the burden at the pleadings phase of "clearly alleg[ing] facts demonstrating each element." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

### A.    Plaintiffs have not clearly alleged an injury in fact.

Injury in fact is the "first and foremost" of the standing elements. *Id*. "[T]he requirement of an 'injury in fact,' requires 'an invasion of a legally protected interest which is (a) concrete

10

and particularized; and (b) actual or imminent, not conjectural or hypothetical.'" *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1181 (10th Cir. 2010) (quoting *Lujan*, 504 U.S. at 560).

Plaintiffs cannot show, and have not alleged, that the Georgia Defendants' actions relating to the presidential election conducted in Georgia, even if unconstitutional as Plaintiffs posit, which they are not, harmed them at all. Plaintiffs' alleged injury, to put it simply, is that the Georgia Defendants' actions of not following the Constitution and Georgia law diluted their votes. (*See* Doc. 1 at ¶¶ 292-362). Plaintiffs' alleged injury is not an injury particularized to Plaintiffs that is "distinct from a generally available grievance about government." *Gill v. Whitford*, 138 S. Ct. 1916, 1923 (2018). This is because none of the Plaintiffs voted in Georgia, or even reside in Georgia. The Supreme Court has stated that, in vote dilution and gerrymandering cases, the injury is district specific and not state-wide in nature, and thus, a voter only has standing to bring claims concerning their own district. *See id*. at 1930. Otherwise, the Supreme Court has stated, that person is asserting "only a generalized grievance against governmental conduct of which he or she does not approve." *Id.*; *see also Lance v. Coffman*, 549 U.S. 437, 440– 41 (2007) (holding that "a generalized grievance that is plainly undifferentiated and common to all members of the public" is not sufficient for standing).

Here, Plaintiffs are not only raising claims against the Georgia Defendants that do not involve their own district, but also do not involve their own state. Accordingly, it is not possible for the actions of the Georgia Defendants to have affected or harmed the Plaintiffs in any concrete or particularized way. Plaintiffs only raise a generalized grievance against government

conduct in another state that they do not approve of, which is insufficient to meeting the harm requirement of Article III standing. *Id*. at 1930.

Furthermore, federal courts in Georgia have held that even *Georgia voters* do not have standing to raise the *same exact claims* as Plaintiffs here. The Eleventh Circuit rejected the same vote dilution argument made by Plaintiffs in *Wood*, holding that Wood's claimed injury was merely a generalized grievance because any other voter could have raised it. 981 F. 3d 1307, 1314 (11th Cir. 2020) ("Wood cannot explain how his interest in compliance with state election laws is different from that of any other person."). Similarly, in *Pearson*, the court held that the plaintiffs, who were Georgia Republican presidential electors, lacked standing to bring their claims "because anyone could have brought this suit and raised the exact same arguments and made the exact same allegations that the Plaintiffs have made in their complaint." *See* **Ex. A** at 42.

By Plaintiffs' own admission, any voter in any state could bring the same claims they raise here. (*See* Doc. 1 at ¶ 319) ("The evidence establishes that the Defendants have engaged in a scheme to dilute the votes of some, and count illegal ballots to the benefit of another. This hurts every registered voter in the country, no matter whose side the voter is on."). Accordingly, Plaintiffs only assert a generalized grievance, rather a concrete and particularized injury sufficient to satisfy Article III standing.

**B.      Any perceived injury Plaintiffs allege they have suffered is not traceable to the Georgia Defendants or redressable by this Court.**

Not only have Plaintiffs failed to demonstrate an injury in fact, they cannot satisfy the causation requirement of standing, which requires "a plaintiff's injury to be fairly traceable to the challenged *action of the defendant*, and not the result of the independent action of some third

party not before the court." *Bronson v. Swensen*, 500 F.3d 1099, 1109 (10th Cir. 2007)

(quotations omitted); *see also Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1253 (11th Cir.

2020) (same). Plaintiffs offer no explanation whatsoever as to how any injury they claim to have

suffered is traceable to any action of the Georgia Defendants, especially considering that none of

the Plaintiffs voted or resided in Georgia during the presidential election. *See Trump v. Kemp*,

No. 1:20-cv-05310-MHC, 2021 U.S. Dist. LEXIS 4185, at \*14-15 (N.D. Ga. Jan. 5, 2021)

("because Defendants [the Georgia Governor and Secretary of State] did not have any role in the

counting of any allegedly illegal votes, Plaintiff is unable to show that any injury he suffered was

fairly traceable to any action on the part of Defendants or redressable by any judgment against

Defendants").

Plaintiffs' sweeping assertion that any citizen has standing to challenge the election laws

and processes of another state in a presidential election because presidents are elected nationally

is not supported by any legal precedent. (*See* Doc. 39 at 17-18). Plaintiffs' reliance on *Anderson*

*v. Celebrezze*, 460 U.S. 780 (1983) in support of this argument is misplaced and overstates the

Supreme Court's holding in that case. The *Anderson* decision, which sets forth the standard for

determining whether a state election law is unconstitutionally burdensome in violation of the

Fourteenth Amendment, involved a challenge to Ohio's ballot access laws for president. *Id.* at

783. There, the Supreme Court held that the state's interest in regulating ballot access for

candidates in a presidential election was not sufficiently important to prevent Ohio voters from

voting for a candidate who would be on the ballot in other states. *Id.* at 795. While, as Plaintiffs

state, the Supreme Court recognized the "uniquely important national interest" of a presidential

election, *see id.* at 794-95, it did so in the context of balancing the state's interest with that of the

rights of voters to vote for their preferred candidate. The Supreme Court certainly did *not* hold in *Anderson* that voters outside of Ohio had standing to challenge the Ohio ballot access law at issue in that case. Indeed, the issue of standing was not even before the Court. And the Supreme Court has since been very clear that a plaintiff must still assert a concrete and particularized injury sufficient to satisfy Article III standing when challenging state election laws. *See Gill*, 138 S. Ct. at 1931.

In sum, Plaintiffs allege only a vague injury to the right to vote that is common to all voters. This is not a cognizable injury traceable to the Georgia Defendants that is sufficient to support Article III standing. Accordingly, the Court lacks subject matter jurisdiction over this action and it should be dismissed.

<u>**CONCLUSION**</u>

Because the Court lacks subject matter jurisdiction over the action and personal jurisdiction over the Georgia Defendants, Plaintiffs' claims against the Georgia Defendants must be dismissed.

Respectfully submitted, this 15th day of March, 2021.

Christopher M. Carr
Attorney General

Bryan K. Webb
Deputy Attorney General

Russell D. Willard
Senior Assistant Attorney General

*/s/ Charlene S. McGowan*
Charlene S. McGowan
Assistant Attorney General

40 Capitol Square SW
Atlanta, GA 30334
cmcgowan@law.ga.gov
404-458-3658 (tel)
Georgia Bar No. 697316*

*Admitted to practice in this Court on Mar. 8, 2021

*Attorneys for the Georgia Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day electronically filed the foregoing **MOTION TO DISMISS OF BRIAN KEMP AND BRAD RAFFENSPERGER** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel for the parties of record via electronic notification.

Dated: March 15, 2021.

/s/ Charlene S. McGowan
Charlene S. McGowan
Assistant Attorney General

16