**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO**

Civil Action No. 1:20-cv-3747

KEVIN O'ROURKE, et al.,

    Plaintiffs, on their own behalf
    and of a class of similarly
    situated persons,

vs.

DOMINION VOTING SYSTEMS, INC., et al.,

    Defendants.

---

**PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINT
PURSUANT TO FRCP 15 AND MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT**

---

    Pursuant to Rule 15 of the Federal Rules of Civil Procedure, Plaintiffs respectfully move the Court for leave to file the Amended Complaint, as attached hereto as Plaintiffs' Exhibit 1. Pursuant to this Court's Order (Docket #43), Plaintiffs have attached the Amended Complaint in redline form as Exhibit 2, as well.

    **I.    LEGAL AUTHORITY OF AMENDED COMPLAINTS**

    Fed. R. Civ. P. 15 provides for the amendment of complaints as a matter of due course [15(a)(1)], by leave of court [15(a)(2)], as a matter of stipulation to clarify issues of fact [15(b)(2)], and as a matter of the relation back doctrine when changing the legal capacity of a party, or the addition of parties that knew or should have known that the action would have been brought against it [15(c)(1), et. seq.].

    Fed. R. Civ. P. 15(a)(2) provides that "a party may amend its pleading [with] the court's leave" and that "[t]he court should freely give leave when justice so requires."

As determined by the Supreme Court, Rule 15(a) declares that leave to amend shall be freely given when justice so requires. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "[T]his mandate is to be heeded." *Id*.

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given. Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Id*.

Plaintiffs caused no undue delay, have extended every professional courtesy to Defendants, including allowing enlargements of time. Counsel for Plaintiffs has met and conferred with opposing counsel, when able, about the pending Amended Complaint to avoid undue prejudice, or unnecessary work. Nonetheless, Defendants pressed forward with their motions to dismiss, with knowledge that Plaintiffs were amending their complaint.

The spirit of the rules favor "decisions on the merits." *Id*. at 181. Repeatedly, the Supreme Court has reaffirmed that the "Federal Rules rejected an approach that pleading is a game of skill in which one misstep may be decisive." *Conley v. Gibson*, 355 U.S. 41, 48 (1957). Decisions on the merits are not to be avoided on the basis of "mere technicalities." *Foman,* 371 U.S. at 181. *See also Schiavone v. Fortune*, 477 U.S. 21, 27 (1986). Plaintiffs, as a matter of due process and equal protection, are entitled to liberal construction under federal notice pleading standards and a proper determination of their civil rights claims, on their merits.

The 10th Circuit has adopted the principles of *Foman*:

[T]he requirements of the rules of procedure should be liberally construed and ... 'mere technicalities' should not stand in the way of consideration of a case on its merits...Thus, if a litigant files papers in a fashion that is technically at variance with the letter of a procedural rule, a court may nonetheless find that the litigant has complied with the rule if the litigant's action is the functional equivalent of what the rule requires.

*Cooper v. American Auto. Ins. Co.,* 978 F. 2d 602, 607 (10 Cir. 1992).

The Court's denial of a good faith amendment of the Complaint would work a substantial injustice, and violate the Plaintiffs' rights to due process, equal protection, and their rights to assemble and petition the Court, all under the existing rules and federal case law.

Plaintiffs, for themselves and others similarly situated, have a right to joinder, designation as a class, and to include all recently discovered evidence that relates to the conspired actions of a well-funded enterprise that used money, power and influence to manipulate the 2020 Presidential Election. To achieve the goals of the enterprise, the Defendants used the US Mail and wire communications in violation of federal law. Plaintiffs have standing, and this Court has jurisdiction, to vindicate their rights through the legal process due them.

## II. FED. R. CIV. P. 19 AND 23 SUPPORTS JOINDER OF ADDITIONAL PLAINTIFFS AND DESIGNATION OF CLASS MEMBERS

Defendants have asserted pleading deficiencies under Rule 23, which have been resolved by the Amended Complaint, attached herein as Ex. 1. The amended complaint adds 152 new Plaintiffs, all of whom are National Class members. The additional Plaintiffs, now joined hereto, contacted undersigned Counsel, as interested parties, seeking to be joined as Plaintiffs and Class members. Each Plaintiff has provided verification of identity, and submitted affidavits signed under oath and penalty of perjury, stating their claims of injury to their protected rights. Attached hereto as Plaintiffs' Exhibit 3, is the Declaration of Plaintiffs' Counsel.

Here, counsel for the Plaintiffs has an affirmative duty, pursuant to Rule 23(g)(A)(1). Thus, the Court must consider, thereunder, "the work counsel has done in identifying and investigating potential claims in the action," which includes amending the complaint to certify or join class members as their interests may appear.

