**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:20-cv-3747-NRN

KEVIN O'ROURKE, NATHANIEL L. CARTER,
LORI CUTUNILLI, LARRY D. COOK,
ALVIN CRISWELL, KESHA CRENSHAW,
NEIL YARBROUGH, and AMIE TRAPP,

Plaintiffs, on their own behalf
and of a class of similarly
situated persons,

v.

DOMINION VOTING SYSTEMS INC.,
a Delaware corporation, FACEBOOK, INC.,
a Delaware corporation, CENTER FOR TECH
AND CIVIC LIFE, an Illinois non-profit organization,
MARK E. ZUCKERBERG, individually,
PRISCILLA CHAN, individually,
BRIAN KEMP, individually, BRAD
RAFFENSPERGER, individually, GRETCHEN WHITMER,
individually, JOCELYN BENSON, individually,
TOM WOLF, individually, KATHY BOOCKVAR,
individually, TONY EVERS, individually,
ANN S. JACOBS, individually, MARK L. THOMSEN,
individually, MARGE BOSTELMAN, individually,
JULIE M. GLANCEY, DEAN KNUDSON,
individually, ROBERT F. SPINDELL, JR,
individually, and DOES 1-10,000,

Defendants.

---

**REPLY IN SUPPORT OF MOTION TO DISMISS**
**PLAINTIFFS' COMPLAINT**

---

## INTRODUCTION

In Plaintiffs' Response and Brief in Opposition to Defendant Dominion's Motion to Dismiss (the "Response"), Plaintiffs confirm that they lack standing to bring their general grievances, are not seeking to overturn the 2020 presidential election, may only be seeking nominal damages, and are most interested in a ruling from a federal court or a jury that Dominion Voting Systems, Inc. ("Dominion") is a state actor. Plaintiffs want to argue at the pleadings stage the "facts"—albeit those derived from untrustworthy sources promoting debunked conspiracy theories. They also contend that Dominion's Motion to Dismiss is moot because they plan to file for leave to amend the Complaint after failing to timely file an amended complaint.[1] Plaintiffs, nonetheless, overlook the Complaint's substantial legal flaws. Nothing stated in the Response alters the analysis. They lack standing, fail to adequately state claims for relief against Dominion (and the other Defendants), and fail to adequately plead a class action. The case must be dismissed pursuant to Rules 12(b)(1) and 12(b)(6).

## STANDARDS OF REVIEW

Plaintiffs incorrectly assert that the Federal Rules of Civil Procedure "embody 'notice pleading.'" *See* Resp. to Dominion's Mot. to Dismiss ("Resp."), at 8. Under the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a claim is sufficient to withstand a motion to dismiss under Rule 12(b)(6) of the

---

[1] Plaintiffs have since filed a Motion for Leave to File Amended Complaint (the "Motion for Leave"), which attached a proposed First Amended Class Action Complaint and Jury Demand (the "Proposed Amended Complaint"). Notably, the Proposed Amended Complaint would add no new claims against Dominion. Dominion will be filing an opposition to the Motion for Leave that explains that, notwithstanding the amendment, Plaintiffs' allegations against Dominion still would be subject to dismissal for lack of standing and failure to state a claim and thus any amendment is futile.

Federal Rules of Civil Procedure only when, accepting as true the facts alleged in the complaint but not any legal conclusions, the claim has "facial plausibility," that is, it allows the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 570 (the plaintiff must allege enough by way of factual content to "nudge" her claim "across the line from conceivable to plausible"). *Twombly* and *Iqbal* thus brought an end to "notice pleading" under the federal rules.[2]

## ARGUMENT

Plaintiffs' Response confirms that none of the five claims for relief against Dominion— Counts I, II, III, VI, and VII—survive scrutiny under Rules 12(b)(1) or 12(b)(6).

### I.   Plaintiffs' Assert Implausible and Non-Justiciable Claims.

As described in the Motion to Dismiss, Plaintiffs' claims, which rely upon complaints and affidavits from dismissed lawsuits and untrustworthy sources to support their allegations, are so devoid of merit that they do not involve a federal controversy. *See* Dominion's Mot. to Dismiss, at 5–6. To try to distinguish this case from those dismissed cases, Plaintiffs now represent that they are not seeking to overturn the 2020 presidential election but rather are requesting that this Court (or a jury) make findings of fact regarding whether Dominion is a state actor. *See* Resp., at 13. But even if Dominion was deemed a state actor under 42 U.S.C. § 1983, Plaintiffs still must possess standing and assert a plausible claim. *See Brown v. Buhman*, 822 F.3d 1151, 1161 n.9 (10th Cir. 2016) (explaining "[t]here can be no 'violation' of § 1983" because the statute "is a remedial vehicle"). In short, the Complaint suffers from the very same threshold flaws that condemned the related lawsuits. Claims based on complaints and affidavits

---

[2] Tellingly, Plaintiffs provide no statement regarding the standard of review under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

from dismissed lawsuits, and misinformation regarding the election, have no place in federal court.

