IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-3747-NRN

KEVIN O'ROURKE,
NATHANIEL L. CARTER,
LORI CUTUNILLI,
LARRY D. COOK,
ALVIN CRISWELL,
KESHA CRENSHAW,
NEIL YARBROUGH and
AMIE TRAPP,

    Plaintiffs,

v.

DOMINION VOTING SYSTEMS, INC., a Delaware corporation,
FACEBOOK, INC., a Delaware corporation,
CENTER FOR TECH AND CIVIC LIFE, an Illinois non-profit organization,
MARK E. ZUCKERBERG, individually,
PRISCILLA CHAN, individually,
BRIAN KEMP, individually,
BRAD RAFFENSPERGER, individually,
GRETCHEN WHITMER, individually,
JOCELYN BENSON, individually,
TOM WOLF, individually,
TONY EVERS, individually,
ANN S. JACOBS, individually,
MARK L. THOMSEN, individually,
MARGE BOSTELMAN, individually,
JULIE M. GLANCEY, individually,
DEAN KNUDSON, individually,
ROBERT F. SPINDELL, JR., individually, and
DOES1-10,000,

    Defendants.

---

**DEFENDANTS GOVERNOR GRETCHEN WHITMER AND SECRETARY OF STATE JOCELYN BENSON'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO AMEND COMPLAINT**

# TABLE OF CONTENTS

Page

Table of Contents ............................................................................................................. i

Index of Authorities ........................................................................................................ ii

introduction .................................................................................................................... 1

Statement of Facts .......................................................................................................... 2

Argument ....................................................................................................................... 6

I.  Plaintiffs' motion to amend the complaint must be denied regarding the Michigan Defendants where Plaintiffs still fail to allege any facts supporting this Court's exercise of personal jurisdiction over Defendants. ........................................................................................................... 6

    A.  Legal standard ............................................................................................ 6

    B.  Plaintiffs' proposed amended complaint against the Michigan Defendants is futile and would be subject to dismissal if filed. ............. 7

        1.  No personal jurisdiction ................................................................ 7

        2.  Plaintiffs fail to state a claim for relief. ...................................... 10

Conclusion and Relief Requested ................................................................................ 15

# INDEX OF AUTHORITIES

Page

**Cases**

*Albright v. Oliver*, 510 U.S. 266 (1994) ........................................................................ 12

*Bailey v. Antrim County, et al.*, Antrim Circuit Court No. 20-9238 ........................... 4

*Bennett v. Yoshina*, 140 F.3d 1218 (9th Cir. 1998) ....................................................... 12

*Bognet v. Secretary Commonwealth of Pennsylvania*, 980 F.3d 336 (3rd Cir. 2020) ................................................................................................................................. 11

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ........................................... 8, 10

*Carson v. Simon*, 978 F.3d 1051 (8th Cir. 2020) .......................................................... 11

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ............................................................ 8, 9

*Davis v. Secretary of State*, 2020 WL 5552822 (Mich. Ct. App., Sept. 16, 2020) ... 2, 13

*Donald J. Trump for President, Inc. v. Boockvar*, No. 2:20-CV-966, 2020 WL 5997680 (W.D. Pa. Oct. 10, 2020) ..................................................................... 11

*Donald J. Trump for President, Inc. v. Cegavske*, No. 2:20-CV-1445 JCM (VCF), 2020 WL 5626974 (D. Nev. Sept. 18, 2020) ................................................ 11

*Election Integrity Fund v. City of Lansing,* 2020 WL 6605987  (Oct. 19. 2020, W.D. Mich) ............................................................................................................ 4

*Election Integrity Fund, et al. v. Secretary of State*, Case No. 20-00169, Michigan Court of Claims ........................................................................................ 3

*Far West Capital, Inc. v. Towne*, 46 F.3d 1071 (10th Cir. 1995) ................................... 9

*Foman v. Davis*, 371 U.S. 178 (1962) ............................................................................. 7

*Frank v. U.S. West, Inc.*, 3 F.3d 1357 (10th Cir. 1993) ................................................. 7

*Gohier v. Enright*, 186 F.3d 1216 (10th Cir. 1999) ....................................................... 7

*Greenway Nutrients, Inc. v. Blackburn,* 33 F. Supp. 3d 1224 (D. Colo. 2014) ........... 10

*Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408 (1984) ............................ 8

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ....................................................... 7

*King, et al. v. Whitmer, et al.*, 2020 WL 7134198 (E.D. Mich., Dec. 7, 2020) ........ 3, 11

*Northeast Ohio Coalition for the Homeless v. Husted,* 696 F.3d 580 (6th Cir. 2012) ................................................................................................................ 12

*Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89 (1984) .............................. 13

*Romstad v. City of Colorado Springs*, 650 F. App'x 576 (10th Cir. 2016) ................. 14

*Ryan, et al. v. Benson,* Michigan Court of Claims, 20-00198 ....................................... 4

*SGI Air Holdings II LLC v. Novartis Int'l,* 192 F.Supp.2d 1195 (D.Colo.2002) ........ 10

*Shrader v. Biddinger*, 633 F.3d 1235 (10th Cir. 2011) ................................................. 9

*Surefoot LC v. Sure Foot Corp.,* 531 F.3d 1236 (10th Cir. 2008) .............................. 14

*TH Agriculture & Nutrition, LLC v. Ace European Group Ltd.*, 488 F.3d 1282 (10th Cir. 2007) ............................................................................................... 10

*Wood v. Raffensperger*, No. 1:20-CV-04651-SDG, 2020 WL 6817513 (N.D. Ga. Nov. 20, 2020) .................................................................................................. 11

**Statutes**

Mich. Comp. Laws § 168.46 ............................................................................................ 5

Mich. Comp. Laws § 168.759 ....................................................................... 2, 3, 6, 13

Mich. Comp. Laws § 168.761 ......................................................................................... 3

**Rules**

Federal Rule of Civil Procedure 15(a) ............................................................................ 6

# INTRODUCTION

Plaintiffs have added insult to injury in this matter by moving to amend their complaint to re-allege frivolous claims and to add yet a new one. Plaintiffs allege a familiar litany of far-fetched claims of fraud and irregularity in the conducting of the November election in Michigan. Many of these made-up and misrepresented "fraud" claims have already been rejected by multiple courts. *See, e.g, Texas v. Pennsylvania, et al.*, 20-220155 and *King, et al. v. Whitmer, et al.,* 20-815. And a post-election audit conducted in numerous jurisdictions in Michigan, including the City of Detroit, confirmed the accuracy and integrity of the November 2020 general election.[1]

Like the original complaint, Plaintiffs' amended complaint offers nothing other than conspiracy theories fed by misunderstandings of Michigan law and unaccompanied by any actual evidence of fraud. Further, the amended complaint does nothing to correct Plaintiffs' jurisdictional defect. Plaintiffs do not have a credible, non-frivolous argument to support this Court's exercise of personal jurisdiction over Michigan Defendants Governor Gretchen Whitmer, Secretary of State Jocelyn Benson, and proposed new Defendant Michigan Attorney General Dana Nessel. Because allowing amendment would be futile, the motion to amend the complaint must be denied as to these Defendants.

---

[1] *See* More than 250 audits confirm accuracy and integrity of Michigan's election, March 2, 20201, available at https://www.michigan.gov/sos/0,4670,7-127-93094-553386--,00.html, (accessed March 29.)

## STATEMENT OF FACTS

Plaintiffs filed their original complaint on December 22, 2020 but did not serve Governor Whitmer and Secretary Benson until February 22, 2021. These Defendants timely filed a motion to dismiss the original complaint on March 15, 2021, but Plaintiffs filed a motion to amend their complaint the same day.

Plaintiffs' proposed amended complaint makes the following factual allegations against the Michigan Defendants.

Plaintiffs allege that Secretary Benson mailed unsolicited applications for absent voter ballots to 7.7 million registered voters in Michigan in May 2020. (Plfs' Mot to Amend, Amend. Comp., ¶ 431.) Plaintiffs allege that this act flooded Michigan with "mail-in votes" and "removed protections designed to deter voter fraud." *Id.*, ¶¶ 432-433. Plaintiffs point out the Benson used the "US Mail" to accomplish these acts. *Id.*, ¶ 434. Plaintiffs quote portions of Mich. Comp. Laws § 168.759 and allege that the "Michigan Legislature did not include the secretary of state as a means for distributing through the US Mail unsolicited absentee ballots without application by a voter." *Id.*, ¶ 435-436. However, Michigan courts held that the Secretary's mailing did not violate Michigan election law, specifically Mich. Comp. Laws § 168.759. *See Davis v. Secretary of State*, 2020 WL 5552822 at *1 (Mich. Ct. App., Sept. 16, 2020), leave denied 951 N.W.2d 911 (Mich., Dec. 28, 2020.)

