**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:20-cv-3747-NRN

KEVIN O'ROURKE, NATHANIEL L. CARTER,
LORI CUTUNILLI, LARRY D. COOK,
ALVIN CRISWELL, KESHA CRENSHAW,
NEIL YARBROUGH, and AMIE TRAPP,

Plaintiffs, on their own behalf
and of a class of similarly
situated persons,

v.

DOMINION VOTING SYSTEMS INC.,
a Delaware corporation, FACEBOOK, INC.,
a Delaware corporation, CENTER FOR TECH
AND CIVIC LIFE, an Illinois non-profit organization,
MARK E. ZUCKERBERG, individually,
PRISCILLA CHAN, individually,
BRIAN KEMP, individually, BRAD
RAFFENSPERGER, individually, GRETCHEN WHITMER,
individually, JOCELYN BENSON, individually,
TOM WOLF, individually, KATHY BOOCKVAR,
individually, TONY EVERS, individually,
ANN S. JACOBS, individually, MARK L. THOMSEN,
individually, MARGE BOSTELMAN, individually,
JULIE M. GLANCEY, DEAN KNUDSON,
individually, ROBERT F. SPINDELL, JR,
individually, and DOES 1-10,000,

Defendants.

**DOMINION VOTING SYSTEMS INC.'S RESPONSE IN
OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE
AMENDED COMPLAINT PURSUANT TO FRCP 15**

Defendant Dominion Voting Systems, Inc. ("Dominion"), by and through its counsel, hereby submits this Response in Opposition to Plaintiffs' Motion for Leave to File Amended Complaint Pursuant to FRCP 15.

## INTRODUCTION

This Court should deny Plaintiffs leave to file an amended complaint because amendment is futile. Plaintiffs' proposed First Amended Class Action Complaint and Jury Demand (the "Proposed Amended Complaint") does nothing more than expand the size of their already flawed Complaint. It does not (and cannot) cure the fatal flaw in the operative Complaint—lack of Article III standing. Indeed, Plaintiffs' Motion for Leave to File Amended Complaint Pursuant to FRCP 15 (the "Motion to Amend") merely recycles the same faulty standing arguments raised in Plaintiffs' Response to Dominion's Motion to Dismiss ("Plaintiffs' Response") and attempts to substitute state action for Article III standing.[1] Although the Proposed Amended Complaint adds hundreds of "factual" allegations and new claims for relief, the allegations do not rectify the pleading deficiencies and none of the added claims would survive a motion to dismiss. The pertinent issues have been briefed; prolonging this lawsuit simply delays the inevitable. The Motion to Amend must be denied.[2]

---

[1] Before Plaintiffs sought leave to amend, Dominion's Motion to Dismiss explained the standing deficiencies in the operative Complaint. *See* Dominion's Mot. to Dismiss, ECF No. 22, at 14–18. For the Court's convenience, when citing to other filings in this matter, Dominion cites to the applicable ECF document number and corresponding page number (*i.e.*, ECF No. __, at __.).

[2] Dismissal may not be the only consequence for Plaintiffs' continued pursuit of baseless litigation regarding the 2020 Presidential election. As noted by Facebook in its Reply in support of its Motion to Dismiss, a court recently referred counsel in a similar case to the jurisdiction's Grievance Committee for bringing election-related claims on debunked election fraud allegations and legal bases foreclosed by precedent, especially where counsel continued to press the same arguments after being confronted with obvious fatal problems with their suit. *Wis. Voters All. v. Pence*, No. 20-3791 (JEB), 2021 WL 686359, at *2 (D.D.C. Feb. 19, 2021).

1

## BACKGROUND

Plaintiffs filed the Motion to Amend after several Defendants, including Dominion, filed motions to dismiss, and after Plaintiffs responded to these motions rather than amending their Complaint. All of these motions to dismiss, as well as subsequent motions to dismiss filed by other Defendants,[3] highlight that Plaintiffs lack standing to bring their generalized grievances of vote dilution. Courts across the county have consistently rejected nearly identical claims.

