## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-03747-NRN

KEVIN O'ROURKE, NATHANIEL L.
CARTER, LORI CUTUNILLI, LARRY D.
COOK, ALVIN CRISWELL, KESHA
CRENSHAW, NEIL YARBROUGH, and
AMIE TRAPP,

                Plaintiffs, on their own behalf
                and of a class of similarly
                situated persons,

    v.

DOMINION VOTING SYSTEMS, INC., a
Delaware corporation, FACEBOOK, INC., a
Delaware corporation, CENTER FOR TECH
AND CIVIC LIFE, an Illinois non-profit
organization, MARK E. ZUCKERBERG,
individually, PRISCILLA CHAN,
individually, BRIAN KEMP, individually,
BRAD RAFFENSPERGER, individually,
GRETCHEN WHITMER, individually,
JOCELYN BENSON, individually, TOM
WOLF, individually, KATHY BOOCKVAR,
individually, TONY EVERS, individually,
ANN S. JACOBS, individually, MARK L.
THOMSEN, individually, MARGE
BOSTELMAN, individually, JULIE M.
GLANCEY, DEAN KNUDSON,
individually, ROBERT F. SPINDELL, Jr.,
individually, and DOES 1-10,000,

                Defendants.

---

## DEFENDANT CENTER FOR TECH AND CIVIC LIFE'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND THE COMPLAINT AND, IN THE ALTERNATIVE, ITS REQUEST TO DISMISS THE AMENDED COMPLAINT

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

BACKGROUND .................................................................................................................... 1

LEGAL STANDARD............................................................................................................. 3

ARGUMENT .......................................................................................................................... 4

I.      Plaintiffs still lack standing................................................................................. 4

II.     Plaintiffs still fail to state a claim. ...................................................................... 9

      A.      Plaintiffs still fail to state a § 1983 claim. .......................................... 9

            1.      Plaintiffs still fail to allege state action.................................. 9

            2.      Plaintiffs still fail to allege a constitutional violation. .......... 11

      B.      Plaintiffs fail to state a RICO claim................................................... 13

CONCLUSION..................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Celebrezze,*
    460 U.S. 780 (1983) ................................................................................ 7, 12

*Anza v. Ideal Steel Supply Corp.,*
    547 U.S. 451 (2006) ................................................................................... 13

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................................... 13

*Bixler v. Foster,*
    596 F.3d 751 (10th Cir. 2010) ............................................................. 13, 14

*Bognet v. Sec'y of Commonwealth of Pa.,*
    980 F.3d, 336 (3d Cir. 2020) ................................................................... 5, 6

*Cayman Exploration Corp. v. United Gas Pipe Line Co.,*
    873 F.2d 1357 (10th Cir. 1989) ................................................................. 14

*CGC Holding Co., LLC v. Hutchens,*
    974 F.3d 1201 (10th Cir. 2020) ................................................................. 14

*Cuin v. Adams Cnty. Bd. of Cnty. Comm'rs,*
    No. 10 Civ. 1704, 2010 WL 4038841 (D. Colo. Oct. 13, 2010) .................. 3

*Davis v. Fed. Elec. Comm'n,*
    554 U.S. 724 (2008) ..................................................................................... 8

*Doe v. Bolton,*
    410 U.S. 179 (1973) ..................................................................................... 6

*Eberlein v. Provident Life & Accident Ins. Co.,*
    No. 06 Civ. 2454, 2008 WL 11363361 (D. Colo. July 1, 2008) ................. 3

*Flagg Bros, Inc. v. Brooks,*
    436 U.S. 149 (1978) ................................................................................... 10

*Foman v. Davis,*
    371 U.S. 178 (1962) ..................................................................................... 4

*Frost & Frost Trucking Co. v. R.R. Comm'n of Cal.,*
    271 U.S. 583 (1926) ..................................................................................... 7

*Gallagher v. Neil Young Freedom Concert*,
    49 F.3d 1442 (10th Cir. 1995) .............................................. 10

*Gillmor v. Thomas*,
    490 F.3d 791 (10th Cir. 2007) .............................................. 15

*Greenway Nutrients, Inc. v. Blackburn*,
    33 F. Supp. 3d 1224 (D. Colo. 2014)...................................... 14

*Hasan v. AIG Prop. Cas. Co.*,
    935 F.3d 1092 (10th Cir. 2019) ............................................. 4

*Hutchinson v. Pfeil*,
    211 F.3d 515 (10th Cir. 2000) ............................................... 4

*Huxall v. First State Bank*,
    842 F.2d 249 (10th Cir.1988) ................................................ 4

*Karcher v. Daggett*,
    462 U.S. 725 (1983).................................................. 7, 12, 13

*King v. Whitmer*,
    No. 20 Civ. 13134, 2020 WL 7134198 (E.D. Mich. Dec. 7, 2020)......... 11

*Kinnell v. Graves*,
    265 F.3d 1125 (10th Cir. 2001) ............................................. 13

