IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-3747-NRN

KEVIN O'ROURKE, et al.,

Plaintiffs, on their own behalf and of a class of
similarly situated persons,

v.

DOMINION VOTING SYSTEMS INC., et al.,

Defendants.

# DEFENDANT FACEBOOK, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND

**I.      INTRODUCTION**

While Plaintiffs move to add 152 Plaintiffs, four Defendants, six causes of action, and 473 paragraphs to their complaint, none of the amendments cure the fatal defects Facebook identified in their initial pleading. In fact, Plaintiffs' proposed amended complaint makes the numerous insurmountable problems with their suit even more readily apparent.

The proposed amendment does not—and cannot—fix the many deficiencies in this lawsuit. Plaintiffs still provide no basis for this Court to exercise personal jurisdiction over Facebook in Colorado. Nor do Plaintiffs' conclusory allegations show a concrete, particularized injury or meet any other part of their burden to establish Article III standing. Plaintiffs' claims remain barred by both Section 230 of the Communications Decency Act (CDA) and the First Amendment, and their constitutional claims are still not cognizable because Facebook is not a state actor.

Plaintiffs further state no viable claims against Facebook for several other reasons. They rely on statutes with no independent cause of action or fail to state even the basic elements of their claims. Their new racketeering claims likewise contain a host of incurable defects, including the failure to allege any plausible or cognizable racketeering acts.

Plaintiffs had the opportunity to review multiple Defendants' motions to dismiss and yet failed to address the deficiencies in their pleading—indeed, they double-down on many of their initial missteps.[1] Leave to amend should be denied and the case dismissed with prejudice.

---

[1] Plaintiffs' doubling-down stands in sharp contrast to the recent retreat from such assertions by Sidney Powell, the attorney who filed many cases with allegations Plaintiffs now parrot here; Ms. Powell has now acknowledged in a formal pleading that no reasonable person would accept the allegations as fact. *See US Dominion Inc. v. Powell*, No. 21-cv-0040-CJN, Dkt. 22 at 27-28 (D.D.C Mar. 23, 2021).

## II. PROCEDURAL HISTORY

Plaintiffs filed their original compliant on December 22, 2020. Dkt. 1. Facebook was not served until January 5, 2021. *See* Dkt. 17, ¶ 1. On January 25, 2021, the parties stipulated to a three-week extension of Facebook's deadline to move to dismiss or respond to the complaint. *Id.* Facebook filed its motion to dismiss on February 16 (Dkt. 23), and several other Defendants filed motions to dismiss cataloguing the litany of incurable issues with Plaintiffs' action over the next few weeks. Dkt. 41 (CTCL Mot. to Dismiss); Dkt. 46 (Whitmer Mot. to Dismiss); Dkt. 47 (Kemp Mot. to Dismiss); Dkt. 48 (Wolf Mot. to Dismiss).

Plaintiffs submitted their overlong opposition to Facebook's motion to dismiss three weeks later (Dkt. 40) and did not submit their motion for leave to amend until March 15. Dkt. 48. Plaintiffs now seek to add over four hundred new paragraphs, many additional claims, and four additional Defendants to this suit. In particular, Plaintiffs seek to add two claims against Facebook, the Center for Technology and Civil Life (CTCL), Mark Zuckerberg, and Priscilla Chan under the Racketeering Influenced and Corrupt Organizations Act (RICO). Dkt. 48, Prop. Compl. at 95–101. Plaintiffs also seek to add four state law election-related claims against state officials in Michigan, Georgia, Pennsylvania, and Wisconsin. *Id.* at 101–113.

## III. LEGAL STANDARD

The Federal Rules of Civil Procedure grant amendment as of right where the amendment is made within 21 days after service of a motion under Rule 12(b). Fed. R. Civ. P. 15(a)(1)(B). After this period, amendment may only be granted with the court's leave "when justice so requires." *Id.* 15(a)(2). A court may deny leave to amend when amendment would be futile. *Forman v. Davis*, 371 U.S. 178, 182 (1962).

"A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007); *Midcities Metro. Dist. No. 1 v. U.S. Bank Nat'l. Ass'n.*, 44 F. Supp. 3d 1062, 1068 (D. Colo. 2014) (denying leave to amend where Plaintiff had no standing). The factual allegations in a proposed complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009).

