IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-03747

KEVIN O'ROURKE, et al.,

Plaintiffs,

v.

DOMINION VOTING SYSTEMS INC., et al.,

Defendants.

**PLAINTIFFS' REPLY TO DOMINION'S RESPONSE
RE: PLAINTIFFS' MOTION TO AMEND**

Plaintiffs, by and through counsel, submit their Reply to Defendant Dominion Voting Systems, Inc. (Dominion) Response [Doc. 61] regarding Plaintiffs' Motion to Amend [Doc. 48], and in support state as follows:

## I.  INTRODUCTION

Plaintiffs are seeking the first amendment of their initial Complaint, filed on December 22, 2020 [Doc. 1]. Although Dominion challenges Plaintiffs' right to assert their claims, Plaintiffs have satisfied their fundamental pleading requirements to establish a redressable injury, after a completed violation of a constitutional right, traceable to the actions of Dominion.

As alleged, Dominion's widespread and significant involvement in the 2020 Presidential election (Election) bound it, as a state actor, to the limits of the Constitution, and Dominion broke those constraints. Dominion's denials regarding the level of their involvement in the Election, a factual question to be answered later, must be presently rejected. Plaintiffs have been wrongfully injured by Dominion, and should be permitted to proceed with claims of damages their Amended Complaint.

## II.     PLAINTIFFS HAVE ESTABLISHED STANDING

Plaintiffs have satisfied their fundamental pleading burden of establishing their right to proceed with a claim against Dominion:

> To satisfy the 'irreducible constitutional minimum' of Article III standing, a plaintiff must not only establish (1) an injury in fact (2) that is fairly traceable to the challenged conduct, but he must also seek (3) a remedy that is likely to redress that injury. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

*IUzuegbunam v. Preczewski*, 592 U.S. ____ (2021) (slip op., p. 3).

Plaintiffs also sufficiently alleged their claims:

> At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we "presum[e] that general allegations embrace those specific facts that are necessary to support the claim."

*Lujan v Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (quoting *Lujan v. National Wildlife Federation,* 497 U.S. 883, 889 (1990)).

F.R.C.P. 15(a)(2) provides that "a party may amend its pleading [with] the court's leave" and that "[t]he court should freely give leave when justice so requires."

As determined by the Supreme Court, F.R.C.P. 15(a) declares that leave to amend shall be freely given when justice so requires. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "[T]his *mandate is to be heeded*." *Id*. [Emphasis added].

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given. Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Id.*

### A. PLAINTIFFS HAVE SUFFERED AN INJURY IN FACT

Plaintiffs have alleged violations of their constitutional rights, and generally challenged the due process Dominion provided to administer the Election, as more fully outlined in their Amended Complaint. [Doc. 48, Attachment 1.] Cognizable injuries are:

> [a]n "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) "actual or imminent, not 'conjectural' or hypothetical.'"

*Defenders of Wildlife*, 504 U.S. at 561 (*quoting Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).

There, even "purely esthetic purposes" can be enough of an injury:

> Of course, the desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing.

*Id.* (*citing Sierra Club v. Morton,* 405 U.S.727, 734 (1972)).

Plaintiffs' interests in the due process of the Election and their fundamental right to vote are certainly more significant, and less publicly common, than a denial of esthetic pleasure derived from wildlife gazing. Importantly, every member of the class has each suffered this injury, separate and distinct from members of the public:

> [T]he "injury in fact" test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured.

*Id.* (*quoting Sierra Club v. Morton,* 405 U.S. at 734-735).

