IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-03747

KEVIN O'ROURKE, et al.,

Plaintiffs,

v.

DOMINION VOTING SYSTEMS INC., et al.,

Defendants.

**PLAINTIFFS' REPLY TO DEFENDANT FACEBOOK'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND**

Plaintiffs, by and through counsel, submit their Reply to Defendant Facebook's Opposition [Doc. 63] to Plaintiffs' Motion to Amend [Doc. 48], and in support state as follows:

## I. INTRODUCTION

Plaintiffs seek the first amendment of their Complaint, filed on December 22, 2020 [Doc. 1]. Although Defendant, Facebook, Inc. (Facebook), challenges Plaintiffs' right to assert their claims, Plaintiffs have satisfied their fundamental pleading requirements to establish a redressable injury, a completed violation of a constitutional right, which is traceable to the actions of Facebook, and must be allowed to proceed. As alleged, Facebook's widespread and direct involvement in the administration and bad faith censorship related to the 2020 Presidential election (Election) bound it to the limits of the constitution as a state actor, but Facebook broke those constraints.  Facebook's denial of its level of involvement in the Election, and even denial of minimum contacts with Colorado, is a factual question to be litigated as a legitimate controversy including disputed issues of material fact that cannot be resolved at this stage.

## II.  PLAINTIFFS HAVE ESTABLISHED STANDING AND JURISDICTION

### A.  Facebook has extensive, continuous, and systematic contacts with Colorado

Facebook asserts Plaintiffs Complaint fails to establish personal jurisdiction over Facebook in Colorado. (Opp., p. 3). The business conduct of Facebook is nationwide and involves coordinated and conspired activities to, in a politically biased manner, (a) facilitate the communication network used by the enterprise to interlope into the administration of the national election; (b) data mine voter information from various sources; (c) coerce election municipalities to use its platform to create public forums for distribution of information; (d) censor election related content designed to meet every user of the Facebook platform; and (e) to coordinate and share its high technology, data mining, and demographic voter information received from its national-feed platform with other members of the enterprise to achieve the intended goal.

Facebook denies that it does significant business in Colorado, which is on its face disingenuous and lacks candor to the tribunal. Facebook operates a 26,663 square foot office in Lower Downtown Denver.[1] Facebook is used by millions of personal and government users in Colorado providing access to its platform which constitutes a public forum due to its social media monopoly.[2] The Colorado Secretary of State[3], Attorney General, Governor, and 53 of the 64 Colorado counties maintain Facebook pages utilizing Facebook's platform for dissemination of election news, election administration and communication, and content. Facebook maintains a U.S. Politics and Government Team, whose Colorado contact is Jannelle Watson. Facebook worked in coordination with Defendant Center for Technology and Civic Life in the Colorado counties of Boulder, Broomfield, Denver, Eagle and Yuma. These are significant contacts.

---

[1] https://www.denverpost.com/2018/11/16/facebook-opens-denver-office/
[2] *FTC v. Facebook, Inc.*, 1:20-cv-03590, Doc. 51, p. 3, ¶ 9.
[3] https://www.facebook.com/ColoradoSoS/photos/a.322785844447297/1959081184151080/

Facebook's legal analysis begins with *Daimler v. Bauman*, 571 U.S. 117 (2014), which when considered in relation to the significant business contacts above, establishes that Facebook meets the criteria with "instances in which the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of actions arising from dealings entirely distinct from those activities." *Id.* at 2849. Facebook additionally satisfies the test of maintaining "continuous and systematic general business contacts." *Id*. at 2849. In Colorado, Facebook's presence includes a U.S. Politics and Government Team contact for the geographical location, an enormous office, and extensive use of its platform by the majority of Executive Branch Public Officers and nearly every county and municipality in Colorado.

