IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-03747

KEVIN O'ROURKE, et al.,

Plaintiffs,

v.

DOMINION VOTING SYSTEMS INC., et al.,

Defendants.

**PLAINTIFFS' RESPONSE AND BRIEF IN OPPOSITION TO
DEFENDANTS KEMP AND RAFFENSERGER'S MOTION TO DISMISS**

COME NOW the Plaintiffs, by and through counsel, and hereby submit the following Response and Brief in Opposition to Defendant Brian Kemp and Brad Raffensperger's joint motion to dismiss [Doc. 47], and hereby respectfully request that the motion be denied or, in the alternative, determined to be moot, for the reasons set forth below.

## I. INTRODUCTION

The Plaintiffs have not sued the State of Georgia, or any person associated with the State, in their official capacity. This case is not "the latest in long line of baseless challenges to the results of the 2020 Presidential Election in Georgia," and these mischaracterizations cannot be used as grounds for dismissal. The Defendants named herein are persons who violated the Constitution, under color of their official authority. They are stripped of their official capacity and are liable in their individual capacity. That is the holding in *Ex Parte Young*, which is the law of the case in this matter. The Plaintiffs herein have filed an Amended Complaint, and a request for class designation. Accordingly, the motion to dismiss filed herein is moot.

1

## II.  BACKGROUND

As is outlined in the Complaint, the Defendants, Brad Raffensperger (Mr. Raffensperger) and Brian Kemp (Mr. Kemp), violated the constitutional rights of the Plaintiffs, and a class of similarly situated persons. All of Mr. Raffensperger's and Mr. Kemp's conduct was under color of their official authority as the secretary of state and governor of Georgia, respectively. By violating the Constitution, Mr. Raffensperger and Mr. Kemp are liable in their personal capacity. The grounds upon which the Plaintiffs have made their claims are well documented, and are cited throughout the Complaint.

As such, Mr. Raffensperger and Mr. Kemp's actions burdened the rights of the Plaintiffs to vote for the Vice-President and President. These Defendants knew that their actions concerned a Presidential election. Both swore an oath to protect and defend the Constitution of the United States. Accordingly, Georgia cannot state that the Plaintiffs in this matter are relying on "debunked myths, conspiracy theories, and outright lies regarding the election that have been repeatedly rejected by courts." [Doc. 47, pp. 1-2].

Ultimately, the Supreme Court found that the State of Texas had "not demonstrated a judicially cognizable interest in the manner in which another State conducts its elections." *Texas v. Pennsylvania*, No. 22O155 (U.S. Dec 11, 2020). Additionally, in case like *Wood v. Raffensperger*, the 11th Curcuit noted that the plaintiff had "moved for extraordinary relief." 981 F.3d 1307 (11th Cir. 2020). There, as in other cases wherein the plaintiff had asked for injunctive relief, the 11th Circuit determined that "Wood lacked standing because he failed to allege the 'first and foremost of standing's three elements': an injury in fact." *Id*. (*quoting Spokeo v. Robins*, 136 S.Ct. 1540, 1547 (2016). The Court also found that the plaintiff's claims were moot.

The Plaintiffs, here, have since filed a constitutional challenge to the Compromise Settlement Agreement and Release with the Democratic Party of Georgia (Settlement). *See* Amended Complaint, Doc. 48, Ex. A, ¶¶ 831-843. Further, this case is a civil rights action for damages. All of this has been spelled out in the Complaint and in other pleadings.

As outlined in the original Complaint, the Settlement materially changed the statutory requirements for reviewing signatures on absentee ballot envelopes to confirm the voter's identity by making it more difficult to challenge defective signatures beyond the expressed statutory procedures. Complaint, ¶¶ 199(a-q). Additionally, the responsibility to ensure a free and fair election must fall on the shoulders of the secretary of state and governor, since both are responsible for certifying their States' general election, which included the 2020 Presidential election. The latter is no small matter. After the revolution, the sovereignty devolved to the people, that is, to the States. Nonetheless, it is now well settled that the federal government has supremacy over the States. Being able to vote for the President and Vice President of the United States is not guaranteed. That right is bestowed upon the State citizen, by request, according to the laws of any particular State. However, once granted, the right to vote becomes one the fundamental rights that the government is duty bound to protect. Every person has a right to remain silent, or defend herself or her property. Those are inalienable rights. Voting is a civil right, granted by the power of the sovereign State, under the Constitution.

