**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:20-cv-03747-NRN

KEVIN O'ROURKE, NATHANIEL L. CARTER, LORI CUTUNILLI, LARRY D. COOK, ALVIN CRISWELL, KESHA CRENSHAW, NEIL YARBROUGH, and AMIE TRAPP,

        Plaintiffs, on their own behalf and of a class of similarly situated persons,

   v.

DOMINION VOTING SYSTEMS, INC., a Delaware corporation, FACEBOOK, INC., a Delaware corporation, CENTER FOR TECH AND CIVIC LIFE, an Illinois non-profit organization, MARK E. ZUCKERBERG, individually, PRISCILLA CHAN, individually, BRIAN KEMP, individually, BRAD RAFFENSPERGER, individually, GRETCHEN WHITMER, individually, JOCELYN BENSON, individually, TOM WOLF, individually, KATHY BOOCKVAR, individually, TONY EVERS, individually, ANN S. JACOBS, individually, MARK L. THOMSEN, individually, MARGE BOSTELMAN, individually, JULIE M. GLANCEY, DEAN KNUDSON, individually, ROBERT F. SPINDELL, Jr., individually, and DOES 1-10,000,

        Defendants.

---

**DEFENDANT CENTER FOR TECH AND CIVIC LIFE'S REPLY
IN SUPPORT OF ITS MOTION TO DISMISS**

---

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 1

I.   Plaintiffs' arguments concerning Article III standing are frivolous. ............................. 2

II.  Plaintiffs' claims are frivolous on the merits. ................................................................ 5

    A.   Plaintiffs *do not even try* to defend the merits of any theory as to how the Constitution was violated. ....................................................................... 6

    B.   CTCL is not a state actor. ................................................................................... 8

CONCLUSION ........................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. Celebrezze*,
  460 U.S. 780 (1983) .................................................................................................. 3, 4

*Anderson v. Celebrezze*,
  499 F. Supp. 121 (S.D. Ohio 1980) ............................................................................ 3

*Bowyer v. Ducey*,
  No. 20 Civ. 2321, 2020 WL 7238261 (D. Ariz. Dec. 9, 2020) .................................... 7

*Carey v. Piphus*,
  435 U.S. 247 (1978) .................................................................................................... 3

*Cousins v. Wigoda*,
  419 U.S. 477 (1975) .................................................................................................... 3

*Donald J. Trump for President, Inc. v. Boockvar*,
  No. 20 Civ. 966, 2020 WL 5997680 (W.D. Pa. Oct. 10, 2020) ................................... 7

*Election Integrity Fund v. City of Lansing*,
  No.  20 Civ. 950, 2020 WL 6605987 (W.D. Mich. Oct. 19, 2020) ............................. 5

*Ex Parte Yarbrough*,
  110 U.S. 651 (1884) .................................................................................................... 3

*Feehan v. Wis. Elections Comm'n*,
  No. 20 Civ. 1771, 2020 WL 7250219 (E.D. Wis. Dec. 9, 2020) ................................. 6

*Flagg Bros., Inc. v. Brooks,*
  436 U.S. 149 (1978) .................................................................................................... 9

*Gallagher v. Neil Young Freedom Concert*,
  49 F.3d 1442 (10th Cir. 1995) .................................................................................... 8

*Horne v. Flores*,
  557 U.S. 433 (2009) .................................................................................................... 4

*Imbler v. Pachtman*,
  424 U.S. 409 (1976) .................................................................................................... 3

*Iowa Voter All. v. Black Hawk Cty.*,
  No. 20 Civ. 2078, 2021 WL 276700 (N.D. Iowa Jan. 27, 2021) ................................. 5

*King v. Whitmer*,
   No. 20 Civ. 13134, 2020 WL 7134198 (E.D. Mich. Dec. 7, 2020) ........................ 6, 7

*Lance v. Coffman*,
   549 U.S. 437 (2007) ............................................................................................ 2

*Logan v. Pub. Emps. Ret. Ass'n*,
   163 F. Supp. 3d 1007 (D.N.M. 2016) ................................................................. 7

