**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-3747-NRN

KEVIN O'ROURKE, *et al.*,

Plaintiffs,

v.

DOMINION VOTING SYSTEMS INC., *et al.*,

Defendants.

### GOVERNOR TOM WOLF'S AND FORMER SECRETARY KATHY BOOCKVAR'S MOTION FOR SANCTIONS

Pennsylvania Governor Tom Wolf and former Secretary of the Commonwealth Kathy Boockvar (the "Pennsylvania defendants") move for the imposition of sanctions under this Court's inherent authority and 28 U.S.C. § 1927 against plaintiffs' attorneys, Gary Fielder and Ernest Walker.

### INTRODUCTION

This case made demonstrably false accusations to advance frivolous legal arguments. It did so for a dangerous purpose: to attack the Pennsylvania defendants' administration of the 2020 election and to undermine faith in the results of that election. In that way, this case fits a broader trend. For months, Pennsylvania officials have been bombarded by similarly baseless allegations and frivolous lawsuits relating to the 2020 election, at significant cost to Pennsylvania taxpayers. While courts have universally dismissed these abusive lawsuits, the lawsuits have not been inconsequential. These grave and unfounded attacks, repackaged as legal claims, have harmed Pennsylvania and the country. Dedicated election workers have been

threatened by individuals convinced of the truth of the same lies repeated in this case. The Capitol was stormed by people who had been convinced that the election was stolen.

After watching all this unfold, plaintiffs' attorneys charged ahead with this case. In doing so, they not only recycled many of the same accusations and claims that countless courts already had rejected, but also made the even more preposterous assertion that the 2020 election was corrupted by a vast conspiracy to favor President Biden that was hatched by the governors of four states (one of whom is a member of the Republican Party), social-media giant Facebook, Dominion Voting Services, the nonprofit Center for Tech and Civic Life, and various other individuals.

Plaintiffs' attorneys plainly made no meaningful investigation into their outlandish allegations, despite having waited for months after the election to serve their complaint on the Pennsylvania defendants and having had the benefit of many earlier decisions rejecting their allegations. And while any reasonable attorney would have been aware from the start that this entire case was unjustifiable, plaintiffs' attorneys were specifically made aware of the spuriousness of their case soon after they filed it. Through their actions, plaintiffs' attorneys have disregarded their obligations to this Court and have abused the privilege of appearing in federal court. They should be sanctioned for that misconduct.

## **LEGAL STANDARD**

Courts possess the inherent authority to impose sanctions against an attorney who takes actions "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Sun River Energy, Inc. v. Nelson*, 800 F.3d 1219, 1227 (10th Cir. 2015) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)); *see also Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 765 (1980); *Braley v. Campbell*, 832 F.2d 1504, 1510 (10th Cir. 1987). Initiating a lawsuit in bad faith may justify

sanctioning an attorney pursuant to a court's inherent authority. *Steinert v. Winn Grp., Inc.*, 440 F.3d 1214, 1224 (10th Cir. 2006). And a lawsuit may be considered as having been initiated in bad faith if the arguments it advances are "so frivolous as to reflect impermissible conduct." *Mountain W. Mines, Inc. v. Cleveland-Cliffs Iron Co.*, 470 F.3d 947, 954 (10th Cir. 2006) (cleaned up); *see also Sterling Energy, Ltd. v. Friendly Nat. Bank*, 744 F.2d 1433, 1437 (10th Cir. 1984). Payment of attorneys' fees is an available sanction for a court that imposes sanctions under its inherent authority. *Sun River*, 800 F.3d at 1227. Salaried attorneys who do not bill by the hour may recover attorneys' fees as a sanction. *See King v. Fleming*, 899 F.3d 1140, 1155 (10th Cir. 2018).

Separately, any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Sanctions are appropriate under this statute "when an attorney acts recklessly or with indifference to the law; when an attorney is cavalier or bent on misleading the court; intentionally acts without a plausible basis; or when the entire course of the proceedings was unwarranted." *Dominion Video Satellite, Inc. v. Echostar Satellite L.L.C.*, 430 F.3d 1269, 1278 (10th Cir. 2005) (cleaned up). Put simply, sanctions can be imposed against an attorney who makes arguments that are "completely meritless." *Id.* at 1279.

