**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:20-cv-3747-NRN

KEVIN O'ROURKE, et al.,

Plaintiffs, on their own behalf and of a class of
similarly situated persons,

v.

DOMINION VOTING SYSTEMS INC., et al.,

Defendants.

---

**DEFENDANT FACEBOOK, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION
FOR SANCTIONS**

---

## I.      Introduction

Plaintiffs' counsel filed a legally and factually baseless lawsuit in Colorado—a jurisdiction with no relationship to Plaintiffs' claims—after state and federal courts in many other fora had summarily rejected identical suits.  Plaintiffs' counsel improperly sought $160 *billion* in so-called *nominal* damages from Defendants and to undo the results of the 2020 election well after the results had been certified.   Despite precedent foreclosing such a suit, Plaintiffs' counsel sought to vindicate an alleged injury to all 160 million registered voters in the nation—an "assembly of the people"—solely based on incredible allegations about a vast national conspiracy to dilute all votes cast.  And Plaintiffs' counsel continued to press this frivolous suit even after the lawyer from whom they copied many of these allegations conceded that no reasonable person would believe the facts they pasted into their pleadings were truly statements of fact.

Along the way, Plaintiffs' counsel filed multiple pleadings that failed to comply with local and federal rules.   Their overlong filings pasted in lengthy quotes from cases irrelevant to Plaintiffs' claims or Defendants' arguments, while willfully choosing to ignore the controlling precedents that made the suit untenable.  Plaintiffs' counsel also disregarded their duty of candor to the court on multiple occasions by acting as though rejected suits from which they copied their allegations were still live.   And even now, Plaintiffs' counsel continue to exhort the public to donate money to this meritless litigation, represent that "thousands" have donated funds to them to file copycat suits across the nation in a blatant abuse of judicial process, and misrepresent in deceptive solicitations to current and prospective clients that this action could result in an award of *billions* of dollars (and $1,000 to each plaintiff) in *nominal* damages.

This Court should use the tools available to it to deter Plaintiffs' counsel from this abusive

conduct.  Whether under Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, or the Court's inherent authority, sanctions for attorney's fees, costs, and expenses are appropriate to discourage Plaintiffs' counsel from engaging in further abuse of the judicial system, and to compensate Defendants for having to incur the cost of litigating such a frivolous suit.[1]

## II.    Background

Plaintiffs' counsel filed this suit on December 22, 2020, more than a month after the election, and served Facebook on January 5, 2021.  Dkt. 1.  Before filing a motion to dismiss, Facebook sent a letter to Plaintiffs' counsel alerting them to the fact that their complaint violated Rule 11 and requesting its withdrawal.  *See* Lipshutz Decl., Exh. 1 (Ltr. from J. Lipshutz to G. Fielder and E. Walker (Feb. 11, 2021)).  Plaintiffs' counsel did not withdraw their complaint. Facebook thus was forced to file its motion to dismiss on February 16, reiterating that Plaintiffs did not have Article III standing to bring the claims, there was no personal jurisdiction over Facebook on the election-related claims, and Facebook was not a state actor, among other fatal issues.  Dkt. 23.

Plaintiffs responded with a 25-page opposition (Dkt. 40)—ten pages over the limit prescribed in this Court's practice standards.  Practice Stds. for Civil Cases, § E.2.  Then, before Facebook filed its reply on its motion to dismiss, Plaintiffs filed a motion for leave to amend with a proposed Amended Complaint ballooning to 900 paragraphs across 115 pages and adding 152

---

[1]  Facebook continues to maintain that this Court does not have personal jurisdiction over it based on Plaintiffs' claims, but that fact does not prevent this Court from awarding sanctions against Plaintiffs' counsel to Facebook for being forced to defend against a frivolous suit.  *See, e.g.*, *Mareno v. Rowe*, 910 F.2d 1043, 1046–47 (2d Cir. 1990); *see also VSA v. Von Weise Gear Co.*, 769 F. Supp. 1080, 1085–86 (E.D. Mo. 1991) (no waiver of personal jurisdiction defense where defendant seeks sanctions after dismissal).

plaintiffs (compared to 84 pages and 409-plus paragraphs in the original complaint), two vacuous racketeering counts, constitutional challenges to four state statutes, and the Attorneys General of Michigan, Wisconsin, Pennsylvania, and Georgia as Defendants.  Dkt. 48-1.

