IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-3747-NRN

KEVIN O'ROURKE,
NATHANIEL L. CARTER,
LORI CUTUNILLI,
LARRY D. COOK,
ALVIN CRISWELL,
KESHA CRENSHAW,
NEIL YARBROUGH and
AMIE TRAPP,

    Plaintiffs,

v.

DOMINION VOTING SYSTEMS, INC., a Delaware corporation,
FACEBOOK, INC., a Delaware corporation,
CENTER FOR TECH AND CIVIC LIFE, an Illinois non-profit organization,
MARK E. ZUCKERBERG, individually,
PRISCILLA CHAN, individually,
BRIAN KEMP, individually,
BRAD RAFFENSPERGER, individually,
GRETCHEN WHITMER, individually,
JOCELYN BENSON, individually,
TOM WOLF, individually,
TONY EVERS, individually,
ANN S. JACOBS, individually,
MARK L. THOMSEN, individually,
MARGE BOSTELMAN, individually,
JULIE M. GLANCEY, individually,
DEAN KNUDSON, individually,
ROBERT F. SPINDELL, JR., individually, and
DOES1-10,000,

    Defendants.

_____

**DEFENDANTS GOVERNOR GRETCHEN WHITMER AND SECRETARY OF STATE
JOCELYN BENSON'S MOTION FOR SANCTIONS**

Michigan Defendants Governor Gretchen Whitmer and Secretary of State Jocelyn Benson move for sanctions against Plaintiffs' counsel in this case, Gary D. Fielder and Ernest J. Walker, pursuant to the Court's inherent authority and under 28 U.S.C. § 1927.

## INTRODUCTION

This case was one of a series of lawsuits filed since Michigan held its general election on November 3, 2020.  It alleged a similar litany of false claims of fraud and irregularity in the conducting of Michigan's November presidential election, augmented by a wild claim that Michigan conspired with the other Defendants to subvert the results of the presidential election. Many of these made-up and misrepresented "fraud" claims had already been rejected by multiple courts in Michigan.  And a post-election audit conducted in numerous jurisdictions in the state confirmed the accuracy and integrity of the November 2020 general election.[1]

Legally, Plaintiffs' claims were frivolous where they alleged no facts supporting personal jurisdiction over the Michigan Defendants, Plaintiffs lacked standing to sue over their generalized grievances of harm to every voter in the Nation, and where Plaintiffs' substantive constitutional claims were unsupported by the facts and contrary to existing case law.  And factually, Plaintiffs' complaint offered nothing other than allegations recycled from other lawsuits that were based on misunderstandings of Michigan law and were unsupported by actual evidence of error or fraud.

These defects were readily apparent from the face of the complaint filed December 22, 2020.  Nevertheless, despite the dismissal of similar cases around the country and Congress's

---

[1] *See* More than 250 audits confirm accuracy and integrity of Michigan's election, March 2, 20201, available at https://www.michigan.gov/sos/0,4670,7-127-93094-553386--,00.html, (accessed March 15.)

declaration of a new President on January 6, 2021, Plaintiffs pursued this case by serving the Defendants months later, requiring them to defend against Plaintiffs' spurious claims.

This Court has the inherent authority to impose sanctions on parties that abuse the judicial process or act vexatiously and in bad faith. Further, this Court has the authority to impose sanctions under 28 U.S.C. § 1927 where a plaintiff vexatiously extends a case past the time a reasonable plaintiff would have ended it. Both grounds for imposing sanctions are satisfied here where Plaintiffs acted vexatiously and in bad faith in bringing their claims against the Michigan Defendants, and in perpetuating this lawsuit long after it should have been dismissed. The utter lack of merit in Plaintiffs' claims makes it apparent that Plaintiffs were less interested in winning than they were in sowing doubt and distrust in the electoral process. Plaintiffs should be sanctioned for their conduct.