The amended complaint adds Plaintiffs to the Class that include registered voter members from 33 states. The amended complaint breaks the National Class into sub-classes, as: Republicans, Democrats, Third-Parties, Independents, and Disgruntled Voters. This new designation of Plaintiffs expands the Class, and creates a right of amendment and designation under Rules 19 and 23. The newly designated Plaintiffs expand the Class into and through the state jurisdictions, in question, all with standing to vindicate the rights as registered voters in a federal Presidential Election.

Rule 23 is clear: A Class Action is appropriate when the class is so numerous that joinder is impracticable. Joinder of an additional 152 Plaintiffs from 33 states across the Union, each with particular claims for violations of their protected rights, meets this requirement. The claims of the Class include common federal questions related to state action and vindication of rights. The central interest of a federal court, as the guarantor of constitutional rights, is fully implicated from the moment jurisdiction is invoked. *Hicks v. Miranda,* 422 U.S. 332, 356 (1975).

It would be improper for a federal court to deny registered voters, under the Fourteenth Amendment, standing to vindicate their rights, protected under the Constitution. The Plaintiffs, and each of them, have a right to seek adjudication of federal questions of singular effect over Defendants. All of the Defendants are state actors, who owe a duty under the constraints of the Constitution.

As Justice Frankfurther stated:

> Our Constitution relies on our electorate's complete ideological freedom to nourish independent and responsible intelligence and preserve our democracy from that submissiveness, timidity and herd-mindedness of the masses which would foster a tyranny of mediocrity. The priceless heritage of our society is the unrestricted constitutional right of each member to think as he will. Thought control is a copyright of totalitarianism, and we have no claim to it. It is not the function of our Government to keep the citizen from falling into error; it is the function of the citizen to keep the Government from falling into error.

*American Comm. Assn. v. Douds,* 339 U.S. 382, 442. (1950).

The issues of standing and jurisdiction are satisfied in the attached Amended Complaint, pursuant to the Civil Rights Act and the Civil RICO laws. The amended complaint also satisfies the provisions of Rule 23(b).

As to venue, there exists a justiciable controversy that would likely benefit from a singular federal venue that has a common interest in the District of Colorado. Facebook and Dominion are doing business in Colorado, and were used by all the States, herein involved. Additionally, the Defendants acting under color of their official capacity from the listed States, knew that their actions were going to affect a Presidential election. That's why they engaged in the activity. The Defendants cannot, now, say that their actions didn't affect the rights of voters, nationwide. Accordingly, having damaged the registered voters of every state, the Defendants have subjected themselves to liability, across the country.

Colorado is centrally located and the Defendants that have minimum contacts with Colorado.  The four States involved all have established contractual relations with Defendant Dominion, whose domicile is located in Denver, Colorado. Every Defendant used Facebook, the US Mail, and electronic communications over the internet that effected interstate commerce. Instead of bringing an action in every State, judicial economy further suggests that this case be resolved in one jurisdiction.

### III.     THE PLAINTIFFS HAVE STANDING

#### A.     Plaintiffs Can Sue for Nominal Damages for a Violation of Rights.

Even nominal damages create standing and jurisdiction of this Court in vindication of rights. "A request for nominal damages satisfies the redressability element necessary for Article III standing where a plaintiff's claim is based on a completed violation of a legal right." *Uzuegbunam v. Preczewski*, 592 U.S.\_\_\_\_\_ (Mar. 8, 2021) (slip op. at 2).

Every constitutional right violation infers a damage. "Nominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages." *Carey v. Piphus*, 435 U.S. 247, 255 (1978).

The legislative history of § 1983 "demonstrates that it was intended to create a species of tort liability in favor of persons who are deprived of rights, privileges, or immunities secured to them by the Constitution." *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976). A § 1983 claim requires a plaintiff to show both the existence of a federally-protected right and the deprivation of that right by a person acting under color of state law. 42 U.S.C. § 1983. *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 924 (1982).

All qualified voters have a constitutionally protected right to vote. *ex parte Yarbrough*, 110 U.S. 651 (1884). It is "as equally unquestionable that the right to have one's vote counted is as open to protection…as the right to put a ballot in a box." *United States v. Mosley*, 238 U.S. 383, 386 (1915). Beyond that, "in the context of a Presidential election," which ultimately touches upon all of the people's rights, unconstitutional state actions "implicate a uniquely important national interest." *Anderson v. Celebrezze*, 460 U.S. 780, 794-795 (1983).