## II.  Plaintiffs Lack Standing.

Dominion and the other Defendants who have filed responsive pleadings have identified the fundamental flaw in the Complaint—lack of Article III standing. Specifically, Plaintiffs fail to allege a concrete and particularized injury-in-fact because they assert general grievances that theirs[3] and every other registered voter's vote was diluted, and not concrete and particularized harm that affected them in a personal, individualized way. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573–74 (1992) ("We have consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy."); *Wood v. Raffensperger*, 981 F.3d 1307, 1315 (11th Cir. 2020) ("[I]rregularities in the tabulation of election results do not affect [a plaintiff] differently from any other person" and thus does not confer standing).

### a.  Plaintiffs' arguments are irrelevant.

Plaintiffs make several arguments in response: (1) they have adequately pleaded a particularized injury-in-fact because they seek nominal damages; (2) there is a common right of voters such that the impact of the votes cast in one state may be affected by votes cast in other states; (3) they are not asserting general grievances because the claims are on behalf of

---

[3] Plaintiffs fail to respond how registered voters who did not vote, such as named Plaintiffs O'Rourke and Yarbrough, could possibly have had their votes diluted.

"registered voters" and not the public at-large; and (4) their claims can be redressed through nominal damages.[4] Each argument is equally unavailing.

First, even if Plaintiffs are seeking nominal damages for their civil rights claims—as opposed to the $160 billion in damages pleaded in the Complaint—the availability of nominal damages without proof of actual injury for certain constitutional violations does not establish an injury-in-fact. Plaintiffs quote a passage from *Hughes v. Lott*, articulating that "[n]ominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages." 350 F.3d 1157, 1162 (11th Cir. 2003).[5] This statement, however, refers to which types of damages are available for claims of constitutional violations. Article III standing, which was not at issue in the case, requires that each plaintiff demonstrate that "it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). Specifically, for an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1. Plaintiffs have not, and cannot, meet this aspect of injury in fact. Therefore, even though, for example, procedural due process claims may be actionable for nominal damages under Section 1983 without proof of actual injury, *see Carey*, 435 U.S. at 266, Plaintiffs still have to establish each element of Article III standing. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547–48 (2016) ("Injury in fact is a constitutional requirement, and '[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily

---

[4] These same arguments are reasserted in Plaintiffs' Motion to Amend.
[5] Plaintiffs incorrectly attribute the quote to *Carey v. Piphus*, 435 U.S. 247, 255 (1978), a case cited by the Eleventh Circuit in *Hughes*.

granting the right to sue to a plaintiff who would not otherwise have standing.'" (quoting *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997))). They have not.[6]

Second, Plaintiffs selectively quote passages from *Anderson v. Celebrezze* and *Karcher v. Daggett* as support for the overbroad assertion that any registered voter has standing to challenge the election laws and processes of another state in a presidential election because presidents are elected nationally, and the impact of the votes cast in one state may be affected by votes cast in other states. *See* Resp., at 17–18. Neither case, however, addresses standing or provides support for Plaintiffs establishing a concrete and particularized injury in fact.

In *Anderson*, the U.S. Supreme Court held that Ohio's March filing deadline for independent candidates violated the Fourteenth Amendment because it impermissibly limited political participation by an identifiable political group—Ohio's independent-minded voters—whose members shared a particular viewpoint. 460 U.S. 780, 792–94 (1983) (reasoning that the state's interest in regulating ballot access for presidential candidates was not sufficiently important to prevent Ohio voters from voting for a candidate who would be on the ballot based on the deadlines in other states). By requiring that candidates file eight months before the November election, the deadline discriminated against candidates and voters whose political preferences were outside the existing political parties. *Id.* at 794. The Court did not address standing and did not hold that voters outside of Ohio had standing to challenge Ohio's filing deadline. This case is thus distinguishable from *Anderson* for numerous reasons, including that

---

[6] The thrust of Plaintiffs' argument appears to be that "Americans have been deprived of the reasonable appearance of a fair Presidential election." *See* Resp., at 20. It is unfortunate that a large segment of the U.S. population does not trust the election results. Deprivation of the reasonable appearance of a fair election, however, is not a concrete and particularized injury traceable to Dominion that can be possibly redressed. It simply highlights why Plaintiffs' claims are general grievances.