Plaintiffs further allege that in June 2020, Secretary Benson implemented an online platform through which registered voters in Michigan could request an absent voter ballot application "without signature verification as expressly required under Michigan law." *Id.*, ¶ 439. Plaintiffs then quote portions of Mich. Comp.

2

Laws § 168.759, 168.761 and allege that Secretary Benson's "unconstitutional modifications of Michigan's election rules resulted in the distribution of millions of absentee ballot applications without verifying voter signatures as required" by Michigan law. *Id.*, ¶¶ 440-443. However, the online program was only available to registered voters who possessed a Michigan driver's license or state identification card and had electronically stored signatures on file that could be verified by the voter's local clerk.[2] Moreover, a Michigan court declined to enjoin operation of the platform with respect to the November 2020 general election. *See Election Integrity Fund, et al. v. Secretary of State*, Case No. 20-00169, Michigan Court of Claims.

Plaintiffs then make numerous allegations regarding the processing of absent voter ballots cast in the City of Detroit, Wayne County, Michigan. (Plfs' Mot to Amend, Amend. Comp, ¶¶ 447-463.) These allegations regarding the presence of challengers and the signature verification process repeat those alleged, and rejected, in numerous cases before state and federal courts in Michigan. *See, e.g., King, et al. v. Whitmer, et al.*, 2020 WL 7134198 (E.D. Mich., Dec. 7, 2020).

Plaintiffs further allege that Defendants Zuckerberg and Chan through the Center for Tech and Civic Life (CTCL) "funneled" millions of dollars to primarily democratic jurisdictions in Michigan to use for various unlawful, election-related activities. *Id.*, §§ 466-468. Plaintiffs acknowledge that the State of Michigan did not receive this grant money, rather local jurisdictions applied directly to CTCL for

---

[2] *See Michigan Department of State launches online absentee voter application*, 6/12/20, available at https://www.michigan.gov/sos/0,4670,7-127--531796--,00.html, (accessed March 15).

3

the grants.  *Id*., ¶¶ 394-397.  But in denying an injunction motion, a federal court in Michigan observed that grants went to both conservative and progressive jurisdictions.  *See Election Integrity Fund v. City of Lansing,* 2020 WL 6605987 at *2 (Oct. 19. 2020, W.D. Mich).[3]

Plaintiffs thereafter make several allegations regarding a case pending before the state court in Michigan, *Bailey v. Antrim County, et al.*, Antrim Circuit Court No. 20-9238, in which the plaintiff alleged that Dominion Voting Systems software used in Antrim County "flipped" votes from Trump to President Biden.  *Id*., ¶¶ 477-481.  Plaintiffs reference a purported "forensic" report prepared by Allied Security Operations Group that concluded Dominion's software was intentionally designed to perpetuate fraud.  *Id*., ¶¶ 480-481.

This report was largely repudiated before Plaintiffs even filed this case and a subsequent post-election audit revealed no significant irregularities in vote totals in Antrim County.[4]  Moreover, Michigan legislators have stated that there is no evidence of fraud perpetuated by Dominion Voting Systems.[5]  And this was confirmed by Secretary Benson's expert report in that case, which concluded that

---

[3] Still pending in Michigan is a state-court lawsuit challenging the legality of these grants to jurisdictions provided by the CTCL in connection with the 2020 election cycle.  *See Ryan, et al. v. Benson,* Michigan Court of Claims, 20-00198.

[4] *See* Antrim County audit shows 12-vote gain for Trump, 12/17/20, The Detroit News, available at https://www.detroitnews.com/story/news/local/michigan/2020/12/17/antrim-county-audit-shows-12-vote-gain-trump/3938988001/ (accessed March 29).

[5] *See* statement by State Senator Ed McBroom, available at https://www.detroitnews.com/story/news/local/michigan/2020/12/17/antrim-county-audit-shows-12-vote-gain-trump/3938988001/ (accessed March 29).