Rather than address the standing deficiencies, Plaintiffs, through the Proposed Amended Complaint, seek to: (1) add 152 new named plaintiffs from various states, *see* Am. Compl., ECF No. 48-1, ¶¶ 53–212, (2) insert hundreds of paragraphs of new factual allegations, *see id.* ¶¶ 53–212, 240–324, and (3) create "subclasses" of the proposed class of "all registered voters." *See id.* ¶¶ 240–51. The Proposed Amended Complaint also would add six new claims for relief—two new Racketeer Influenced and Corrupt Organization Act ("RICO") claims pursuant to 18 U.S.C. § 1962 against Defendants Facebook, CTCL, Zuckerberg, and Chan, *see id.* ¶¶ 747–83, and four constitutional challenges to state laws in Michigan, Georgia, Pennsylvania, and Wisconsin against their respective attorneys general (the "Proposed AG Defendants"). *See id.* ¶¶ 810–76. Notably, none of Plaintiffs' proposed claims are asserted against Dominion.

## STANDARDS OF REVIEW

Although Rule 15 of the Federal Rule of Civil Procedure instructs that leave to amend a complaint should be freely granted "when justice so requires," Fed. R. Civ. P. 15(a)(2), a court may deny leave to amend "on account of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the]

---

[3] Plaintiffs served the Complaint on the Defendants at various points in time and thus the Defendants' deadlines to respond to the Complaint varied.

amendment.'" *Hasan v. AIG Prop. Cas. Co.*, 935 F.3d 1092, 1101–02 (10th Cir. 2019) (alterations in original) (quoting *Forman v. Davis*, 371 U.S. 178, 182 (1962)). "A motion to amend may be denied for futility 'if the complaint, as amended, would be subject to dismissal.'" *Gess v. USMS & 10th Cir. Dist. Ct.*, No. 20-cv-01790-PAB-STV, 2021 WL 423436, at *5 (D. Colo. Feb. 5, 2021) (quoting *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007)). "A district court is justified in denying a motion to amend as futile only if the proposed amendment cannot withstand a motion to dismiss or otherwise fails to state a claim." *Id.* (citing *Ketchum v. Cruz*, 961 F.2d 916, 920 (10th Cir. 1992)); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (explaining that futility of amendment is adequate justification to deny leave to amend).

## ARGUMENT

The Motion to Amend should be denied because amendment is futile. The Proposed Amended Complaint confirms the obvious—Plaintiffs' lack Article III standing to assert a class action on behalf of every registered voter for generalized grievances of vote dilution.[4] The new allegations in the Proposed Amended Complaint likewise do not alter the analysis that Plaintiffs have failed to state a plausible claim for relief. As a result, Plaintiffs' Proposed Amended Complaint cannot survive a motion to dismiss, and thus leave for amendment would be futile. *See, e.g.*, *Gess*, 2021 WL 423436, at *5.

### I. Plaintiffs lack standing under their legal theory.

Plaintiffs' claims lack Article III standing for the reasons already stated in Dominion's Motion to Dismiss and Reply. *See* Dominion's Mot. to Dismiss, ECF No. 22, at 14–18;

---

[4] The Proposed Amended Complaint includes the same five claims asserted against Dominion from the operative Complaint (Counts I, II, III, XII, and XIII). *See* Am. Compl., ECF No. 48-1, ¶¶ 648–721, 877–882.

Dominion's Reply, ECF. No. 55, at 4–8.[5] To withstand a motion to dismiss on standing grounds, a plaintiff "must show injury in fact, a causal relationship between the injury and the challenged action of the defendant, and a likelihood that the injury will be redressed by a favorable decision." *Faustin v. City & Cnty. of Denver*, 268 F.3d 942, 947 (10th Cir. 2001). The allegations added in the Proposed Amended Complaint do nothing to correct this pleading deficiency. In fact, the Proposed Amended Complaint does not add a single allegation addressing standing. Under either complaint, Plaintiffs lack standing to bring their claims.

Specifically, the Proposed Amended Complaint still fails to allege any concrete and particularized injury in fact to satisfy standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573–74 (1992). Instead, Plaintiffs reiterate the non-cognizable generalized grievance that Plaintiffs' votes—and the votes of *all registered voters* in the country—were diluted. Such generalized grievances fail to satisfy injury in fact for Article III standing.[6] *See id.* ("We have consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy."); *Wood v. Raffensperger*, 981 F.3d 1307, 1315 (11th Cir. 2020) ("[I]rregularities in the tabulation of election results do not affect [a plaintiff] differently from any other person" and thus does not confer standing.).