*Kriston v. Peroulis*,
    No. 09 Civ. 909, 2010 WL 1268087 (D. Colo. Mar. 29, 2010)............. 15

*Lance v. Coffman*,
    549 U.S. 437 (2007)....................................................... 5, 6

*Marsh v. Alabama*,
    326 U.S. 501 (1946)........................................................ 10

*Owen v. Medina*,
    No. 12 Civ. 94, 2012 WL 7800837 (D. Colo. Dec. 18, 2012).................. 4

*Rector v. City & County of Denver*,
    348 F.3d 935 (10th Cir. 2003) ............................................... 7

*Robert L. Kroenlein Tr. ex rel. Alden v. Kirchhefer*,
    764 F.3d 1268 (10th Cir. 2014) ............................................. 14

*Safe Streets All. v. Hickenlooper*,
    859 F.3d 865 (10th Cir. 2017) .............................................. 13

*Schwab v. Kansas Dep't of Child. & Families*,
   No. 20-3099, 2021 WL 982246 (10th Cir. Mar. 16, 2021)........................................ 3

*Schwab v. Ingels*,
   No. 18 Civ. 2488, 2020 WL 2037049 (D. Kan. Apr. 28, 2020) ................................. 3

*Scott v. Hern*,
   216 F.3d 897 (10th Cir. 2000) ................................................................................ 10

*Seeberger v. Goodman*,
   No. 14 Civ. 1063, 2015 WL 13662654 (D.N.M. Apr. 3, 2015) ................................ 3

*Smith v. Allwright*,
   321 U.S. 649 (1944).................................................................................................. 7

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016)........................................................................... 4, 5, 6, 8

*Terry v. Adams*,
   345 U.S. 461 (1953)................................................................................................ 10

*Tal v. Hogan*,
   453 F.3d 1244 (10th Cir. 2006) ........................................................................ 14, 15

*Trujillo v. City of Newton*,
   No. 12 Civ. 2380, 2013 WL 535747 (D. Kan. Feb. 12, 2013) ................................. 3

*United States ex rel. Barrick v. Parker-Migliorini Int'l, LLC*,
   878 F.3d 1224 (10th Cir. 2017) .............................................................................. 4

*Uzuegbunamv. Preczewski*,
   No. 19-968, 2021 WL 850106 (U.S. Mar. 8, 2021)................................................. 8

*West v. Atkins*,
   487 U.S. 42 (1988).................................................................................................. 9

*Wittner v. Banner Health*,
   720 F.3d 770 (10th Cir. 2013) ................................................................................ 9

*Wood v. Raffensperger*,
   981 F.3d 1307 (11th Cir. 2020) .............................................................................. 5

## Statutes

18 U.S.C. § 241 ...................................................................................................... 14

18 U.S.C. § 1512 .................................................................................................... 14

18 U.S.C. § 1961 .................................................................................................... 14

18 U.S.C. § 1962 ................................................................................................................ 13

18 U.S.C. § 1964 ............................................................................................................ 13, 15

42 U.S.C. § 1983 ........................................................................................................ passim

42 U.S.C. § 1985 .................................................................................................................. 9

42 U.S.C. § 1986 .................................................................................................................. 9

42 U.S.C. § 1988 .................................................................................................................. 9

**Rules**

Federal Rule of Civil Procedure 9 .................................................................................. 14

Federal Rule of Civil Procedure 15 .............................................................................. 3, 4

## INTRODUCTION

Plaintiffs' proposed amended complaint does nothing to rectify the fundamental flaws that require dismissal of the original complaint for lack of Article III standing and for failure to state a claim. The addition of 152 named plaintiffs—all of whom claim injury only as "registered voters" in the 2020 presidential election—underscores that Plaintiffs present this Court with a generalized grievance that cannot support subject-matter jurisdiction. And rather than retreat from the original complaint's discredited electoral conspiracy theories (which have been rejected by a litany of state and federal courts), Plaintiffs have doubled down by adding baseless claims for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Enough is enough. These frivolous allegations are an abuse of legal process. The Court should deny Plaintiffs' motion for leave to amend as futile or, in the alternative, dismiss the proposed amended complaint *sua sponte*.

## BACKGROUND

Plaintiffs filed their original complaint in this action on December 22, 2020, seeking $160 billion in damages based on allegations of a sprawling nationwide conspiracy between government officials, private citizens, and private organizations—including Defendant Center for Tech and Civic Life ("CTCL")—to somehow manipulate the results of the 2020 presidential election. ECF 1 ("Compl."). CTCL is a non-profit organization that offered grants to support local election administrators during the COVID-19 pandemic. Plaintiffs' allegations that CTCL's grant program was somehow illegal echoed prior challenges to the program that have been rejected by nineteen judges at every level of the federal judiciary in recent months. *See* ECF 41 ("MTD") at 1 n.1.