## IV.   ARGUMENT

Plaintiffs' proposed complaint cannot survive a motion to dismiss. Despite adding purported Colorado residents as Plaintiffs, their conclusory allegations still do not include any specific facts to support the exercise of personal jurisdiction over Facebook in Colorado on these election-related claims. Plaintiffs also continue to base their Article III standing allegations on a generalized grievance common to all registered voters and still never trace their alleged concerns with the 2020 election's administration or outcome to any particular Facebook conduct.

Their claims also continue to suffer from the same fatal defects that Facebook already identified in its prior motion to dismiss. Facebook is still not a state actor, and Plaintiffs' claims seeking to hold Facebook liable for its protected content-moderation decisions on its private social media platform still fail to plead the basic legal predicates of a cognizable claim under any statute. In addition, their ever-expanding complaint is not the sort of "short and plain statement" required by the Federal Rules, and wrongly attempts to shift their burden onto this Court and Defendants to piece together their claims for them. Leave to amend should be denied.

### A.   There Is Still No Basis For Jurisdiction Over Facebook

Plaintiffs' first complaint failed to establish personal jurisdiction over Facebook in

3

Colorado on their claims. *See* Dkt. 23; Dkt. 56. Plaintiffs now assert that personal jurisdiction exists because: (i) "Facebook and Dominion are doing business in Colorado, and were used by all the [foreign Defendant] States"; (ii) "Colorado is centrally located and the Defendants have minimum contacts with Colorado"; or (iii) "[e]very Defendant used Facebook, the US Mail, and electronic communications over the internet that effected interstate commerce." Dkt. 48 at 5.

None of these allegations establish personal jurisdiction over Facebook in Colorado on Plaintiffs' claims. Plaintiffs cannot assert nationwide jurisdiction over Facebook on threadbare and implausible allegations about the purported "damage [to] registered voters of every state" from the 2020 election. Dkt. 48 at 5. Instead, Plaintiffs are required to show that the Colorado "activities of the corporate defendant ha[ve] not only been continuous and systematic, but also *gave rise to the liabilities* sued on." *Daimler AG v. Bauman*, 571 U.S. 117, 126–28 (2014) (emphasis added). The mere facts that Colorado is centrally located within the United States, that Michigan, Pennsylvania, Georgia, and Wisconsin did business with Dominion, and that "[e]very [foreign state] Defendant used Facebook," (Dkt. 48 at 5), in interstate commerce have nothing to do with whether any specific Facebook conduct in Colorado injured Plaintiffs in a manner that gives rise to their election-related claims.

Even if a Colorado resident's mere use of Facebook could possibly constitute a "minimum contact" with the state *by* Facebook,[2] Plaintiffs still do not show that the out of state conduct

---

[2] Plaintiffs' allegations regarding Facebook's minimum contacts with Colorado arise out of an online connection between the state and Facebook, which the Supreme Court never has held is sufficient to establish a "minimum contact" with the state giving rise to specific personal jurisdiction. *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 592 U.S. ___ (Mar. 25, 2021) (slip op.) at 12 n.4 (explaining Court was not "consider[ing] internet transactions, which may raise doctrinal questions of their own"); *id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 290 n.9 (2014)

dealing with election administration is related to any of these purported "contacts" between Facebook and Colorado. *Bristol-Myers Squibb Co. v. Sup. Ct.*, 137 S.Ct. 1773, 1381 (2017) ("What is needed – and what is missing here – is a connection between the forum and the specific claims at issue"); *see also Ford Motor Co.*, 592 U.S. ___ (slip op.) at 18 (because the "resident-plaintiffs alleged they suffered in-state injury because of defective products Ford extensively promoted, sold, and serviced in Montana and Minnesota," the "connection between Plaintiffs' claims and Ford's activities in those states . . . is close enough to support specific jurisdiction"). Nowhere in the proposed complaint do any of the Colorado-based Plaintiffs allege that their right to vote was actually barred by Facebook's conduct in Colorado, that Facebook took any action that resulted in their particular vote not being counted in Colorado, or that any of Facebook's purported conduct in Colorado violated any specific law upon which they sue. Personal jurisdiction does not lie over Facebook in Colorado on Plaintiffs' claims.