### B. A CONSTITUTIONAL INFRINGEMENT IS AN INJURY IN FACT

In *Uzuegbunam*, the Supreme Court clarified that suffering a violation of a constitutional right is an injury in fact, and further clarified that nominal damages are sufficient to redress that injury. There, the Court detailed the long history of finding injury in fact from a violation of rights, including voting rights:

3

> An early case about voting rights effectively illustrates this common-law understanding. Faced with a suit pleading denial of the right to vote, the court rejected the plaintiff's claim because, among other reasons, the plaintiff had not established actual damages. *Ashby v. White*, 2 Raym. Ld. 938, 941-943, 948, 92 Eng. Rep. 126, 129, 130, 133 (K. B. 1703). Dissenting, Lord Holt argued that the common law inferred damages whenever a legal right was violated. Observing that the law recognized "not merely pecuniary" injury but also "personal injury," Lord Holt stated that "every injury imports a damage" and that a plaintiff could always obtain damages even if he "does not lose a penny by reason of the [violation]." *Id.*, at 955, 92 Eng. Rep., at 137. Although Lord Holt was in the minority, the House of Lords overturned the majority decision, thus validating Lord Holt's position, 3 Salk. 17, 91 Eng. Rep. 665 (K. B. 1703), and this principle "laid down . . . by Lord Holt" was followed "in many subsequent cases," *Embrey v. Owen,* 6 Exch. 353, 368, 155 Eng. Rep. 579,585 (1851).
>
> * * *
>
> *Because the common law recognized that "every violation imports damage," Justice Story reasoned that "[t]he law tolerates no farther inquiry than whether there has been the violation of a right." Ibid.* Justice Story also made clear that this logic applied to both retrospective and prospective relief. *Id.,* at 507 (stating that nominal damages are available "wherever there is a wrong" and that, "[a] fortiori, this doctrine applies where there is not only a violation of a right of the plaintiff, but the act of the defendant, if continued, may become the foundation, by lapse of time, of an adverse right".

*Uzuegbunam*, *supra*, slip op., p. 6. [Emphasis added].

> That this rule developed at common law is unsurprising in the light of the noneconomic rights that individuals had at that time. *A contrary rule would have meant, in many cases, that there was no remedy at all for those rights, such as due process or voting rights, that were not readily reducible to monetary valuation*.

*Id.* [Emphasis added].

### C.   PLAINTIFFS' INJURIES ARE NOT GENERAL GRIEVANCES

Plaintiffs have not simply claimed general grievances because not all members of the public possessed the right to vote in the Election. Only those who had met minimum eligibility qualifications, and had properly completed a legislatively proscribed registration process, possessed the right, and could legally vote. Instead, this case is "simply a case where concrete injury has been suffered by many persons, as in mass fraud or mass tort situations." *Defenders of*

4

*Wildlife*, 504 U.S. at 561. This is "a case where plaintiffs are seeking to enforce a procedural requirement the disregard of which [did] impair a separate concrete interest of theirs." *Id*.

Plaintiffs' qualified voting rights are not merely "public rights that have been legislatively pronounced to belong to each individual who forms part of the public." *Id*. Certainly, members of the public are each impacted equally by the ultimate results of an election. But members of the public, generally, cannot vote. Members of the public, who are not registered voters, did not possess a right to vote in the Election, and could not legally vote. Members of the public could not have been deprived of due process during the administration of the Election, because they possessed no right to participate.

*Wood v. Raffensperger*, 981 F.3d 1307 (11th Cir. 2020), relied upon by Dominion, supports Plaintiffs' position even though it found that the plaintiff in that case did not have standing to ask a federal court to enforce extraordinary injunctive relief against a sovereign state. Importantly, in *Wood*, the plaintiff did not seek any form of monetary damages against public officials. The *Wood* court explained that the plaintiff "base[d] his standing on his interest in 'ensuring that . . . only lawful ballots are counted,'" and the court reasoned that "[a]ll Americans, whether they voted in this election or whether they reside in Georgia, could be said to share Wood's interest in "ensur[ing] that [a presidential election] is properly administered." *Id*.

But the *Wood* court did not address whether a registered voter possessed a due process right violated by Dominion during its administration of the Election. Instead, the plaintiff in *Wood* argued "that the inclusion of unlawfully processed absentee ballots diluted the weight of his vote." But while recognizing that "[t]o be sure, vote dilution can be a basis for standing," the *Wood* court carved out simple counting errors from this category of standing:

> By contrast, "no single voter is specifically disadvantaged" if a vote is counted improperly, even if the error might have a "mathematical impact on the final tally

5

and thus on the proportional effect of every vote." Vote dilution in this context is a "paradigmatic generalized grievance that cannot support standing."