The association in fact between Facebook, the Center for Technology and Civic Life (CTCL), and the enormous funding distributed through CTCL to jurisdictions in Colorado for the purchase and implementation of voting equipment and other services contracted with Defendant Dominion Voting Systems, and others, in a continuous and direct coordination of efforts that resulted in the injuries complained of by Plaintiffs. These activities between Colorado government municipalities, state actors, and the other Defendants places in the stream of commerce products that ultimately caused harm, inside the forum, to the injury of Plaintiffs. *Id.*

Facebooks censorship activities, in coordination with other enterprise participants, and its use as the communication network of the enterprise, coupled with the individual involvement of its CEO, Defendant Mark Zuckerberg, and the collective influence wielded over the administration of the national election in Colorado and nationwide, has a causal relationship to the Plaintiffs' injuries that cannot be severed from the activities of the enterprise or this State.

Additionally, the use of Facebook's platform by the overwhelming majority of Colorado counties, creates a national network with direct and close connections to Colorado.

### B.   Plaintiffs have satisfied the Article III Standing requirements

Plaintiffs have satisfied their fundamental burden of establishing their right to proceed with a claim against Facebook. To demonstrate standing, the plaintiff must not only establish an injury that is fairly traceable to the challenged conduct, but must also seek a remedy that redresses that injury. *Uzuegbunam v. Preczewski*, 592 U.S. ___ (2021).

Plaintiffs sufficiently alleged their claims. At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (quoting *Lujan v. National Wildlife Federation,* 497 U.S. 883, 889 (1990)). The *Lujan* court made sufficient distinction between the limited notice pleading requirements relevant to: (1) general factual allegations; (2) the increased standards for summary judgment pursuant to Rule 56; and (3) the adequate evidence standard at the trial stage. *Id* at 561.

The standard applied to notice pleadings is to establish enough factual content to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-557 (2007); *see also Robbins v. Oklahoma*, 519 F. 3d 1242, 1247 (10th Cir. 2008)

Statements of counsel in their briefs or argument while enlightening to the Court are not sufficient for purposes of granting a motion to dismiss or summary judgment. *Trinsey v. Pagliaro*, 229 F. Supp. 647, 649 (1964)

The basis of Facebook's argument is that Plaintiffs have failed to allege enough factual content at the notice pleading stage of this litigation, which operates more as an F.R.C.P. 12(b)(1) motion for more definitive statement, but fails to meet the requirements of or reach the level of F.R.C.P 12(b)(6) or 56(c) at this stage of litigation.

### C. Plaintiffs Have Suffered an Injury In Fact

Plaintiffs have alleged violations of their constitutional rights. Cognizable injuries are:

> [a]n "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) "actual or imminent, not 'conjectural' or hypothetical.'"

*Defenders of Wildlife*, 504 U.S. at 560 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)) (internal citations omitted).

As the Supreme Court stated, one month ago:

> To satisfy the "'irreducible constitutional minimum'" of Article III standing, a plaintiff must not only establish (1) an injury in fact (2) that is fairly traceable to the challenged conduct, but he must also seek (3) a remedy that is likely to redress that injury. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

*Uzuegbunam*, slip op. at p.2.

Here, the Supreme Court quoted Lord Holt, who, dissenting in case from 1703, "argued that the common law inferred damages whenever a legal right was violated." *Id*. At 6.(citing *Ashby v. White*, 2 Raym. Ld. 938, 941-943, 948, 92 Eng. Rep. 126, 129, 130, 133 (K.B. 1703).

The Supreme Court elaborated:

> Observing that the law recognized 'not merely pecuniary' injury but also 'personal injury,' Lord Holt stated that 'every injury imports a damage' and the plaintiff could always obtain damages even if he 'does not lose a penny by reason of the [violation.].'"

*Id*. at p. 6, (quoting *Ashby*, supra, at 955, 92 Eng. Rep., at 137).

The Supreme Court recognized that, while this common-law doctrine "was not universally followed, . . . many adopted the rule in full whenever a person proved that there was a violation of an "'important right.'" *Id*. at p. 7. (*citing Hecht v. Harrison*, 40 P.2d 306, 309-310 (Wyo. 1895). "Nominal damages are not a consolation prize for the plaintiff who pleads, but fails to prove, compensatory damages." *Id*. at 9. 'They are instead the damages awarded by default

until the plaintiff establishes to some other form of damages, such as compensatory or statutory damages." *Id*.