Nothing could be more precious than the right to vote for the President. Wars are fought to maintain that right. It is a national right, shared only by the registered voters of any given State. This is not about overturning an election, it is about holding government officials responsible for their behavior.

If a person acting under color of authority violates that precious right, how can that person not be called to answer to a State, wherein a portion of the behavior took place? The federal judicial system is set up for diversity jurisdiction, with the recognition that the Court must be have personal jurisdiction over a party. Those are the issues herein.

Numerous other private lawsuits have been filed. However, all of them have named the Defendants, herein, in their official capacity. Here, the Plaintiffs name Mr. Raffensperger and Mr. Kemp in their individual capacity, in both the original and amended complaints.

When voters come to the federal courts with valid constitutional claims, pursuant to § 1983, counsel for the plaintiff becomes a private attorney general. In that regard, the Plaintiffs have not requested that the Court impose extraordinary relief, which would require a plaintiff to establish a likelihood of success on the merits. That is not the standard, here. In fact, although the constitutional challenge in the Amended Complaint is a question of law, if the jury finds in favor of the Plaintiffs, and determines that Mr. Raffensperger and Mr. Kemp violated the Constitution, both are stripped of the protections of their office, which would otherwise cloak them with immunity under the Eleventh Amendment.

At this stage, the Court must accept all well plead facts as true. Thus, the issue is: If a governor, in concert with the secretary of state of that same State, engage in conduct which violates the constitutional rights of others, even in other States, can those state actors be held responsible? If these state actors are liable for their unconstitutional conduct, who can hold them responsible? According to every Defendant in this lawsuit, the registered voter cannot. They do not have standing, say the Defendants. The registered voter, who mailed in her ballot, or waited in line to vote in a Presidential election, does not have standing? If they do not, then who does? Since the Plaintiffs obviously have standing, it is not necessary to labor over the latter question.

### III.  THE DEFENDANTS APPEAR IN THEIR INDIVIDUAL CAPACITY

The Defendants, Mr. Kemp and Mr. Raffensperger, have been sued their individual capacity. Comp. ¶¶ 19, 20. "A suit against an official in his personal capacity is a suit against a person acting under color of law." *Tanzin v. Tanvir*, 141 S.Ct. 486, 491 (2020). The phrase "persons acting under color of law" draws on one of the most well-known civil rights statutes: 42 U.S.C. § 1983. *Id*. As the Supreme Court affirmed, twelve days before the complaint was filed:

> That statute applies to 'person[s] ... under color of any statute,' and this Court has long interpreted it to permit suits against officials in their individual capacities.

*Id*.

The plain language of Section 1983 reads:

*Every* person who, under color of *any* statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, *any citizen of the United States* or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. [Emphasis added].

Here, the Defendants are persons under the statute that violated the rights of many citizens of the United States, in Georgia, Colorado, and every other state in the Union. Knowingly violating the rights of voters in a Presidential election has far reaching consequences that effect every registered voter, including the Plaintiffs. In that regard, Defendants, Mr. Raffensperger and Mr. Kemp deny that the Court has personal jurisdiction over them. *Id*. at 7-10.

"The law of the forum state and constitutional due process limitations govern personal jurisdiction in federal court." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017). "Colorado's long-arm statute, Colo.Rev.Stat. § 13-1-124, extends jurisdiction to the Constitutions full extent." *Id*.

With that, due process "requires both that the defendant 'purposefully established minimum contacts within the forum State'" and that the "assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Id*. at 903 (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). Depending "on their relationship to the plaintiff's cause of action, an out-of-state defendant's contacts with the forum state may give rise to either general (all-purpose) jurisdiction or specific (case-linked) jurisdiction." *Id*.

Specific jurisdiction means that a court may exercise jurisdiction over an out-of-state party only if the cause of action relates to the party's contacts with the forum state." *Id*. at 904. Specific jurisdiction calls for a two-step inquiry: (a) whether the plaintiff has shown that the defendant has minimum contacts with the forum state; and, if so, (b) whether the defendant has presented a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id*. at 904 (*quoting Burger King Corp.*, 471 U.S. at 475).