*Lugar v. Edmondson Oil Co.*,
   457 U.S. 922 (1982) ............................................................................................ 3

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ............................................................................................ 2

*Marsh v. Alabama*,
   326 U.S. 501 (1946) ............................................................................................ 9

*Minn. Voters All. v. City of Minneapolis*,
   No. 20 Civ. 2049, 2020 WL 6119937 (D. Minn. Oct. 16, 2020) .......................... 5

*Pa. Voters All. v. Centre Cty.*,
   No. 20 Civ. 1761, 2020 WL 6158309 (M.D. Pa. Oct. 21, 2020) .......................... 5

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ........................................................................................ 2

*Street v. Corrections Corp. of Am.*,
   102 F.3d 810 (6th Cir. 1996) ............................................................................... 9

*Terry v. Adams*,
   345 U.S. 461 (1953) ............................................................................................ 9

*Tex. Voters All. v. Dallas Cty.*,
   No. 20 Civ. 775, 2020 WL 6146248 (E.D. Tex. Oct. 20, 2020) .......................... 5

*United States v. Mosley*,
   238 U.S. 383 (1915) ............................................................................................ 3

*Uzuegbunam v. Preczewski*,
   141 S. Ct. 792 (2021) .......................................................................................... 4

*West v. Atkins*,
   487 U.S. 42 (1988) .............................................................................................. 6

*Wis. Voters All. v. City of Racine*,
   No. 20 Civ. 1487, 2021 WL 179166 (E.D. Wis. Jan. 19, 2021) ....................... 4, 5

**Statutes**

42 U.S.C. § 1983 ................................................................................................................ *passim*

42 U.S.C. § 1985 ......................................................................................................................... 5

42 U.S.C. § 1986 ......................................................................................................................... 5

42 U.S.C. § 1988 ......................................................................................................................... 5

Help America Vote Act ............................................................................................................... 5

National Voter Registration Act ................................................................................................. 5

**Constitutional Provisions**

U.S. Const. art. II, § 1, cl. 2 ......................................................................................................... 6

U.S. Const. art. III ............................................................................................................. *passim*

U.S. Const. amend. I ................................................................................................................... 3

U.S. Const. amend. XIV ......................................................................................................... 6, 7

## INTRODUCTION

Since filing this action roughly two months after the 2020 presidential election, Plaintiffs have had several chances to clarify, explain, or rectify the stark deficiencies in their convoluted, 84-page Complaint about nebulous "burden[s]" on the "voting rights of 160 million people." ECF 1 ("Compl.") at ¶ 1. After several defendants (including CTCL) explained in detail that Plaintiffs lack Article III standing and fail to state a claim, Plaintiffs had the opportunity to propose amendments to their complaint. In so doing, however, they still failed to add any plausible allegations in support of standing or a cognizable cause of action against CTCL. In their Opposition to CTCL's Motion to Dismiss, Plaintiffs were given yet another opportunity to explain how they have standing or how their allegations plausibly state a claim. *See* ECF 64 ("Opposition" or "Opp."). But they squandered that chance, too, offering unresponsive bombast and bromide about voting generally, rather than legal argument about the adequacy of their allegations. While not a model of clarity, the Opposition does make one thing apparent: Plaintiffs have neither the intention nor the ability to mount a non-frivolous defense of their Complaint. It should be dismissed.

## ARGUMENT

It remains clear that the Complaint fails to establish standing or state a claim. Indeed, Plaintiffs hardly attempt to show otherwise.[1]

---

[1] Much of Plaintiffs' Opposition is devoted to inflammatory innuendo with no discernable connection to any of the issues raised in CTCL's Motion to Dismiss. For instance, Plaintiffs include a "background" section of several pages, none of which contains even a single citation to their 84-page complaint; instead, they proffer cherry-picked facts drawn from various extra-pleading sources (or no source at all), which distort the reality of CTCL's grant program. Opp. at 4-6. Plaintiffs baselessly and gratuitously insinuate that CTCL is guilty of tax fraud and twice accuse CTCL of operating without a business license—neither of which is relevant to any claim in this case. *See* Opp. at 9, 12. And, as discussed below, even when Plaintiffs do purport to respond to actual arguments that favor dismissal, much of what they argue is completely unresponsive to