Bad faith is not a predicate for imposing sanctions under § 1927. *Hamilton v. Boise Cascade Exp.*, 519 F.3d 1197, 1202 (10th Cir. 2008). Courts may impose sanctions on attorneys who act with "an empty head and a pure heart." *Id.* As a result, "any conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court,

3

is sanctionable." *Id.* (cleaned up). Sanctions may be levied even if the misconduct occurred in only isolated incidents. *Id*. at 1203.

District courts retain jurisdiction to impose sanctions even after entering final judgment. *See Steinert*, 440 F.3d at 1223; *Lundahl v. Halabi*, 600 F. App'x 596, 605–06 (10th Cir. 2014). District courts also retain jurisdiction to conduct sanctions proceedings after an action has been voluntarily dismissed. *Miller v. Bahakel Commc'ns, Ltd.*, No. 20-0791, 2021 WL 662307, at *2 (D. Colo. Feb. 19, 2021).

## ARGUMENT

This Court should exercise its inherent authority to sanction plaintiffs' attorneys for initiating this litigation vexatiously and in bad faith, and it should also impose sanctions under 28 U.S.C. § 1927 because plaintiffs' attorneys acted with an indifference to the law and the facts by continuing to pursue this action after it should have been clear that the entire proceeding was unwarranted.[1]

### I. Plaintiffs' Attorneys Should Be Sanctioned Under This Court's Inherent Authority

The patently frivolous nature of this case demonstrates plaintiffs' attorneys' vexatious intentions and their bad faith. That conclusion is inescapable from the total disregard plaintiffs' attorneys displayed for the truth of their factual allegations, their indifference to well-established limits of federal jurisdiction, and the meritless nature of the claims presented.

Beginning with the factual allegations, plaintiffs alleged throughout the Complaint, ECF No. 1, and the Proposed Amended Complaint, ECF No. 48-1, that the Pennsylvania defendants

---

[1] On March 26, 2021, the Pennsylvania defendants served plaintiffs' attorneys with a motion under Federal Rule of Civil Procedure 11. Because plaintiffs dismissed the Pennsylvania defendants on the last day of that rule's "safe harbor" period, the Pennsylvania defendants do not seek sanctions under Rule 11. While the imposition of sanctions under either a court's inherent authority or 28 U.S.C. § 1927 must comport with due process, neither requires advance service of the motion. *See Hutchinson v. Pfeil*, 208 F.3d 1180, 1186 n.9 (10th Cir. 2000).

4

violated state election laws while administering the 2020 election. Compl. ¶¶ 296, 305–309, 334–335, 360–361; Am. Compl. ¶¶ 665–666, 668, 693, 719–720. These allegations are demonstrably false, as they rely on representations of Pennsylvania law that the Supreme Court of Pennsylvania definitively rejected before plaintiffs filed this complaint.[2]

First, plaintiffs alleged that defendants defied a statutory requirement that mail-in ballots undergo signature verification review. Compl. ¶¶ 217–219, 222, 232(a)–(c); Am. Compl. ¶¶ 530–532, 552–554, 555(a). That is false. Pennsylvania does not permit signature verification of mail-in ballots. *See In re Nov. 3, 2020 Election*, 240 A.3d 591, 611 (Pa. 2020).

Second, plaintiffs alleged that defendants violated rules requiring the disqualification of mail-in ballots cast with technical errors. Compl. ¶¶ 220–221, 224, 232(e); Am. Compl. ¶¶ 533–540. That, too, is false. Pennsylvania does not require disqualifying mail-in ballots cast with technical errors, *In re Canvass of Absentee & Mail-in Ballots*, 241 A.3d 1058, 1078 (Pa. 2020), and Pennsylvania law does not prohibit counties from allowing voters to correct technical errors, *Donald J. Trump for President, Inc. v. Sec'y of Pa.* ("*Trump II*"), 830 F. App'x 377, 384 (3d Cir. 2020); *Donald J. Trump for President, Inc. v. Boockvar* ("*Trump I*"), No. 20-2078, 2020 WL 6821992, at *12 (M.D. Pa. Nov. 21, 2020).