In the week before the hearing on both motions, Plaintiffs' counsel dropped all of the state Defendants, including the Attorneys General, and withdrew the constitutional challenges to state statutes they had just moved to add.  *See* Dkts. 82-87, 89.  On April 23, Plaintiffs' counsel also sent an email providing "notice that Plaintiffs will be filing a motion to join approximately 350 new plaintiffs to the current list of Plaintiffs."  *See* Lipshutz Decl., Exh. 2 (Email from E. Walker to R. Bergsieker et al. (Apr. 23, 2021)).  Facebook responded that it would oppose any such motion. The night before the hearing, without meeting and conferring with Defendants, Plaintiffs' counsel further filed a motion requesting that the Court take judicial notice of 38 lawsuits and 26 other varied documents.  Dkt. 90.

## III.   This Court Should Issue Rule 11 Sanctions Against Plaintiffs' Counsel.

Rule 11(b) of the Federal Rules of Civil Procedure "'imposes . . . an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing.'"  *Collins v. Daniels*, 916 F.3d 1302, 1320 (10th Cir. 2019) (quoting *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991) (alteration in original)).  When submitting a pleading, counsel certifies that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."  Fed. R. Civ. P. 11(b)(2).  Sanctions are therefore appropriate "against attorneys who filed signed pleadings, motions or other papers in district court which are not well grounded in fact, are not warranted by existing law or a good faith argument for its extension, or are filed for an

3

improper purpose." *Adamson v. Bowen*, 855 F.2d 668, 672 (10th Cir. 1988).

When reviewing a motion for sanctions, courts "employ an objective standard intended to eliminate any empty-head pure-heart justification for patently frivolous arguments." *Collins*, 916 F.3d at 1321 (quotations omitted). The Court considers "the current state of the law or the parties' and attorneys' behavior and motives within the context of the entire litigation, as well as a conclusion on the ultimate questions whether the pleading violated Rule 11." *Adamson*, 855 F.2d at 672. Failure to comply with Rule 11(b) can lead to sanctions that "suffice[] to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). These sanctions may include "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." *Id.*

As Facebook detailed in its accompanying motion, first served on Plaintiffs' counsel on April 5, 2021, *see* Lipshutz Decl., Exh. 3 (E-mail from R. Bergsieker to G. Fielder and E. Walker (April 5, 2021)), sanctions under Rule 11 are justified on three grounds, any one of which alone would be more than sufficient. *First*, Plaintiffs' pleadings make frivolous claims that have no basis in law or fact as demonstrated by Plaintiffs' counsel failure to conduct any reasonable investigation into either. *Second*, this suit is merely a copycat of other actions brought in many other fora, each of which has been dismissed or summarily rejected. *Third*, Plaintiffs have violated their duty of candor both to this Court and the other parties in this case by presenting discredited allegations of fact and law and *asking the Court to take notice of them*. Sanctions are more than warranted for all three reasons.[2]

---

[2] The Court may consider this sanctions request, even after having dismissed the complaint. *See, e.g.*, *Consumer Crusade, Inc. v. Pub. Tel. Corp. of Am.*, 2006 WL 2434081, at *4 (D. Colo. Aug. 21, 2006) ("Accordingly, the Court finds that, so long as the Defendants complied with the

**A.      Plaintiffs' Claims Were Frivolous From The Outset.**

This "fatally flawed case" was riddled with factual and legal issues that any reasonable investigation by Plaintiffs' counsel would have uncovered before it was filed.  Dkt. 92 at 24.