## LEGAL STANDARDS

A court's inherent power gives it the authority to impose "a sanction for abuse of the judicial process, or, in other words, for bad faith conduct in litigation." *Farmer v. Banco Popular of N. Am.,* 791 F.3d 1246, 1256 (10th Cir. 2015) (internal quotation marks omitted). The U.S. Supreme Court has described the "narrowly defined circumstances [in which] federal courts have inherent power to assess attorney's fees against counsel" as involving actions taken "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45–46 (1991) (internal quotation marks omitted). An assessment of attorneys' fees and costs is a permissible sanction against a party that has engaged in misconduct. *Goodyear Tire & Rubber v. Haeger*, 137 S. Ct. 1178, 1186 (2017).

Under 28 U.S.C. § 1927 "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs,

expenses, and attorneys' fees reasonably incurred because of such conduct." The Tenth Circuit instructs sanctions under § 1927 are "appropriate when an attorney acts recklessly or with indifference to the law. They may also be awarded when an attorney is cavalier or bent on misleading the court; intentionally acts without a plausible basis; [or] when the entire course of the proceedings was unwarranted." *Steinert v. Winn Grp., Inc.*, 440 F.3d 1214, 1221 (10th Cir. 2006) (alteration in original). The attorney's conduct is judged objectively; subjective bad faith is not required to justify § 1927 sanctions. *See Hamilton v. Boise Cascade Exp.*, 519 F.3d 1197, 1203 (10th Cir. 2008). Further, a voluntary dismissal does not deprive the Court of its authority to issues sanctions. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 395-98 (1990).

## LEGAL ARGUMENTS

### A. This Court should impose sanctions pursuant to its inherent authority.

This Court should exercise its inherent authority and impose sanctions against Plaintiffs' counsel for filing this vexatious lawsuit and doing so in bad faith.

First, Plaintiffs' legal claims against the Michigan Defendants were not warranted by existing law or by a non-frivolous argument for extending, modifying or establishing new law. To begin, Plaintiffs' claim that the Michigan Defendants were subject to personal jurisdiction in Colorado was patently frivolous. Governor Whitmer and Secretary Benson reside and perform their duties as state officers in Michigan. The Due Process Clause permits the exercise of personal jurisdiction over nonresident defendants only when two conditions are met. First, a defendant must have "minimum contacts" with the forum state. *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). Second, if sufficient minimum contacts are shown, due process requires that the exercise of personal jurisdiction over the defendant would not offend "traditional notions of fair play and substantial justice." *Id*. Where a court's exercise of jurisdiction does not directly arise from or relate to a defendant's forum-related activities, the

3

court may nevertheless maintain *general* personal jurisdiction over the defendant based on the defendant's general business contacts with the forum state. *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 415-16 (1984). But to be subject to general jurisdiction in a forum state, a defendant's affiliations with that state must be "so 'continuous and systematic' as to render [it] essentially at home" there. *Daimler AG v. Bauman,* 571 U.S. 117, 127 (2014) (internal quotation marks and citation omitted).

Here, Plaintiffs' allegations in their original and proposed amended complaints failed to establish personal jurisdiction under the traditional "minimum contacts" test. Plaintiffs devoted over 60 paragraphs in their original and proposed amended complaints to describing perceived irregularities in the conducting of the November 3, 2020 general election *in* the State of Michigan. (ECF No. 1, Compl., ¶¶ 127-190; ECF No. 48-1, Amend. Compl., ¶¶ 430-492.) But none of these paragraphs described any actions whatsoever by Governor Whitmer or Secretary Benson that were "purposefully directed at residents" of the State of Colorado and gave rise to Plaintiffs' injuries. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985). Nor did Plaintiffs allege any facts or actions demonstrating that Governor Whitmer or Secretary Benson engaged in continuous and systematic contacts with Colorado that would have rendered Defendants at home in the State. *Daimler*, 571 U.S. at 127. Plaintiffs' pleadings were entirely deficient in setting forth any factual allegations that supported hailing the Michigan Defendants into federal court in Colorado. Defendants argued as much in their motion to dismiss filed March 15, 2021, (ECF No. 46), and in their response to Plaintiffs' motion to amend the complaint filed March 29, 2021, (ECF No. 60).