In *Anderson*, the Court identified a common right of voters, as "the President and Vice President of the United States are the only elected officials who represent all the voters in the Nation." *Id*. at 795. Of course, state-actors can be punished "when the right to vote at any election for the choice of electors for President and Vice President" are abridged. U.S. Constitution, Amend. 14, Sect. 2.

States are accountable for managing the Presidential election. Verifiable accuracy of ballot counting is essential for election legitimacy. There is a "pervasive national interest in the selection of candidates for national office, and this national interest is greater than *any* interest of an individual State. *Cousins v. Wigoda*, 419 U.S. 477, 490 (1975). [Emphasis added].

Importantly, the impact of the votes cast in each State is affected by the votes cast for the various candidates in other States. *Anderson v. Celebrezze*, 460 U.S. 780, 795 (1983). In Anderson, the Supreme Court recognized:

> [A]s a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes. To achieve these necessary objectives, States have enacted comprehensive and sometimes complex election codes. Each provision of these schemes, whether it governs the registration and qualifications of voters, the selection and eligibility of candidates, or *the voting process itself, inevitably affects — at least to some degree — the individual's right to vote and his right to associate with others for political ends*.

*Id*. at 788 (*quoting Storer* v. *Brown,* 415 U. S. 724, 730 (1974)). [Emphasis added].

> When a State adopts rules governing its *election machinery* or defining electoral boundaries, those rules must serve the interests of the entire community.  If they serve no purpose other than to favor one segment — whether racial, ethnic, religious, economic, *or political* — that may occupy a position of strength at a particular point in time, or to disadvantage a politically weak segment of the community, they violate the constitutional guarantee of equal protection.

*Karcher v. Daggett*, 462 U.S. 725, 748 (1983)(citing *Reynolds v. Sims*, 377 U.S 533, 565-66 (1964)). [Emphasis added].

Here, the Plaintiffs have suffered a particularized injury-in-fact. Constitutional rights would be of little value if they could be indirectly denied. *Smith v. Allwright,* 321 U.S. 649, 644 (1944); or manipulated out of existence cloaked under contractual agreements with political subdivisions. *Frost & Frost Trucking Co. v. Railroad Commission of California*, 271 U.S. 583, 594 (1926). Just the opportunity for adjudication of constitutional rights in a federal forum as authorized by the Declaratory Judgment Act is paramount. *See Ellis v. Dyson*, 421 U.S. 426, 432 (1975).

Plaintiffs' amended complaint has expanded their initial allegations, which must be taken as true. The averments are all supported by new and ongoing discovery of factual evidence. Reliable sources in the media, such as TIME magazine, have documented that the 2020 Presidential election process involved an enterprise of well-funded progressive individuals and fictional entities that interposed their interests. None of this subject to dispute.

The enterprise of Defendants, associated in fact, improperly, unlawfully and unconstitutionally influenced votes in the 2020 Presidential election. Registered voters have a federally protected right to vote for President and Vice President. Corporate entities have no right to vote in a Presidential election. Accordingly, the Plaintiffs' amended complaint seeks redress and a vindication of their civil rights. Counsel for the Plaintiffs are acting as private attorneys general (PAG), the authority of which was established by Act of Congress under the Civil Rights Act, codified at 42 U.S.C. §§ 1981, 1983, 1985, 1986 and 1988. Further, the authority of the PAG expands under the federal Civil RICO laws, set forth at 18 U.S.C. § 1964(c), which allows this district court to be designated as the proper venue. *See* 18 U.S.C. § 1965(b).

B. **The Issue of Standing Cannot Be Separated From the Capacity of Dominion, Facebook, CTCL, Zuckerberg and Chan as State Actors.**

A claim asserted under 42 U.S.C. § 1983 et. seq. is applicable to conduct occurring under color of law. Accordingly, the Supreme Court has developed several approaches to determine whether a private party is engaged in state action. As the 10th Circuit as observed:

> The Court has taken a flexible approach to the state action doctrine, applying a variety of tests to the facts of each case. In some instances, the Court has considered 'whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself.' The Court has also inquired whether the State has 'so far insinuated itself into a position of interdependence' with the private party that there is a 'symbiotic relationship' between them. In addition, the Court has held that if a private party is a 'willful participant in joint activity with the State or its agents,' then state action is present. Finally, the Court has ruled that a private entity that exercises 'powers traditionally exclusively reserved to the State' is engaged in state action.

*Gallagher*, 49 F.3d at 1447.

Although only one is required, Dominion, Facebook and CTCL qualify as state actors under every test. The most stringent is the public function test:

> While many functions have been traditionally performed by governments, very few have been exclusively reserved to the State. One such area has been elections. While the Constitution protects private rights of association and advocacy with regard to the election of public officials, our cases make it clear that the conduct of the elections themselves is an exclusively public function.

*Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 158 (1978).

In a landmark 1953 case, the Jaybird Democratic Association had been organized since 1889 as a private club. *Terry v. Adams*, 345 U.S. 461 (1953). The group, which excluded African-Americans, regularly selected persons whom the organization indorsed "for election in the Democratic primary for county office." *Id*. at 470.

Although the Court was split with regard to the manner in which the Jaybirds became state-actors, the majority agreed that the Jaybirds were, nonetheless, involved in state-action, as a part of an election.

A second line of cases under the public-function doctrine originated with *Marsh v. Alabama*, wherein a corporation was found to have engaged in state-action by performing all the necessary municipal functions of a town. 326 U.S. 501 (1946). As noted by Justice Rehnquist in *Flagg Bros. v. Brooks*, these "two branches of the public-function doctrine have in common the feature of exclusivity."

"If a state delegates to a private party a function 'traditionally exclusively reserved to the State,' then the private party is necessarily a state actor." *Id*. at 1456 (*quoting Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352 (1974).

By participating in the 2020 Presidential election in over 1300 jurisdictions, in 28 states in the Union, Dominion has become an integral part of the country's presidential elections—which are exclusively a public function. Additionally, as alleged, Dominion tabulates the vote in all those jurisdictions. Of course, that's state action, whether the count is accurate, or not. As a matter of due process and equal protection, Dominion cannot suggest that is does not owe a duty to registered voters to count the vote accurately.

Similarly, the Center for Technology and Civic Life (CTCL), funded directly by Defendants, Mark Zuckerberg (Zuckerberg) and Priscilla Chan (Chan), through their alter ego, Facebook, and other enterprise participants, contracted directly with counties and municipalities across the country, to participate in the 2020 Presidential election. As a part of that enterprise, Facebook misused its position as the administrator of the public forum, under Section 230.

In addition to qualifying as state actors under the public function test, these relationships create a "sufficiently close nexus" between Dominion, Facebook, CTCL, Zuckerberg and Chan with their State, county and municipal counterparts that "insinuates itself into a position of interdependence [so as] to create a symbiotic relationship." *Gallagher v. Neil Young Freedom Concert*, 49 F. 3d 1442, 1448-1453 (10th Cir. 1995). Dominion, CTCL, Facebook, Zuckerberg and Chan, under an ongoing and direct relationship with the listed States and their elected officials, willfully participated in "joint activity" concerning the fundamental, national right to vote for President and Vice President. *Id*. at 1453-1456.

The challenged conduct is that Dominion's voting systems do count not votes properly, which, in light of its influence and national coverage, burdened the right of every registered voter to *choose* the President and Vice President in the 2020 Presidential election. The State is responsible for counting the vote. It cannot be simpler than that.

At this stage, however, as "is the case with all of the various tests for state action, the required inquiry is fact-specific." *Gallagher v. Neil Young Freedom Concert*, 49 F. 3d 1442, 1448 (10th Cir. 1995). Obviously, contracting alone does not automatically transform the conduct of an entity into state-action. *Id*. However, the entity that is responsible for tabulating the votes for President and Vice President, of over 70 million registered voters, is up to the systems provided by, owned and serviced by Dominion. Thus, Dominion's actions "must in law be deemed to be that of the State." The local officials just upload the totals—through the Dominion electronic management system, of course.

"A State indisputably has a compelling interest in preserving the integrity of its election process." *Eu v. San Francisco County Democratic Central Comm*., 489 U.S. 214, 213 (1989).

Concurrently, the "Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections." *Reynolds v. Sims*, 377 U.S. 533, 554 (1964). The "right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to casts their votes effectively…rank among our most precious freedoms." *William v. Rhodes*, 393 U.S. 23, 30-31 (1968). "Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964).

"The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government." *Reynolds* at 555. Moreover, "the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Id*.

"Voter fraud drives honest citizens out of the democratic process and breeds distrust of our government." *Purcell v. Gonzalez*, 549 U.S. 1, 7 (1964). Here, the evidence of voter fraud, along with the distrust and fear generated by the unconstitutional conduct of Dominion, has shaken this country to her core. The Plaintiffs allege that their individual rights to vote in a Presidential election, and to be treated equaling and fairly, have been burden by the conduct Dominion. The touchstone of due process is fundamental fairness. *Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973).

Even for voters in State's that do not utilize Dominion, their right to vote for President and Vice President was burdened by this Colorado corporation. This is also true concerning the actions of the other Defendants. If a person, acting under color of authority, is burdening the right of a person in Alaska to vote for President or Vice President, the latter can sue the former.