Plaintiffs allege that all "registered voters" have been injured, and not that Defendants discriminated against any particular group of voters.

*Karcher*, which involved a challenge to the constitutionality of New Jersey's congressional reapportionment statute, is also not on point. Plaintiffs quote a passage from the concurring opinion in the case but curiously omit the first sentence of the paragraph, which clarifies that the passage pertains to equal protection claims against a state for adopting discriminatory election rules. *Karcher v. Daggett*, 462 U.S. 725, 748 (1983) (Stevens, J., concurring) ("The Equal Protection Clause requires *every State* to govern impartially. When a *State adopts rules* governing its election machinery or defining electoral boundaries, those rules must serve the interests of the entire community." (emphasis added)). Of course, private companies who provide voting systems, such as Dominion, cannot adopt state election rules. Plaintiffs have not alleged that Dominion has done so. And, nonetheless, "state actors counting ballots in violation of state election law . . . is not a concrete harm under the Equal Protection Clause of the Fourteenth Amendment." *Bognet v. Sec'y Commonwealth of Pa.*, 980 F.3d 336, 354, 356 (3d Cir. 2020).

Third, Plaintiffs dispute, without citation to any authority, that their claims are general grievances because they believe the "general interest of the members of the public" differs from the interests of "all registered voters." *See* Resp., at 20. "All registered voters," however, is not a specific enough subset of the general public to grant standing. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[W]hen the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction."). This is especially true for claims alleging vote dilution. *Wood*, 981 F.3d at 1314–

15 (explaining that "'no single voter is specifically disadvantaged' by improperly counted votes, even if the error might have a 'mathematical impact on the final tally and thus on the proportional effect of every vote'" and that therefore "[v]ote dilution in this context is a 'paradigmatic generalized grievance that cannot support standing'" (quoting *Bognet*, 980 F.3d at 356)).

Fourth, Plaintiffs argue that they have standing because their claims are redressable through nominal damages. *See* Resp., at 22. Dominion agrees that if Plaintiffs' claims are based on a completed violation of a legal right, then a request for nominal damages satisfies the *redressability* element for Article III standing. The U.S. Supreme Court recently confirmed this in the passage from *Uzuegbunam v. Preczewski* quoted in Plaintiffs' Response. For this very reason, Dominion limited its redressability argument in the Motion to Dismiss to Plaintiffs' requests to void the certification of election results. Plaintiffs' argument nevertheless misses the mark because redressabilty is just one element of Article III standing. A later passage from *Uzuegbunam* confirms that the other elements of standing must also be met:

> This is not to say that a request for nominal damages guarantees entry to court. Our holding concerns only redressability. It remains for the plaintiff to establish the other elements of standing (such as a particularized injury); plead a cognizable cause of action; and meet all other relevant requirements. We hold only that, for the purpose of Article III standing, nominal damages provide the necessary redress for a completed violation of a legal right.

No. 19-968, 2021 WL 850106, at *7 (Mar. 8, 2021) (internal citations omitted). Plaintiffs have not satisfied these other elements of Article III standing.

**b.   Plaintiffs did not respond to Dominion's other standing arguments.**

Absent in the Response is any counter to Dominion's arguments that (i) the individual and personal nature of a person's right to vote does not, by itself, confer standing; (ii) Plaintiffs

lack prudential standing to bring their Electors Clause claim; and (iii) Plaintiffs' allegations that Defendants "acted in concert with each other, and other persons, to unconstitutionally legislate rules, change procedures, and implement a scheme and device to interfere and manipulate the Election" are not traceable to Dominion. In fact, despite spending the majority of the Response recycling allegations and making new ones, nothing in the Response or the Complaint alleges how Dominion acted in concert with the other Defendants. Plaintiffs have therefore conceded these points. *See Scull v. Wolf*, No. 20-cv-01624-NYW, 2020 WL 7384842, at *7 (D. Colo. Dec. 16, 2020) (explaining that because plaintiff did "not [ ] respond to" defendant's argument on a Rule 12(b)(1) motion, "it [was] effectively conceded for the purposes of [the] motion").