4

the reporting error was the result of human error, not the machines or Dominion's software.[6] This litigation is ongoing and a Michigan judge will determine whether there is any merit to the claims in that case.

With respect to Governor Whitmer, Plaintiffs complain that she should not have certified Michigan's election results on November 23, 2020 and should not have certified the vote of Michigan's electors on December 14, 2020 because of the allegations of election irregularities. *Id.*, ¶¶ 470-474, 486-490. But these were ministerial acts by the Governor under the relevant statutes, *see* Mich. Comp. Laws §§ 168.46, 47, 3 U.S.C. §§ 5-7, and no court had enjoined any part of the process.

Plaintiffs variously allege that Secretary Benson's unconstitutional acts "stripped her of her official capacity" and thus she was "acting outside the scope of her official capacity when she certified" the results of the Presidential election. *Id.*, ¶¶ 482, 484-485. With respect to Governor Whitmer, Plaintiffs allege that the Governor failed to investigate the above allegations of error "by her subordinate executive officers" and was thus "stripped of her official capacity" and acting in her individual capacity when she certified the elections results to Congress. *Id.*, ¶¶ 486-490. As a result, Plaintiffs allege the certification of Michigan's election was "ultra vires and unconstitutional" and "void ab initio." *Id.*, ¶¶ 491-492.

As for their legal claims against the Michigan Defendants, in Count I they again allege a violation of the Electors Clause of the federal constitution based on

---

[6] *See* Expert report affirms accuracy of Antrim County presidential election results, available at SOS - Expert report affirms accuracy of Antrim County presidential election results (michigan.gov) (accessed March 29).

5

their alleged failure to conduct the election in accordance with the election laws enacted by the Michigan Legislature. *Id*., ¶¶ 648-684. In Count II, Plaintiffs again allege a violation of the Equal Protection Clause, the premise of which is as difficult to discern as it was in the original complaint but appears based on disparate treatment of Plaintiffs' and the classes' votes. *Id*., ¶¶ 685-709. In Count III, Plaintiffs again allege a violation of the Due Process Clause based on Defendants' alleged arbitrary and disparate acts, which resulted in the dilution or debasement of Plaintiffs' and the classes' votes. *Id*., ¶¶ 710-721. Count VIII is a new claim brought against a new Michigan Defendant, Attorney General Dana Nessel, in her official capacity. *Id.*, ¶¶ 223, 810-830. Plaintiffs allege that Mich. Comp. Laws § 168.759(3), as it was applied in the context of the 2020 presidential election, is unconstitutional because that statute did not authorize Secretary Benson to distribute absent voter ballots applications. *Id.* In Count XII, Plaintiffs' request declaratory judgment against all Defendants, id., ¶¶ 877-879, and in Count XIII, Plaintiffs request injunctive relief against all Defendants, *id*., ¶¶ 880-882.

## ARGUMENT

**I. Plaintiffs' motion to amend the complaint must be denied regarding the Michigan Defendants where Plaintiffs still fail to allege any facts supporting this Court's exercise of personal jurisdiction over Defendants.**

### A. Legal standard

Pursuant to Federal Rule of Civil Procedure 15(a), a court is to freely allow amendment of the pleadings "when justice so requires." The grant or denial of a motion to amend is within the discretion of the court, but "outright refusal to grant

6

the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999).

### B. Plaintiffs' proposed amended complaint against the Michigan Defendants is futile and would be subject to dismissal if filed.

#### 1. No personal jurisdiction

For the same reasons asserted in the Michigan Defendants' March 15 motion to dismiss, Plaintiffs' amended complaint fails to sufficiently establish personal jurisdiction over Defendants in Colorado.

The Due Process Clause permits the exercise of personal jurisdiction over nonresident defendants when two conditions are met. First, a defendant must have "minimum contacts" with the forum state. *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). Second, if sufficient minimum contacts are shown, due process requires that the exercise of personal jurisdiction over the defendant would not offend "traditional notions of fair play and substantial justice." *Id*.