---

[5] Plaintiffs' operative Complaint only addresses standing in two paragraphs. *See* Compl., ECF No. 1, ¶¶ 29, 304. Dominion did not identify any allegations added to the Proposed Amended Complaint that speak to Article III standing.

[6] Plaintiffs' argument that they are seeking class certification on behalf of the 8 already named plaintiffs and the proposed 152 additionally named plaintiffs does not alter the analysis. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 n.6 (2016) ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." (internal quotations and citations omitted)).

Rather than address this standing deficiency, Plaintiffs merely parrot in the Motion to Amend the same flawed standing arguments asserted previously to this Court. *See* Pls.' Resp., ECF No. 39, at 9–13, 17–21; Pls.' Mot. to Amend, ECF No. 48, at 5–8, 9–13. In particular, Plaintiffs again argue that they have satisfied Article III standing based on the following false theories: (1) a claim for nominal damages satisfies Article III's standing requirements; (2) their purported voting rights injury constitutes an injury in fact; (3) standing cannot be separated from state action doctrine; and (4) they are not asserting generalized grievances because their claims are on behalf of "all registered voters" rather than the public at-large. Each argument fails.

First, Plaintiffs again assert that "[e]ven nominal damages create standing." Pls.' Mot. to Amend, ECF No. 48, at 6; *see also* Pls.' Resp., ECF No. 39, at 19, 22. While nominal damages *may* satisfy the redressability element necessary for Article III standing, *see Uzuegbunam v. Preczewski*, No. 19-968, 2021 WL 850106, at *5–6, *7 (Mar. 8, 2021), nominal damages alone do not establish injury in fact, which is a separate and independent standing element. *See id.* at *7. Even alleging nominal damages, Plaintiffs must still establish every standing element, including injury in fact. *See id.* (explaining that "a request for nominal damages [does not] guarantee[] entry to court . . . It remains for the plaintiff to establish the other elements of standing (such as a particularized injury); plead a cognizable cause of action; and meet all other relevant requirements" (internal citations omitted)).

Plaintiffs again quote a passage from *Hughes v. Lott*, 350 F.3d 1157, 1162 (11th Cir. 2003), articulating that "[n]ominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages." Pls.' Mot. to Amend, ECF No. 48, at 6; *see also* Pls.' Resp., ECF

No. 39, at 19.[7] This statement from *Hughes*, however, refers to the *type* of damages that are available for alleged constitutional violations—not Article III standing's injury in fact element. Thus, even though Plaintiffs allege constitutional violations that, if adequately pled, may be actionable for nominal damages, *see Carey*, 435 U.S. at 266, Plaintiffs still must establish each element of Article III standing. *See Spokeo*, 136 S. Ct. at 1547–48 ("Injury in fact is a constitutional requirement, and '[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.'" (alterations in original) (quoting *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997))). All told, Plaintiffs fail to demonstrate injury in fact—pleading nominal damages does not alter that conclusion.

Second, Plaintiffs appear to argue that a purported injury to their voting rights suffices as an injury in fact to satisfy standing. *See* Pls.' Mot. to Amend, ECF No. 48, at 6–8; *see* Pls.' Resp., ECF No. 39, at 17–18. Plaintiffs' argument fails for several reasons. To begin with, Plaintiffs assert their claims on behalf of *all registered voters*. Thus, even if Plaintiffs' purported injury is a violation of their constitutional right to vote, such an injury is not "particularized" because it fails to "affect . . . [Plaintiffs] in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1. Further, Plaintiff's conclusory argument regarding the individual and personal nature of a person's right to vote does not modify the analysis. Broadly alleging illegality affecting individual voting rights does not constitute a particularized injury in fact to satisfy standing. *See Bognet v. Sec'y Commonwealth of Pa.*, 980 F.3d 336, 358 (3d Cir. 2020) (explaining that merely "labeling . . . the right to vote as 'personal' . . . [such] that *any* alleged illegality affecting voting rights rises to the level of an injury in fact" fails to satisfy standing) (emphasis in original).

---

[7] Plaintiffs once again incorrectly attribute the quote to *Carey v. Piphus*, 435 U.S. 247, 255 (1978), a case cited by the Eleventh Circuit in *Hughes*.