Developments since filing have made clear that Plaintiffs are determined to keep this litigation going without regard to law or logic. The earliest-served Defendants, Facebook, Inc. and Dominion Voting Systems, Inc., moved to dismiss the complaint on February 16, 2021. ECF 22, 23. Each identified numerous grounds for dismissal, including (among other arguments) that

Plaintiffs clearly lacked standing to bring this suit. ECF 22 at 7-11; ECF 23 at 4-8. Plaintiffs then served Defendant CTCL with the summons and complaint the day after those motions were filed, after the case had been pending for nearly two months. When the undersigned counsel for CTCL proposed to meet and confer in anticipation of moving to dismiss, Plaintiffs' counsel stated (without inquiring about the grounds for CTCL's motion) that they would not only oppose dismissal, but that they also intended to file an amended complaint. When Plaintiffs failed to file that amended complaint, CTCL filed its own motion to dismiss, identifying multiple independent grounds for dismissal of this lawsuit that were apparent on the face of the original complaint—including lack of Article III standing, CTCL not ranking as a "state actor" for purposes of § 1983, and failure to state any viable constitutional claims. *See generally* MTD. The next day, at the March 11 initial status conference in this case, Plaintiffs' counsel made clear that they would defend the original complaint while also seeking leave to amend it, and this Court allowed briefing from Defendants on whether to permit amendment. ECF 45 at 8-10, 23-24.

Plaintiffs have now filed a proposed amended complaint, along with a supporting motion seeking leave to file it. *See* ECF 48 ("Mot."); ECF 48-1 ("Am. Compl."). As it concerns CTCL, the proposed amended complaint adds little. Its primary new features are: (1) a nearly tenfold increase in the number of named plaintiffs, none of whom claim a personal stake in this litigation beyond being a registered voter somewhere in the United States, *see* Am. Compl. ¶¶ 51-212;[1] ECF 48-2 (redline) at 11-29; and (2) new proposed claims under RICO, which rest on the same

---

[1] The proposed amended complaint also includes new class allegations stating that Plaintiffs' counsel is actively fielding inquiries from "a significant number" of other people "who have expressed interest in joining" this lawsuit. *Id.* ¶ 262. An accompanying declaration by Plaintiffs' counsel avers that some of these people have offered "donations of time or money" to support Plaintiffs' counsel's continued pursuit of this clearly meritless case, and that "many more" potential plaintiffs are currently "in process." ECF 48-3 ¶¶ 3, 5.

generalized grievances about the legality of the 2020 election as Plaintiffs' earlier claims. Am. Compl. ¶¶ 747-83; *see id.* ¶ 770 ("The scheme of the enterprise, and racketeering activities described herein, was a common course of conduct intended to influence the 2020 Presidential election."). The proposed amended complaint otherwise adheres to the same untenable allegations and meritless standing arguments that CTCL and other Defendants have already addressed and refuted. *See* ECF 48-2 at 110-21 (redline reflecting no substantive changes to Counts I-III against CTCL); *id.* at 114 (still alleging harm "to every registered voter in the country").

## LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) governs when a pleading may be amended. A party may amend once as a matter of course until "21 days after service of a motion under Rule 12(b)." Fed. R. Civ. P. 15(a). Thereafter, amendment requires consent or leave of court. *Eberlein v. Provident Life & Accident Ins. Co.*, No. 06 Civ. 2454, 2008 WL 11363361, at *1 (D. Colo. July 1, 2008). In multiple-defendant cases such as this one, it is an open question whether leave is required as to *all* defendants more than twenty-one days after *any* of them moves to dismiss, or whether amendment is permitted as to each defendant until 21 days after that defendant moves.[2]

---

[2] Specifically, courts within this circuit have identified a "split of authority on Rule 15(a)(1)'s application to multi-defendant cases." *Schwab v. Ingels*, No. 18 Civ. 2488, 2020 WL 2037049, at *4 n.5 (D. Kan. Apr. 28, 2020), *aff'd sub nom. Schwab v. Kansas Dep't of Child. & Families*, No. 20-3099, 2021 WL 982246 (10th Cir. Mar. 16, 2021) (acknowledging the split, but affirming denial of leave to amend on futility grounds without resolving it). Some district courts in the Tenth Circuit hold that once *any* defendant responds to a complaint, the 21-day time limit to amend as of right is triggered as to *all* defendants, even if other defendants file responsive pleadings or motions later. *See Trujillo v. City of Newton*, No. 12 Civ. 2380, 2013 WL 535747, at *1 (D. Kan. Feb. 12, 2013); *Schwab*, 2020 WL 2037049, at *4 (following *Trujillo*). Other courts hold that "[e]ach defendant is treated separately for purposes of amending once as of right." *Cuin v. Adams Cnty. Bd. of Cnty. Comm'rs*, No. 10 Civ. 1704, 2010 WL 4038841, at *1 (D. Colo. Oct. 13, 2010) (alteration in original) (citation omitted); *see also Seeberger v. Goodman*, No. 14 Civ. 1063, 2015 WL 13662654, at *2 (D.N.M. Apr. 3, 2015) (noting both approaches, collecting out-of-circuit authority supporting the *Cuin* approach, and declining to "decide which approach is correct").