**B.      Plaintiffs Still Do Not Satisfy Article III's Standing Requirements**

Plaintiffs' proposed complaint continues to parrot their deficient standing arguments and fails for the same reasons Facebook already identified. *See* Dkt. 23; Dkt. 56. Not only have Plaintiffs failed to shore up the defects in their original pleading, Plaintiffs double-down on their initial deficiencies, and never allege a concrete and personal injury fairly traceable to Facebook's conduct that could be redressed by the sweeping relief they seek. Plaintiffs seek to add more than a hundred registered voters in various states with no connection to their claims other than being registered voters, all purportedly seeking "to vindicate the rights as registered voters" of a national

---

("[T]his case does not present the very different questions of whether and how a defendant's virtual 'presence' and conduct translate into 'contacts' with a particular State.")).

class, including sub-classes of "Republican, Democrats, Third-Parties, Independents, and Disgruntled Voters." Dkt. 48 at 4; Dkt. 48-1 ¶¶ 52–212. Indeed, Plaintiffs candidly assert they seek standing simply as "the people." Dkt. 48-1 ¶ 232; *see also id.* ¶ 677 ("This hurts every voter in the country irrespective of voter affiliation"); *id.* ¶ 693 ("all of which damaged the Plaintiffs, but more broadly, every registered voter in America, all of whom have an interest in free and fair elections"). Their standing allegations press the same generalized grievance that court after court has already held inadequate. Dkt. 23 at 5-6.

Plaintiffs nevertheless continue to argue that "nominal damages create standing and jurisdiction of this Court in vindication of rights." Dkt. 48 at 6. Even assuming *arguendo* that Plaintiffs can seek $160 billion in nominal damages (they cannot), this argument cannot satisfy their standing burden to show a concrete, particularized injury fairly traced to Facebook's alleged conduct. Dkts. 23 at 4-8; Dkt. 56 at 4-7. Nor does it satisfy their burden to show that the other relief they seek would redress their generalized grievance about the election's administration or results. *Id.* There is no Article III injury for voters writ large related to the 2020 election based on allegations about the improper counting of votes, *Wood v. Raffensberger*, 981 F.3d 1307, 1314–15 (11th Cir. 2020); state and local laws expanding voting access, *Feehan v. Wisc. Elecs. Comm.*, 2020 WL 7250219, at *8 (E.D. Wisc. Dec. 9, 2020); or vote dilution due to purported issues with election administration, *Bowyer v. Ducey*, 2020 WL 7238261, at *5 (D. Ariz. Dec. 9, 2020).[3]

Plaintiffs also have still not addressed their independent obligation to show their

---

[3] *See also* Dkt 47 at 11 (Kemp Mot. to Dismiss) ("The Supreme Court has stated that, in vote dilution and gerrymandering cases, the injury is district specific and not state-wide in nature, and thus, a voter only has standing to bring claims concerning their own district.") (citing *Gill v. Whitford*, 138 S.Ct. 1916, 1930); Dkt. 49 at 9 (Wolf Mot. to Dismiss) (same and collecting cases).

generalized grievance with the 2020 election's outcome or administration is fairly traceable to any of Facebook's alleged conduct. As in the original complaint, Plaintiffs' allegations again relate exclusively to Facebook's moderation of content on its private platform and conclusory assertions that Facebook is the alter ego of Mark Zuckerberg. For the same reasons Facebook has already laid out, these allegations do not meet Article III's stringent standing requirements on causation. Dkt. 23 at 4-6; Dkt. 56 at 4-7. And Plaintiffs still fail entirely to explain how their sweeping requests for declaratory and injunctive relief—including a declaration that the certified result of the election in four states was unlawful and should be given no effect—could redress their alleged grievances now that the election is over and a new President is in office.

### C. Section 230 and the First Amendment Bar Plaintiffs' Claims

Section 230 and the First Amendment continue to bar Plaintiffs' claims against Facebook. As Facebook previously argued, Plaintiffs' claims seek to hold Facebook liable for making decisions about what content to allow on its private platform. Plaintiffs' conclusory allegations of purported "censorship" make clear that all of their claims attack the core of Facebook's discretion over whether to allow certain *content posted by others*, including Plaintiffs' new racketeering claims that implausibly attempt to transform Facebook's ordinary exercise of discretion over its platform into an unlawful enterprise. Dkt. 23 at 12-14; Dkt. 56 at 12-15. Both Section 230 and the First Amendment prevent these claims. *See* Dkts. 23 at 8-9, 12-14; Dkt. 56 at 11.