*Id*. (quoting *Bognet v. Sec'y Commonwealth of Pa*., 980 F.3d 336, 2020 WL 6686120, at *12 (3d Cir. Nov. 13, 2020).

Here, Dominion's role far exceeded the simple tabulation of votes, and many more than "a vote" from a "single voter" have been impacted. Dominion's Election administration resulted in a fundamentally unfair process as outlined in their First Amended Complaint. Importantly, Plaintiffs are not seeking extraordinary relief against a sovereign state to stop or overturn the Election, but instead, they seek monetary relief against specific state actors for violation of rights held by many, but not the public generally.

> D. **PLAINTIFFS' INJURIES ARE FAIRLY TRACEABLE TO DOMINION'S STATE ACTION**

Plaintiffs are generally challenging the due process established by Dominion through government contract, and used in 28 states, to administer the Election, as more fully stated in Plaintiffs' Amended Complaint.

> there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly. . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'

*Lujan*, 504 U.S at 561 (*quoting Simon* v. *Eastern Ky. Welfare Rights Organization,* 426 U. S. 26, 41-42 (1976).

State action is a straight line that can be traced between Dominion and Plaintiffs' injuries. *See Tanzin v. Tanvir*, 141 U.S. 486 (2020). In *Tanzin*, the Supreme Court affirmed personal liability of state actors for violation of religious freedoms by reaffirming personal liability on state actors under Section 1983 claims:

> The phrase "persons acting under color of law" draws on one of the most well-known civil rights statutes: 42 U.S.C. § 1983. That statute applies to "person[s] ... under color of any statute," and this Court has long interpreted it to permit suits against officials in their individual capacities. Because RFRA uses the same terminology as § 1983 in the very same field of civil rights law, "it is reasonable to believe that the terminology bears a consistent meaning." A suit against an official in his personal capacity is a suit against a person acting under color of law.

*Id*. at 490-91 (internal cites omitted).

> This availability of damages under § 1983 is particularly salient in light of RFRA's origins. When first enacted, RFRA defined "government" to include an "official (or other person acting under color of law) of the United States, a State, or a subdivision of a State." It made no distinction between state and federal officials. After this Court held that RFRA could not be enforced against the States, Congress narrowly amended the definition "by striking 'a State, or a subdivision of a State.'" That context is important because RFRA made clear that it was reinstating both the pre-Smith substantive protections of the First Amendment and the right to vindicate those protections by a claim. There is no doubt that damages claims have always been available under § 1983 for clearly established violations of the First Amendment.

*Id*. at 492.

Similarly, Dominion, as a state actor administering the Election in 28 states, violated Plaintiffs' due process rights and burdened their right to vote. Although Dominion argues the factual question about whether it is state actor, for purposes of Plaintiffs' Amended Complaint, Dominion's substantial involvement in the administration of the Election cannot be disputed.

### E. NOMINAL DAMAGES BY ITSELF CAN REDRESS A PAST INJURY

The constitutional violations suffered by Plaintiffs have been completed, and are no longer speculative:

> [I]t must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'

*Defenders of Wildlife*, 504 U.S at 560 (quoting *Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 38, 43 (1976)).

"[A] request for nominal damages satisfies the redressability element of standing where a plaintiff's claim is based on a completed violation of a legal right." *Uzuegbunam*, 592 U.S \_\_\_\_, \_\_\_\_(2021)(slip op., at p. 2)  Federal questions do not require any amount-in-controversy:

> Congress abolished the statutory amount-in-controversy requirement for federal-question jurisdiction in 1980. Federal Question Jurisdictional Amendments Act, 94 Stat. 2369. And we have never held that one applies as a matter of constitutional law. [F]or purposes of Article III standing, nominal damages provide the necessary redress for a completed violation of a legal right.

*Id*. (slip op., at p. 11).