"Despite being small, nominal damages are certainly concrete." *Id*. Because nominal damages are in fact damages paid to the plaintiff, the affect 'the behavior of the defendant towards the plaintiff' and thus independently provide redress. *Id*. (*quoting Hewitt v. Hewitt*, 482 U.S. 755, 761 (1987).

"Because redressability is an 'irreducible' component of standing [citation], no federal court has jurisdiction unless it provides a remedy that can redress the plaintiff's injury." *Id*. at 10. (*quoting Spokeo*, 578 U.S. at 338). Nominal damages are redress, not a byproduct. *Id*.

Plaintiffs have not simply claimed general grievances because not all possessed the right to vote in the Election. Only those who met minimum eligibility qualifications, and had properly completed a legislatively proscribed registration process, could legally vote. Once the voter registration record was accepted, that one person's vote *became their property to the exclusion of all others*, that property interest was to be protected like any other form of property by the government agencies and their contracted administrators.

This is "simply a case where concrete injury has been suffered by many persons, as in mass fraud or mass tort situations." *Id*. This is "a case where plaintiffs are seeking to enforce a procedural requirement the disregard of which [did] impair a separate concrete interest of theirs." *Id*. Plaintiffs' qualified voting rights are not merely "public rights that have been legislatively pronounced to belong to each individual who forms part of the public. *Id.*

The national interest in this election outweighs that of any one State. There is a "pervasive national interest in the selection of candidates for national office, and this national

interest is greater than any interest of an individual State. *Cousins v. Wigoda*, 419 U.S. 477, 490 (1975).

      **D.**     **Plaintiffs Injuries Are Fairly Traceable to Facebook**

There must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly. . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Lujan* at 560. It is impossible for Facebook to deny that its activities, independently and coordinated with the other Defendants of the enterprise, funded by Defendants Zuckerberg and Chan, and had a profound effect on the outcome of the 2020 Presidential election, as intended. Facebook cannot in good faith deny they have censored politically dissenting, *non-pornographic*, content in bad faith and in violation of Section 230. The content censored is only offensive to ideology of Zuckerberg and the enterprise.

      **E.**     **A Constitutional Infringement is an Injury In Fact.**

The constitutional violations suffered by Plaintiffs have been completed, and are no longer speculative. [I]t must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Lujan at* 561 (quoting *Simon,* 426 U.S. at 38, 43). "[A] request for nominal damages satisfies the redressability element of standing where a plaintiff's claim is based on a completed violation of a legal right." *Uzuegbunam*.

      Federal questions do not require any amount-in-controversy:

> Congress abolished the statutory amount-in-controversy requirement for federal-question jurisdiction in 1980. Federal Question Jurisdictional Amendments Act, 94 Stat. 2369. And we have never held that one applies as a matter of constitutional law. [F]or purposes of Article III standing, nominal damages provide the necessary redress for a completed violation of a legal right.

*Id*., slip op., p. 11.

Completed violations of constitutional rights are redressable by nominal damages even if unquantifiable:

> Because "every violation [of a right] imports damage," nominal damages can redress [a plaintiff's] injury even if he cannot or chooses not to quantify that harm in economic terms.

*Id*.

### III. PLAINTIFFS' AS APPLIED SECTION 230 CHALLENGE IS RIPE

"Internet and other interactive computer services offer a forum for a true diversity of political discourse." 47 U.S.C. § 230(a)(3). When the government delegates to a private party a function traditionally exclusively reserved to the government then the private party is necessarily a state actor. *Gallagher v. Neil Young Freedom Concert*, 49 F. 3d 1442, 1456 (10th Cir. 1995). By giving these private companies special privileges, governments place them in a category distinct from other companies and closer to some functions, like the postal service, that the State has traditionally undertaken. *Biden v. Knight First Amend. Inst*., 593 U.S.___(2021).

The original need for the provisions of 47 U.S.C. § 230 (Section 230) was to create safeguards for minors and other victims of sexual exploitation from the rapidly expanding open forum of the Internet, in 1996. It is a clear distinction that political speech, dissenting speech and other forms of diverse and robust intellectual conversation in the public forum was not the intent of the censorship ideology set forth by granting some level of immunity to "Good Samaritans" for blocking and censoring pornographic material, the real concern of Congress.