Two weeks ago, the Supreme Court held that the connection between the plaintiffs' claims and a car manufacturer's activities in the forum State was close enough to support specific jurisdiction. *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S.____ (2021). There, the Supreme Court reaffirmed several general principles of law, which include that a plaintiffs' claims "must arise out of or relate to the defendant's contacts" with the forum. *Id*. at slip op., p. 2 (*quoting Bristol-Myers*, 582 U.S.____, ____(2017)(slip op., at 5).

The contacts must be the defendant's own choice and not "random, isolated, or fortuitous." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984). "Or put just a bit differently, 'there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore

6

subject to the State's regulation.'" *Id*. at slip op., p. 6 (*quoting Bristol-Meyers*, 582 U.S., at____-____,____(slip op., at 5-6, 7)(*quoting Goodyear*, 564 U.S. 915, 919 (2011).

Here, both Mr. Raffensperger and Mr. Kemp were responsible for the certification of Georgia's election, which included the 2020 Presidential election. As outlined with specificity in the Plaintiffs' Complaint, Mr. Raffensperger, without legislative approval, unilaterally abrogated several Georgia statutes requiring signature verification for absentee or mail-in ballots. *Complaint*, Doc. 1, ¶ 199 (a-q).

As reported in the recent article:

Five months after the November 3, 2020 presidential election, officials at the state and county level in Georgia have failed to produce chain of custody records for more than 355,000 absentee vote by mail ballots deposited in drop boxes located around the state for that election. [1]

As is stated in the article, according to the Georgia Secretary of State's office, 1.3 million votes were cast as absentee vote by mail ballots. As stated, in pertinent part:

Based on polling conducted by John McLaughlin & Associates, 700,000 of those absentee vote by mail ballots were sent via mail and 600,000 were deposited in the estimated 300 drop boxes located around the state [that] were manually picked up and transported by election workers to the local county registrar for subsequent counting. [2]

The legislature did not promulgate rules concerning the collection of ballots from "drop boxes." Instead, as described in the article:

According to Georgia Election Code Emergency Rule 183-1-14-0.8-.14, promulgated by the Georgia State Election Board (of which Mr. Raffensperger was the chairman) in July 2020, but not codified by the state legislature at the time as the Georgia Constitution requires, each of Georgia's 159 counties is responsible for documenting the transfer of every batch of absentee ballots picked up at drop boxes and delivered to the county election offices with ballot transfer forms. The forms are required to be signed and dated, with time of pick up by the collection team upon

---

[1] Tiffany Morgan, *Five Months After 2020 Election, Georgia Still Has Not Produced Chain of Custody Records for 355,000 Absentee Vote by Mail Ballots Deposited in Drop Boxes*, Georgia Star News, April 8, 2021.
[2] *Id*.

pick up, and the signed, dated, with time of delivery by the registrar or designee upon receipt and accepted.[3]

In December, The Georgia Star New "issued Open Records requests to all 159 counties to obtain copies of the ballot transfer forms."[4] As of last week, "only 59 of Georgia's 159 counties h[ad] provided ballot transfer form data to The Star News."[5] With that, even five months after the election, "there are no chain of custody documents for 355,918, or 59.3 percent, of the estimated 600,000 absentee vote by mail ballots deposited in drop boxes and delivered to county registrar and counted in Georgia's 2020 presidential election."[6]

None of that was authorized by law. These claims are also connected to the drop boxes being placed by funding provided by Defendants, Mark Zuckerberg and Priscila Chan, through the efforts of the Center for Technology and Civic Life (CTCL) in placing drop boxes in only certain areas. This whole scheme was unconstitutional, and the Plaintiffs have focused their claims on precise actions of all the Defendants, herein. How could these issues still be evolving, while the Plaintiffs claims are being called baseless, and previously determined? Neither is true.

These actions were done with the knowledge and consent of the State's chief executive officer, Mr. Kemp. Accordingly, because of that, and the other unconstitutional acts and laws concerning Georgia's 2020 Presidential election, both Mr. Raffensperger and Mr. Kemp violated their oaths of office when they certified the election on November 20, 2020. *Complaint*, ¶¶ 529 and 522. With that, these Defendants' knew that their acts would affect the voting rights of every person eligible to vote in the United States, which includes the Plaintiffs.