**I.        Plaintiffs' arguments concerning Article III standing are frivolous.**

To reiterate the black-letter precedents cited in CTCL's prior briefs, Article III standing requires Plaintiffs to have personally suffered (1) a concrete and particularized injury (2) that is traceable to the conduct they challenge, and that (3) would likely be redressed by a favorable decision. *E.g.*, *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *see* ECF 41 ("MTD") at 4-7; ECF 62 ("Opp. to AC") at 4-5. At the pleading stage, any complaint filed in federal court must "clearly allege facts demonstrating each element." *Spokeo*, 136 S. Ct. at 1547 (cleaned up).

CTCL's Motion to Dismiss explained that Plaintiffs come nowhere close to alleging either of the first two elements—injury-in-fact and traceability. *See* MTD at 4-7. That is because Plaintiffs' vague allegations that something illegal happened during the recent presidential election are a classic "generalized grievance," *id.* at 4-6, and because the resulting abstract harm they claim to have suffered is also completely untethered from (much less "fairly traceable" to) anything CTCL is alleged to have done wrong, *id.* at 7; *see also* Opp. to AC at 5. The Supreme Court has repeatedly articulated the longstanding legal principle that compels dismissal of Plaintiffs' claims for lack of standing: "We have consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (per curiam) (quoting *Lujan v. Defenders of Wildlife*,

---

CTCL's motion. On its face, Plaintiffs' brief cannot be treated as a non-frivolous effort to defend their claims in this litigation.

504 U.S. 555, 573-74 (1992)). CTCL has also explained that Plaintiffs fail to allege redressability insofar as they seek declaratory and injunctive relief. *See* MTD at 7.[2]

Plaintiffs do not meaningfully engage with any of CTCL's arguments. Instead, they purport to establish standing by citing cobbled-together soundbites from inapposite cases that are not about Article III standing. Two of their cases involved criminal prosecutions: *Ex Parte Yarbrough* was a habeas corpus action brought by federal prisoners, 110 U.S. 651, 652 (1884), and *United States v. Mosley* addressed whether to quash a criminal indictment, 238 U.S. 383, 385 (1915). Another cited case, *Cousins v. Wigoda*, 419 U.S. 477 (1975), was brought by litigants who faced contempt sanctions if they lost the First Amendment issue in that case—and did not even arise in federal court. *See id.* at 480-83. Plaintiffs also cite three cases about the *merits* of § 1983 actions, none of which had anything to do with standing (or voting or elections, for that matter). *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982); *Carey v. Piphus*, 435 U.S. 247 (1978); *Imbler v. Pachtman*, 424 U.S. 409 (1976). Finally, Plaintiffs inexplicably highlight *Anderson v. Celebrezze*, 460 U.S. 780 (1983), even though CTCL's brief in opposition to Plaintiffs' proposed amended complaint pointed out that *Anderson* was not about Article III standing. Opp. to AC at 7 & n.4; *see also id.* at 12 (further explaining *Anderson*'s irrelevance to the merits).[3] In short, none of these

---

[2] CTCL's motion identified a litany of recent federal court decisions that rejected similar claims due to Article III standing defects that are indistinguishable from those in this case. *See* MTD at 5-7.

[3] Because Plaintiffs discuss *Anderson* far more than any other case in their standing argument, and it is at least a § 1983 case that had something to do with Presidential elections, we note some key differences between that case and the present Complaint. In *Anderson*, the plaintiffs were a Presidential candidate, John Anderson, and several individuals who supported his campaign. *Anderson*, 460 U.S. at 782-83. They sued a specific government official (Ohio's Secretary of State) seeking declaratory and injunctive relief to prevent him from enforcing a specific state law (an early ballot-access deadline for independent presidential candidates) that they alleged was unconstitutional. *Id.*; *see Anderson v. Celebrezze*, 499 F. Supp. 121, 123 (S.D. Ohio 1980). That

3

cases address any question of Article III injury-in-fact or traceability, much less endorse Plaintiffs' outlandish position that all registered voters nationwide have Article III standing to challenge any perceived illegality or irregularity in any election anywhere else in the country.