Third, plaintiffs alleged that certain counties denied poll watchers access to pre-canvassing procedures to which watchers are entitled under Pennsylvania law. *See* Compl. ¶ 232(d); Am. Compl. ¶¶ 39, 555(c), 556. That is false. Pennsylvania guarantees poll watchers

---

[2] In plaintiffs' opposition to the Pennsylvania defendants' Motion to Dismiss, plaintiffs argued that the allegations made in their original complaint were not false because plaintiffs' proposed amended complaint would have added a claim attacking the Pennsylvania law (Act 77) that the Pennsylvania defendants faithfully administered. Plfs.' Opp'n at 12–14, ECF 72. Whether the underlying Pennsylvania law is constitutional (which it is) has nothing to do with whether defendants complied with it (which they did).

5

access only to the room in which mail-in ballots are pre-canvassed, which is precisely the access counties provided poll watchers during the 2020 election. *In re Canvassing Observation*, 241 A.3d 339, 349–51 (Pa. 2020).

Plaintiffs' attorneys certainly were aware that their accusations were directly at odds with definitive rulings of the Supreme Court of Pennsylvania. Plaintiffs' complaint cites several recent cases and decisions related to various aspects of Pennsylvania's 2020 election. *See* Compl. ¶¶ 215 n.48, 219 n.49, 218 n.50, 221 n.51, 234. It is inconceivable that the only cases to have evaded counsels' attention were those that established that plaintiffs' accusations were false. And even if counsel were unaware of just those few decisions, that unawareness can be explained only by a willful blindness to the law.

Separately, plaintiffs alleged that Pennsylvania failed to segregate a small class of challenged ballots received after November 3. Compl. ¶¶ 225–226; Am. Compl. ¶¶ 545–546. In fact, those ballots were properly segregated, and remain so. Once more, counsel surely knew this allegation was false. Plaintiffs seemingly copied this allegation from a bill of complaint that Texas filed in the Supreme Court. *See* Compl. ¶¶ 225–226. That bill, in turn, based its allegation on an order from the Supreme Court of the United States that in fact *adopted* Pennsylvania's commitment to segregate those ballots as the Court's own order. *Republican Party of Pa. v. Boockvar*, 2020 WL 6536912 (Mem), at *1 (U.S. Nov. 6, 2020).

Plaintiffs also alleged that defendants undertook all these supposedly unlawful actions pursuant to a broad conspiracy among all defendants, the object of which was to illegally ensure President Biden's victory. Compl. ¶¶ 120, 244, 311, 319, 334, 361; Am. Compl. ¶¶ 17, 27, 33, 419, 571, 668, 676, 693, 707, 720. Yet they alleged *no facts* supporting this outlandish allegation. In reality, the 2020 election "was the most secure in American history" and "[t]here is

6

no evidence that any voting system deleted or lost votes, changed votes, or was in any way compromised."[3] Even before plaintiffs filed this case, courts that were presented with the same allegations of election improprieties made here called the allegations "unsupported by evidence," *Trump I*, 2020 WL 6821992, at *1, or without proof, *Trump II*, 830 F. App'x at 381. Indeed, an individual who was the source for many of the same absurd election conspiracies peddled in this case has defended against a defamation suit by claiming that "no reasonable person would conclude that the statements [alleging election manipulation] were truly statements of fact." Motion to Dismiss at 27–28, *Dominion v. Powell*, No. 21-40 (D.D.C. Mar. 22, 2021), ECF No. 22.