Plaintiffs' counsel "never demonstrated a judicially cognizable interest or injury sufficient to grant them standing to sue" from the outset.  *Id.* at 8.  Time and again, Plaintiffs' counsel in fact refused to even attempt to distinguish the binding Article III standing cases that Facebook (and other Defendants) cited in letters to counsel, motions to dismiss, or other briefs.  *See, e.g.*, Lipshutz Decl., Exh. 4 (Hr'g. Tr. at 51:1-6) ("Why didn't you cite a single case of the dozens that have been issued by Federal District Courts across the country dismissing the claims exactly like yours on the basis of standing.  You didn't mention any of them in either your motion to amend or your oppositions to the motions to dismiss.  Why not?").  When this Court directly asked Plaintiffs' counsel for their "best case" supporting their ability to file this action, Plaintiffs' counsel identified *Anderson v. Celebreze*, 560 U.S. 780 (1983), a case that "says nothing about standing."  Dkt. 92 at 26-27.

The most cursory search of Article III standing caselaw would have alerted Plaintiffs' counsel to the fact that bringing a suit to vindicate an "injury" purportedly suffered by all 160 million registered voters was foreclosed.  *Id.* at 11 ("It should be no surprise to Plaintiffs or their counsel that their generalized grievances about their votes being diluted or other votes being improperly counted would be insufficient to grant them the standing required under Article III of

---

procedural requirements of Rule 11(c)(1)(A), and so long as the Plaintiff's Complaint was pending at the time the Defendants served their motion on the Plaintiff, the fact that the motion was not actually filed until after dismissal of the action does not strip the Court of jurisdiction to hear the motion.").

the Constitution."). As this Court held in dismissing Plaintiffs' suit, the Supreme Court in *Lance v. Coffman*, 549 U.S. 437 (2007) more than a decade ago squarely barred standing "where voters allege only that the law . . . has not been followed." Dkt. 92 at 10; *see also Lance*, 549 U.S. at 439 (Supreme Court "has consistently held that a plaintiff raising only a generally available grievance about government - claiming only harms to his and every citizen's interest in proper application of the Constitution and laws . . . - does not state an Article III case or controversy.").

The fact that "Plaintiffs' standing arguments ignored controlling precedent" is grounds alone to impose Rule 11 sanctions. *See, e.g.*, *Collins*, 916 F.3d at 1321. But sanctions are further compelled here by the fact that Plaintiffs' counsel *ignored* this binding precedent even after they had been alerted to it by Defendants and did not even *try* to distinguish themselves from it in good faith. *Id.* (affirming sanctions even where plaintiffs' counsel "unreasonably *attempted* to distinguish themselves from" plaintiffs who were denied standing in prior cases) (emphasis added); *see also Roth v. Green*, 466 F.3d 1179, 1188–90 (10th Cir. 2006) (affirming district court's finding that plaintiffs' attorney violated Rule 11 because there were "a host of legal impediments to [plaintiffs] prevailing on their claims," including that "the majority of the defendants had, at best, only tangential relationships to" plaintiffs' claims and plaintiffs' counsel ignored controlling precedent).

Plaintiffs' counsel also conducted no reasonable inquiry to support any subsequent pleading they filed. Plaintiffs' motion for judicial notice is just one example.[3] Federal Rule of

---

[3]  Apart from the motion's complete lack of merit, Plaintiffs filed it the night before the hearing on the motions to dismiss and motion for leave to amend without complying with this Court's meet and confer requirement. *See* Lipshutz Decl., Exh. 4 (Hr'g. Tr. at 44:15-18) ("Okay. Let's hear from Plaintiffs on the issue of – first this motion to take judicial notice, which does seem like sand bagging in the worst way the day before").

Evidence 201(b) provides that a "court may judicially notice a fact that is *not subject to reasonable dispute* because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources *whose accuracy cannot reasonably be questioned*." *Id.* (emphasis added).  Judicial notice is generally limited to "commonplace matters like the timing of a sunrise, geographical boundaries, or matters of political history." *Simon v. Taylor*, 794 F. App'x 703, 720 (10th Cir. 2019); *see, e.g., Zeier v. G.F. Investment Servs., LLC*, 2019 WL 1244968, at *3 n.2 (D. Colo. Feb. 28, 2019) (taking "judicial notice of the fact that Palm Beach and Fort Lauderdale are in" certain counties).  But Plaintiffs' counsel filed a motion asking this Court to take judicial notice of 38 lawsuits, most of which have been dismissed or rejected (which Plaintiffs' counsel did not disclose in the motion), and 26 other sources, including links to the website of Mike Lindell, the founder of MyPillow, and a self-published book entitled *The Deep Rig, How Election Fraud Cost Donald J. Trump the White House, By a Man Who did not Vote for Him*.  The matters which Plaintiffs' counsel sought to take judicial notice were far from indisputable and a plainly inappropriate use of Fed. R. Evid. 201(b).