In their April 12, 2021, response to Defendants' motion to dismiss on the issue of personal jurisdiction, Plaintiffs simply claimed that Defendants knew or should have known that

4

their alleged unconstitutional acts in certifying Michigan's election "would affect the voting rights of every person eligible to vote in the United States, which includes Plaintiffs." ECF No. 80, Plfs' Resp. to Mich. MTD, p 6. Plaintiffs again alleged no actions directed at the people of Colorado or any systematic contact by these Defendants with Colorado, only a claim that Defendants' actions in Michigan *affected* every voter in the United States, including Plaintiffs. Plaintiffs' argument was complete nonsense and unsupported by any of the cases cited in their brief in support of jurisdiction. *Id*., pp 4-5.

Plaintiffs ultimately recognized the jurisdictional issues and voluntarily dismissed the Michigan Defendants on April 19, 2021. (Ex. A, Walker email; ECF No. 83, Mich. Vol. Dismissal.) But this came, of course, after the undersigned counsel expended time and state monies to get admitted to this Court in order to defend Governor Whitmer and Secretary Benson, and spent additional time and resources drafting the motion to dismiss and the response to Plaintiffs' motion to amend the complaint.

Courts have imposed sanctions on plaintiffs for filing complaints without a good-faith basis for personal jurisdiction over a defendant. *See Jamieson v. Hoven Vision, L.L.C.,* 2021 WL 1564788 at *2-3, decided 4/21/21 (D. Colo. 2021); *Clark v. Meijer, Inc.,* 376 F. Supp. 2d 1077 (D. New Mexico, 2004); *Levine v. F.D.I.C*., 2 F.3d 476 (2nd Cir. 1993). Here, Plaintiffs acted in bad faith, or at the least vexatiously, in filing suit against Michigan's Governor and Secretary of State in Colorado based on actions or events that occurred in Michigan and solely in connection with Michigan's November 2020 general election.

Similarly, Plaintiffs' arguments in support of subject-matter jurisdiction were frivolous. As this Court observed in its recent opinion granting the remaining Defendants' motions to dismiss, absent a justiciable case or controversy between interested parties, a federal court lacks

5

the power to hear and decide a case.  (ECF No. 93, Opinion, p 8) (citations omitted).  And to demonstrate standing under Article III, Plaintiffs had to have "personally suffered (1) a concrete and particularized injury (2) that is traceable to the conduct they challenge, and that (3) would likely be redressed by a favorable decision." *Id*. (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  "At the pleading stage, any complaint filed in federal court must 'clearly allege facts demonstrating each element.'" *Id*. (quoting *Spokeo, Inc*. at 1547) (quotation marks and alterations omitted).  "A particularized injury is one that 'affect[s] the plaintiff in a personal and individual way.'" *Id*. at p 9 (quoting *Spokeo, Inc*. at 1548) (internal quotation marks omitted).  As the Supreme Court stated in 2007, "a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lance v. Coffman*, 549 U.S. 437, 439 (2007).

Despite this black-letter law, the injuries asserted by Plaintiffs were generalized grievances shared by millions of voters across the Nation.  (ECF No. 1, Compl., ¶¶ 76 (Defendants participated in conspiracy that "burden[ed] the rights of every registered voter in America"), 126 (unconstitutional acts by Defendants "violated the rights of millions of people" and "proximately caused damage to the Plaintiff, and every registered voter similarly situated"), 307 (Defendants "violated the rights of the Plaintiffs and others similarly situated, individually, as every registered voter has an interest in selecting the president and vice-president"), 319 ("Defendants have engaged in a scheme to dilute the votes of some, and count illegal ballots to the benefit of another.  This hurts every registered voter in the country"), 334 (Defendants have participated in conduct "which has damaged the Plaintiffs, but more broadly, every registered

6

voter in America"); *See also* ECF No. 48-1, Amend. Compl., ¶¶ 240, 369, 664, 677, 693.)  In other words, the Michigan Defendants' purported failure to follow Michigan election law or the Constitution in conducting Michigan's election was alleged to have injured not only the two Michigan Plaintiffs,[2] but the non-Michigan Plaintiffs and every voter in America as well.