As to the class, the "general interest of the members of the public" differs considerably from the Plaintiffs. Only registered voters have had their right to vote for President and Vice President infringed—and thus have standing to bring suit. Only registered voters are qualified and can legally participate in a Presidential election. Those who were registered, exercised their right to cast a ballot for one candidate, another or neither—while members of the general public were mere observers. As such, the Plaintiffs' claims are not simply a "generalized grievance."

As averred, every registered voter was deprived of a fair and legitimate process related to the 2020 Presidential election. The "concept of 'we the people' under the Constitution visualizes no preferred class of voters, but equality among those who meet the basic qualifications." *Gray v. Sanders*, 372 U.S. 368, 37-380 (1963). No right is more precious in a free country than that of having a voice in the elections of those who make the laws under which, as good citizens, we must live. *Wessberry v. Sanders*, 376, U.S. 1, 17-18,

CTCL, in cooperation with Facebook, Zuckerberg and Chan, became part of the election operations in key Democrat strongholds—designed specifically to benefit one candidate in the 2020 Presidential election. This approach of using the COVID-19 health crisis as the basis of the non-profit funding, while directing the funds at the election machinery, was unlawful, as described in the amended complaint. This effort was more than basic assistance with funding for PPE and election office supplies. Zuckerberg and Chan funneled hundreds of millions of dollars of their wealth, obtained from their alter-ego Facebook, to fund and equip CTCL to direct local governments through grant funding contracts. These grants were used to make specific purchases of voting machines, place ballot collection boxes, print and mail extra ballots, develop propaganda, recruit voters, and hire and train staff in select communities. As such, these Defendants assumed a primary role in the administration of select elections in key precincts.

### C.  Enterprise Racketeering Activity Requires No State Action

The Plaintiffs have added claims for enforcement under the Civil RICO statutes in their amended complaint, pursuant to 18 U.S.C. 1961 et seq. As core participants in Defendants' racketeering activity through the enterprise, Facebook, CTCL, Zuckerberg and Chan are not required to be a state actor.  These Defendants played, and continue to perform an integral role in the enterprises' racketeering activities to unconstitutionally influence the 2020 Presidential election.

Through censorship, Facebook became a part of the enterprise's ability to control the narrative available for public consumption on its platform—before and after the 2020 Presidential election.  Through cash and in-kind contributions, Facebook further enabled the effective privatization of election precincts in Democrat strongholds.  As such, the liability of Facebook, and others, as described in the Plaintiffs' amended complaint, remains pursuant to 18 U.S.C §1962, whether or not they are considered state actors.

### D.  Plaintiffs' Amended Complaint Challenges the Constitutionality of Several State Laws and Has Added New Defendants

If the question of unconstitutionality with reference, at least, to the Federal Constitution be raised in a Federal court, that court, as we think is shown by the authorities cited, has the right to decide it to the exclusion of all other courts. *ex parte Young*, 209 U.S. 123, 159-160 (1908).

> "It is most true that this court will not take jurisdiction if it should not; but it is equally true that it must take jurisdiction if it should. The judiciary cannot, as the legislature may, avoid a measure because it approaches the confines of the Constitution. We cannot pass it by because it is doubtful. With whatever doubts, with whatever difficulties, a case may be attended, we must decide it, if it be brought before us. We have no more right to decline the exercise of jurisdiction, which is given, than to usurp that which is not given. The one or the other would be treason to the Constitution. Questions may occur which we would gladly avoid, but we cannot avoid them."

*Id*. at 143.

## IV. CONCLUSION

For the reasons herein stated, the Plaintiffs respectfully requests that the Court grant leave for the Plaintiffs to amend their complaint.

Respectfully submitted, this 15th day of March, 2021.

 s/Gary D. Fielder
**Gary D. Fielder** (CO 19757)
LAW OFFICE OF GARY FIELDER
1444 Stuart St.
Denver, CO 80204
(303) 306-0007
gary@fielderlaw.net

s/Ernest J. Walker
**Ernest J. Walker** (MI P58635)
ERNEST J. WALKER LAW OFFICE
1444 Stuart St.
Denver, CO 80204
(720)306-0007
ernestjwalker@gmail.com

## CERTIFICATE OF SERVICE

I certify that, on the date set forth below, the foregoing **PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINT PURSUANT TO FRCP 15 AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** was filed electronically and that it is available for viewing and downloading on the Court's CM/ECF system by the parties.

Dated: March 15, 2021

s/ Ernest J. Walker
Counsel for Plaintiffs