**III. Plaintiffs Have Not Pleaded a Plausible Claim for Relief.**

As described in Dominion's Motion to Dismiss, Plaintiffs fail to plausibly allege they are entitled to relief on their constitutional claims under Section 1983. In response to these deficiencies, Plaintiffs put forth countless generalized allegations—many of which are absent from their Complaint or their Proposed Amended Complaint—that attempt to explain Dominion's business and interactions with state governments to support their argument that Dominion is a state actor. *See, e.g.*, Resp., at 5–6, 10–13. This Court has clarified, however, that "[i]f the allegations are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010) (internal quotations omitted). Plaintiffs' claims are implausible and must be dismissed under Rule 12(b)(6).

### a.   Plaintiffs' color of law argument lacks significance.

Plaintiffs spend the vast majority of their Response arguing that Dominion is a state actor by virtue of the election-related services it provides. These arguments are primarily predicated on allegations absent from the Complaint (and the Proposed Amended Complaint, for that matter) and therefore fall outside of what this Court may consider in deciding Dominion's Motion to Dismiss.[7] *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) ("Generally, the sufficiency of a complaint must rest on its contents alone."); *Mott v. Narconon Fresh Start*, No. 14-cv-01293-PAB-KMT, 2015 WL 1259277, at *4 n.4 (D. Colo. Mar. 17, 2015) ("Although plaintiffs' arguments rely in part on facts outside the complaint, plaintiffs do not articulate a basis upon which the Court could appropriately consider such facts."). Plaintiffs' allegations are not limited to matters of public record. Based on the information alleged in the Complaint, which includes nothing more than the existence of contracts between Dominion and various states, Plaintiffs fail to plausibly allege that Dominion qualifies as a state actor under Section 1983. *See, e.g.*, *Wittner v. Banner Health*, 720 F.3d 770, 778 (10th Cir. 2013) ("Payments under government contracts and the receipt of government grants and tax benefits are insufficient to establish a symbiotic relationship between the government and a private entity.").

Even if Plaintiffs have adequately pleaded a plausible argument that Dominion is a state actor, or would be permitted to amend in order to do so, it does not save the Complaint. Acting under color of law[8] is not, itself, liable conduct. While Plaintiffs are correct that a Section 1983

---

[7] For instance, Plaintiffs point to a Software License Agreement between Dominion and Dupage County, Illinois—a county (and even state) wholly absent from Plaintiffs' Complaint and Proposed Amended Complaint.

[8] Dominion does not admit that it has acted under color of law. Rather, it accepts as true—for the purposes of this motion only—the plausible allegations in the Complaint.

claim "is only applicable to conduct occurring under color of law," Resp., at 9, Plaintiffs ignore

that Section 1983 *also* requires a violation of the Constitution or federal law, as well as standing.

*See Buhman*, 822 F.3d at 1161 n.9. Plaintiffs have not and cannot establish standing or their

underlying constitutional claims. Their color of law argument simply doesn't matter.

### b.   The constitutional claims must be dismissed under Rule 12(b)(6).

#### i.   *Electors clause claim*

Plaintiffs did not respond to Dominion's arguments in the Motion to Dismiss regarding

their Electors Clause claim and thus appear to have conceded this claim as well. *See Doe v.*

*DiStefano*, No. 18-cv-1462-WJM-KLM, 2019 WL 1254943, at *3 (D. Colo. Mar. 19, 2019)

(Because plaintiff "does not respond to the [Defendant's] argument, . . . it is effectively conceded

for the purposes of this [Rule 12(b)(6)] motion."). The closest Plaintiffs get to addressing the

claim is by contending, with no factual support, that "individuals under color of authority . . .

unconstitutionally changed the rules governing their respective elections." Resp., at 21. As

Dominion explained in its Motion to Dismiss, Plaintiffs do not—and indeed, cannot—set forth

even a single factual allegation explaining how Dominion was involved in purportedly altered

voting laws without legislative approval. And, by Plaintiffs' own admission, their claim solely

concerns state law, *see id*., which cannot form the basis of an Electors Clause claim under

Section 1983 and thus must be dismissed. *See King v. Whitmer*, No. CV 20-13134, 2020 WL

7134198, at *11 (E.D. Mich. Dec. 7, 2020) (explaining that raising Electors and Election Clause

claims under Section 1983 based on violations of state election laws is inappropriate as they are

"state law claims disguised as federal claims").