The "minimum contacts" standard can be met in two ways. First, a court may, consistent with due process, exercise *specific* jurisdiction over a nonresident

7

defendant "if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985) (internal quotations omitted). Where a court's exercise of jurisdiction does not directly arise from or relate to a defendant's forum-related activities, the court may nevertheless maintain *general* personal jurisdiction over the defendant based on the defendant's general business contacts with the forum state. *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 415-16 (1984). But to be subject to general jurisdiction in a forum state, a defendant's affiliations with that state must be "so 'continuous and systematic' as to render [it] essentially at home" there. *Daimler AG v. Bauman,* 571 U.S. 117, 127 (2014) (internal quotation marks and citation omitted).

Here, Plaintiffs' allegations again fail to establish personal jurisdiction under the traditional "minimum contacts" test. They devote 62 paragraphs in their amended complaint to describing perceived irregularities in the conducting of the November 3, 2020 general election *in* the State of Michigan, by Michigan officials. (Plfs' Mtn to Amend, Amend. Compl., ¶¶ 430-492.) And in Count VIII, they bring a claim against Attorney General Nessel alleging the unconstitutionality of a state statute on as as-applied basis. *Id.*, ¶¶ 880-882. But none of these paragraphs describe any specific actions by Governor Whitmer, Secretary Benson, or the Attorney General that were "purposefully directed at residents" of the State of Colorado. *Burger King Corp.,* 471 U.S. at 472. Nor have Plaintiffs alleged that

8

Governor Whitmer, Secretary Benson or Attorney General Nessel engaged in continuous and systematic contacts with Colorado that would render Defendants at home in the State. *Daimler*, 571 U.S. at 127.

Plaintiffs allege that Secretary Benson used the "US Mail" to send out absent voter ballot applications. (Plfs' Mtn to Amend, Amend. Compl., ¶¶ 434, 436.) But those mailings were directed to registered voters in Michigan. In their motion to amend, Plaintiffs argue that "Defendants [sic] have minimum contacts with Colorado. The four States involved all have established contractual relations with Defendant Dominion, whose domicile is located in Denver, Colorado. Every Defendant used Facebook, the US Mail, and electronic communications over the internet that effected interstate commerce." (Plfs' Motion to Amend, p 5.)

But "[i]t is well-established that phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts." *Far West Capital, Inc. v. Towne,* 46 F.3d 1071, 1077 (10th Cir. 1995). Moreover, with respect to internet communications, Plaintiffs must demonstrate that the Michigan Defendants intentionally directed activity at the forum state, Colorado. *Shrader v. Biddinger*, 633 F.3d 1235, 1240 (10th Cir. 2011). Again, Plaintiffs do not sufficiently allege or describe in their amended complaint any of the purported "contacts" by mail, email, or the internet to show that activity by the Michigan Defendants was directed to the residents of Colorado.

Regarding the contract issue, "a defendant is not necessarily subject to personal jurisdiction in a forum state simply because he [or she] enters into a

9

contract with a party that resides in that forum." *Greenway Nutrients, Inc. v. Blackburn,* 33 F. Supp. 3d 1224, 1238 (D. Colo. 2014) (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 478 (1985).)  Rather, the contract relied upon to establish minimum contacts must have a "substantial connection" with the forum state.  *TH Agriculture & Nutrition, LLC v. Ace European Group Ltd.,* 488 F.3d 1282, 1288 (10th Cir. 2007).  "Without substantial connection, there may be no personal jurisdiction . . . ."  *Greenway Nutrients, Inc.,* 33 F. Supp. 3d at 1238 (citing *SGI Air Holdings II LLC v. Novartis Int'l,* 192 F.Supp.2d 1195, 1202 (D.Colo.2002).)

Other than generally alleging that Michigan is one of the states that Defendant Dominion has a contract with to provide election systems and software, (Plfs' Mot to Amend, Amend. Comp., ¶ 266), Plaintiffs do not allege any activity by the Michigan Defendants demonstrating they had sufficient minimum contacts with Colorado as a result of the contract with Dominion.  In other words, Plaintiffs again have not shown that the Michigan Defendants purposefully directed any activity at the residents of Colorado.  *Burger King Corp.,* 471 U.S. at 471-72.

Because Plaintiffs' amended complaint would be subject to dismissal against the Michigan Defendants based on lack of personal jurisdiction, the motion to amend the complaint should be denied as futile.

### 2.  Plaintiffs fail to state a claim for relief.

In their proposed amended complaint, Plaintiffs re-allege the same Electors Clause, Equal Protection Clause, and Due Process Clause claims that the Michigan Defendants moved to dismiss for failure to state a claim on March 15.  These re-alleged claims fail for the same reasons argued in the previous motion.