Rather, the standing inquiry for a constitutional voting rights claim focuses on whether the "alleged violation of the right to vote arises from an invidious classification" where the "'the favored group has full voting strength and the groups not in favor have their votes discounted.'" *Id.* (quoting *Reynolds v. Sims*, 377 U.S. 533, 555 n.29 (1964)). Here, because Plaintiffs bring claims on behalf of all registered voters, they cannot demonstrate that they fall into an invidious classification in which their votes were discounted for a favored classification.

In support of their flawed argument that a purported violation of voting rights constitutes injury in fact for standing, Plaintiffs cite the same cases relied on in their Response—*Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Karcher v. Daggett*, 462 U.S. 725 (1983). *See* Pls.' Resp., ECF No. 39, at 17–18; Pls.' Mot. to Amend, ECF No. 55, at 6–8. Plaintiffs' reliance on these cases remains misplaced.[8] Neither case addresses Article III standing. Furthermore, both cases involve a specific subset of a voting population within a state challenging state legislation that diminished their voting power relative to other voting populations. *See Anderson*, 460 U.S. at 792–94 (explaining that that Ohio's statute setting an election filing deadline for independent candidates improperly limited political participation in a specific and identifiable group of voters—Ohio's independent voters); *Karcher*, 462 U.S. at 748 (explaining that New Jersey's congressional reapportionment statute placing specific groups of voters into congressional districts must still serve the interests of all New Jersey voters in to order to comply with the constitutional guarantee of equal protection). Here, in contrast to *Anderson* and *Karcher*, Plaintiffs bring their claims on behalf of all registered voters in the country, not any specific subset of the voting population, and do not allege that their voting rights were diminished over

---

[8] Dominion also discusses and distinguishes these cases at length in its Reply. *See* Reply, ECF No. 55, at 6–7.

that of another voting populous. Given these fundamental distinctions, *Anderson* and *Karcher* do not support Plaintiffs' standing argument.

Third, Plaintiffs still conflate Article III standing with state action. *See* Pls.' Mot. to Amend, ECF No. 48, at 9–13. The relevant heading in Plaintiffs' Motion to Amend makes this clear in stating that "The Issue of Standing Cannot Be Separated From the Capacity of Dominion, Facebook, CTCL, Zuckerberg and Chan as State Actors." *Id.* at 9.[9] State action, however, is a separate constitutional legal doctrine from Article III standing. On one hand, the state action doctrine determines whether the Constitution, which generally applies only to governmental conduct, could apply to certain private actors' conduct. *See Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 620 (1991) (explaining that "the conduct of private parties lies beyond the Constitution's scope in most instances"). In short, the state action doctrine provides a framework to determine whether the *defendant's* challenged conduct is governmental such that it triggers the Constitution's protections. *See id.* at 619–20. Standing, on the other hand, is a distinct constitutional requirement, addressing whether a *plaintiff* can bring a claim in federal court. *See Lujan*, 504 U.S. at 560 ("[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."). Thus, state action is wholly irrelevant in determining Article III standing.

Plaintiffs' argument that the state action doctrine cannot be separated from Article III standing is both legally dubious and practically untenable. If a plaintiff could satisfy the standing doctrine by pleading state action, as Plaintiffs suggest here, Article III's standing requirements would be rendered meaningless in actions against government actors. For example, any

---

[9] Plaintiffs' Response also discusses state action at length to no avail. *See* Pls.' Resp., ECF No. 39, at 9–13. Even if Plaintiffs can demonstrate that Dominion is a state actor for purposes of this litigation, which they cannot, they still must satisfy Article III standing.

individual could bring a lawsuit in federal court against a government actor without demonstrating any individual concrete and particularized injury in fact, causation, or redressability. Waiving Article III standing for such claims would not only subject state, local, and other government actors to a flood of meritless litigation across the county, but also ask this Court to re-write Article III's "case or controversy" mandate. The Court need not make such a leap in law and logic to determine whether Plaintiffs' claims satisfy Article III standing.[10]

Fourth, Plaintiffs once more argue that their claims are not a "generalized grievance" because their class composed of all registered voters is distinct from the "general interest of members of the public." Pls.' Mot. to Amend, ECF No. 48, at 13; Pls.' Resp., ECF No. 39, at 20. This distinction is meaningless in the voting rights context because "all registered voters" is not a specific enough subset of the general public to grant standing. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[W]hen the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction."); *see also Wood*, 981 F.3d at 1314–15 (explaining that "'no single voter is specifically disadvantaged' if a vote is counted improperly, even if the error might have a 'mathematical impact on the final tally and thus on the proportional effect of every vote'" and that therefore "[v]ote dilution in this context is a 'paradigmatic generalized grievance that cannot support standing'" (quoting *Bognet*, 980 F.3d at 356)).