Although leave to amend a complaint is freely granted "when justice so requires," Fed. R. Civ. P. 15(a)(2), a court may deny leave if amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Hasan v. AIG Prop. Cas. Co.*, 935 F.3d 1092, 1101-02 (10th Cir. 2019). A proposed amendment is futile if the complaint, as amended, would be subject to dismissal for failure to state a claim under Rule 12(b)(6) or failure to establish standing under Rule 12(b)(1). *United States ex rel. Barrick v. Parker-Migliorini Int'l, LLC*, 878 F.3d 1224, 1230 (10th Cir. 2017); *Hutchinson v. Pfeil*, 211 F.3d 515, 523 (10th Cir. 2000). The Court may also docket the proposed amended complaint and dismiss it *sua sponte*, applying those same standards. *See Owen v. Medina*, No. 12 Civ. 94, 2012 WL 7800837, at *11 (D. Colo. Dec. 18, 2012).

## ARGUMENT

The proposed amended complaint fails to establish standing or state a claim. Leave to amend should be denied as futile, or the amended complaint should be dismissed *sua sponte*.

### I.   Plaintiffs still lack standing.

The law of standing "limits the category of litigants empowered to maintain a lawsuit in federal court" to those who bring "actual cases or controversies." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The "'irreducible constitutional minimum' of standing" requires: (1) a

---

None of the arguments made in this motion depend on which approach better comports with Rule 15. Even if this Court followed the *Cuin* approach and permitted Plaintiffs' proposed amendments to proceed as of right as to CTCL, the result would be the same. That is because all the reasons explained herein why amendment is futile are also reasons why a court following the *Cuin* approach should docket the proposed amended complaint and dismiss it *sua sponte* under Rule 12(b) for failure to state a claim and lack of jurisdiction. *See Huxall v. First State Bank*, 842 F.2d 249, 250 n.2 (10th Cir.1988) (recognizing *sua sponte* dismissal of claim under Rule 12(b)(6) and approving district court's denial of motion for leave to amend complaint where such amendment would be futile); *Owen v. Medina*, No. 12 Civ. 94, 2012 WL 7800837, at *1, 11 (D. Colo. Dec. 18, 2012) (where Defendants opposing leave to amend "incorporated the arguments asserted in their Motion to Dismiss, the court . . . permit[ted] [plaintiff's] amended pleading," "accepted [it] for filing," ordered it "shall be docketed," and then *sua sponte* "dismissed [it] in its entirety").

concrete and particularized injury-in-fact, (2) a causal connection between that injury and the challenged conduct, and (3) redressability. *See id.*

Plaintiffs' original complaint came nowhere close to establishing any of these elements. It was clear that Plaintiffs lacked injury-in-fact because their assertion that "illegal votes and unconstitutional procedures dilute[d] the votes of the legally registered voter" in the 2020 presidential election (Compl. ¶ 320) was "precisely the kind of undifferentiated, generalized grievance about the conduct of government that [the Supreme Court has] refused to countenance." *Lance v. Coffman*, 549 U.S. 437, 442 (2007) (per curiam); *see Wood v. Raffensperger*, 981 F.3d 1307, 1314-15 (11th Cir. 2020) (explaining that "no single voter is specifically disadvantaged if a vote is counted improperly," and so "[v]ote dilution in this context is a paradigmatic generalized grievance"); *Bognet v. Sec'y of Commonwealth of Pa.*, 980 F.3d, 336, 349, 356 (3d Cir. 2020) (emphasizing that an alleged "right to have government administered in compliance with the . . . Electors Clause" is a generalized grievance that cannot support standing). The original complaint also failed to allege how any of these generalized harms were "fairly traceable" to CTCL's grant program, *see Bognet*, 980 F.3d at 352, and sought declaratory and injunctive relief (much of which was plainly moot) that stood no chance of redressing any asserted injuries. *See* MTD at 4-8.

All of these deficiencies persist in the proposed amended complaint. Accordingly, CTCL incorporates herein the standing arguments set forth in its original motion to dismiss, *see id.*, to which the proposed amended complaint is almost entirely unresponsive. In particular, Plaintiffs still lack any cognizable injury-in-fact. At the heart of each of Plaintiffs' claims—including the new RICO claim—remains the allegation that "*every registered voter* was deprived of a fair and legitimate process." Mot. at 13 (emphasis added); *see, e.g.*, Am. Compl. ¶ 679 (repeating the allegation that "illegal votes and unconstitutional procedures dilute the votes of the legally

registered voter"). Plaintiffs therefore fail to satisfy their Article III "burden" to "clearly allege facts demonstrating" a concrete and particularized injury. *See Spokeo*, 136 S. Ct. at 1547. Similarly, nothing in Plaintiffs' proposed amended complaint responds to the previously explained defect that none of their alleged injuries are "fairly traceable" to the conduct of CTCL. *See* MTD at 7. Plaintiffs' lack of standing is as clear on the face of the proposed amended complaint as it was on the face of the original. They appear to be indifferent to the strictures of Article III.