### D. Plaintiffs Fail to Plead Any Cognizable Claims

Plaintiffs continue to allege an eclectic assortment of claims against Facebook and the other Defendants, ranging from purported civil rights violations to civil racketeering claims. But none of these claims could survive a motion to dismiss for several additional reasons.

### 1. Plaintiffs Cannot Plead a Constitutional Challenge to Section 230

Plaintiffs seek to allege an identical facial and as-applied constitutional challenge to Section 230, which merely adds more paragraphs repeating their earlier allegations that Facebook purportedly removed certain posts from its platform. In particular, Plaintiffs still make conclusory allegations at greater length that Facebook refused to publish certain conservative viewpoints, information that Facebook "believed would delegitimize the US election or question the veracity of mail-in voting," and negative information about President Biden. Dkt 48-1 ¶¶ 335-42.

These amendments do nothing to shore up the issues with Plaintiffs' first attempt to plead this claim. The new allegations parrot their theory that Section 230's bar of their claims against Facebook somehow violates Plaintiffs' First Amendment rights—even though Facebook is not a state actor and courts have consistently held as such. *See* Dkt. 56 at 8 n.4 (collecting cases). Plaintiffs also still have not explained how application of Section 230's bar to their claims against Facebook could violate any First Amendment right they hold in light of Facebook's own First Amendment rights to make decisions about what to publish on its website. Dkt. 56 at 13-14. Plaintiffs have not pled any cognizable constitutional theory to challenge Section 230.

### 2. Facebook Is Not a State Actor Subject to the Constitutional Claims

Plaintiffs now allege that Facebook is a state actor "under every test" ever applied by the Supreme Court to any entity. Dkt. 48 at 9. But Plaintiffs never actually plead any allegations that come close to satisfying any of the state action tests. Because Plaintiffs do not (and cannot) make any new factual allegations that Facebook performed functions "traditionally exclusively performed" by the state equivalent to a company town, so "intertwined" itself with state functions so as to be symbiotic with the state, formed a "close nexus" with the state in the administration of

8

the election, or conducted any other "joint activity" with the state, Plaintiffs have still failed to state their constitutional claims. *See* Dkt. 23; Dkt. 56.

### 3. Plaintiffs Fail to Plead Civil RICO Claims

Plaintiffs do not plead cognizable RICO claims against Facebook. With respect to Plaintiffs' enterprise racketeering claim (Count V), "[t]o successfully state a [civil] RICO claim, a plaintiff must allege four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity," causing an actual injury to plaintiff's business or property. *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002). "Under Rule 9(b), plaintiffs must sufficiently allege each element of a RICO violation and [at least two] predicate acts of racketeering with particularity." *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 989 (10th Cir. 1992). Where Plaintiffs plead that the predicate racketeering acts are based in fraud, those underlying offenses must also be alleged with particularity under Rule 9(b). *Lynn v. Brown*, 803 F. App'x 156, 161 (10th Cir. 2020); *see also Ad-X Intern., Inc. v. Kolbjornsen*, 97 F. App'x 263, 265 (10th Cir. 2004) ("Predicate acts of fraud for a RICO claim must satisfy the heightened pleading standard of Fed. R. Civ. P. 9."). Plaintiffs do not meet their burden on any element of their claims. Indeed, Plaintiffs do not even bother to recite the basic elements for any unlawful conduct.

#### a) Plaintiffs Do Not Allege Conduct of an Enterprise

Plaintiffs have not adequately alleged that Facebook is part of an "enterprise." To plead an enterprise, a plaintiff must allege: "(1) that there is an ongoing organization with a decision-making framework or mechanism for controlling the group, (2) that various associates function as a continuing unit, and (3) that the enterprise exists separate and apart from the pattern of racketeering activity." *Kearney v. Dimanna*, 195 F.App'x 717, 720 (10th Cir. 2006). A bare

9

recitation of these elements without supporting factual averments is insufficient.