Completed violations of constitutional rights are redressable by nominal damages even if unquantifiable:

> Because 'every violation [of a right] imports damage,' nominal damages can redress [a plaintiff's] injury even if he cannot or chooses not to quantify that harm in economic terms.

*Id*. (slip op., at p. 6).

### III. PLAINTIFFS' CLAIMS ARE NOT FUTILE

#### A. DOMINION CANNOT DISPUTE ITS STATE ACTION

Dominion argues that Plaintiffs' claims are "futile" because it does not accept that it was a state actor during the Election. But whether Dominion's involvement in the Election was sufficient to be a state actor is a specific question of fact that Dominion cannot challenge at this stage.  Further, Plaintiffs have alleged specific facts, not merely conclusory statements, such as Dominion's contract with Georgia to be the "Master Solution" for voting in the State, that when accepted as true (as is required), plausibly allege sufficient involvement of Dominion in the Election to be a state actor.

Dominion further makes factual challenges, and disputes specific allegations of fact, including those from published media articles, expert reports, state analysis, congressional

letters, and affidavits under oath in other cases, regarding vulnerabilities with Dominion systems and fatal flaws with its processes, that went uncorrected prior to the Election, which Dominion claims do not rise to constitutional violations. But despite Dominion's disbelief, at this stage, it cannot challenge the multitude of discrepancies, which published reports now include plausible claims of common algorithms used to manipulate results across the country, including in Colorado, and electronic hacking by foreign actors. These allegations, if accepted as true as they must be, demonstrate a complete lack of trustworthiness of the electoral due process administered by Dominion, which generated unverifiable results and cannot be shown to reflect reality.

### B.   PLAINTIFFS HAVE SUFFICIENTLY PLEAD CIVIL RICO CLAIMS

Plaintiffs' Amended Complaint has sufficiently pleaded civil RICO violations by Defendants. Dominion challenges Plaintiffs pleading by alleging it did not plead damage to their business or property. Dominion relies on a single case, that merely states it could find no other cases, treating a vote as a "property" interest. Dominion's Brief at 12.

But it should be self-evident that a person's vote has at least an intellectual property interest. Further, the ballot is the physical manifestation of a person's vote, containing the registered voter's identification, delivered in-person or by mail. In fact, ballots were counted in the Election, not "votes."

Dominion was charged by contract with responsibility for processing all ballots, including cyber security, during the administration of the Election where it was contracted. The multitude of flaws pleaded, which cannot be disputed, caused injury to Plaintiffs votes and cannot be verified. Plaintiffs have further sufficiently plead all other RICO elements supported by fact and plausibly connected through unrefuted published media reports, including TIME.

### IV. DOMINION HAS SUFFICIENT MINIMUM CONTACTS

While Dominion is a foreign corporation based in Canada, Dominion claims Denver, Colorado, as its U.S. headquarters. Dominion maintained offices in Denver during the Election, and it employed Coloradoans. Dominion also administered the Election in Colorado. Dominion was even personally served in Colorado. While Dominion seemingly argues that other Defendants may not have minimum contacts to support jurisdiction, it cannot argue that Dominion lacks the necessary minimum contacts for jurisdiction.

### V. CONCLUSION

For the above reasons, Plaintiffs respectfully request that this Court grant its Motion to Amend.

Respectfully submitted this 8th day of April, 2021.

*PLAINTIFFS COUNSEL:*

By: *s/Ernest J. Walker*  
Ernest J. Walker (MI P58635)  
ERNEST J. WALKER LAW OFFICE  
1444 Stuart St.  
Denver, CO 80204  
(720) 306-0007  
ernestjwalker@gmail.com  

By: *s/ Gary D. Fielder*  
Gary D. Fielder (CO 19757)  
LAW OFFICE OF GARY FIELDER  
1444 Stuart St.  
Denver, CO 80204  
(720) 306-0007  
gary@fielderlaw.net

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 8, 2021, a copy of the foregoing document was electronically filed with the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*s/Gary D. Fielder*
Gary D. Fielder, Esq.
Law Office of Gary Fielder
1444 Stuart St.
Denver, CO 80204
(720)306-0007
gary@fielderlaw.net