The time for a comprehensive analysis of Facebook as a state actor, administrating what has become a monopolized Public Forum, yet privately controlled, and the pending challenge of the constitutionality of Section 230 as applied to the Facebook monopoly is now. It changes nothing that these platforms are not the sole means for distributing speech or information.

A person always could choose to avoid the toll bridge or train and instead swim the Charles River or hike the Oregon Trail. But in assessing whether a company exercises substantial market power, what matters is whether alternatives are comparable. For many of today's digital platforms, nothing is. *Id*, at p. 8.

Facebook asserts that it has immunity from this direct constitutional challenge of its conduct, as it applies to Section 230 immunity, and claims First Amendment protection for its speech, but not that of its political opponents or those of Zuckerberg and the enterprise. No governmental immunity can apply to bad faith and unlawful use of a monopolized Public Forum that has reached a market dominance that allows it to act as judge, jury and executioner of free speech. This is extensively proven by Facebook's expansion of it illegitimate "fact-checking" conglomerate that is politically biased and not regulated by any form of government oversight.

The factual basis of Facebook's claim to immunity, is meritless and has come to an end. As the conduct complained of, and the content censored by Facebook as part of its participation in the enterprise, lacks credulity that it was censoring pornographic content or content that was offensive under any legal standard other that it was offensive to Facebook's political ideology.

## IV. PLAINTIFFS HAVE SATISFIED PLEADING STANDARDS

Facebook cannot have it both ways, it asserts that the 115 page, 900 plus paragraph complaint of concise statements fails to state sufficient facts to justify a claim for relief, then contradicts itself by stating that the factual content fails F.R.C.P. 8(a). There is nothing vague about Plaintiffs' Amended Complaint, the facts, parties and involvement of the Defendants, and claims for relief are pled with specificity to establish a claim for violation of rights under 42 U.S.C. § 1983, RICO laws, and to establish that a well-funded cabal of progressive elites coordinated their efforts to effect the election.

## V. PLAINTIFFS RICO CLAIMS ARE SUFFICIENT

Plaintiffs have sufficiently outlined the association in fact of the well funded cabal of progressive parties that conspired to unlawfully influence the election, lead by Mr. Podhorzer, funded by Mark Zuckerberg and Priscilla Chan, and used the Facebook platform and sub-creations as the common network of communication of the enterprise with its massive election administration machine. Predicate acts include establishing ballot boxes in states where they were illegal, with intention to commit federal crimes of intercepting US Mail in the form of absentee ballots, censorship, e.g., of a New York Times Article related to Hunter Biden, which knowingly caused some Democrat voters to state they would never have voted for Biden if Facebook, Zuckerberg and the enterprise had not censored the content, allegedly under Section 230. All electronic and mail communications in furtherance of the enterprise constitute RICO predicate acts.

## VI. CONCLUSION

For the above reasons, Plaintiffs respectfully request that this Court grant its Motion to Amend.

Respectfully submitted this 8th day of April, 2021.

*PLAINTIFFS COUNSEL:*

By: *s/Ernest J. Walker*  
Ernest J. Walker (MI P58635)  
ERNEST J. WALKER LAW OFFICE  
1444 Stuart St.  
Denver, CO 80204  
(720) 306-0007  
ernestjwalker@gmail.com  

By: *s/ Gary D. Fielder*  
Gary D. Fielder (CO 19757)  
LAW OFFICE OF GARY FIELDER  
1444 Stuart St.  
Denver, CO 80204  
(720) 306-0007  
gary@fielderlaw.net

**CERTIFICATE OF SERVICE**

   The undersigned hereby certifies that on April 9, 2021, a copy of the foregoing document was electronically filed with the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*s/Gary D. Fielder*
Gary D. Fielder, Esq.
Law Office of Gary Fielder
1444 Stuart St.
Denver, CO 80204
(720)306-0007
gary@fielderlaw.net