---

[3] *Id*.
[4] *Id*.
[5] *Id*.
[6] *Id.*

All qualified voters have a constitutionally protected right to vote. *Ex parte Yarbrough*, 110 U.S. 651 (1884). It is "as equally unquestionable that the right to have one's vote counted is as open to protection…as the right to put a ballot in a box." *United States v. Mosley*, 238 U.S. 383, 386 (1915). Beyond that, "in the context of a Presidential election," which ultimately touches upon all of the people's rights, unconstitutional state actions "implicate a uniquely important national interest." *Anderson v. Celebrezze*, 460 U.S. 780, 794-795 (1983).

In *Anderson*, the Court identified a common right of voters, as "the President and Vice President of the United States are the only elected officials who represent all the voters in the Nation." *Id*. at 795. Of course, state-actors can be punished "when the right to vote at any election for the choice of electors for President and Vice President" are abridged. U.S. Constitution, Amend. 14, Sect. 2. States are accountable for managing the Presidential election.

There is a "pervasive national interest in the selection of candidates for national office, and this national interest is greater than *any* interest of an individual State." *Cousins v. Wigoda*, 419 U.S. 477, 490 (1975) (emphasis added).

Importantly, the impact of the votes cast in each State is affected by the votes cast for the various candidates in other States. *Anderson*, 460 U.S. at 795. The "primary concern is not the interest of candidate Anderson, but rather, the *interests of the voters who chose to associate together…*" *Id*. at 788 (emphasis added). In *Anderson*, the Supreme Court recognized:

> [A]s a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." To achieve these necessary objectives, States have enacted comprehensive and sometimes complex election codes. Each provision of these schemes, whether it governs the registration and qualifications of voters, the selection and eligibility of candidates, or *the voting process itself, inevitably affects — at least to some degree — the individual's right to vote and his right to associate with others for political ends*.

*Id*. at 788 (*quoting Storer* v. *Brown,* 415 U. S. 724, 730 (1974)) (emphasis added).

9

Further, this class action suit was filed in Colorado as it also relates to the business activities of Co-Defendants, Dominion Voting Systems, Inc. (Dominion), Facebook, Inc. (Facebook), and Center for Technology and Civic Life (CTCL), all of whom have significant contacts to Colorado in association with the 2020 Presidential election. [*See* Doc. 39, 40, 64].

With regard to personal jurisdiction, as well, counsel for the Defendants filed their motion to dismiss on behalf of "Brian Kemp, Governor of Georgia, and Brad Raffensperger, the Georgia Secretary of State." [Doc.47, p. 1, ¶ 1]. Counsel also entered their appearance on behalf of "Defendants Governor Brian Kemp, Secretary of State Brad Raffensperger." [Doc. 37]. However, neither Mr. Kemp, nor Mr. Raffensperger have been sued in their official capacity.

On July 29, 2019, Mr. Raffensperger announced that Dominion Voting Systems would be the state's new elections vendor, winning a $107 million contract establishing that the contractual ties to Dominion, a Colorado based company, and any conduct related to the negotiation of this contract ties Mr. Raffensperger to Colorado.

### IV.  THE PLAINTIFFS HAVE STANDING TO SUE INDIVIDUALS THAT VIOLATE THEIR CONSTITUTIONAL RIGHTS

Last month, the Supreme Court affirmed an individual's right to sue a state official for nominal damages in the latter's individual capacity. *Uzuegbunam v. Preczewski*, ____U.S.____ (2021). The plaintiffs were former students of Georgia Gwinnet College, who wished to share their faith while enrolled there. *Id*. at slip op., p. 1.

They sued certain college officials charged with enforcement of the college's speech policies, arguing that these policies violated the First Amendment. *Id*. at slip op., p. 2. The college discontinued the polices, and then sought dismissal on the ground that the policy change left the students without standing to sue. *Id*. at slip op., p. 3.

The Supreme Court held:

10

> Because nominal damages were available at common law in analogous circumstances, we conclude that a request for nominal damages satisfies the redressability element of standing where a plaintiff's claim is based on a completed violation of a legal right.