Plaintiffs cite only two cases that actually discuss the elements of Article III standing. First, they block-quote the holding of *Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021), Opp. at 15, which explains that "[a] request for nominal damages satisfies the redressability element of standing where a plaintiff's claim is based on a completed violation of a legal right." 141 S. Ct. at 802. But *Uzuegbunam* did not alter or even meaningfully address the injury-in-fact and traceability elements of standing, which were not directly at issue there. *See id.* at 797. Nothing in that case affords a non-frivolous response to the argument that Plaintiffs lack standing.

This leaves *Wisconsin Voters Alliance v. City of Racine*, No. 20 Civ. 1487, 2021 WL 179166 (E.D. Wis. Jan. 19, 2021), which is one of many decisions discussed in CTCL's opening brief that recently dismissed similar challenges to CTCL's grant program for lack of standing. *See* MTD at 6 (collecting cases). Plaintiffs' futile attempts to distinguish those cases run the gamut from silly[4] to self-defeating[5] to downright false: Plaintiffs suggest that those cases do not bear on their standing because they claim that the plaintiffs who lacked standing in those cases were

---

deadline operated to the detriment of each of the plaintiffs in a variety of concrete and particular ways. *See* 460 U.S. at 786 (noting that the ballot-access deadline obviously had a "direct impact" on the excluded candidate himself); *id.* at 790-92 (explaining, for purposes of a balancing-the-interests test relevant to the merits, that it was "clear" that the challenged deadline also "place[d] a particular burden on an identifiable segment of Ohio's independent-minded voters"); *id.* at 795 n.19 (discussing additional burdens the deadline imposed on Anderson supporters outside Ohio). That is why there was never any doubt in *Anderson* that at least one plaintiff satisfied the prerequisites for Article III standing. 460 U.S. 780. *See Horne v. Flores*, 557 U.S. 433, 446 (2009) (if "at least one" plaintiff has standing, a court "need not consider" whether others do).

[4] *E.g.*, "None of these cases involved any party to this lawsuit." Opp. at 12.

[5] *E.g.*, "Not one of the cases cited by CTCL was ever determined on the merits." Opp. at 12. That is because the plaintiffs in those cases lacked Article III standing. *See* MTD at 6.

"political action groups, not voters," Opp. at 12, when in fact those cases *all* involved individual voter plaintiffs—and those individual voters were all found to lack Article III standing for reasons that apply to Plaintiffs here.[6] Of course, CTCL explained that in its own prior briefs.

At bottom, Plaintiffs' arguments concerning Article III standing range from irrelevant to unresponsive to downright misleading. These frivolous contentions do not save the Complaint.

## II. Plaintiffs' claims are frivolous on the merits.

CTCL's motion to dismiss also identifies numerous fatal deficiencies in the Complaint's allegations under 42 U.S.C. §§ 1983, 1985, 1986, and 1988. Plaintiffs offer no response at all to most of those arguments. In fact, the § 1983 claims are the *only* ones Plaintiffs even attempt to defend.[7] And with respect to those claims, they again cite inapposite precedent and leave obvious deficiencies completely unaddressed. To state a claim under § 1983, Plaintiffs must plausibly allege both (1) "the violation of a [constitutional] right" and (2) that those violations were