Finally, plaintiffs smeared dedicated poll workers in Pennsylvania and other states, alleging that they participated in a conspiracy to influence the election's outcome. Compl. ¶ 75(d); Am. Compl. ¶¶ 27, 368(d). But, once more, neither pleading contains *any facts* to support this absurd and offensive suggestion.

As for this case's legal underpinnings, plaintiffs never had any argument that even approximated a colorable basis for subjecting either Pennsylvania defendant to the personal jurisdiction of this Court. Governor Wolf and former-Secretary Boockvar are public servants who reside in, and have served, the Commonwealth of Pennsylvania. As a result, this Court could have exercised personal jurisdiction over them only if the Pennsylvania defendants had purposefully directed activity at Colorado and the injuries alleged in this case related to that targeted activity. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). But plaintiffs never alleged a single fact suggesting that defendants took *any* action having *any* connection

---

[3] Joint Statement, Cybersecurity & Infrastructure Security Agency (Nov. 12, 2020, https://www.cisa.gov/news/2020/11/12/joint-statement-elections-infrastructure-government-coordinating-council-election.

whatsoever to Colorado. Rather, the allegations all related to the administration of an election in Pennsylvania, for Pennsylvanians, and relying on Pennsylvania law.

The total absence of anything that might connect the Pennsylvania defendants to this forum signals that plaintiffs' attorneys' only intention was to harass the Pennsylvania defendants. Judges in this district have previously concluded that filing litigation in the District of Colorado without a plausible basis for the court to exercise personal jurisdiction over the defendants can be evidence of purely vexatious litigation. *Jamieson v. Hoven Vision LLC*, No. 20-1122, 2020 WL 7043865, at *3 (D. Colo. Dec. 1, 2020).

Likewise, the arguments that plaintiffs advanced in support of this Court's subject matter jurisdiction were obviously meritless. For a court to have subject matter jurisdiction, plaintiffs must have suffered some particularized injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). As a result, "a plaintiff raising only a generally available grievance about government— claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lance v. Coffman*, 549 U.S. 437, 439 (2007). Despite this clear limit, the injuries that plaintiffs claimed confer standing were, *by plaintiffs' own telling*, ones shared by every voter in the country. Compl. ¶¶ 76, 126, 307, 319, 334; Am. Compl. ¶¶ 240, 369, 664, 677, 693. An alleged injury could not have been more self-evidently generalized.

At points, plaintiffs argued that their generalized grievances allowed standing because all voters were necessarily individually injured by supposed irregularities in the election of President or Vice President. Motion for Leave at 6–8, ECF No. 48; Compl. ¶¶ 307, 319, 334, 343, at 81–82; Am. Compl. ¶¶ 4–6, 702. Two weeks before the Complaint was filed, the

8

Supreme Court rejected that very argument. When Texas moved to file a complaint against Pennsylvania in the Supreme Court, Texas claimed that it and its citizens suffered individualized injuries because alleged irregularities in Pennsylvania's election "affect the outcome of a presidential election." Brief in Support of Motion for Leave at 13, *Texas v. Pennsylvania*, No. 22O155 (U.S. Dec. 7, 2020). For Texas, the irregularities interfered with the State's interest in federal officers. *Id.* For Texas's electors, the irregularities debased their votes for those same officers. *Id.* at 14–15. The Court denied Texas's motion for leave "for lack of standing under Article III of the Constitution." *Texas v. Pennsylvania*, No. 22O155, 2020 WL 7296814, at *1 (U.S. Dec. 11, 2020). Plaintiffs were certainly aware of this decision rejecting theories of standing indistinguishable from the ones in this case. Indeed, plaintiffs' original complaint copied extensively from Texas's bill of complaint. *See, e.g.*, Compl. ¶¶ 218–226.

Even before the Supreme Court's ruling in *Texas v. Pennsylvania*, lower courts, too, had universally rejected a theory of standing no different than plaintiffs'. *See, e.g.*, *Wood v. Raffensperger*, 981 F.3d 1307, 1314–15 (11th Cir. 2020); *Bognet v. Sec'y Commonwealth of Pa.*, 980 F.3d 336, 354 (3d Cir. 2020), *vacated for mootness*; *Pennsylvania Voters All. v. Ctr. Cty.*, No. 20-1761, 2020 WL 6158309, at *5 (M.D. Pa. Oct. 21, 2020).