This same lack of diligence by Plaintiffs' counsel infected every issue litigated in this case. The list is seemingly endless—for example, Plaintiffs filed a *sworn* affidavit for named Plaintiff Kevin O'Rourke which stated that Mr. O'Rourke had not voted in the last two presidential elections.  Dkt.1, Ex. 1.  Yet it was not until the April 27 hearing (in response to a direct question from the Court about the viability of their claims given this fact) that Plaintiffs' counsel announced their purported knowledge that Mr. O'Rourke had voted in the 2020 election after all, with Plaintiffs' counsel subsequently filing a motion to correct the record with an updated affidavit

(again without meeting and conferring with Defendants). *See* Lipshutz Decl., Exh. 4 (Hrg. Tr. at 64:6-9); Dkt 93.

In the words of this Court, Plaintiffs' counsel's entire approach to this suit has been to haphazardly "disregard what all the courts said, disregard what all the Secretaries of State [said], and . . . file another lawsuit trying to challenge all of this and dump in as many conspiracy theories as possible." Lipshutz Decl., Exh. 4 (Hr'g. Tr. at 60:11-14). Such conduct falls far short of the standards imposed on counsel by Rule 11. Sanctions should issue.

### B.     Plaintiffs' Claims Were Mere Copycats Of Already Rejected Lawsuits.

This case is a mere redux of numerous lawsuits that have been filed and rejected elsewhere. By refiling in Colorado, Plaintiffs' counsel wasted the resources of this Court and Defendants in seeking to rehash already resolved claims and circumvent settled judicial resolutions from the many other fora with actual ties to their underlying election-related allegations.

As the Court observed in its order of dismissal, "[i]n contrast to the veritable tsunami of decisions finding no Article III standing in near identical cases to the instant suit, Plaintiffs' arguments to Defendants' Motions to Dismiss are cursory and neither cite nor distinguish any of the cases that have found a lack of standing among voter plaintiffs making challenges to the 2020 election." Dkt. 92 at 17. This Court ran through these "nearly uniform" decisions in federal courts across the country "finding the types of election-related harms of which the Plaintiffs complain insufficient to confer standing." *Id.* at 16. Yet the Plaintiffs only "tangentially relevant citation" to justify bringing yet another suit in a state far removed from these allegations "is to a dissenting opinion by Justice Thomas in a denial of certiorari," *id.* at 18, which "said nothing about the standing of registered voters to challenge a state's use of specific election technology, or standing

to challenge a social network's editorial policies . . . or standing to dispute a non-profit's donations to municipalities for election-related purposes." *Id.*

Plaintiffs' counsel knew that numerous courts sitting in the states related to their claims had already rejected them—as evidenced by their citation to many of these suits. *See, e.g.*, Dkt. 1 ¶¶ 200-201, 219-232, 282-287. But Plaintiffs' counsel chose to file another suit on the same allegations in Colorado, a state with no ties whatsoever to the underlying claims, to relitigate these stale issues again. *See, e.g.*, Dkt. 23 at 3-4; Dkt. 56 at 2-4 (no personal jurisdiction over Facebook). Courts routinely award sanctions against counsel who improperly attempt to game the judicial system and improperly forum shop in this manner. *In re Blagg*, 43 F. App'x 266, 267 (10th Cir. 2002) (affirming sanctions against counsel for filing suit in incorrect venue); *Methode Elecs., Inc. v. Adam Techs., Inc.*, 371 F.3d 923, 928 (7th Cir. 2004) (affirming sanctions against plaintiffs' counsel for improper forum-shopping); *Pentagen Techs. Int'l Ltd. v. United States*, 172 F. Supp. 2d 464, 473–74 (S.D.N.Y. 2001) (imposing sanctions for filing serial lawsuits in both state and federal courts in effort "to evade previous rulings" and resulting in "needless occupation of judicial resources"), *aff'd*, 63 F. App'x 548 (2d Cir. 2003); *John Akridge Co. v. Travelers Cos.*, 944 F. Supp. 33, 34 (D.D.C. 1996) (sanctions imposed for "blatant forum-shopping" evidenced by counsel's decision to re-file case in state court "with the specific intent of circumventing [federal court's] dismissal of . . . earlier suit"), *aff'd*, 1997 WL 411654 (D.C. Cir. June 30, 1997).