But weeks before Plaintiffs filed their complaint, the Supreme Court rejected similar arguments in *Texas v. Pennsylvania, et al.*  There, Texas sued Pennsylvania, Michigan, Georgia, and Wisconsin, claiming that the state and Texas voters suffered individualized injuries because of alleged irregularities in the conducting of elections in the defendant states, which allegedly affected the outcome of the presidential election. (*Texas v. Pennsylvania*, No. 20O155, Texas Brief in Support of Motion for Leave, pp 11-15.)[3]  As to its voters, Texas argued that the election irregularities in the other states resulted in treating Texas voters' unequally by diluting or debasing their votes.  *Id.*, pp 11-12.  The Supreme Court denied Texas's motion "for lack of standing under Article III of the Constitution" where Texas had not "demonstrated a judicially cognizable interest in the manner in which another State conducts its elections." *Texas v. Pennsylvania*, 141 S. Ct. 1230 (2020); 2020 WL 7296814, at *1 (U.S. Dec. 11, 2020).  Plaintiffs surely were aware of this decision rejecting similar claims as to standing or should have been given Plaintiffs' extensive reliance on the Texas case in its original complaint. (ECF No. 1, Compl., ¶¶ 130-131, 133-137, 140, 142-145, 147, 149, 151-161.)

---

[2] Even the affidavits of the Michigan Plaintiffs disclosed no particularized injury.  These Plaintiffs complained generally that they have lost faith in elections and believe that their votes were effectively not counted as a result of Defendants' actions. (Carter Aff., ECF No. 1-3; Crenshaw Aff., ECF No. 1-7.)
[3] Available at 20201207234611533_TX-v-State-Motion-2020-12-07 FINAL.pdf (supremecourt.gov) (accessed June 9, 2021).

7

Even before the Texas decision, other courts had rejected similar claims in support of standing under the Electors Clause, Equal Protection Clause, or Due Process Clause concluding that the plaintiffs in these cases had alleged only general, unparticularized grievances. *See, e.g.*, *King, et al. v. Whitmer, et al.*, 2020 WL 7134198 at *10 (E.D. Mich., Dec. 7, 2020) (concluding that plaintiffs did not have standing to bring their claim because claims that laws have not been followed are generalized grievances insufficient to support standing, particularly where any claim belonged to the Michigan Legislature, and not the plaintiffs); *Bognet v. Secretary Commonwealth of Pennsylvania*, 980 F.3d 336, 354-55 (3rd Cir. 2020) (vacated for mootness) ("Put another way, '[a] vote cast by fraud or mailed in by the wrong person through mistake,' or otherwise counted illegally, 'has a mathematical impact on the final tally and thus on the proportional effect of every vote, but no single voter is specifically disadvantaged.' ") (citations omitted); *Pennsylvania Voters All. v. Ctr. Cty.*, No. 20-1761, 2020 WL 6158309 at *5 (M.D. Pa. Oct. 21, 2020); *Wood v. Raffensperger*, No. 20-04651-SDG, 2020 WL 6817513, at *8-10 (N.D. Ga. Nov. 20, 2020), aff'd, 981 F.3d 1307 (11th Cir. 2020) (concluding that vote-dilution injury is not "cognizable in the equal protection framework"); *Donald J. Trump for President, Inc. v. Boockvar*, No. 20-966, 2020 WL 5997680 at *45-46 (W.D. Pa. Oct. 10, 2020)); *Donald J. Trump for President, Inc. v. Cegavske,* 488 F. Supp. 3d. 993 (D. Nev. 2020); *Bowyer v. Ducey*, No. 20-02321; 2020 WL 7238261 *D. Ariz., Dec. 9, 2020); *Feehan v. Wisconsin Elections Comm*, No. 20-1771, 2020 WL 7250219 (E.D. Wis., Dec. 9. 2020).