### ii.  *Equal protection claim*

Relying again on the concurring opinion in *Karcher*, Plaintiffs appear to argue that the alleged "vote dilution" they claim occurred constitutes a violation of equal protection. Again, their reliance on *Karcher* is misplaced. The quote utilized by Plaintiffs states that, "[i]f [the election rules adopted by States] serve no purpose other than to favor one segment—whether racial, ethnic, religious, economic, or political—that may occupy a position of strength at a particular point in time . . . they violate the constitutional guarantee of equal protection." *Karcher*, 462 U.S. at 748 (Stevens, J., concurring). Plaintiffs' theory, however, is that all votes cast in the 2020 election were allegedly diluted, which, by its very definition, is not a particular political group. Their allegations of vote dilution do not fit within the paradigm of equal protection and thus their equal protection claim must be dismissed. *See, e.g.*, *Bognet*, 980 F.3d at 354–55 (explaining that claims of vote dilution under an equal protection theory pertains to certain votes "being weighed differently" from the votes of a preferred class due to unequal treatment).

### iii.  *Due process claim*

In support of their procedural due process claim, Plaintiffs appear argue that they were denied sufficient process under the Constitution because the adjudication of ballots identified for further review by Dominion's voting systems is performed by state officials without poll watchers observing and can be completed by any person with authorization. Resp., at 4. They further contend that because Dominion "provide[s] the technology to electronically adjudicate" ballots, *see* Resp., at 1, it somehow has a hand in this adjudication process. This argument is nonsensical. Plaintiffs have alleged no causal connection between Dominion's voting systems

flagging ballots and a state's review of those ballots because none exists. Dominion simply follows a state's given process for reviewing votes, as dictated by state law. Plaintiffs' dispute is with how states adjudicate ballots, and not with Dominion.[9]

As for Plaintiffs' substantive due process claim, Plaintiffs continue to rely solely on debunked and misconstrued reports, along with a slew of opinions from the news media, to allege the existence of large-scale election irregularities. *See Curry v. Baker*, 802 F.2d 1302, 1314, 1315 (11th Cir. 1986) (explaining that "[o]nly in extraordinary circumstances will a challenge to a state election rise to the level of a constitutional deprivation"). These allegations are insufficient to support a plausible claim for relief; accordingly, this claim must be dismissed.

### c. Plaintiffs provide no response to Dominion's arguments that they have failed to state claims for violations of Sections 1985, 1986, and 1988.

Plaintiffs' Response focuses almost exclusively on why they believe Dominion is a state actor and tellingly does not respond to Dominion's arguments that they have failed to state a claim under Sections 1985, 1986, and 1988. *See DiStefano*, 2019 WL 1254943, at *3. As described in Dominion's Motion to Dismiss, an element of a claim under Section 1985 is "the existence of a conspiracy," and the Complaint contains no factual allegations that there was an agreement between Dominion and the other Defendants or any sort of meeting of the minds. *See Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1141 (9th Cir. 2000). Likewise, noticeably absent

---

[9] Regardless, as described in the Motion to Dismiss, Plaintiffs cannot show that they were deprived of some "definite liberty or property interest," *S. Disposal, Inc. v. Tex. Waste Mgmt.*, 161 F.3d 1259, 1265 (10th Cir. 1998), because the right to vote is neither a property nor liberty interest. *See, e.g., Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 230–33 (5th Cir. 2020) (noting that it could not identify any courts treating the right to vote as a property interest, and holding that the right also is not a liberty interest). Plaintiffs provide no response and thus concede this argument. *See DiStefano*, 2019 WL 1254943, at *3. Therefore, their procedural due process claim must be dismissed.

from the Response is any fact giving rise to the alleged conspiracy underpinning the Complaint.

A conspiracy is simply not pleaded. Plaintiffs also do not address why their general grievances

fall within the class-wide or race-based animus required under Section 1985. *See Grove v.*

*Groome*, 817 F. App'x 551, 557 (10th Cir. 2020). Political animus, which is all Plaintiffs come

close to alleging, does not suffice. *See, e.g.*, *Brown v. Reardon*, 770 F.2d 896, 905 (10th Cir.

1985).

Therefore, to the extent Plaintiffs are asserting claims under Section 1985, they are

conceded and must be dismissed. Because claims asserted under Section 1986 are dependent

upon the validity of a Section 1985 claim, the Section 1986 claims also must be dismissed. *Id*.[10]

### d.   Plaintiffs' declaratory judgment claim against Dominion must be dismissed.

Based on the allegations in the Complaint, Plaintiffs' declaratory judgment claim appears

to request that this Court declare Defendants' actions in connection with the 2020 presidential

election unconstitutional and *ultra vires*. Plaintiffs have since clarified that that they are not

seeking to overturn the 2020 presidential election results. It remains a mystery what exactly

Plaintiffs seek with this claim.