Briefly, Plaintiffs' Electors Clause claim, (Plfs' Mot to Amend, Amend. Compl., ¶¶ 648-684), fails because Plaintiffs lack standing to bring this generalized claim, *see King, et al. v. Whitmer, et al.*, 2020 WL 7134198 at \*10 (E.D. Mich., Dec. 7, 2020), and where Plaintiffs' interpretation of the clause is not supported by case law, *id*. at \*11. *See also Bognet v. Secretary Commonwealth of Pennsylvania*, 980 F.3d 336 (3rd Cir. 2020); *Donald J. Trump for President, Inc. v. Cegavske*, No. 2:20-CV-1445 JCM (VCF), 2020 WL 5626974, at \*4 (D. Nev. Sept. 18, 2020); *Wood v. Raffensperger*, No. 1:20-CV-04651-SDG, 2020 WL 6817513, at \*5 (N.D. Ga. Nov. 20, 2020), aff'd, 981 F.3d 1307 (11th Cir. 2020) (December 5, 2020, decision); Cf. *Carson v. Simon*, 978 F.3d 1051, 1057 (8th Cir. 2020) (holding that Republican presidential electors had standing to bring Electors Clause claim under Minnesota law) (October 29, 2020 decision).

Plaintiffs' Equal Protection Clause claim, (Plfs' Mot to Amend, Amend. Compl., ¶¶ 685-709), likewise fails because Plaintiffs lack standing to bring this claim on a disparate treatment/vote-dilution theory. *See, e.g., Bognet*, 980 F.3d at 354-55 ("Put another way, '[a] vote cast by fraud or mailed in by the wrong person through mistake,' or otherwise counted illegally, 'has a mathematical impact on the final tally and thus on the proportional effect of every vote, but no single voter is specifically disadvantaged.' ") (citations omitted); *Wood*, 2020 WL 6817513, at \*8-10 (concluding that vote-dilution injury is not "cognizable in the equal protection framework"); *Donald J. Trump for President, Inc. v. Boockvar*, No. 2:20-CV-966, 2020 WL 5997680 at \*45-46 (W.D. Pa. Oct. 10, 2020)). *See also King*, 2020 WL

11

7134198 at *9, 12-13 ("Plaintiffs fail to establish that the alleged injury of vote-dilution can be redressed by a favorable decision from this Court," and "With nothing but speculation and conjecture that votes for President Trump were destroyed, discarded or switched to votes for Vice President Biden, Plaintiffs' equal protection claim fails.").[7]

Similarly, Plaintiffs' due process claim, (Plfs' Mot to Amend, Amend. Compl., ¶¶ 710-721), fails for lack of standing for the same reasons their equal protection claim fails since vote dilution or debasement claims are analyzed under equal protection, not due process. *See, e.g., Albright v. Oliver*, 510 U.S. 266, 273 (1994) (specific amendment applies over generalized concept of substantive due process). And even if Plaintiffs' allegations were construed as a "fundamental fairness" due process claim, their claim still fails because the kind of unconstitutional irregularities that courts have entertained under the Due Process Clause consist of widespread disenfranchisement through system-wide process failures. *See Bennett v. Yoshina*, 140 F.3d 1218, 1226-27 (9th Cir. 1998); *Northeast Ohio Coalition for the Homeless v. Husted,* 696 F.3d 580, 597 (6th Cir. 2012). Here, Plaintiffs complain instead of widespread *enfranchisement*, and essentially seek to *disenfranchise* voters. And in that case, they fail to state a claim under the Due Process Clause.

---

[7] Plaintiffs make several allegations regarding racial discrimination in their Equal Protection Clause claim. But these appear to be included only to avoid any claim by Defendants that the purported unlawful actions were necessary to avoid racial discrimination.

In Count VIII, Plaintiffs purportedly allege that a Michigan election statute, Mich. Comp. Laws § 168.759(3), is unconstitutional as applied in the context of the 2020 presidential election. (Plfs' Mot to Amend, Amend. Compl., ¶¶ 810-830.) But this is really a disguised claim that Secretary Benson violated § 759(3) because the Secretary is not expressly identified as someone from whom a voter may request or receive an application for an absent voter ballot.