In sum, the Proposed Amended Complaint fails to cure Plaintiffs' lack of standing, rendering amendment futile. If Plaintiffs had filed an amended complaint as a matter of course within the time period allotted in Rule 15(a)(1)(B), Dominion and the other Defendants'

---

[10] Dominion discusses and rebuts Plaintiffs' state action (or, "color of law") arguments in its Motion to Dismiss and Reply. *See* Dominion's Mot. to Dismiss, ECF No. 22, at 19–21; Dominion's Reply, ECF No. 55, at 9–11.

9

subsequent motions to dismiss would include the *exact same* standing arguments already submitted to the Court.

## II. Plaintiffs' claims against Dominion are still subject to dismissal.

The Proposed Amended Complaint includes no new allegations that support its substantive claims against Dominion.[11] Instead, the Proposed Amended Complaint adds conclusory allegations that Dominion acts under color of law and misleading allegations regarding the services Dominion provides, its software license agreements with various governments, purported vulnerabilities in its voting systems, and its role in the adjudication of ballots. *See* Am. Compl., ECF No. 48-1, ¶¶ 34–49, 266–324.

For the reasons articulated in Dominion's Reply, Plaintiffs still fail to state a plausible claim for relief. *See* Dominion's Reply, ECF No. 55, at 8–14. The new allegations do not alter this analysis. For example, the allegations regarding the services Dominion provides and its contracts and agreements appear to be directed to establishing Dominion as a state actor. However, even if the Proposed Amended Complaint plausibly pleads an argument that Dominion is a state actor,[12] acting under color of law is not, itself, liable conduct because Section 1983 also requires a violation of the Constitution or federal law, as well as standing. *See Brown v. Buhman*, 822 F.3d 1151, 1161 n.9 (10th Cir. 2016) (explaining "[t]here can be no 'violation' of [42 U.S.C.] § 1983" because the statute "is a remedial vehicle"). Likewise, the new allegations regarding adjudication of ballots do not support a due process claim because Plaintiffs still have

---

[11] The Proposed Amended Complaint also includes a claim against Defendants Facebook and Zuckerberg under 47 U.S.C. § 230 (Count VII), which was carried over from the operative Complaint. *See* Am. Compl., ECF No. 48-1, ¶¶ 784–809. Count VII is also subject to dismissal because the Proposed Amended Complaint fails to address the flaws in this claim—namely, Plaintiffs lack standing and fail to state a claim under § 230. *See* Facebook's Mot. to Dismiss, ECF No. 23, at 5–9, 13–15; Facebook's Reply, ECF No. 56, at 5–8, 11–16. Thus, Count VII is also futile.

[12] Dominion disagrees that Plaintiffs' conclusory allegations have plausibly alleged so.

not alleged a causal connection between Dominion's voting systems flagging ballots and a state's review of those ballots. None exists. Dominion simply follows a state's given process for reviewing votes, as dictated by state law. Plaintiffs' dispute pertains to *states'* adjudication of ballots, not Dominion's.

### III.   Plaintiffs' proposed new claims are also futile.

Not only does the Proposed Amended Complaint not resolve the pleading deficiencies in the claims asserted against Dominion, but the proposed new claims—none of which are asserted against Dominion—suffer from similar flaws. The Proposed Amended Complaint asserts six new claims for relief—two RICO claims under 18 U.S.C. § 1962, and four additional constitutional claims seeking declaratory judgments. *See* Am. Compl., ECF No. 48-1, ¶¶ 747–876.