Indeed, none of Plaintiffs' arguments in support of their proposed amendments succeeds. First, Plaintiffs' unsupported assertion that their harm is not "generalized" because "[o]nly *registered* voters have had their right to vote . . . infringed," Mot. at 13 (emphasis added), still ignores clear precedent and bedrock standing principles. An injury that is "suffered equally by all voters . . . is not 'particularized' for standing purposes." *Bognet*, 980 F.3d at 356-57. Instead, alleged electoral irregularities that equally affect all registered "voters, nationwide," Mot. at 5, are a paradigmatic generalized grievance. *See Lance*, 549 U.S. at 442 (plaintiff-voters' allegations that "the law . . . has not been followed" were generalized grievances); *Bognet*, 980 F.3d at 358 (rejecting the proposition that "any alleged illegality affecting voting rights rises to the level of an injury in fact"). A claim of harm to all *registered* voters is indistinguishable for standing purposes from a grievance affecting all *actual* voters. *See Bognet*, 930 F.3d at 358 (explaining a particularized injury to voting rights "exists only when the plaintiff is part of a group of voters whose votes will be weighed differently compared to another group").[3] No legal authority

---

[3] Plaintiffs' motion also purports to "satisf[y]" the requirements of "standing and jurisdiction" based in part on the high number of new plaintiffs they now propose to name in the complaint, all of whom claim the same stake in this lawsuit as "registered voters" that their predecessors did. Mot. at 5. But the nearly boundless number of indistinguishable plaintiffs who have been or could be named here is *at best* irrelevant to standing (and actually further evinces the generalized nature of plaintiffs' grievance). *Cf. Doe v. Bolton,* 410 U.S. 179, 189 (1973) (explaining that if any plaintiff has standing "nothing is gained or lost by the presence or absence of the [others]").

whatsoever supports Plaintiffs' view that they are entitled to sue anyone, anywhere for any supposed electoral irregularity.

Second, in support of their standing argument, Plaintiffs cite cases that are wholly inapposite: in fact, none of them even *discusses* Article III injury-in-fact or traceability. *See* Mot. at 7-8. For example, Plaintiffs cite *Smith v. Allwright*, which declared Texas' racially discriminatory all-white Democratic primary unconstitutional. 321 U.S. 649, 644 (1944). And *Frost & Frost Trucking Co. v. Railroad Commission of California*—a *Lochner* era case about highway access and freedom of contract—is even farther afield. 271 U.S. 583, 594 (1926) (holding that a California law, which would have made private carriers' access to California highways conditional upon their agreement to act as common carriers, violated due process). Plaintiffs also invoke cases about a "common right" to vote that are not only irrelevant, but that also reinforce the generalized nature of Plaintiffs' election-related grievances.[4] None of this law is responsive to the elementary Article III defects that CTCL and other Defendants have already explained in detail.

Third, Plaintiffs invoke federal statutes that they seem to think confer standing—namely, the Declaratory Judgment Act, RICO, and certain civil rights statutes. *See* Mot. at 8. None does. The Declaratory Judgment Act alone cannot confer standing; any plaintiff invoking it still "must establish an Article III case or controversy as a prerequisite for declaratory relief" because the statute "is remedial and does not itself confer jurisdiction on federal courts." *Rector v. City & County of Denver*, 348 F.3d 935, 946 (10th Cir. 2003). And with respect to the other statutes,

---

[4] *See* Mot. at 7 (citing *Anderson v. Celebrezze*, 460 U.S. 780, 788, 795 (1983) (holding an early filing deadline for only independent candidates imposed unequal burden on independent voters and was not justified by any "important regulatory interests of the state"); *Karcher v. Daggett*, 462 U.S. 725, 748 (1983) (Stevens, J., concurring) (writing separately for himself to state view that Equal Protection Clause proscribes political gerrymandering; *see also infra*, Part II.A.2 (explaining why these cases do not support Plaintiffs on the merits either).

Plaintiffs merely incant the concept of "private attorneys general" seeking "vindication of . . . civil rights" under federal statutes, without identifying any actual, cognizable injury that those statutes could empower them to vindicate. *See* Mot. at 8. None of these statutes expands the jurisdiction of federal courts beyond the limits defined in Article III, much less to the speculative frontiers that Plaintiffs imagine. *See Spokeo*, 136 S. Ct. at 1547 ("[N]o principle is more fundamental . . . than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.").

Finally, as to redressability, it remains "unclear what equitable relief (if any) Plaintiffs seek in this case." MTD at 8 n.6. Plaintiffs' sole contention on redressability consists of a citation to *Uzuegbunam v. Preczewski* for the proposition that "[a] request for nominal damages satisfies the redressability element necessary for Article III standing where a plaintiff's claim is based on a completed violation of a legal right." No. 19-968, 2021 WL 850106, at *7 (U.S. Mar. 8, 2021). But *Uzuegbunam* separately reaffirmed that "(1) an injury in fact (2) that is fairly traceable to the challenged conduct" is also necessary to establish standing. *Id.* at *3. At a minimum, *Uzuegbunam* does not rescue Plaintiffs from their failure to establish the other standing elements. Nor does it explain what prospective injunctive relief (if any) Plaintiffs actually seek in their proposed amended complaint, or how any such prospective relief would redress any alleged harm. *See Davis v. Fed. Elec. Comm'n*, 554 U.S. 724, 734 (2008) ("'[A] plaintiff must demonstrate standing . . . for each form of relief' that is sought.") (citation omitted).