Plaintiffs assert that Facebook, Mark Zuckerberg, Priscilla Chan, and CTCL formed an enterprise with the purpose of "affect[ing] the outcome of Presidential elections, and to influence, conceal, intimidate, sue threaten, censor and fact-check those who attempt to expose its unlawful and unconstitutional activities." Dkt. 48-1 ¶ 756.  They also allege that the "enterprise utilizes and assembles additional, loosely affiliated organizations and persons to cause unrest and civil discord, racial divisions, and other methods of intimidating the Nationwide Class." *Id.* ¶ 757.  But the only alleged activity between Facebook and the other three members of the purported enterprise is vaguely that: (i) Facebook is "described as a partner and funder by CTCL," *id.* ¶ 32; (ii) Mark Zuckerberg is Facebook's CEO, *id.* ¶¶ 329, 347; and (iii) Priscilla Chan is his wife, *id.* ¶ 350.

These general and conclusory allegations are insufficient to plead any cognizable RICO enterprise.  *Kearney*, 195 F. App'x at 720.  Plaintiffs do not plead facts showing how this alleged enterprise is controlled or how decisions are made.  *See* Dkt. 48-1 ¶ 763 (alleging only generally that "[e]ach participant in the enterprise had a systematic linkage with each other to coordinate their activities through corporate or non-profit organization ties, political associates, civic societies, contractual relationships, and financial ties"); *Reich v. Genzyme Corp.*, 2015 WL 13236347, at *8 (D. Colo. Aug. 14, 2015) (holding plaintiffs "have not specifically identified the requisite enterprise" where there was "no particularity in the pleading which identifies the 'organization' by name or with any specificity regarding its existence").  And many of Plaintiffs' vague allegations seem to refer to other unclear and unnamed actors, rather than the named Defendants in this count.  *See, e.g.*, 48-1 ¶ 759 ("Defendants continue to participate *as public officials* in charge of the evidence of their misdeeds, use political influence and intimidation to

conceal and block access to public records…"). As a result, the proposed complaint "does not connect the defendants' different conduct to the alleged enterprise or provide a plausible basis for finding that the defendants were and are functioning as a continuing unit." *Lynn*, 803 F. App'x at 161. Nor does it explain how the purported "enterprise exists separate and apart from the [alleged] pattern of racketeering activity." *Id.*; *see also Kearney*, 195 F. App'x at 720 (no enterprise where there was "no indication that the 'association' had any existence or purpose outside of the alleged malicious prosecution and intimidation of [Plaintiff]"); *Johnson v. Myelin Productions*, 2013 WL 4551888, at *3 (D. Colo. Aug. 28, 2013) ("Absent the alleged copyright infringement there would not be an association-in fact among Defendants").

### b) Plaintiffs Do Not Allege Any Racketeering Acts

Plaintiffs fail to allege Facebook engaged in any pattern of racketeering activity. In their proposed complaint, Plaintiffs allege that Facebook committed several vague acts, none of which are plausible, criminal, or even cognizable under RICO. To establish a "pattern of racketeering activity," Plaintiffs must point to the "commission of at least two predicate acts." *Deck v. Engineered Laminates*, 349 F.3d 1253, 1257 (10th Cir. 2003); *Sullivan v. University of Kansas Hospital Authority*, 2021 WL 303142, at *3 (10th Cir. Jan. 29, 2021) (affirming dismissal of RICO claim where plaintiff "offered only conclusory allegations of criminal conduct, untethered to any specific factual averments"). These acts may include state law offenses or federal crimes enumerated in 18 U.S.C. § 1961(1).

Plaintiffs first allege in conclusory fashion that Facebook "tamper[ed] with or intimidat[ed] class participants in violation of 18 U.S.C. § 1512 and 18 U.S.C. § 241." Dkt 48-1 ¶ 758. But 18 U.S.C. § 241 is not even one of the offenses enumerated by Congress as a predicate act for civil

11

liability under RICO. *See* 18 U.S.C. § 1961(1). Even if it were, it still would not be a viable predicate act as Plaintiffs point to no official, federal proceeding involving any witnesses or any actual tampering or intimidation. *Deck*, 349 F.3d at 1257 ("witness tampering is actionable under 18 U.S.C. § 1512 only if it takes place 'in an official proceeding,'" "defined in § 1515(a)(1) to include only federal proceedings").