*Id.* at slip op., p. 11.

In *Uzuegbunam*, the plaintiffs' request to change the policy of a State institution would require the Court to maintain jurisdiction over a state actor, only through a district court's power to enjoin the prospective, unconstitutional conduct of the institution. Otherwise, the State would not be liable for any money damages accessed against the state actors, operating in their official capacity. Such claims are barred by the Eleventh Amendment. However, the plaintiffs in *Uzuegbunam* had the right to seek nominal damages from the state actors, individually. That is exactly what is going on, here. What makes a governor or a secretary of state any different than any other state actor? There is no difference. Just like the defendants in *Uzuegbunam*, if a governor and/or secretary of state violate the constitutional rights of others, the latter has standing to sue the former for damages. The Plaintiffs have been saying this from the beginning.

As the Supreme Court stated:

> To satisfy the 'irreducible constitutional minimum' of Article III standing, a plaintiff must not only establish (1) an injury in fact (2) that is fairly traceable to the challenged conduct, but he must also seek (3) a remedy that is likely to redress that injury.

*Id.* at slip op., p. 3 (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

Here, the Supreme Court quoted Lord Holt, who, dissenting in case from 1703, "argued that the common law inferred damages whenever a legal right was violated." *Id.* at slip op., p. 6. (citing *Ashby v. White*, 2 Raym. Ld. 938, 941-943, 948, 92 Eng. Rep. 126, 129, 130, 133 (K.B. 1703)). The Supreme Court elaborated:

> Observing that the law recognized 'not merely pecuniary' injury but also 'personal injury,' Lord Holt stated that 'every injury imports a damage' and the plaintiff could

11

always obtain damages even if the 'does not lose a penny by reason of the [violation.].'"

*Id*., quoting Ashby, supra, at 955, 92 Eng. Rep., at 137.

The Supreme Court recognized that, while this common-law doctrine "was not universally followed," "many adopted the rule in full whenever a person proved that there was a violation of an "'important right.'" *Id*. at 7 (*citing Hecht v. Harrison*, 40 P.2d 306, 309-310 (Wyo. 1895). "Nominal damages are not a consolation prize for the plaintiff who pleads, but fails to prove, compensatory damages." *Id*. at 9. 'They are instead the damages awarded by default until the plaintiff establishes to some other form of damages, such as compensatory or statutory damages." *Id*.

"Despite being small, nominal damages are certainly concrete." *Id*. Because nominal damages are in fact damages paid to the plaintiff, the affect 'the behavior of the defendant towards the plaintiff' and thus independently provide redress. *Id*. (*quoting Hewitt v. Hewitt*, 482 U.S. 755, 761 (1987).

"Because redressability is an 'irreducible' component of standing [citation], no federal court has jurisdiction unless it provides a remedy that can redress the plaintiff's injury." *Id*. at slip op., p. 10 (*quoting Spokeo*, 578 U.S. at 338). Nominal damages are redress, not a byproduct. *Id*.

### V.  PLAINTIFFS HAVE PROPERLY ALLEGED CIVIL RIGHTS CLAIMS AGAINST MR. RAFFENSPERGER AND MR. KEMP

#### A.  MR. RAFFENSPERGER AND MR. KEMP ARE STATE ACTORS

A Section 1983 claim is only applicable to conduct occurring under color of law. Here, all of the unconstitutional conduct alleged by the Plaintiffs were committed by Mr. Raffensperger and Mr. Kemp, under color of their official authority as governor and secretary of

state, respectively. Accordingly, there is no question that Mr. Raffensperger and Mr. Kemp are state actors.

Although the Supreme Court found that the State of Texas did not have standing to sue other States with regard to the latter's' elections, the State of Texas would have standing to sue certain individual, state actors, for violating the rights of its citizens. Maybe it will join in this suit, but that question is not before the Court. The issue is: Can the Plaintiffs sue these named persons, in their individual capacity?

### B. PLAINTIFFS HAVE STATED A CLAIM UPON WHICH RELIEF MAY BE GRANTED

A Section 1983 claim requires a plaintiff to show both the existence of a federally protected right and the deprivation of that right by a person acting under color of state law. 42 U.S.C. § 1983. *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 924 (1982).