---

[6] *See Iowa Voter All. v. Black Hawk Cty.*, No. 20 Civ. 2078, 2021 WL 276700, at *1 n.1, *4-8 (N.D. Iowa Jan. 27, 2021); *Wis. Voters All.*, 2021 WL 179166, at *2-3; *Pa. Voters All. v. Centre Cty.*, No. 20 Civ. 1761, 2020 WL 6158309, at *4-5, *6-7 (M.D. Pa. Oct. 21, 2020); *Tex. Voters All. v. Dallas Cty.*, No. 20 Civ. 775, 2020 WL 6146248, at *2, *4-6 (E.D. Tex. Oct. 20, 2020); *Election Integrity Fund v. City of Lansing*, No. 20 Civ. 950, 2020 WL 6605987, at *2 (W.D. Mich. Oct. 19, 2020); *Minn. Voters All. v. City of Minneapolis*, No. 20 Civ. 2049, 2020 WL 6119937, at *1 (D. Minn. Oct. 16, 2020). In two other similar cases brought by the same counsel, the plaintiffs voluntarily dismissed their complaints before the court needed to address standing. *See* ECF 19, *Ga. Voter All. v. Fulton Cty.*, No. 20 Civ. 4198 (N.D. Ga. Nov. 4, 2020); ECF 6, *S.C. Voter's All. v. Charleston Cty.*, No. 20 Civ. 3710 (D.S.C. Nov. 17, 2020).

[7] CTCL's motion to dismiss explained why the Complaint cannot state a claim under 42 U.S.C. §§ 1985, 1986, and 1988: (1) a claim under § 1985 requires plausible allegations of a conspiracy and of racial or other invidious discriminatory animus; (2) a § 1986 claim is contingent on a valid § 1985 claim; and (3) § 1988 does not create a cause of action. MTD at 13. Plaintiffs fail to respond to any of these points. Plaintiffs also persist in refusing either to explain the Complaint's stray citations to the Help America Vote Act or the National Voter Registration Act, or to controvert CTCL's explanation as to why those statutes cannot give rise to any claims against CTCL. *See id.* at 13-14; Opp. to AC at 9 n.5.

5

attributable to a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988). The Opposition does not even address the first element, and it is wholly unpersuasive with respect to the second.

      **A.**      **Plaintiffs *do not even try* to defend the merits of any theory as to how the Constitution was violated.**

CTCL's Motion to Dismiss explained why each of the constitutional theories underlying Plaintiffs' § 1983 claims lack any cognizable basis in law. Amazingly, these points go almost *entirely* unaddressed, much less rebutted, by Plaintiffs' Opposition.

In Count I, Plaintiffs alleged that CTCL violated the Electors Clause, U.S. Const. art. II, § 1, cl. 2. Compl. at 62. Citing recent, on-point authority, CTCL's Motion to Dismiss explained that an alleged violation of state law alone is *not* a violation of the Electors Clause, and that any Electors Clause cause of action here would belong to *states and their legislatures*, not individual voters like Plaintiffs. *See* MTD at 10-11 (citing *King v. Whitmer*, No. 20 Civ. 13134, 2020 WL 7134198, at *12 (E.D. Mich. Dec. 7, 2020); *Feehan v. Wis. Elections Comm'n*, No. 20 Civ. 1771, 2020 WL 7250219, at *12 (E.D. Wis. Dec. 9, 2020)). In Count II, Plaintiffs alleged that CTCL violated the Equal Protection Clause. Compl. at 67. CTCL then pointed out that the Complaint alleges none of the familiar and indispensable ingredients of an equal protection claim: There are no allegations of invidious discrimination or legislative classification, nor any allegations that CTCL imposed a cognizable burden on a fundamental right. *See* MTD at 11-12. Finally, as to Count III, Compl. at 71, CTCL explained why Plaintiffs have not plausibly alleged a violation of either procedural or substantive due process: they allege neither any process they were denied nor any fundamentally unfair voting procedures (let alone such deprivations somehow attributable in any respect to CTCL). MTD at 12.