Finally, on the merits, plaintiffs' claims depended on the Pennsylvania defendants having ignored state law. Compl. ¶¶ 295–296, 305–309, 334–335, 360–361; Am. Compl. ¶¶ 665–666, 668, 693, 719–720. As already described, the factual premise is demonstrably false, making the claims themselves frivolous.

Even if the factual premise and jurisdictional basis for this case were not demonstrably incorrect, plaintiffs offered legal theories that were entirely frivolous. Count I alleged the infringement of a right allegedly belonging to Pennsylvania's General Assembly. Compl.

9

¶¶ 295–296, 308–309, 311, 360–361; Am. Compl. ¶¶ 651–652, 665, 668. That claim, if it is viable in any context, belonged to the General Assembly. *Bognet*, 980 F.3d at 350.

Plaintiffs also argued that certain voters were discriminated against. Compl. ¶¶ 330–332, 353; Am. Compl. ¶¶ 694, 702, 712. Yet plaintiffs never identified even the group that had been treated unfavorably, a simple threshold for an equal protection claim. *Kinnell v. Graves*, 265 F.3d 1125, 1128 (10th Cir. 2001). Some language suggested racial discrimination. Compl. ¶¶ 335–342; Am. Compl. ¶¶ 694–701. But neither complaint alleged either a racially discriminatory act or impact. And while the complaints contain some assertions about the racial identities of specific plaintiffs, *see* Compl. ¶¶ 7, 11, 12; Am. Compl. ¶¶ 67, 81, 131–132, nothing in either documents even hints as to which plaintiffs were allegedly discriminated against and in what manner.

Other language in the complaints implied geographic discrimination. Compl. ¶¶ 221, 335, 343; Am. Compl. ¶¶ 541, 558, 691, 702. Counties within a state, however, need not employ identical election procedures. *Trump II*, 830 F. App'x at 388; *Donald J. Trump for President, Inc. v. Boockvar* ("*Trump III*"), No. 20-966, 2020 WL 5997680, at *44–45 (W.D. Pa. Oct. 10, 2020) (collecting cases). If instead the supposed discrimination relates to the Pennsylvania defendants' treatment of voters outside Pennsylvania, that claim is patently frivolous because, among other reasons, the Equal Protection Clause applies only to the treatment of people "within [a state's] jurisdiction." U.S. CONST. amend. XIV, § 1. And no matter the basis of plaintiffs' claim, an equal protection claim is entirely inconsistent with plaintiffs' repeated allegations that *all* registered voters were harmed by the acts they allege.

Next, plaintiffs argued that the Pennsylvania defendants' supposed defiance of election laws unconstitutionally diluted plaintiffs' votes. Compl. ¶¶ 303–307, 319–320, 343, 348, 355–

358, 361; Am. Compl. ¶¶ 661, 676, 679, 714. But there can be no dilution of any voter when, as the complaint specifically alleges, *all* voters have been harmed identically. *Trump III*, 2020 WL 5997680, at *42. Dilution requires some point of comparison. *See Rucho v. Common Cause*, 139 S. Ct. 2484, 2501 (2019); *Wood*, 981 F.3d at 1314. Moreover, all the allegations against the Pennsylvania defendants relate to the proper application of laws that facilitated the right to vote. Compl. ¶¶ 217, 220, 224, 232; Am. Compl. ¶¶ 530, 532–533, 544. Anyone complaining about allowing someone else to vote has not suffered any individual burden on their own right to vote. *Trump III*, 2020 WL 5997680, at *44.

Finally, for the allegations that poll watchers' limited access was unconstitutional, that parrots claims already rejected because "nothing in the Due Process Clause requires having poll watchers or representatives, let alone watchers . . . less than eighteen feet away from the nearest table." *Trump II*, 830 F. App'x at 387.