### C.   Plaintiffs' Counsel Has Violated The Duty of Candor On Multiple Occasions.

Plaintiffs have violated their duty of candor both to this Court and to the parties on multiple occasions by parroting allegations from rejected suits without disclosing that those suits had been summarily rejected. For example, Plaintiffs regurgitate allegations from lawsuits filed in

Wisconsin and Pennsylvania, presenting them as if they were true.  Mot. at 3-4.  And despite being made aware of this when Facebook filed its motion to dismiss, Plaintiffs still later filed a legally improper motion for judicial notice, requesting this Court recognize facts from these suits as true without even noting that these federal cases had already been summarily rejected from the Supreme Court on down.  Dkt. 90.

Counsel "owes complete candor and primary loyalty to the court before which he practices."  *Wallic v. Owens-Corning Fiberglass Corp.*, 40 F. Supp. 1185, 1190 (D. Colo. 1999).  Plaintiffs' attempts to pass rejected allegations as established facts fall short of that duty, as did their citation to a single opinion of one Justice of the Supreme Court with no notation that the opinion was not actually for the entire court.  *See, e.g.*, *Blagg*, 43 F. App'x at 267 (affirming sanctions for counsel's "misrepresent[ation of] the state of the law by quoting a superseded comment based upon a repealed statute").  This Court in *Cope v. Auto-Owners Insurance Co.*, for example, imposed monetary sanctions under Rule 11 where plaintiff's counsel misrepresented to the Court the parties' efforts to meet and confer and made "false representations in a joint status report."  2020 WL 1511096, at *2-3 (D. Colo. Mar. 30, 2020).  As the Court observed, "[t]he duty of candor established under Rule 11 exposes counsel to sanctions for arguing a false position or continuing to advocate a position after learning that it ceases to have merit or is no longer tenable."  *Id.* at *2; *cf. King v. Fleming*, 899 F. 3d 1140, 1148-49 (10th Cir. 2018) (affirming Rule 11 sanctions where plaintiff filed a falsified email with the Court while representing it as true).

Here, Plaintiffs' counsel have repeatedly, despite actual knowledge as to the falsity of their representations, presented discredited allegations as facts and asserted the same arguments they knew to have been rejected elsewhere.  Such misrepresentations merit sanction under Rule 11.

## IV.     The Court Should Issue Sanctions Under 28 U.S.C. § 1927.

28 U.S.C. § 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any cases unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." While sanctions under § 1927 apply only "to the multiplication of proceedings and not the initiation of proceedings," *Steinert v. Winn Grp., Inc.*, 440 F.3d 1214, 1224 (10th Cir. 2006), such sanctions are appropriate for attorneys' fees, expenses, and costs when an attorney refuses to dismiss a meritless complaint after service of a defendant's motion to dismiss, *Roth v. Spruell*, 388 F. App'x 830, 836 (10th Cir. 2010). "Vexatious" in the § 1927 context means "without reasonable or probable cause or excuse; harassing; annoying." *United States v. Lain*, 640 F.3d 1134, 1137 (10th Cir. 2011) (quoting Black's Law Dictionary 1596 (8th ed. 2004)).

Plaintiffs' counsel's meritless pursuit of this litigation after Facebook filed its motion to dismiss, including their motions for leave to amend and judicial notice, unnecessarily multiplied these proceedings to the detriment of Facebook. As discussed above, Plaintiffs were on notice of the fundamental defects in their Article III standing arguments. Rather than dismissing the suit, Plaintiffs doubled down in their proposed Amended Complaint, adding "152 individual plaintiffs" and growing the complaint to "882 paragraphs and 115 pages." Dkt. 92 at 21. Despite these substantial additions, this Court found that the "proposed Amended Complaint fare[d] no better than the original," *id.* at 24, alleging the same "supposed injuries [that] relate to Plaintiffs' votes and the alleged dilution thereof." *Id.* at 23. At no point did Plaintiffs' counsel ever even attempt to address the fatal flaw that doomed this suit from the outset.