This Court summarized many of these decisions in its opinion granting the motions to dismiss for lack of standing. *See* (ECF No. 92, Opinion, pp 11-12.) The Court aptly noted this was a "veritable tsunami of decisions finding no Article III standing in near identical cases" to

8

Plaintiffs' suit. (*Id.*, p 17.) And similarly concluded that Plaintiffs' claimed injuries were general and unparticularized, and thus failed to establish standing. *Id.*, pp 19-20.

Based on this raft of decisions issued before Plaintiffs even filed suit, Plaintiffs could not have believed in good faith that they had standing to sue the Michigan Defendants.

As to the merits of Plaintiffs' claims, those too were frivolous. In Count I Plaintiffs alleged a violation of the Electors Clause of the U.S. Constitution based on the theory that Defendants violated state law mandating the manner in which electors are chosen by not following the law or improperly changing the law. (ECF No. 1, Compl., ¶¶ 292-325.) But the right to raise such a claim belongs to the Michigan Legislature. *King*, 2020 WL 7134198 at *10; *Bognet*, 80 F.3d at 350. *See, e.g*, Lance, 549 U.S. at 442; *Arizona State Legislature v. Arizona Independent Redistricting Comm.,* 576 U.S. 787 (2015). Moreover, case law does not support interpreting the Electors and Elections Clauses to be violated any time a state may violate its own election laws. *King*, 2020 WL 7134198 at *11 (citing *Cook v. Gralike*, 531 U.S. 510 (2001); *Arizona State Legislature,* 575 U.S. 787.) *See also Bognet*, 980 F.3d at 343-344, 349; *Cegavske*, No. 20-1445, 2020 WL 5626974, at *4; *Wood*, 20-04651, 2020 WL 6817513, at *5.

In Count II, Plaintiffs alleged an equal protection violation based on the administration of the November 2020 election. (ECF No. 1, Compl., ¶¶ 326-350.) Plaintiffs cited *Bush v. Gore*, 531 U.S. 98, 107 (2000) as prohibiting differential standards in the treatment or tabulating of ballots. (*Id.*, ¶¶ 331-332.) Plaintiffs alleged a vote-dilution, equal protection claim on behalf of themselves and all registered voters. But a vote-dilution claim is generally only viable where the law devalues certain voters' votes over another group of voters' votes. *See, e.g., Rucho v. Common Cause*, 139 S. Ct. 2484, 2501 (2019); *Gill v. Whitford*, 138 S. Ct. 1916, 1929-30 (2018); *Bush,* 531 U.S. at 104-05, and the cases cited therein. Here, Plaintiffs' claims of harm in

9

counting supposedly invalid ballots allegedly affected *all* voters, not just Plaintiffs. A vote dilution claim requires a point of comparison. *Rucho*, 139 S. Ct. at 2501. Plaintiffs' equal protection claim failed where Plaintiffs alleged every voter suffered the same injury.

And in Count III, Plaintiffs alleged a violation of the Due Process Clause based on the theory that the election was administered in a manner that was fundamentally unfair thereby diluting Plaintiffs' votes. (ECF No. 1, Compl., ¶¶ 351-362.) To the extent this claim was pled as a vote-dilution claim, such claims are analyzed under equal protection, not due process, and failed for the reasons stated above. *See, e.g.*, *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (specific amendment applies over generalized concept of substantive due process). But even if Plaintiffs' allegations were construed as a "fundamental fairness" due process claim, their claim still failed. The kind of unconstitutional irregularities that courts have entertained under the Due Process Clause consist of widespread disenfranchisement through system-wide process failures. *See Bennett v. Yoshina*, 140 F.3d 1218, 1226-27 (9th Cir. 1998); *Northeast Ohio Coalition for the Homeless v. Husted,* 696 F.3d 580, 597 (6th Cir. 2012). But here, Plaintiffs complained instead of widespread *enfranchisement*, and essentially sought to *disenfranchise* voters. And in that case, they failed to state a claim under the Due Process Clause.