Plaintiffs, however, cannot seek a declaratory judgment that Dominion is a state actor for

purposes of Section 1983. Not only do Plaintiffs admit that this is an issue of fact, *see* Resp., at 3,

but such a claim does not satisfy the elements for a cause of action under the Declaratory

Judgment Act. Because Plaintiffs lack standing to assert their substantive claims, *see supra*, and

a declaration that Dominion is a state actor would not resolve any dispute because "[t]here can be

no 'violation' of § 1983 separate and apart from the underlying constitutional violations," *see*

---

[10] As explained in the Motion to Dismiss, Section 1988 is a procedural statute that does not
create an independent cause of action. *See id*. at 907.

*Buhman*, 822 F.3d at 1162 n.9, a declaration would not resolve any actual controversy. *See Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1240 (10th Cir. 2008) (citing 28 U.S.C. § 2201(a) of the Declaratory Judgment Act and explaining that a "plaintiff must present the court with a suit based on an 'actual controversy,' a requirement the Supreme Court has repeatedly equated to the Constitution's case-or-controversy requirement"). Instead, a declaration on this question would constitute an impermissible advisory opinion. *See Johnson v. Interstate Transit Lines*, 163 F.2d 125, 130 (10th Cir. 1947) (explaining that absent an actual controversy, "there is no justiciable controversy and the case must be characterized as one for an advisory opinion and as being academic rather than justiciable").

## IV. This Case Should Be Dismissed Under Rule 12.

Defendants' motions to dismiss can be decided pursuant Rules 12(b)(1) and 12(b)(6). No facts outside the Complaint are necessary to determine that Plaintiffs lack standing and have not asserted plausible claims for relief,[11] despite Plaintiffs' decision to treat their Response akin to a response to a motion for summary judgment under Rule 56. *See Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir.1991) (explaining that courts must convert a motion under Rule 12(b) into one for summary judgment under Rule 56 if it considers matters outside the complaint). The numerous "evidence" referenced by Plaintiffs in the Response is irrelevant to the analysis. *See id.* ("The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's amended complaint alone is legally

---

[11] While the non-legal sources cited by Dominion in its Motion to Dismiss highlight the implausibility of Plaintiffs' claim and challenge the veracity of the allegations against Dominion, this Court need not take judicial notice or rely upon them to dismiss the Complaint.

sufficient to state a claim for which relief may be granted."). The Complaint must be dismissed at the pleadings stage.[12]

## **CONCLUSION**

For the foregoing reasons and those stated in the Motion to Dismiss, the claims against Dominion must be dismissed with prejudice. Dominion again reserves the right to seek attorneys' fees and costs pursuant to Rules 5 and 11(c) of the Federal Rules of Civil Procedure.

Dated March 23, 2021

<div style="margin-left:40%">

s/ *Stanley L. Garnett*
Stanley L. Garnett
David B. Meschke
Amanda K. Houseal
Bridget C. DuPey
Brownstein Hyatt Farber Schreck, LLP
410 Seventeenth Street
Suite 2200
Denver, CO  80202-4432
Phone: 303.223.1100
Email: sgarnett@bhfs.com
           dmeschke@bhfs.com
           ahouseal@bhfs.com
           bdupey@bhfs.com

Attorneys for Defendant Dominion Voting Systems, Inc.

</div>

---

[12] Even if Plaintiffs' Complaint could survive Rules 12(b)(1) and 12(b)(6), Plaintiffs confirmed in the Response that their proposed class is every registered voter. Should this Court reach the issue, the class allegations should be stricken under Rules 23(c)(1)(A) and 23(d)(1)(D) because the Complaint fails to adequately plead a class action, the proposed class is overbroad, and common issues do not predominate. Adding 152 named Plaintiffs and placing them into subclasses, as outlined in the Proposed Amended Complaint, do not resolve these issues. Dominion therefore reiterates its right to move to strike the class allegations in a separate motion.

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 23rd day of March 2021, a true and correct copy of the foregoing Reply in Support of Motion to Dismiss Plaintiff's Complaint was electronically filed with the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

s/ *Stanley L. Garnett*
Stanley L. Garnett