Plaintiffs allege that "Benson, without authority of law, usurped the provisions of the aforementioned statute, and used the US Mail system to mail unsolicited absentee ballots." *Id.*, ¶ 824. Notably, the Secretary did not mail unsolicited absent voter *ballots* as Plaintiffs misstate several times, she mailed *applications* for absent voter ballots. Voters had to complete and sign the applications and return them to their local clerks to receive an absent voter ballot. But as noted above, the Michigan appellate courts concluded that Secretary Benson acted within her authority in mailing the applications, and that the mailing did not violate § 759(3). *See Davis v. Secretary of State,* 2020 WL 5552822 at *1 (Mich. Ct. App., Sept. 16, 2020), leave denied 951 N.W.2d 911 (Mich., Dec. 28, 2020.) Plaintiffs do not allege or explain how the Michigan court's interpretation of § 759(3) violated Plaintiffs' rights under the Fourteenth Amendment.

Again, Count VIII is nothing more than a false claim that Secretary Benson violated state law. But the Eleventh Amendment generally does not permit plaintiffs to use the federal courts to litigate state law claims against state officials. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 106 (1984) ("A federal

13

court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.")  Because this claim would be barred by the Eleventh Amendment, Plaintiffs fail to state a claim for relief in their amended complaint.

In Count XII Plaintiffs request declaratory relief.  (Plfs' Mot to Amend, Amend. Compl., ¶¶ 877-879.)  To obtain declaratory relief Plaintiffs must present the Court with an "actual controversy" similar to the "case or controversy" requirement of standing.  *See Surefoot LC v. Sure Foot Corp.,* 531 F.3d 1236, 1240 (10th Cir. 2008).  But for the reasons discussed above, Plaintiffs have not and cannot do so where they lack standing to bring their claims or their claims are barred by the Eleventh Amendment.  Finally, in Count XIII Plaintiffs request permanent injunctive relief based on the other alleged violations.  (Plfs' Mot to Amend, Amend. Compl., ¶¶ 880-882.)  This claim must be dismissed because an "injunction" "is not an independent cause of action," but rather a "remedy" if a plaintiff can show his or her legal rights have been violated.  *Romstad v. City of Colorado Springs*, 650 F. App'x 576, 585 n.7 (10th Cir. 2016) (citation omitted).  Where there is no violation, there is no right to an injunction.  *Id.*  Because Plaintiffs' substantive claims fail, their request for injunctive relief fails as well.[8]

---

[8] To the extent Defendants have allegedly been sued in their individual capacity, they would be entitled to assert the defense of qualified immunity should this case not be dismissed outright.

Because Plaintiffs fail to state a claim upon which relief may be granted, allowing Plaintiffs to amend their complaint as to the Michigan Defendants would be futile, and their motion should therefore be denied. *Frank,* 3 F.3d at 1365; *Gohier,* 186 F.3d at 1218.[9]

## CONCLUSION AND RELIEF REQUESTED

Defendants Governor Gretchen Whitmer and Secretary of State Jocelyn Benson request that this Court deny Plaintiffs' motion to amend their complaint.

Dated: March 29, 2021

Respectfully submitted,

Dana Nessel
Michigan Attorney General

*s/Heather S. Meingast*
Heather S. Meingast (P55439) (Michigan)
Michigan Assistant Attorney General
Attorney for Defendants Whitmer & Benson
PO Box 30736
525 West Ottawa
Lansing, Michigan 48909
517.335.7659
meingasth@michigan.gov

---

[9] Should it be determined that Plaintiffs' amended complaint may be filed as to the Michigan Defendants under Fed. R. Civ. P 15(a), this Court should consider dismissing it sua sponte for the reasons stated herein, and in the Defendants pending motion to dismiss filed March 15, 2021. *See, e.g., Rockefeller v. Chu*, 471 Fed. Appx. 829, 830 (10th Cir. 2012).

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 29, 2021, a copy of the foregoing document was electronically filed with the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*s/Heather S. Meingast*
Heather S. Meingast (P55439) (Michigan)
Michigan Assistant Attorney General
Attorney for Defendants Whitmer & Benson
PO Box 30736
525 West Ottawa
Lansing, Michigan 48909
517.335.7659
meingasth@michigan.gov