#### a.   *Plaintiffs cannot satisfy the elements of their proposed RICO claims.*

To state a RICO claim, Plaintiffs must "plausibility allege '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Sullivan v. Univ. of Kan. Hosp. Auth.*, Nos. 19-3213, 19-3215, and 19-3216, 2021 WL 303142, at *3 (10th Cir. Jan. 29, 2021) (quoting *Deck v. Engineered Laminates*, 349 F.3d 1253, 1257 (10th Cir. 2003)). "A pattern of racketeering activity must include commission of at least two predicate acts." *Deck*, 349 F.3d at 1257. To have standing to bring a RICO claim, a plaintiff must have been "injured in his business or property by reason of the defendant's violation of § 1962." *Id.*; *see also* 18 U.S.C. § 1964(c) ("Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor . . . .").

The proposed RICO claims cannot meet these elements and thus are subject to dismissal for failure to state a claim under Rule 12(b)(6).[13] Among various other flaws, Plaintiffs do not

---

[13] As with Dominion's arguments above, Plaintiffs' RICO claims cannot demonstrate a concrete and particularized injury to satisfy Article III standing. *See supra* pages 3–4. Thus, Plaintiffs'

have statutory standing to bring a RICO claim. "Plaintiffs who bring civil RICO claims pursuant to 18 U.S.C. § 1962 must show damage to their business or property as a result of defendants' conduct." *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).

Plaintiffs' first RICO claim (Count V) alleges that Defendants Facebook, CTCL, Zuckerberg, and Chan committed a civil RICO violation by engaging in a pattern of racketeering activity. *See* Am. Compl., ECF No. 48-1, ¶¶ 747–76. Plaintiffs allege that these Defendants violated several federal laws that constitute "racketeering activity," including mail and wire fraud, interstate transportation of stolen property, witness tampering, and conspiracy to violate Plaintiffs' civil rights. *See id.* Count V, however, is devoid of *any* allegations asserting damages to Plaintiffs' business or property. *See id.* ¶¶ 747–83. Plaintiffs' lone reference to their purported damages lacks any detail regarding Plaintiffs' business or property. *See id.* ¶ 775. Instead, Plaintiffs merely allege that "[t]he damages and injury to the Plaintiffs and the Classes were directly and proximately caused and continue to be caused by Defendants' racketeering activities of the enterprise." *Id.* Even if Plaintiffs had alleged that Defendants' conduct infringed on their voting rights, Plaintiffs would still fail to allege statutory standing because Plaintiffs' right to vote alone is not a cognizable property interest. *See, e.g.*, *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 230–33 (5th Cir. 2020) (noting that it could not identify any courts treating the right to vote as a property interest).

Plaintiffs' second RICO claim (Count VI), which alleges that that Defendants Facebook, CTCL, Zuckerberg, and Chan conspired to engage in a pattern of racketeering activity under 18 U.S.C. § 1962(d), *see* Am. Compl., ¶¶ 777–83, is also subject to dismissal for lack of statutory

---

RICO claims are also subject to dismissal for lack of subject-matter jurisdiction under Rule 12(b)(1).

standing. Although the Proposed Amended Complaint includes one conclusory allegation stating that "Plaintiffs and the Classes have been and are continuing to be injured . . . including injuries to their business or property," *see id.* ¶ 782, this lone conclusory allegation does not establish a property interest for statutory standing and thus is insufficient to state a RICO claim. *See Morman v. Campbell Cnty. Mem'l Hosp.*, 632 F. App'x 927, 931 (10th Cir. 2015) (explaining that, to survive a motion to dismiss, "[m]ere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' are insufficient" to state a claim); *see also Robbins*, 300 F.3d at 1210.

### b. *Plaintiffs' proposed constitutional claims are subject to dismissal.*

In Counts VIII–XI of the Proposed Amended Complaint, Plaintiffs allege constitutional violations against the Proposed AG Defendants in Michigan, Georgia, Pennsylvania, and Wisconsin. *See* Am. Compl., ECF No. 48-1, ¶¶ 810–876. Plaintiffs' theory is that the Proposed AG Defendants violated the Fourteenth Amendment by either (1) failing to enforce state election laws in conducting the 2020 Presidential election, or (2) failing to prevent unconstitutional state election laws and executive actions from being implemented prior to the 2020 Presidential election. *See generally id.* Notwithstanding, Counts VIII–XI are subject to dismissal under Rules 12(b)(1) and 12(b)(2), and thus leave to amend to add them would be futile.