The proposed amended complaint obviously fails to cure Plaintiff's lack of standing.

## II.     Plaintiffs still fail to state a claim.

### A.      Plaintiffs still fail to state a § 1983 claim.

The proposed amended complaint, like the original, asserts various constitutional claims against CTCL, principally under 42 U.S.C. § 1983.[5] And, like the original, it fails to allege (1) "the violation of a [constitutional] right" or (2) that those violations were attributable to a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988). CTCL therefore incorporates herein all of its prior arguments regarding Plaintiffs' failure to state a claim. *See* MTD at 8-12. Again, we first address the state actor requirement and then turn to the merits of their legal allegations.

### 1.      Plaintiffs still fail to allege state action.

As explained in CTCL's motion to dismiss, because CTCL is a private non-profit organization, not a government entity, Plaintiffs' § 1983 claims must be dismissed unless they can satisfy one of four recognized bases for treating a private actor's conduct as state action. *See* MTD at 8 (citing *Wittner v. Banner Health*, 720 F.3d 770, 775 (10th Cir. 2013)). None of the proposed amended allegations satisfy any of the four tests for state action.

In their Motion, Plaintiffs' primary contentions regarding state action concern Dominion and its role in tabulating votes, not anything relevant to CTCL. *See* Mot. at 10. The only assertion relevant to CTCL is that CTCL "contracted directly with counties and municipalities across the country, to participate in the 2020 Presidential election." *Id.*

That contract-based state action argument fails for two reasons. The first is that the actual allegations show only that CTCL provided COVID-19 response grants to municipalities across the

---

[5] Plaintiffs do not purport to address the defects of their claims under 42 U.S.C. §§ 1985, 1986, and 1988. *See* MTD at 13. Nor do they elaborate upon their prior discussion of the Help America Vote Act and National Voter Registration Act, or attempt to rebut CTCL's explanation that allegations regarding those statutes cannot support a claim against it. *See id.* at 13-14. Any claims founded on any of these other statutes remain meritless.

country—not that CTCL itself "participated" in the election. Am. Compl. ¶¶ 24, 394, 468, 518

572, 595, 605. The second is that, as Plaintiffs themselves admit, "[o]bviously, contracting alone

does not automatically transform the conduct of an entity into state-action." Mot. at 11. Yet that is

all Plaintiffs allege CTCL did. Their position collapses upon their own concessions.

The cases that Plaintiffs cite in support of their state-action arguments are manifestly

inapplicable to the facts here. *Terry v. Adams* is about a whites-only political organization that

essentially chose the Democratic Party's candidates for public office in a Texas county, with the

explicit purpose of preventing Black citizens from voting. 345 U.S. 461, 464 (1953). And in *Marsh*

*v. Alabama*, a corporation owned an entire town: the company paid the sheriff and held title to all

the property, exercising a complete dominion over multiple state functions that bears no

resemblance at all to CTCL's grant program. 326 U.S. 501, 503 (1946). Another case that Plaintiffs

cite, *Flagg Bros, Inc. v. Brooks*, explains that the common feature of *Terry* and *Marsh* is

"exclusivity," 436 U.S. 149, 159 (1978)—but Plaintiffs nowhere identify a public function that

CTCL has exclusively assumed. *See* Mot. at 10. These arguments are simply frivolous.

Plaintiffs fare no better in citing *Gallagher v. Neil Young Freedom Concert*, Mot. at 11, to

support their alternative contention that their state-action allegations satisfy the "joint action" test.

49 F.3d 1442, 1455 (10th Cir. 1995) (holding companies did not engage in "joint activity" with

state university based on "arguably . . . common goal of producing a profitable music concert" nor

based on university's silent acquiescence to private parties' security policies). The joint action test

requires Plaintiffs to show that CTCL and a public actor "share[d] a specific goal to violate the

plaintiff's constitutional rights by engaging in a particular course of action." *Id.* Plaintiffs' "mere

conclusory allegations" of conspiracy between the public and private Defendants here fall well

short of satisfying that stringent test. *See* MTD at 9; *see also Scott v. Hern*, 216 F.3d 897, 907

10

(10th Cir. 2000) ("When a plaintiff in a § 1983 action attempts to assert the necessary 'state action' by implicating state officials . . . in a conspiracy with private defendants, . . . the pleadings must specifically present facts tending to show agreement and concerted action.").

Because CTCL was not a state actor when it created and administered its grant program, all of the § 1983 claims against CTCL in the proposed amended complaint are futile.