Plaintiffs next summarily allege that Facebook committed mail and wire fraud to manipulate the 2020 election. Dkt. 48-1 ¶ 768. Yet Plaintiffs are "required to do more than just list these alleged predicate acts to state a RICO claim – [they] need[] to plead the elements of each predicate act, and to do so with particularity with respect to those sounding in fraud." *Lynn*, 803 F. App'x at 161. This requires Plaintiffs comply with Federal Rule 9(b) for both the mail and wire fraud allegations, including identifying "the time, place and contents of the false representation[s], the identity of the party making the false statements, and the consequences thereof." *George v. Urban Settlement Servs.*, 833 F. 1242, 1254 (10th Cir. 2016). Plaintiffs do none of this. Rather, Plaintiffs list a number of vague lawful actions they allege all Defendants engaged in such as sending "emails and letters between Defendants." Dkt. 48–1 ¶ 765(f). Plaintiffs' proposed complaint, however, fails to allege any specific fraudulent statements *Facebook* made, who it made them to, when it made them, and "the content and manner in which the statements misled the plaintiffs." *See, e.g., Transatlantic, LLC v. Humana, Inc.*, 2016 WL 7319711, at *3 (M.D. Fla. Mar. 4, 2016), *aff'd*, 666 F. App'x. 788 (11th Cir. 2016) (dismissing civil RICO claim despite Plaintiff making "some specific allegations regarding the amount of certain transfers the Plaintiffs claimed constituted racketeering activity"). Plaintiffs' proposed complaint does not provide the factual specificity required to sustain a civil RICO claim at this stage. *See, e.g., Pineda v. Saxon*

*Mortg. Servs., Inc.*, 2008 WL 5187813, at *4 (C.D. Cal. Dec. 10, 2008) (collecting cases holding that "[c]ourts should … strive to flush out frivolous RICO allegations at an early stage of the litigation" and such claims must "attribute[e] specific conduct to individual defendants").

                c)        **Plaintiffs Do Not Plead Any Cognizable RICO Injury**

A plaintiff must show that "he was injured in his business or property by reason of the defendant's violation of § 1962" to bring a civil RICO claim. *Deck*, 349 F.3d at 1257. This element "requires that a plaintiff prove but-for and proximate causation," *CGC Holding Co., LLC v. Hutchens*, 974 F.3d 1201, 1213 (10th Cir. 2020), including that the "alleged violation led directly to the plaintiff's [purported] injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006).

Here, Plaintiffs do not allege any injury to business or property. Instead, Plaintiffs plead a purported generic "loss of rights," Dkt. 48-1 ¶ 774. But it is well-established that is not an injury cognizable under RICO. *See Deck*, 349 F.3d at 1257; *McCormick v. City of Lawrence*, 325 F. Supp. 2d 1191, 1209 (D. Kan. 2004) ("RICO only provides damages for injury to business or property. Although [the] [p]laintiffs claim that their First Amendment rights are 'property' within the meaning of RICO, the court disagrees.") (citation omitted)), *aff'd*, 130 F. App'x. 987 (10th Cir. 2005); *Westchester Cnty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 613 (S.D.N.Y. 2015) (collecting cases). In any event, Plaintiffs never actually plead any cognizable injury to their voting rights. They never allege they were actually denied the right to vote or explain how their votes went uncounted as a "direct" result of any purported action of Facebook or other Defendants.

                d)        **Plaintiffs Do Not Plausibly State a Conspiracy to Violate RICO Under § 1962(d)**

Because Plaintiffs' enterprise racketeering claim (Count V) fails for the reasons described above, so too does their conspiracy claim under § 1962(d) (Count VI). To "prevail under 18 U.S.C.

§ 1962(d) . . . [Plaintiffs must] show that the [Defendants] conspired to violate RICO in some way." *CGC Holding Co.*, 974 F.3d at 1211; *see also Tal v. Hogan*, 453 F.3d 1244, 1270 (10th Cir. 2006). Accordingly, because Plaintiffs have "no viable claim under § 1962(a), (b), or (c), then [their] subsection (d) conspiracy fails as a matter of law." *Id.*

### 4. Plaintiffs' Remaining Claims Are Not Cognizable

Plaintiffs purport to bring causes of action under 42 U.S.C. §§ 1985, 1986, and 1988, which fail for the reasons stated above. But, as Defendants previously explained, these claims fail for several other reasons, including that Section 1988 is not an independent cause of action and Plaintiffs have not plead that Facebook is motivated by "racial, or perhaps otherwise class-based, invidiously discriminatory animus." Dkt. 41 at 13 (collecting cases). The proposed amendment does not—because it cannot—fix the deficiencies in Plaintiffs' pleadings as to these claims.[4]

### E. Plaintiffs' Proposed Complaint Fails to Comply With the Federal Rules

Plaintiffs' proposed complaint spends almost 900 paragraphs across 115 pages making disjointed, conclusory, and repetitive allegations, interspersed with citations to cases, articles, and websites. The complaint is not the "short and plain statement" required by Fed. R. Civ. P. 8(a).