Accordingly, as averred, the Plaintiffs have suffered a particularized injury-in-fact. The legislative history of section 1983 "demonstrates that it was intended to create a species of tort liability in favor of persons who are deprived of rights, privileges, or immunities secured to them by the Constitution." *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976).

Here, the Plaintiffs amended their complaint, attached to their motion for leave to amend. [Doc. 48, Ex. 1]. In the Amended Complaint, the Plaintiffs, joined by over 140 more Plaintiffs, eight of whom are from Georgia, filed a constitutional challenge to Georgia State Law-O.C.G.A. 21-2-386. With that, the Defendants' motion to dismiss cannot be ruled upon outside of the context of these additional parties and claims.

This Court must conduct a judicial review of the constitutionality of the challenged law giving rise to a claim for acting under color of law as a matter of due course in a 42 U.S.C. § 1983 proceeding. Although it was not necessary to include a direct challenge as a cause of

action, Plaintiffs have now separated the conduct complained of and have included the constitutional challenge in their Amended Complaint. This Court may additionally certify the questions of law, upon motion by Plaintiffs, to the Supreme Court of Georgia to include matters that it deems appropriate.

As was stated by the Supreme Court in *Ex parte Young*:

> The answer to all this is the same as made in every case where an official claims to be acting under the authority of the State. The *act to be enforced is alleged to be unconstitutional*, and if it be so, the use of the name of the State to enforce an unconstitutional act to the injury of complainants is a proceeding without the authority of and one which does not affect the State in its sovereign or governmental capacity. *It is simply an illegal act upon the part of a state official in attempting by the use of the name of the State to enforce a legislative enactment which is void because unconstitutional*. If the act which the state Attorney General seeks to enforce be a violation of the Federal Constitution, the officer in proceeding under such enactment comes into conflict with the superior authority of that Constitution, and he is in that case *stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct*. The State *has no power to impart to him any immunity from responsibility to the supreme authority of the United States*. It would be an injury to complainant to harass it with a multiplicity of suits or litigation generally in an endeavor to enforce penalties under an unconstitutional enactment, and to prevent it ought to be within the jurisdiction of a court of equity. If the question of unconstitutionality with reference, at least, to the Federal Constitution be first raised in a Federal court that court, as we think is shown by the authorities cited hereafter, has the right to decide it to the exclusion of all other courts.

*Ex parte Young*, 209 U.S. 123, 159-160 (emphasis added).

Admittedly, the Supreme Court was presented with similar arguments made by other parties, challenging the constitutionality of Georgia's election laws, however, the Supreme Court has declined to do so. That does not foreclose the issue or Plaintiffs claims.

### VI.   MR. RAFFENSPERGER AND MR. KEMP'S MOTION TO DISMISS IS MOOT

Plaintiffs have filed their motion for leave to amend their complaint. Accordingly, acceptance of the Amended Complaint renders Mr. Raffensperger and Mr. Kemp's motion moot.

Here, the amended complaint adds over 140 additional Plaintiffs, supplements the factual allegations, and cures any alleged defects in the original Complaint with regard to Rule 23.

## VII.  CONCLUSION

For the reasons above, Plaintiffs respectfully request that this Court deny Defendants' motion to dismiss in its entirety, or, in the alternative, deny Defendants' motion as moot, in light of the Plaintiffs' Amended Complaint.

Respectfully submitted this 12th day of April, 2021.

**PLAINTIFFS COUNSEL:**

| | |
|---|---|
| By: *s/Ernest J. Walker* <br> Ernest J. Walker (MI P58635) <br> ERNEST J. WALKER LAW OFFICE <br> 1444 Stuart St. <br> Denver, CO 80204 <br> (720) 306-0007 <br> ernestjwalker@gmail.com | By:   *s/ Gary D. Fielder* <br> Gary D. Fielder (CO 19757) <br> LAW OFFICE OF GARY FIELDER <br> 1444 Stuart St. <br> Denver, CO 80204 <br> (720) 306-0007 <br> gary@fielderlaw.net |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 12, 2021, a copy of the foregoing document was electronically filed with the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*s/Ernest J. Walker*
Ernest J. Walker, Esq.
Ernest J. Walker Law Office
1444 Stuart St.
Denver, CO 80204
(720)306-0007