Plaintiffs' offer *no response whatsoever* in defense of any of these claims—which are the only substantive constitutional violations they allege against CTCL. The phrase "Electors Clause"

6

does not appear anywhere in their Opposition. Nor does the phrase "equal protection."[8] And the only mention of "due process" is a stray assertion, without citation to any authority and untethered from any allegations in the Complaint, that supposed intra-state differences in voting procedures "created unfair, variable, and unequal levels of access and due process for the Election." Opp. at 2. That is not a coherent legal argument, and it is certainly not the law. *See Boockvar*, 2020 WL 5997680, at *51 (holding that purported unfairness from variable election procedures did not support a due process claim for essentially the same reasons it did not support an equal protection claim); *Logan v. Pub. Emps. Ret. Ass'n*, 163 F. Supp. 3d 1007, 1034 (D.N.M. 2016) (Due process is violated only in the "exceptional case where a state's voting system is fundamentally unfair.").

In short, Plaintiffs offer only frivolous arguments—and for the most part offer no arguments at all—to support that they have stated a claim upon which relief can be granted. Meanwhile, Plaintiffs spill pages of ink on baseless accusations and innuendos, vague platitudes about the Presidency, and other irrelevancies. Plaintiffs' decision to forego any credible defense of their claims (while pivoting to a proposed amended complaint that leaves these same defects completely unaddressed, *see* Opp. to AC at 11-13) only reinforces how irreparably deficient and improper this Complaint is.

---

[8] Plaintiffs may have intended their reference to "varying election processes" to imply some sort of claim under the Equal Protection Clause. Opp. at 2. But mere variation in certain election procedures, relating to things like drop boxes and mail-in signature comparisons, is inherent in state and local control of election administration and *does not implicate* equal protection. *See Donald J. Trump for President, Inc. v. Boockvar*, No. 20 Civ. 966, 2020 WL 5997680, at *45 (W.D. Pa. Oct. 10, 2020) (rejecting an equal protection claim based on "uneven implementation" of statewide rules); *see also Bowyer v. Ducey*, No. 20 Civ. 2321, 2020 WL 7238261, at *5 (D. Ariz. Dec. 9, 2020) (similar). Nor does Plaintiffs' baseless speculation that CTCL "directed" some unspecified manipulation of votes at the "micro level," Opp. at 3, make out an equal protection violation. *See King*, 2020 WL 7134198, at *12-13 (rejecting equal protection claim based on "nothing but speculation and conjecture" about "'schemes' to, among other things, 'destroy,' 'discard,' and 'switch' votes").

### B. CTCL is not a state actor.

Independently, it remains obvious that Plaintiffs' § 1983 claims against CTCL also fail for the simple reason that CTCL—a private, non-profit organization—is not a state actor.

In their Opposition, Plaintiffs gesture towards three of the four bases for treating a private actor's conduct as state action: (a) the "joint action test"; and (b) the "public function" test; and (c) "symbiotic relationship." Opp. at 6-8. As CTCL has already explained, MTD at 8-10; Opp. to AC at 9-11, none of these theories is plausibly supported by the allegations set forth in the Complaint.

In trying to satisfy the "symbiotic relationship" test, the only fact that Plaintiffs identify as relevant is that CTCL entered into "contractual relationships" with various localities. Opp. at 6. But as Plaintiffs have already conceded, "[o]bviously, contracting alone does not automatically transform the conduct of an entity into state-action." *See* Opp. to AC at 11. More is needed to satisfy the "narrowly" construed symbiosis test, *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1451 (10th Cir. 1995)—at the very least, it requires allegations rising to the level of "long-term dependence" by government on the private entity. *Id.* at 1452; *see also id.* at 1453 ("Payments under government contracts . . . are insufficient to establish a symbiotic relationship between the government and a private entity."). Plaintiffs have alleged nothing like that "long-term dependence" with respect to CTCL's emergency grant program and do not explain how they meet that stringent test.

As to the joint action and public function tests, CTCL has already explained in detail why the cases Plaintiffs cite are wholly inapposite. *See* Opp. to AC at 9-11. A mere relationship between a state and a private actor does not satisfy the joint action test, which requires "a substantial degree of cooperative action" or other "overt and significant" collaboration. *Gallagher*, 49 F.3d at 1454. A "common goal" is not enough unless it is "a specific goal to violate the plaintiff's constitutional rights by engaging in a particular course of action." *Id.* at 1455. CTCL's alleged contractual

8

relationship with state actors here plainly does not fit the bill. There are no allegations that CTCL itself actually participated in election administration, nor are there any non-conclusory allegations that CTCL and any grantee shared a common goal to violate any Plaintiff's rights.