While the utter frivolousness of this case alone demonstrates its improper purpose, this case was not brought in a vacuum. The far-fetched conspiracy theories being peddled here feed a dangerous narrative that the 2020 presidential election was somehow compromised. Election workers have been threatened because people believe that lie.[4] People stormed the Capitol for the

---

[4] Fredreka Schouten and Kelly Mena, *Falsehoods and death threats haunt local election workers weeks after Capitol siege*, CNN, Feb. 13, 2021, https://www.cnn.com/2021/02/13/politics/threats-still-haunt-election-officials/index.html; Michael Wines, *Here Are the Threats Terrorizing Election Workers*, NY Times, Dec. 3, 2020, https://www.nytimes.com/2020/12/03/us/election-officials-threats-trump.html; John Bowden, *Election officials face threats in five swing states: report*, The Hill, Nov. 19, 2020, https://thehill.com/homenews/campaign/526664-election-officials-face-threats-in-five-swing-states-report; Dan Glaun, *Threats to Election Officials Piled Up as President Trump Refused to Concede*, PBS Frontline, Nov. 17, 2020, https://www.pbs.org/wgbh/frontline/article/threats-to-election-officials-piled-up-as-president-trump-refused-to-concede/.

same reason.[5] States have relied on these lies as the reason to change voting laws.[6] Appropriating a court's legitimacy to package lies as legal claims, and then legitimizing dangerous conduct based on those false legal claims, is a vexatious use of litigation.

From start to finish, plaintiffs' attorneys have had an antagonistic relationship with facts and the law. Their accusations were false. Their pleadings demonstrated a disregard of the jurisdictional limits of federal courts and a desire to harass Pennsylvania state officials in a foreign forum. And their claims were nothing more than dangerous conspiracy theories unfit for the forum in which they were raised. Each circumstance exhibits that plaintiffs' attorneys acted in bad faith by initiating this lawsuit. They should be sanctioned as a consequence.

## II. Plaintiffs' Attorneys Should Be Sanctioned Under 28 U.S.C. § 1927

Additionally, plaintiffs' attorneys should be ordered to satisfy the costs incurred as a result of their having pursued this unwarranted action past the point at which an objectively reasonable attorney would have abandoned it. While instituting an action alone cannot subject an attorney to sanctions under 28 U.S.C. § 1927, an attorney may be held responsible for all expenses incurred because that attorney continued pursuing litigation after he should have been aware that there was no basis to do so. *Steinert*, 440 F.3d at 1224–26. An attorney may be put on notice that a lawsuit is unwarranted by a defendant's motion that presents conclusive authority

---

[5] Ted Barrett, *et al.*, *US Capitol secured, 4 dead after rioters stormed the halls of Congress to block Biden's win*, CNN, Jan. 7, 2021, https://www.cnn.com/2021/01/06/politics/us-capitol-lockdown/index.html; Maria Peñaloza, *Trump Supporters Storm U.S. Capitol, Clash With Police*, NPR, Jan. 6, 2021, https://www.npr.org/sections/congress-electoral-college-tally-live-updates/2021/01/06/953616207/diehard-trump-supporters-gather-in-the-nations-capital-to-protest-election-resul; Vera Bergengruen, *A Pro-Trump Mob Stormed the Halls of Congress. Photographs From Inside the Chaos at the Capitol*, Time Magazine, Jan. 6, 2021, https://time.com/5927132/donald-trump-mob-capitol-chaos/.

[6] Katherine Fung, *Georgia's GOP Lieutenant Gov Says Rudy Giuliani's Election Lies Led to New Voting Laws*, Newsweek, Apr. 8, 2021, https://www.newsweek.com/georgias-gop-lieutenant-gov-says-rudy-giulianis-election-lies-led-new-voting-laws-1581970.

against the pending case. *See, e.g., Waterman v. City of Colorado Springs*, No. 18-1722, 2020 WL 6134914, at *1 (D. Colo. Oct. 19, 2020); *Loncar v. W. Peak, LLC*, No. 08-1592, 2011 WL 1211522, at *4 (D. Colo. Mar. 30, 2011).