As a result, Plaintiffs' counsel unnecessarily consumed the parties' resources relitigating open-and-shut issues,  *see* Dkt. 92 at 24, which merit sanction under 28 U.S.C. § 1927.  *Med. Supply Chain, Inc. v. Neoforma, Inc.*, 419 F. Supp. 2d 1316, 1333 (D. Kan. 2006) (imposing sanctions under § 1927 for "plaintiff's insistence on re-litigating claims to "unreasonably and vexatiously" multiply proceedings).  Plaintiffs' counsel's conduct is the prototypical improper and harassing behavior for which § 1927 is designed to respond.   The election is over.  A "veritable tsunami" of courts have explained there is no viable relief in relation to the election that a court can now issue.  Plaintiffs' counsel cannot continue to turn a blind eye to this reality and foist the costs for their willful blindness onto other parties like Facebook that are forced to defend against such frivolous litigation.

## V.      The Court Should Exercise Its Inherent Power to Issue Sanctions.

Federal courts maintain the inherent power to "fashion an appropriate sanction for conduct which abuses the judicial process."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991).  These sanctions may include an "assessment of attorney's fees" such as an order "instructing a party that has acted in bad faith to reimburse legal fees and costs incurred by the other side."  *Goodyear Tire & Rubber Co. v. Haeger*, 137 S.Ct. 1178, 1186 (2017).  Such sanctions can reach conduct by a losing party that acted in "bad faith, vexatiously, wantonly, or for oppressive reasons," including but not limited to "where the action [itself] is filed in bad faith."  *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 766 (1980).  "One type of bad faith conduct that is often deserving of sanction is a party's decision to prosecute a knowingly frivolous claim."  *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 991 F.3d 361, 368 (2d Cir. 2021).

A reasonable "assessment of attorney's fees" on Plaintiffs' counsel is appropriate here to reimburse Facebook for its financial outlays as a result of this bad faith suit.  Numerous courts, including the Supreme Court, had rejected identical claims on a multitude of grounds before this matter was ever filed and certainly by the time Plaintiffs forced onto Facebook the cost of filing multiple briefs.  *See* Dkt. 23 at 1 (citing cases).  Those prior courts had jurisdiction and proper venue over Plaintiffs' claim arising from election conduct occurring wholly outside of Colorado.  And Facebook brought these facts to the attention of Plaintiffs' counsel in multiple letters and briefs.  *See* Lipshutz Decl., Exh. 1.; Dkt. 23; Dkt. 56; Dkt 63.  Yet not once did Plaintiffs' counsel respond substantively.  Instead, Plaintiffs' counsel continued to file frivolous pleadings that did not comply with either the local or federal rules, copying and pasting from one motion to another without ever engaging the issues specific to each Defendant or fatal to their suit.  *See, e.g.*, *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997) ("a finding of bad faith is warranted" where an attorney "knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent").

Another court already referred counsel for potential discipline based on such "bad faith" filing of a copycat suit after the election had ended when it was obvious the relief sought could not be secured. *Wisconsin Voters Alliance v. Pence*, 2021 WL 686359, at *2 (D.D.C. Feb. 19, 2021).  Sanctions to cover the costs of frivolous actions are necessary to protect Facebook from a multiplicity of such stale suits in every jurisdiction, if attorneys like Plaintiffs' counsel will continue to insist on bringing these same claims "lack[ing] any legal or factual basis" and "so completely without merit as to require the conclusion that [the suit] must have been undertaken for some improper purpose."  *Int'l Tech.*, 991 F.3d at 368.