Plaintiffs' claims against the Michigan Defendants were thus meritless and would have been subject to dismissal for failure to state a claim absent the voluntary dismissal.

Second, aside from the failings of Plaintiffs' legal arguments, many of the factual allegations supporting Plaintiffs' claims against the Defendants were false and/or demonstrated that Plaintiffs failed to conduct a reasonable inquiry or investigation of the allegations. For example, Plaintiffs claimed in both the complaint and amended complaint that Secretary Benson unlawfully mailed absent voter ballot applications to registered voters in Michigan, contrary to

Mich. Comp. Laws § 168.759. (ECF No. 1, Compl, ¶¶ 128-135; ECF No. 48-1, Amend. Comp., ¶¶ 431-438.) But both before and after the filing of the original complaint in this case, the Michigan courts held that the Secretary's mailing did not violate that statute. *See Davis v. Secretary of State*, 2020 WL 5552822 at *1 (Mich. Ct. App., Sept. 16, 2020), leave denied 951 N.W.2d 911 (Mich., Dec. 28, 2020.) Plaintiffs also alleged that Secretary Benson unlawfully created a platform for requesting an absent voter ballot application online that did not require signature verification. (ECF No. 1, Compl., ¶ 136; ECF No. 48-1, Amend. Compl., ¶¶ 439-443.) However, the online program was only available to registered voters who possessed a Michigan driver's license or state identification card and had electronically stored signatures on file that could be verified by local clerks.[4] Moreover, a Michigan court declined to enjoin operation of the platform in the context of the November 2020 general election. *See Election Integrity Fund, et al. v. Secretary of State*, Case No. 20-00169, Michigan Court of Claims.

And in both complaints Plaintiffs alleged that the members of the Michigan Board of State Canvassers are "executive officers under the supervision of the governor." (ECF No. 1, Compl, ¶ 170; ECF No. 48-1, Amend. Comp., ¶ 472.) But this board is established by the Michigan Constitution, Art. II, § 7, and while the Governor appoints members with the advice and consent of the Michigan Senate, she does not supervise the board. *See* Mich. Comp. Laws §§ 168.22-22g, 168.841-846. Both complaints also alleged that Defendant Benson "certified said results of the presidential election." (ECF No. 1, Compl, ¶ 183; ECF No. 48-1, Amend. Comp., ¶ 485.) But the Michigan Board of State Canvassers certified the results of the presidential election, not Defendant Benson. *See* Mich. Comp. Laws §§ 168.46, 168.841-845.

---

[4] *See Michigan Department of State launches online absentee voter application*, 6/12/20, available at https://www.michigan.gov/sos/0,4670,7-127--531796--,00.html, (accessed June 9, 2021).

In addition, numerous allegations in Plaintiffs' original complaint of fraud or error were simply repeated from various lawsuits that were rejected or dismissed by federal or Michigan state courts before Plaintiffs even filed their complaint on December 22, 2020. (See ECF No. 1, Compl. ¶¶ 130-131, 135-137, 140, 142-145, 147, 149, 150-162, 164-165, 186.) For example, Plaintiffs borrowed heavily from the pleadings filed in *Texas v. Pennsylvania, et al.*, which, as noted above, was dismissed by the U.S. Supreme Court. Plaintiffs also incorporated and quoted from the pleadings and affidavits filed in *Johnson, et al. v. Benson, et al.*, 951 N.W.2d 310 (Mich. 2020), an original action in Michigan's highest court. But the Michigan Supreme Court denied that petition because it was "not persuaded that it [could] or should grant the requested relief." *Id.* Similarly, Plaintiffs quoted from the complaint filed in *Bally, et al. v. Whitmer, et al.,* Case No. 1:20-cv-1088 (W.D. Mich, 2020), but that case was voluntarily dismissed shortly after it was filed. In their amended complaint, Plaintiffs, for the most part, simply removed the references to these cases and restated the same "facts." (ECF No. 48-1, Amend. Compl.)