First, Counts VIII–XI fail for lack of subject-matter jurisdiction under Rule 12(b)(1) because Plaintiffs lack Article III standing. *See Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) ("Standing is 'an essential and unchanging part' of the Article III case-or-controversy." (quoting *Lujan*, 504 U.S. at 560)). Plaintiffs fail to plead any concrete and particularized injury required for an injury in fact, and again allege an impermissible generalized grievance against the government common to at least a significant portion of the public. *Lance v.*

*Coffman*, 549 U.S. 437, 440–41 (2007). For example, Plaintiffs' only references to injury in Counts VIII–XI concern "the rights of all voters," s*ee* Am. Compl., ECF No. 48-1, ¶¶ 839, 872, or a "whole class of voters." *See id.* ¶ 852.

Second, Counts VIII–XI are also subject to dismissal for lack of personal jurisdiction under Rule 12(b)(2) for the same reasons described in the motions to dismiss filed by other Defendants that are elected officials in Michigan, Georgia, Pennsylvania, and Wisconsin. Plaintiffs bear the burden of establishing personal jurisdiction over the Proposed AG Defendants. *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988). The Due Process Clause permits the exercise of personal jurisdiction over nonresident defendants when defendants have sufficient "minimum contacts" with the forum state and the exercise of personal jurisdiction over such defendants would not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Here, the Proposed Amended Complaint fails to allege sufficient minimum contacts with this forum to establish personal jurisdiction. In fact, Plaintiffs fail to allege *any* contacts between the Proposed AG Defendants and Colorado that would provide personal jurisdiction. Allegations that some of the states have contracts with Dominion are insufficient. *See Benton v. Cameco Corp.*, 375 F.3d 1070, 1077 (10th Cir. 2004) ("A contract between an out-of-state party and a resident of the forum state cannot, standing alone, establish sufficient minimum contacts with the forum."). This Court would thus lack personal jurisdiction over these claims.[14]

---

[14] Courts may also properly deny a motion to amend for undue delay when it appears "that the plaintiff is using Rule 15 to make the complaint 'a moving target,'" *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006) (quoting *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 800 (10th Cir. 1998)), when a plaintiff's amendment seeks "to 'salvage a lost cause by untimely suggestion of new theories of recovery,'" and "to present 'theories seriatim' in an effort to avoid dismissal." *Id.* (quoting *Hayes v. Whitman*, 264 F.3d 1017, 1027 (10th Cir. 2001) and *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994)). The new allegations in the Proposed

## **CONCLUSION**

For the foregoing reasons, Dominion respectfully requests that this Court deny Plaintiffs' Motion to Amend.

Dated March 29, 2021

                                            s/ *Stanley L. Garnett*
                                            Stanley L. Garnett
                                            David B. Meschke
                                            Amanda K. Houseal
                                            Bridget C. DuPey
                                            Brownstein Hyatt Farber Schreck, LLP
                                            410 Seventeenth Street
                                            Suite 2200
                                            Denver, CO  80202-4432
                                            Phone: 303.223.1100
                                            Email: sgarnett@bhfs.com
                                                        dmeschke@bhfs.com
                                                        ahouseal@bhfs.com
                                                        bdupey@bhfs.com

                                            *Attorneys for Defendant Dominion Voting Systems, Inc.*

---

Amended Complaint are not based on any newly discovered facts that were unavailable to Plaintiffs prior to the filing their original Complaint. Instead, after previewing Dominion's (and the other Defendants') arguments for dismissal, Plaintiffs seek to salvage their lost cause by suggesting new theories of recovery in an effort to keep this litigation afloat. At bottom, Plaintiffs' attempt to manipulate Rule 15 in order to prolong this groundless litigation is the exact type of amendment that courts routinely deny. *See Minter*, 451 F.3d at 1205–06. While Plaintiffs benefit from creating a moving target for their claims, Dominion faces real consequences to needlessly prolonging this flawed litigation. Each day that Plaintiffs' baseless lawsuit survives, Dominion's business and reputation suffer.

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that on this 29th day of March 2021, a true and correct copy of the foregoing Response in Opposition to Plaintiffs' Motion for Leave to File Amended Complaint Pursuant to FRCP 15 was electronically filed with the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                                                          s/ *Stanley L. Garnett*
                                                          Stanley L. Garnett