### 2.     Plaintiffs still fail to allege a constitutional violation.

Alternatively, Plaintiffs' § 1983 claims against CTCL go nowhere because they still fail to allege any cognizable violation of the Electors Clause (Count I), the Equal Protection Clause (Count II), or the Due Process Clause (Count III). Here, too, it is not a close question.

The proposed amended complaint fails to rectify any of the insurmountable problems that CTCL has already identified with these claims. Count I of the proposed amended complaint remains meritless because the Electors Clause still does not provide federal review of every alleged deviation from state election law,[6] Plaintiffs still have not plausibly alleged that CTCL violated any particular state law,[7] the Electors Clause still does not apply to the conduct of private entities, and in all events, any federal cause of action would still belong to the relevant state and its legislators rather than individual registered voters. *See* MTD at 10-11. For the Equal Protection claim (Count II), there is still no allegation of invidious discriminatory intent, still no allegation that Plaintiffs' personal rights to vote or any other fundamental rights were burdened, and still no allegation that CTCL or any other Defendant adopted any classification that resulted in arbitrary

---

[6] Indeed, Elections and Electors Clause claims brought under Section 1983 based on violations of state election law are merely "state law claims disguised as federal claims," and caselaw does not "support[] such an expansive approach" to "federal review." *King v. Whitmer*, No. 20 Civ. 13134, 2020 WL 7134198, at *12 (E.D. Mich. Dec. 7, 2020).

[7] The proposed amended complaint includes as-applied constitutional challenges to state laws asserted against the Attorneys General of Michigan, Georgia, Pennsylvania, and Wisconsin, *see* Am. Compl. ¶¶ 810-76, but not CTCL.

or irrational differential treatment of plaintiffs. *See id.* Plaintiffs' Due Process claim (Count III) still fails because Plaintiffs do not identify any procedural due process they were owed or denied and have not alleged any burden that gives rise to a voting system so fundamentally unfair as to violate substantive due process. *See id.* at 12.

Plaintiffs' motion for leave to amend does not mention the Electors Clause claim at all. There are some scattershot references to "equal protection" and "due process," but those references are untethered to any recognizable legal theory and to the extent they invoke case law it is entirely inapposite. *Anderson v. Celebrezze* did not hold, as Plaintiffs suggest, that registered voters in one state would have an Equal Protection or Due Process Clause claim based on how votes were counted in a different state. *See* Mot. at 7 (citing 460 U.S. at 795); *see also id.* at 12 ("Even for voters in State's that do not utilize Dominion, their right to vote for President and Vice President was burdened by this Colorado corporation. This is also true concerning the actions of the other Defendants." (citing nothing)). *Anderson* held that a state's early filing deadline for independent candidates to appear on a general election ballot impermissibly burdened a discrete group of that state's voters, and that the resulting harm was disproportionate to "the state's important regulatory interests" in orderly election administration. 460 U.S. at 788; *see id.* at 792-94. In stark contrast, Plaintiffs have *still* failed to identify any group of voters who were burdened in any way by CTCL's grants—much less burdened so severely as to outweigh the government's interest in safely administering an election during an unprecedented pandemic.

Plaintiffs' citation to *Karcher v. Daggett* is even more baffling. *See* Mot. at 7 (citing 462 U.S. 725, 748 (1983)). That case concerned legislative malapportionment of congressional districts, *see* 462 U.S. at 727, and Plaintiffs quote only a solo concurrence by Justice Stevens explaining his views at the time regarding partisan gerrymandering of congressional districts, *see*

Mot. at 7 (citing 462 U.S. at 744 (Stevens, J., concurring)). Neither the case nor the concurrence helps Plaintiffs to make even the "threshold . . . showing that the government discriminated among groups" (much less that CTCL did), *see Kinnell v. Graves*, 265 F.3d 1125, 1128 (10th Cir. 2001), and it is not even clear why Plaintiffs think otherwise. *See* MTD at 12.

Plaintiffs' § 1983 claims remain indisputably, undeniably meritless.

### B.    Plaintiffs fail to state a RICO claim.

As noted, the Amended Complaint asserts two new RICO claims against CTCL, along with Facebook, Zuckerberg, and Chan: violations of RICO's civil provisions, 18 U.S.C. § 1962(c), and RICO conspiracy, *id.* § 1962(d). *See* Am. Compl. ¶¶ 747-83 (Counts V and VI). These claims are meritless for at least two independent reasons: Plaintiffs lack statutory standing under RICO and, in any event, otherwise fail to plausibly allege the required elements of a RICO claim.

First, Plaintiffs plainly lack statutory standing to bring either of their RICO claims because they do not allege (1) an injury to their "business or property" that was (2) proximately caused by CTCL. *See* 18 U.S.C. § 1964(c); *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010). No alleged facts plausibly identify any injury that any plaintiff suffered to any "business or property." *See Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 885-86 (10th Cir. 2017).[8] And Plaintiffs do not allege that any act by CTCL "led directly" to *any* injury they suffered (to business, property, or otherwise), as required to establish proximate causation under RICO.  *Id.* at 890; *see Bixler*, 596 F.3d at 756; *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) (courts evaluating RICO causation ask "whether the alleged violation led directly to the plaintiff's injuries").