Overlong complaints characterized by "a vague and rambling collection of legal citations and generalized averments" and "attach[ments of] pages of documents" unfairly shift the burden onto the courts and Defendants to "search through and cobble together [Plaintiffs'] claims". *See, e.g.*, *Serrano v. New Mexico*, 2019 WL 6911116, at *3 (D.N.M. Dec. 18, 2019). Neither the courts

---

[4] Plaintiffs also challenge the constitutionality of Michigan, Pennsylvania, Wisconsin, and Georgia statutes. For the reasons described in Facebook's motion to dismiss (Dkt. 23), reply in support of its motion to dismiss (Dkt. 56), and in section IV.B. *supra*, Plaintiffs cannot bring those claims, as courts sitting in those states have already held.

nor Defendants are obligated to do so. *Id.*; *see also Fox v. California Fran. Tax Bd.*, 443 F. App'x. 354, 356 (10th Cir. 2011) (affirming dismissal with prejudice where trial court rejected complaint that was "difficult to follow[ ] and replete with unnecessary legal citations and analysis"); *Mann v. Boatwright*, 477 F.3d 1140, 1148 (10th Cir. 2007) (99-page complaint's failure to comply with Rule 8(a) was "sufficient reason to dismiss" as "sheer length . . . made [the complaint] unintelligible" and it was "not the district court's job to stitch together cognizable claims for relief"); *Woodward v. Raymond James Fin., Inc.*, 732 F. Supp. 2d 425, 428 n.2 (S.D.N.Y. 2010) ("extreme length of the . . . [c]omplaint is an independent ground for dismissal"); *Patel v. Parnes*, 253 F.R.D. 531, 554 n. 198 (C.D. Cal. 2008) (collecting cases).

Plaintiffs assured the Court their proposed complaint would specifically address the issues identified by Defendants in their prior pleading. They did nothing of the sort. Plaintiffs have not stated a claim, filed numerous overlong pleadings in violation of local and federal rules, and delayed adjudication of their election-related claims until well after the election by their tardy filing of the complaint and late service of Defendants. Yet they now seek to add even more Defendants, hundreds of new Plaintiffs and cross-referenced declarations, 473 more paragraphs across dozens more pages, and several new non-Colorado state-law claims that have been rejected by numerous federal and state courts sitting in those actual states. Denial of leave to amend and dismissal of their claims with prejudice is appropriate. *Fox*, 443 F. App'x. at 357; *In re Level 3 Commun., Inc. Sec. Litig.*, 2010 WL 5129524, at *7 (D. Colo. Dec. 10, 2010), *aff'd sub nom*, 667 F.3d 1331 (10th Cir. 2012) (135-page "'hydra-like complaint' . . . should, at a minimum, be dismissed" as "plaintiff received the benefit of defendants' motion to dismiss and, thereafter, requested leave to file the now-operative complaint").

Dated: March 29, 2021

Respectfully submitted,

/s/ Joshua S. Lipshutz

Joshua S. Lipshutz
**GIBSON DUNN & CRUTCHER LLP**
1050 Connecticut Avenue, NW
Washington, DC  20036
Telephone:	202.955.8217
Facsimile:	202.530.9614
Email:	jlipshutz@gibsondunn.com

Ryan T. Bergsieker
Natalie J. Hausknecht
**GIBSON, DUNN & CRUTCHER LLP**
1801 California Street, Suite 4200
Denver, CO  80202-2642
Telephone:	303.298.5700
Facsimile:	303.298.5907
Email:	rbergsieker@gibsondunn.com
	nhausknecht@gibsondunn.com

Craig B. Streit
**GIBSON, DUNN & CRUTCHER LLP**
555 Mission Street, Suite 3000
San Francisco, CA  94105
Telephone:	415.393.8225
Facsimile:	415.374.8487
Email:	cstreit@gibsondunn.com

*Attorneys for Facebook, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2021, I electronically filed a copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to the e-mail addresses denoted on the Court's Electronic Mail Notice List.

/s/ Joshua S. Lipshutz
Joshua S. Lipshutz