Plaintiffs' invocation of the "public function" test is even farther afield. As CTCL has already explained, Opp. to AC at 10, the cases Plaintiffs cite—*Terry v. Adams*, 345 U.S. 461, 463 (1953) (about a whites-only county-level political organization with de facto power to select party's candidates), *Marsh v. Alabama*, 326 U.S. 501, 503 (1946) (about a company-owned town), and *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 163 (1978) (about a private actor's sale of goods that was *not* state action)—all addressed completely inapposite facts. And none of them suggests that a private nonprofit assumes a role "exclusively reserved to the State," *id.* at 158, by providing monetary grants to be used by others for election administration consistent with their own local needs and regulations.[9]

Plaintiffs cite only a single new state action case in their Opposition. *See Street v. Corrections Corp. of Am.*, 102 F.3d 810 (6th Cir. 1996). But *Street* is wholly inapplicable: There, a private company assumed a quintessential function "traditionally exclusively reserved to the state" by "operating a prison." *Id.* at 814. There is no comparable allegation that CTCL operated or administered any elections itself, or otherwise assumed any exclusive state function.

Because Plaintiffs fail to plausibly allege that CTCL, a private non-profit, acted "under color of" state law, they fail to state a claim against CTCL under § 1983.

---

[9] Without citation, Plaintiffs baselessly claim that "the conditions in CTCL contracts bound the local jurisdiction to do the bidding of the enterprise agenda." Opp. at 9; *see also id.* at 6 (similar unsupported accusations). That is false. *See, e.g.*, Flint City Council Agenda at 39-40 (Sept. 16, 2020), https://www.cityofflint.com/wp-content/uploads/Agenda-Packet-City-Council-9-16-20-Part-1.pdf (a representative CTCL contract that Plaintiffs themselves cite elsewhere, imposing no such condition). And in any event, no such facts are alleged anywhere in Plaintiffs' 84-page complaint (which does not even contain the word "condition").

9

\*   \*   \*   \*   \*

The Complaint comes nowhere close to satisfying applicable legal standards. Plaintiffs lack standing under elementary principles of constitutional law. They fail to state a claim under any of the provisions they invoke. And they fail to allege state action under § 1983. Their arguments to the contrary—to the extent they mount any—are to varying degrees incoherent, misleading, and frivolous (oftentimes all three). Despite ample time, and despite a chance to study the authorities presented by CTCL and other defendants, Plaintiffs have proved unwilling to reconsider their claims. Instead, they have peppered their Opposition with improper attacks on CTCL and flat-out falsehoods. As an initial response to this abusive and outrageous conduct by Plaintiffs and their counsel, and under a straightforward application of the requirements set forth in the Federal Rules of Civil Procedure, the Court should dismiss the Complaint with prejudice.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' original complaint.[10]

---

[10] In the alternative, if the Court dockets the proposed amended complaint, the Court may treat this motion as moot (but should dismiss the proposed amended complaint *sua sponte* for failure to cure any of the defects that justify dismissal of the original complaint).

Respectfully submitted,

_____
Joshua Matz
Michael Skocpol
Marcella Coburn
Louis W. Fisher
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, NY 10118
Telephone: 212.763.0883
Facsimile: 212.564.0883
Email: jmatz@kaplanhecker.com
        mskocpol@kaplanhecker.com
        mcoburn@kaplanhecker.com
        lfisher@kaplanhecker.com

*Attorneys for Defendant Center for Tech and Civic Life*

11

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 14, 2021, a true and correct copy of the foregoing Reply in Support of CTCL's Motion to Dismiss was electronically filed with the Court using the CM/ECF system which will send notifications of such filing to all counsel of record.

Joshua Matz