Here, plaintiffs' attorneys received such notice no later than February 16, 2021, and should not have taken any steps to move this case forward after that date. That day, Dominion and Facebook, each of which was served long before the Pennsylvania defendants were, filed motions to dismiss that cited conclusive authority as to why the generalized grievances alleged in the complaint did not confer standing. *See* Dominion Motion to Dismiss at 7–9, ECF No. 22; Facebook Motion to Dismiss at 3–6, ECF No. 23. *None* of plaintiffs' many filings in this case ever responded to the clear lack of a cognizable injury pointed out on those motions. And, of course, the Court ultimately dismissed the case on that obvious basis. *See* Order at 9–16, ECF No. 92.

Reasonable attorneys would have stopped pursuing this action after the first two motions pointed out the clear lack of jurisdiction, and every action taken after that time unreasonably multiplied this litigation. Such actions include plaintiffs' service of the Pennsylvania defendants with the complaint in this matter, which occurred nine days after Dominion and Facebook served their respective motion to dismiss. Serving the Pennsylvania defendants, after plaintiffs should have been aware from the two earliest motions that there was no basis to continue in federal court, forced the Pennsylvania defendants to file their own motion to dismiss on the same basis. Pa. Motion to Dismiss at 8–10, ECF No. 49. It also required the Pennsylvania defendants to respond to plaintiffs' motion to amend the complaint. *See generally* Pa. Opp'n to Motion to Amend, ECF No. 59.

Even if the first set of motions to dismiss were not enough to notify a reasonable attorney that he should not serve additional defendants, the March 11 status hearing at which the Court specifically raised the jurisdictional concern certainly would have alerted a reasonable attorney that he should not extend the litigation. Still, plaintiffs' attorneys filed a motion to amend the complaint following that hearing, altering none of the allegations relevant to standing. *See generally* Motion to Amend, ECF No. 48; Am. Compl. That filing needlessly required the Pennsylvania defendants to file an opposition to the motion to amend that highlighted the futility of any amendment. *See generally* Pa. Opp'n to Motion to Amend.

Plaintiffs' attorneys should be accountable under 28 U.S.C. § 1927 for all expenses incurred after a reasonable attorney would have stopped taking actions to prolong this case.

## REQUEST FOR RELIEF

For the foregoing reasons, the Pennsylvania defendants request that this Court, pursuant to its inherent authority, order that plaintiffs' attorneys be sanctioned by being required to pay all reasonable attorneys' fees incurred as a result of this case.[7]

Alternatively, the Pennsylvania defendants request that this Court, pursuant to 28 U.S.C. § 1927, order that plaintiffs' attorneys satisfy all attorneys' fees reasonably incurred after plaintiffs' attorneys served the Pennsylvania defendants or after plaintiffs' attorneys moved to amend the complaint, actions that unreasonably multiplied this proceeding.

---

[7] If the Court decides to sanction plaintiffs' attorneys by requiring payment of reasonable attorneys' fees, counsel will provide an affidavit of expenses incurred as a result of this litigation. If, however, the Court would prefer that counsel provides such an affidavit at an earlier time, counsel would be happy to do so.

Dated: May 17, 2021

Respectfully submitted,

JOSH SHAPIRO
ATTORNEY GENERAL

MICHAEL J. FISCHER
Chief Deputy Attorney General

/s/ *Jacob Boyer*

JACOB BOYER
Deputy Attorney General
Pennsylvania Office of Attorney General
1600 Arch Street, Suite 300
Philadelphia, PA 19103
(267) 768-3968
jboyer@attorneygeneral.gov

*Attorneys for Governor Tom Wolf and*
*Former Secretary of the Commonwealth*
*Kathy Boockvar*

15

## CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2021 I electronically filed the foregoing Memorandum in Support of Motion to for Sanctions with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ *Jacob Boyer*
Jacob Boyer