Indeed, Plaintiffs' counsel has solicited what they describe as "thousands" of donations in support of this frivolous suit and other copycat suits they intend to file across the nation.  *See, e.g.*, Gary Fielder, *How to support the cost of litigation for Dominion Class Action Civil Rights Lawsuit*, YouTube (Feb. 10, 2021), https://www.youtube.com/watch?v=8ZeBegD4k3w; Gary Fielder, *Gary Fielder's Update on Dominion Lawsuit as of April 15th, 2021*, YouTube (Apr. 28, 2021), https://www.youtube.com/watch?v=hsq7s1IQkvw.  Even now, after this Court has laid bare the issues with this action, Plaintiffs' counsel continue to solicit donations from prospective "clients" based prominently on assertions that this suit is potentially worth $160 billion in *nominal* damages. *See, e.g.,* Lipshutz Decl., Exh. 5 (Dominion Class Action: Breaking: Daily Truth Report, https://dominionclassaction.com/in-the-news/f/breaking-daily-truth-report) (Feb. 23, 2021) (last visited May 12, 2021) (blog post featured on the "In the News" section of Plaintiffs' counsel's website, linking to an article making this frivolous claim)); *Alert: $160 Billion Class Action Lawsuit Against Dominion and Mark Zuckerberg. They Are Done!*, 2020 Conservative, https://2020conservative.com/alert-160-billion-class-action-lawsuit-against-dominion-and-mark-zuckerberg-they-are-done.  These fundraising efforts have led to Plaintiffs' counsels' ban from several financial services websites.  *See* Lipshutz Decl., Exh. 6 (Dominion Class Action, Contribute Financially To Dominion Class Action, https://dominionclassaction.com/contribute (last visited May 10, 2021)) (stating Plaintiffs' counsel has been "banned by CashApp" but "don't like big Tech anyways").

Plaintiffs' counsel did not have a proper purpose to pursue litigation in Colorado on frivolous and stale election claims, nor for their subsequent efforts to prolong such litigation, nor for their efforts to obtain funding for the litigation through misrepresentations to the public about

the nature of potential nominal damages.  *Cf. Mondragon v. Nosrak LLC*, 2020 WL 2395641, at *12 (D. Colo. May 11, 2020) ("Courts have the inherent power to impose a variety of sanctions on both litigants and attorneys in order to regulate their docket, promote judicial efficiency, and deter frivolous filings.") (*quoting Clark v. CIR*, 774 F.2d 1447, 1447 (10th Cir. 1984)).  This Court need not allow Plaintiffs' counsel's pattern of impropriety to go on without end and without any compensation to those like Defendants who were dragged into an improper forum to defend against unfounded claims.  At the very least, Plaintiffs' counsel should be prepared to compensate Defendants for the financial impact of this bad faith conduct.

## VI.    Conclusion

The Court should impose sanctions on Plaintiffs' counsel under Rule 11, 28 U.S.C. § 1927, or its inherent authority for the reasons explained above and in Facebook's accompanying motion. Facebook also respectfully requests reasonable expenses, including attorneys' fees, incurred in filing this Motion pursuant to Rule 11(c)(2) of the Federal Rules of Civil Procedure.[4]

---

[4]  Facebook will submit a separate application setting forth details on the requested attorneys' fees and costs if directed by the Court.

Dated: May 21, 2021

Respectfully submitted,


*/s/ Joshua S. Lipshutz*

Joshua S. Lipshutz
**GIBSON DUNN & CRUTCHER LLP**
1050 Connecticut Avenue, NW
Washington, DC  20036
Telephone:     202.955.8217
Facsimile:     202.530.9614
Email:             jlipshutz@gibsondunn.com

Ryan T. Bergsieker
Natalie J. Hausknecht
**GIBSON, DUNN & CRUTCHER LLP**
1801 California Street, Suite 4200
Denver, CO  80202-2642
Telephone:     303.298.5700
Facsimile:     303.298.5907
Email:             rbergsieker@gibsondunn.com
                      nhausknecht@gibsondunn.com

Craig B. Streit
**GIBSON, DUNN & CRUTCHER LLP**
555 Mission Street, Suite 3000
San Francisco, CA  94105
Telephone:     415.393.8225
Facsimile:     415.374.8487
Email:             cstreit@gibsondunn.com

*Attorneys for Facebook, Inc.*