Plaintiffs also quoted from a "preliminary report" of a purported forensic exam of a single Dominion Voting Systems tabulator used in Antrim County, Michigan, and generated in connection with state-court litigation in that county. (ECF No. 1, Compl., ¶¶ 173-175) (citing *Bailey v. Antrim County, et al.*, Antrim Circuit Court No. 20-9238.) But before Plaintiffs even filed suit this report was largely repudiated and a post-election audit revealed no significant irregularities in vote totals.[5] Moreover, Michigan legislators had stated that there was no

---

[5] *See* Antrim County audit shows 12-vote gain for Trump, 12/17/20, The Detroit News, available at https://www.detroitnews.com/story/news/local/michigan/2020/12/17/antrim-county-audit-shows-12-vote-gain-trump/3938988001/ (accessed June 9, 2021).

evidence of fraud perpetuated by Dominion Voting Systems.[6] This case has now been dismissed as well in favor of the State of Michigan.[7]

      Plaintiffs' incorporation and reliance on the "facts" as pled in other cases strongly indicates that Plaintiffs made no effort to determine for themselves whether their legal claims were well grounded in the facts before filing their frivolous claims against the Michigan Defendants.  See, e.g., *Grynberg v. Ivanhoe Energy, Inc*., 663 F. Supp. 2d 1022, 1025 (D. Colo. 2009) (Rule 11 therefore "imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well-grounded in fact, legally tenable, and not interposed for any improper purpose.")  Further, none of the alleged "facts" supported Plaintiffs' specious claims that the Michigan Defendants somehow conspired with the other Defendants to unlawfully affect the outcome of the November 2020 general election.  (ECF No. 1, Compl., ¶¶ 120.)  Notably, in the *King* case brought against the Michigan Defendants and alleging many of the same claims of fraud and irregularity, the federal court observed there was no evidence of a scheme to dilute votes by altering, destroying, or switching votes from Trump to Biden.  *King*, 2020 WL 7134198 at *12 ("With nothing but speculation and conjecture that votes for President Trump were destroyed, discarded or switched to votes for Vice President Biden, Plaintiffs' equal protection claim fails.")

      Here, Plaintiffs had no colorable argument for this Court's exercise of jurisdiction over the Michigan Defendants, their legal claims were not supported by existing case law or by an

---

[6] *See* statement by State Senator Ed McBroom, available at https://www.detroitnews.com/story/news/local/michigan/2020/12/17/antrim-county-audit-shows-12-vote-gain-trump/3938988001/ (accessed June 9, 2021).
[7] *See* Judge dismisses Antrim County election fraud lawsuit, 5/18/21, The Detroit Free Press, available at Michigan judge dismisses Antrim County election fraud lawsuit (freep.com) (accessed June, 2021).

extension of the caselaw, and where Plaintiffs' factual allegations were false or otherwise unsupported, Plaintiffs abused the judicial process, acted vexatiously and in bad faith in pursuing this litigation, and should be sanctioned. *Farmer,* 791 F.3d at 1256. The recklessness of Plaintiffs' action here was amplified by the subject-matter of this lawsuit. This case was not some garden-variety, civil litigation. Plaintiffs attacked the integrity of Michigan's and the other states election of the President of the United States, and the votes of millions of citizens. And given the lack of merit of Plaintiffs' claims, the apparent purpose of this lawsuit was to foment distrust in the electoral process and provide a false narrative upon which individuals could advocate for overturning the votes in the Defendant states. The terrible by-product of Plaintiffs' efforts in this case and the other unsuccessful cases like it was reflected in the January 6, 2021, insurrection and our Nation's Capital. This was a clear and dangerous abuse of the judicial process, and Plaintiffs' counsel should be sanctioned as a result.