---

[8] Plaintiffs' allegation that they "have been and are continuing to be injured . . . including injuries to their business or property," Am. Compl. ¶ 782, is conclusory and therefore insufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Second, and in addition to the absence of statutory standing, Plaintiffs completely fail to allege the four elements of a RICO claim: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Bixler*, 596 F.3d at 761. To begin with, "there is no RICO claim without there first being racketeering activity." *Greenway Nutrients, Inc. v. Blackburn*, 33 F. Supp. 3d 1224, 1248 (D. Colo. 2014). "The term 'racketeering activity' is defined to include a host of so-called predicate acts" enumerated in 18 U.S.C. § 1961, all of which are either state or federal crimes. *Robert L. Kroenlein Tr. ex rel. Alden v. Kirchhefer*, 764 F.3d 1268, 1274 (10th Cir. 2014). Plaintiffs do not plausibly allege that CTCL or the other Defendants have committed any criminal act, much less a "pattern" of such acts. The proposed amended complaint tosses out mentions of "mail fraud" and "wire fraud," Am. Compl. ¶ 253(v)-(w); tampering with a witness, victim, or informant in an official proceeding under 18 U.S.C. § 1512(b), *id.* ¶¶ 757, 758; and conspiracy to interfere with federally protected rights under 18 U.S.C. § 241, *id.*[9] But the proposed amended complaint contains no factual support whatsoever for those conclusory (and offensive) insinuations of criminal activity and certainly fails to allege the elements of any of those potential predicates. That manifest failure to satisfy the racketeering activity element is a sufficient basis to dismiss the entire claim. *See Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006).[10] Further, Plaintiffs' utter failure to plausibly allege any kind of racketeering activity means they have also failed to allege a "pattern" of such activity, or that CTCL and the other Defendants "conduct[ed]" an "enterprise" *through* any such pattern of racketeering activity. *See CGC Holding Co., LLC v. Hutchens*, 974

---

[9] This last statute is not even among those identified as potential RICO predicates in § 1961.

[10] Plaintiffs make absolutely no effort to satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading standard with respect to their stray references to mail and wire fraud. Their invocation of those predicate acts is clearly meritless. *See Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1362-63 (10th Cir. 1989) (affirming dismissal with prejudice of civil RICO complaint for failure to allege mail and wire fraud with particularity).

F.3d 1201, 1211 (10th Cir. 2020); *Gillmor v. Thomas*, 490 F.3d 791, 797 (10th Cir. 2007). This failure to plead any elements of a civil RICO claim under § 1964(c) dooms Plaintiffs' additional RICO conspiracy claim under § 1964(d) as well. *See Tal*, 453 F.3d at 1270.[11]

*        *        *        *        *

Plaintiffs' proposed amended complaint comes nowhere close to satisfying applicable legal standards. Their arguments to the contrary range from meritless to frivolous, and from bizarre to downright offensive. No matter how many hundreds of "registered voters" they induce to join their case, Plaintiffs lack standing under elementary principles of constitutional law. That was true of the original complaint and it remains true of this one—in ways that CTCL and other Defendants have thoroughly explained, and that Plaintiffs have ostentatiously failed to remedy. Similarly, despite including many outrageous and false accusations in their filings, Plaintiffs have not stated a claim. Once again, that was true of the original complaint and it remains true of this one—in ways that Plaintiffs had ample time and opportunity to consider. No matter how severely Plaintiffs ignore, distort, or miscite precedent—and no matter what new calumnies they advance—the bottom line is that their case has no business proceeding before this Court (or any other).

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for leave to file an amended complaint as futile. In the alternative, if the Court dockets the proposed amended complaint, the Court should immediately dismiss it *sua sponte*.

---

[11] The conspiracy claim also fails for the additional reason that Plaintiffs have not plausibly alleged the elements of a conspiracy, such as a meeting of the minds. *See Kriston v. Peroulis*, No. 09 Civ. 909, 2010 WL 1268087, at *8 n.5 (D. Colo. Mar. 29, 2010).

Respectfully submitted,

Joshua Matz
Michael Skocpol
Marcella Coburn
Louis W. Fisher
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, NY 10118
Telephone: 212.763.0883
Facsimile: 212.564.0883
Email: jmatz@kaplanhecker.com
        mskocpol@kaplanhecker.com
        mcoburn@kaplanhecker.com
        lfisher@kaplanhecker.com

*Attorneys for Defendant Center for Tech and Civic Life*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 29, 2021, a true and correct copy of the foregoing Brief in Opposition to Plaintiffs' Motion for Leave to Amend the Complaint and, in the Alternative, Request to Dismiss the Amended Complaint was electronically filed with the Court using the CM/ECF system which will send notifications of such filing to all counsel of record.

Joshua Matz