   **B. Plaintiffs' attorneys should be sanctioned under 28 U.S.C. § 1927.**

In addition to or in the alternative, this Court should impose sanctions against Plaintiffs under 28 U.S.C. § 1927 for pursuing this action beyond the point at which an objectively reasonable attorney would have abandoned it. Sanctions under § 1927 are appropriate when an attorney acts recklessly or with indifference to the law or intentionally acts without a plausible basis or when the entire course of the proceedings was unwarranted. *Steinert*, 440 F.3d at 1221.

Here, Plaintiffs were on notice that they were acting without a plausible basis for jurisdiction by February 16, 2021, through the filing of Defendants Dominion and Facebook's motions to dismiss, which clearly articulated Plaintiffs lacked standing to sue under existing case law based on their generalized grievances. *See* (ECF No. 22, Dominion Mot, pp 7-9; ECF No. 23, Facebook Mot., pp 3-6.) This Court later observed in its opinion dismissing the case that Plaintiffs never articulated a plausible basis for standing. (ECF No. 92, Opinion, pp 17-20.)

Nevertheless, Plaintiffs subsequently proceeded against the Michigan Defendants by serving the lawsuit. Notably, at the March 11, 2021, status conference this Court questioned its jurisdiction over the state Defendants, which should have caused reasonable Plaintiffs to re-examine the issue of personal jurisdiction as to their original complaint and with respect to their wish to file an amended complaint. But that was not the case. Instead, the Michigan Defendants were forced to file their own motion to dismiss on March 15, 2021, and a response in opposition to Plaintiffs' motion to amend the complaint, both of which argued a lack of personal jurisdiction and standing to sue. (ECF No. 46, Michigan Mot.; ECF No. 60, Michigan Resp.) And as discussed above, Plaintiffs ultimately recognized they could not overcome the jurisdictional defects as to the non-resident Michigan Defendants.

Plaintiffs acted recklessly and demonstrated indifference to the law when they pursued this case against the Michigan Defendants long after they should have been aware that they had no plausible grounds for doing so. As a result, Plaintiffs should be sanctioned under § 1927 in the form of an order requiring payment of Defendants' attorneys' fees and costs.

## CONCLUSION AND RELIEF REQUESTED

For the reasons set forth above, Defendants Governor Gretchen Whitmer and Secretary of State Jocelyn Benson request that this Court, pursuant to its inherent authority, order that Plaintiffs' attorneys be sanctioned by being required to pay all reasonable attorneys' fees and costs incurred by Defendants as a result of this case. In addition to or alternatively, this Court should order that Plaintiffs' attorneys pay all attorneys' fees and costs reasonably incurred after Plaintiffs' attorneys served the Michigan Defendants or after Plaintiffs' attorneys moved to amend the complaint, which actions unreasonably multiplied this proceeding.

Dated: June 9, 2021

Respectfully submitted,

Dana Nessel
Michigan Attorney General

*s/Heather S. Meingast*
Heather S. Meingast (P55439) (Michigan)
Michigan Assistant Attorney General
Attorney for Defendants Whitmer & Benson
PO Box 30736
525 West Ottawa
Lansing, Michigan 48909
517.335.7659
meingasth@michigan.gov

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 9, 2021, a copy of the foregoing document was electronically filed with the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*s/Heather S. Meingast*
Heather S. Meingast (P55439) (Michigan)
Michigan Assistant Attorney General
Attorney for Defendants Whitmer & Benson
PO Box 30736
525 West Ottawa
Lansing, Michigan 48909
517.335.7659
meingasth@michigan.gov