IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-03747

KEVIN O'ROURKE, et al.,

Plaintiffs,

v.

DOMINION VOTING SYSTEMS INC., et al.,

Defendants.

---

## RESPONSE TO MOTION FOR SANCTIONS
## FILED BY DEFENDANT DOMINION VOTING SYSTEMS, INC.

---

COMES NOW counsel for Plaintiffs, and hereby submits the following Response to Motion for Sanctions filed by Defendant DOMINION VOTING SYSTEMS, INC. (Dominion), and hereby respectfully requests that the Court deny the motion and award undersigned counsel reasonable attorney fees for the time necessary to respond, and any other sanction that this Court deems just under the circumstances.

## I.      INTRODUCTION

On April 29, 2021, the Plaintiffs filed a notice of appeal in the United States Court of Appeals 10th Circuit, referenced by case number 21-1161. Two weeks after the filing of the notice, counsel for Plaintiffs filed the Docketing Statement on May 13, 2021. On that date, Dominion filed its motion for sanctions, pursuant to Rule 11 and 28 U.S.C. § 1927 [Doc. 99]. Dominion did not serve Plaintiffs' counsel with a copy of the motion 21 days before the filing, and a letter does not suffice. The motion for sanctions is frivolous and must be denied.

II.     **A PARTY SEEKING TO SANCTION OPPOSING COUNSEL MUST
FOLLOW THE RULES**

Dominion's motion for sanctions states on the first page:

In compliance with Rule 11(c)(2), counsel for Dominion served this motion at the
email addresses on file with the Court. Plaintiff's counsel did not respond within
the twenty-one day safe harbor and have not otherwise responded since.

Rule 11(c)(2) states:

Motion for Sanctions. A motion for sanctions must be made separately from any
other motion and must describe the specific conduct that allegedly violates Rule
11(b). The motion must be served under Rule 5, but it must not be filed or be
presented to the court if the challenged paper, claim, defense, contention, or
denial is withdrawn or appropriately corrected within 21 days after service or
within another time the court sets. If warranted, the court may award to the
prevailing party the reasonable expenses, including attorney's fees, incurred for
the motion.

Rule 5(b) states:

Service: How Made.

(1) *Serving an Attorney.* If a party is represented by an attorney, service under this
rule must be made on the attorney unless the court orders service on the party.

(2) *Service in General.* A paper is served under this rule by:

(A) handing it to the person;

(B) leaving it:

(i)     at the person's office with a clerk or other person in charge or,
if no one is in charge, in a conspicuous place in the office; or

(ii)    if the person has no office or the office is closed, at the
person's dwelling or usual place of abode with someone of
suitable age and discretion who resides there;

(C) mailing it to the person's last known address—in which event service is
complete upon mailing;

(D) leaving it with the court clerk if the person has no known address;

(E) sending it to a registered user by filing it with the court's electronic-filing system or sending it by other electronic means that the person consented to in writing—in either of which events service is complete upon filing or sending, but is not effective if the filer or sender learns that it did not reach the person to be served; or

(F) delivering it by any other means that the person consented to in writing— in which event service is complete when the person making service delivers it to the agency designated to make delivery.

Dominion never served counsel pursuant to Rule 5 with a copy of the motion for sanctions, before filing the motion in court, as required by Rule 11. Further, as stated in the motion, "Dominion sent Plaintiffs' counsel a Rule 11 letter demanding that Plaintiffs immediately withdraw the Complaint." *See* Doc 98, p. 1, ¶ 2 and Ex. A, attached. However, the law in this circuit has been clear for over fifteen years. A letter is not sufficient under Rule 11—a copy of the motion must be served on counsel for the defense, pursuant to Rule 5.

Accordingly, if a moving party does not follow the requirements of Rule 5 and Rule 11, counsel is not on notice of the moving party's actual intention to later file the motion in court. In fact, Rule 11 specifically prohibits the filing of a motions for sanctions, unless the attorney aggrieved is properly served.

Otherwise, letters and emails sent by counsel that threaten sanctions, but are not served properly, can only be viewed as a litigation tactic to cause opposing counsel emotional distress, and create confusion and doubt between that attorney and his clients. Four attorneys joined in the signature of counsel for Dominion in its motion for sanctions, all from one of the most powerful and largest law firms in the state of Colorado. *Id*., p. 11. Those attorneys knew that they had to follow Rule 5. Nonetheless, they did not follow the Federal Rules of Civil Procedure, and timed the motion to interfere with Plaintiffs' pursuit of the appeal.

In the interim, undersigned counsel are laboring under enormous stress, which is adversely affecting every aspect of their lives. Threatening a lawyer under Rule 11 is unethical when not based in fact and properly filed. Requesting sanctions, even in an improper manner, weighs on the mind of counsel and affects his ability to concentrate on other, legitimate matters.

As objective as the law must be, the officers of the court are still human beings, fraught with frailty. It goes without saying that suicide is high in the legal profession. Additionally, the threat of physical violence to an attorney and/or his or her family is particularly prevalent in today's society. By publicly and improperly filing a motion for sanctions, Dominion has blown a dog whistle that only canines can hear. Dominion has put a target on counsel's back and, frankly, further proves the Complaint filed by the Plaintiffs. Much of the country's consternation is being directly caused by Dominion—a so-called private company that has intentionally engaged in a "scorched earth policy" against anyone who dares question the reliability of its antiquated, unreliable, and defective products.[1]

The "imposition of a Rule 11 sanction is not a judgment on the merits of an action." *Cooter & Gell v. Hartmarx Corp.*, 496 US 384, 396 (1990). "Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate." *Id*. Counsel for Plaintiffs have not abused the judicial process, nor does Dominion cite one instance of conduct by Plaintiffs' counsel that even indicates such an allegation.

> Contrary to defendants' arguments, nothing in subsection (c)(1)(A) suggests that a letter addressed to the alleged offending party will suffice to satisfy the safe harbor requirements. Rather, the plain language of subsection (c)(1)(A) requires a copy of the actual motion for sanctions to be served on the person(s) accused of sanctionable behavior at least twenty-one days prior to the filing of that motion.

---

[1] *See, e.g. My Pillow, Inc. DBA MyPillow v. US Dominion, Inc*., Case No. 0:21-cv-01015-PJS-DTS (2021), ¶ 2.

*Roth v. Green*, 466 F. 1179, 1192 (10th Cir. 2006).

      *Roth* has been the standard in this circuit for 15 years. There, an attorney filed a § 1983 "in federal district court against seventy-six (76) defendants, including various state and county officials…." The complaint "alleged that the defendant's 'created, established, and executed an unconstitutional drug checkpoint…' that ultimately resulted in [the plaintiffs] being unlawfully stopped, detained, searched and arrested." *Id.* at 1184. However, that matter was dismissed pursuant to the *Rooker-Feldman* doctrine, the doctrine of collateral estoppel, plaintiffs' failure to successfully challenge their ultimate criminal convictions arising from the detention and arrest, their failure to properly plead conspiracy, and "because the undisputed facts established that the 'ruse checkpoint' was constitutional…" *Id.*

      Although the 10th Circuit found that the attorney "should have voluntarily dismissed the case," the Court of Appeals found:

> As they did in the district court, however, defendants contend that the warning letters they sent to Mulhern months in advance of filing their motions for sanctions effectively satisfied the requirements of subsection (c)(1)(A) by providing Mulhern with notice of their intent to seek sanctions and an opportunity to withdraw the complaint prior to them filing their motions. Although the district court agreed with defendants, we conclude, for the reasons discussed below, that defendants' letters were not sufficient to satisfy the requirements of subsection (c)(1)(A), and thus the district court abused its discretion in granting defendants' motions for Rule 11 sanctions.

Regarding policy considerations, the 10th Circuit stated:

> The reason for requiring a copy of the motion itself, rather than simply a warning letter, to be served on the allegedly offending party is clear. The safe harbor provisions were intended to "protect[] litigants from sanctions whenever possible in order to mitigate Rule 11's chilling effects, formaliz[e] procedural due process considerations such as notice for the protection of the party accused of sanctionable behavior, and encourag[e] the withdrawal of papers that violate the rule without involving the district court...." 5A Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1337.2, at 722 (3d ed.2004). Thus, "a failure to comply with them [should] result in the rejection of the motion for sanctions...." *Id.* at 723.

5

*Id.* at 1192.

The 10th Circuit further found:

[Plaintiffs' counsel] also contends that the motions for sanctions should have been denied because they were not filed until after the district court had dismissed the complaint. We agree. "The addition of the safe harbor provision in the 1993 amendment [to Rule 11] dramatically changed the effect that a final judgment or the dismissal of the claim has on the possibility of a Rule 11 proceeding." Wright and Miller, *supra*, § 1337.2, at 727. "[S]ervice of a sanctions motion after the district court has dismissed the claim or entered judgment prevents giving effect to the safe harbor provision or the policies and procedural protections it provides, and it will be rejected." *Id.; see Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.,* 369 F.3d 385, 389 (4th Cir. 2004) ("Because the rule requires that the party submitting the challenged pleading be given an opportunity to withdraw the pleading, sanctions cannot be sought after summary judgment has been granted."); *Tompkins v. Cyr,* 202 F.3d 770, 788 (5th Cir.2000) (affirming denial of motion for Rule 11 sanctions made after completion of trial); *Barber v. Miller,* 146 F.3d 707, 710 (9th Cir.1998) (holding that a party cannot wait until after summary judgment to move for sanctions, even if that party informally warned the offending party about the potential of Rule 11 sanctions); *Ridder v. City of Springfield,* 109 F.3d 288, 297 (6th Cir.1997) (holding that "a party cannot wait until after summary judgment to move for sanctions under Rule 11"); *see also AeroTech, Inc. v. Estes,* 110 F.3d 1523, 1528-29 (10th Cir.1997) (concluding that Rule 11 sanctions were unavailable to defendant who moved for sanctions after plaintiff moved to voluntarily dismiss its claims against defendant).

Here, on April 2, 2021, this Court set the matter for hearing on the several motions to proceed on April 27, 2021. Doc. 67. With that, Dominion knew that this Court could dismiss the case at any time after the hearing, which the court did. Doc. 92. Instead of serving a copy of the motion for sanctions pursuant to Rule 5, counsel for Dominion certified to this Court that an email was sent on April 9, 2021. That is not proper service pursuant to Rule 5. Further, April 9 was 18 days before the hearing, 19 days before the case was dismissed, and 20 days before the notice of appeal was filed.

In *Roth*, the Court of Appeals concluded that "the district court abused its discretion in granting defendant's motion for sanctions under Rule 11." Dominion now invites this

Court to exercise its discretion and sanction opposing counsel, when it cannot even follow the rules, itself. The only rational interpretation is that Dominion did this to threaten and distract Plaintiffs' counsel. Causing fear and apprehension in counsel naturally creates a conflict between the necessity of zealously representing a client and the need to protect one's professional reputation and family. Dominion's conduct essentially places Plaintiffs' counsel inside the issues of material fact, which clearly exist in this case.

Additionally, simply having to respond to Dominion's improper motion for sanctions has costs undersigned counsel precious time to prepare the opening brief due in the Court of Appeals—but that was the point. That was Dominion's purpose in filing the motion for sanctions.

## III.   PLAINTIFFS HAD A REASONABLE BASIS FOR FILING THEIR CLAIMS

Plaintiffs' claims against Dominion are based upon its status as a state actor and, thus, its subjection to the Constitution. Dominion cites "a joint statement from the Election Infrastructure Government Coordinating Council and the Election Infrastructure Sector Coordinating Executive Committees…declaring unequivocally that '[t]he November 3rd election was the most secure in American history,'" and that "'[t]here is no evidence that any voting system deleted or lost votes, changed votes, or was in any way compromised.'" Doc. 98, pp. 1-2. However, there is overwhelming evidence that Dominion's voting machines did flip and delete votes. All of this was outlined and cited in Plaintiffs' Complaint, Amended Complaint and response to Dominion's motion to dismiss. Docs. 1, 39, and 48.

As cited in Plaintiffs' Complaint, in Michigan, Attorney Matt DePerno filed a complaint on behalf of a Michigan voter, who, pursuant to Michigan law, requested an audit of Michigan's general election. *See Bailey v. Antrim County*, Circuit Court for the County of Antrim, Case No.

20-9238-CZ. There, the circuit court ruled that Michigan had already conducted an audit, and dismissed the plaintiff's complaint. However, the evidence that Attorney DePerno and his client presented in the form of expert testimony creates an issue of fact that can only be resolved through a judicial adjudication. These reports include expert opinions that demonstrate that Dominion's systems have the ability to change votes after being cast by voters, utilize voting machines that can be accessed remotely, is capable of deleting election records, calculating vote tallies through use of public data and algorithms, and the ability to manipulate results of Dominion machines. A copy of Attorney DePerno's *Supplement to Plaintiff's Motion to Amend Brief* is attached hereto, as though fully contained herein.

Further, without repeating the evidence already mentioned in the Plaintiffs' original Complaint, Amended Complaint, and the responses to the several motions to dismiss filed by the Defendants, recently other lawyers have filed cases involving similar and exact factual allegations. In Minnesota, attorneys on behalf of Mike Lindell and his company, My Pillow, Inc., filed an action in federal court. *See My Pillow, Inc. DBA MyPillow v. US Dominion, Inc*., Case No. 0:21-cv-01015-PJS-DTS (2021). Those attorneys are bound by the same rules. However, the plaintiffs there also alleged that Dominion is a state actor. The complaint further outlines, in even greater detail, the adjudication process surrounding Dominion's vote counting machines, and the other multitude of problems involving cybersecurity, or the lack thereof, concerning the reliability of its voting machines.

In fact, on June 7, 2021, Mike Lindell filed an additional lawsuit against Dominion in the U.S. District Court, District of Minnesota, referenced under Case No. 0:21-cv-01332. In it, Plaintiff Lindell, through counsel states in the first paragraph of his Complaint:

> [The Plaintiff] brings this lawsuit to stop electronic voting machine companies from weaponizing the litigation process to silence political dissent and suppress evidence

showing voting machines were manipulated to affect outcomes in the November 2020 general election.

Additionally, former CEO of Overstock.com, Patrick Byrne, recently released his book, *The Deep Rig: How Election Fraud Cost Donald J. Trump, By a Man Who did not Vote for Him*. This book outlines much of the evidence cited in the Plaintiffs' complaints and other responses. Additionally, Mr. Byrne is scheduled to release a movie on the topic, entitled *The Deep Rig*, which is scheduled for release on June 26, 2021.

Most damaging to Dominion's claims of purity, the State of Arizona is nearing completion of a full forensic audit in Maricopa County, because, despite Dominion's assurances, the Dominion machine vote totals are not verifiable through a paper trail. Further, other states have sent delegations to Arizona for purposes of considering their own similar audits, including Colorado.[2]

## IV.   PLAINTIFFS ASSERTED GOOD FAITH ARGUMENTS FOR STANDING

Counsel for Plaintiffs have argued consistently that the original and added Plaintiffs, as part of a class of registered voters across the country, have each suffered a particularized injury, caused by the unconstitutional conduct of Dominion and others. Every fact plead in the original and amended complaint is true. Dominion operates in multiple states and tabulates the votes of approximately half of all votes cast nationwide. Dominion also provides election services to counties and municipalities, wherein, as established, Dominion participates in the administration of the election process. As advertised, Dominion is more than just a vendor. These services are outlined in contracts, which require the jurisdictions to entered into non-disclosure agreements and to take all necessary action to assert all applicable exemptions from disclosure. As stated,

---

[2] Daniel Chaitin, *Elected Officials From Across County Tour Maricopa County Election Audit*, Washington Examiner, June 8, 2021.

Maricopa County in Arizona has been conducting a forensic audit of the ballots. Dominion is responsible for that county and the evidence is clear that Maricopa County is engaged in legal and political battle with its own state government. These are the damages. The systems used by Dominion, precisely because of its proprietary nature, lacks the necessary verification to evaluate whether the ballots were counted correctly. This is all the foreseeable result of using proprietary software in the tabulation of the country's vote.

Accordingly, because of the magnitude of the rights involved, when Dominion's conduct results in evidence that its voting machines were connected to the internet and that there was foreign interference with the calculation of the votes for the presidency, that affects everyone in the country—even more so when Dominion was actively involved in every swing state that ultimately determined the outcome of the 2020 Presidential election.

In *Wood v. Raffensperger*, a Georgia lawyer and citizen filed against the secretary of state, naming him in his official capacity. 981 F.3d 1307 (11th Cir. 2020). There, Wood moved for extraordinary relief. However, the 11th Circuit found that Wood's allegations, "at bottom, remains 'that the law has not been followed.'" *Id*. at 1315. Plaintiff Wood did not sue Dominion, but instead sued a person in his official capacity regarding a generalized grievance that the secretary of state did not follow the law. Plaintiff Wood based "his standing on his interest in 'ensur[ing that] . . . only lawful ballots are counted.'" *Id*. at 1314. "An injury to the right 'to require that the government be administered according to the law' is a generalized grievance." *Id*. (citing *Chiles v. Thornburgh*, 865 F.2d 1197, 1205–06 (11th Cir. 1989)).

Here, Plaintiffs' claims are not limited by their allegations that the government did not follow the law, but moreover, that Dominion administered a voting system that violated Plaintiffs' constitutional rights. Additionally, although Dominion's conduct burdened the rights

of every registered voter, the representative Plaintiffs each described his or her injury in fact in a particularized way.

Plaintiffs' counsel recognizes that when "the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). However, in *Warth*, the Plaintiffs made their allegations in "conclusory terms," none of them had ever resided in the town being sued over the zoning ordinance at issue, and the record was devoid of the necessary allegations to establish a particularized injury. *Id*. at 503-504. There, the Supreme Court stated:

> We hold only that a plaintiff who seeks to challenge exclusionary zoning practices must allege specific, concrete facts demonstrating that the challenged practices harm *him,* and that he personally would benefit in a tangible way from the court's intervention. Absent the necessary allegations of demonstrable, particularized injury, there can be no confidence of 'a real need to exercise the power of judicial review' or that relief can be framed 'no broader than required by the precise facts to which the court's ruling would be applied.'

*Id*. at 508 (citing *Schlesinger* v. *Reservists to Stop the War,*418 U.S. 208, 221-222 (1974).

Here, each Plaintiff suffered a particularized injury concerning the 2020 Presidential election, which has been outlined in the complaints and subsequent pleadings. The case is still in the pleadings stage, and the Plaintiff have a right to present their claims, all of which are redressable through the imposition of damages, even if only nominal. Counsel for Plaintiffs reasonably believed their clients possessed standing to assert their claims, particularly as a class action. Repeatedly, the Plaintiffs contended that they had standing to bring Equal Protection and Due Process claims under the Fourteenth Amendment as registered voters.

While this Court found that Plaintiffs' lacked standing, the Plaintiffs made a good faith legal argument under Article III, § 2, of the U.S. Constitution which provides that, "The judicial

Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority[.]" Article III, § 2. *See Baker v. Carr*, 369 U.S. 186, 199 (1962) (A citizen's right to a vote free of arbitrary impairment by state action has been judicially recognized as a right secured by the Constitution, when such impairment resulted from dilution by a false tally; or by a refusal to count votes from arbitrarily selected precincts, or by a stuffing of the ballot box.).

As explained by Justice Thomas, "A plaintiff seeking to vindicate a public right embodied in a federal statute, however, must demonstrate that the violation of that public right has caused him a concrete, individual harm distinct from the general population." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1553, 194 L. Ed. 2d 635, 650, (Thomas J., Concurring, 2016) (citing *Lujan*, 112 S. Ct. 2130, 119 L. Ed. 2d 351).

With that, Plaintiffs' counsel had a good-faith belief that the Plaintiffs, and each of them, suffered a concrete and particularized harm, which was distinct from the general population. As stated on numerous occasions: members of the general population do not possess a right to participate in a Presidential election, and therefore could not have suffered a due process right violation. However, registered voters are the rightful participants in an election, and therefore the named state actors owe them a duty under the Fourteenth Amendment, which was violated through Dominion's unreliable systems. What a litigant considers to be pertinent or relevant must be given deference, and liberally construed as a matter of public policy so that participants in judicial proceedings may have relative freedom to express themselves without fear of retaliation.

## V.   SANCTIONS AGAINST PLAINTIFFS ARE NOT APPROPRIATE

Plaintiffs filed no unreasonable or vexatious pleadings and, to the contrary, it is Defendant's pursuit of sanctions in this matter that more clearly meets the standard for sanctionable conduct. Section 1927 provides in pertinent part:

> Any attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

Plaintiffs filed one Complaint. Doc. 1. Dominion did not answer the Complaint, but filed one Motion to Dismiss, which was granted. Doc 22. Plaintiffs sought one amendment to the complaint, which was denied. Doc 48. Plaintiffs took no actions to unreasonably delay the proceedings or file any unnecessary pleadings.

Further, despite Dominion's attempt to characterize Plaintiffs' complaint otherwise, Plaintiffs' Complaint was distinguishable from every other election related lawsuit brought. Until recently, Dominion, as a state actor, had not been sued by anyone in any forum. Additionally, despite assurances from Dominion's counsel that their machines have been "certified," no case has litigated Dominion's bald assurances, as only evidence of Dominion's wrongdoing has emerged from any case so far. Further, no other election case sought damages as requested here. Unlike here, no other case distinguished the class of registered voters (who have a due process right) as a unique class that suffered a distinct injury separate and apart from the general population (who had no due process right).

Moreover, even if nominal damages would be considered by many in the class to be insufficient to make them whole, the Supreme Court recently clarified that pleading nominal damages was sufficient to proceed with a claim for a completed constitutional violation. *See*

*Uzuegbunam v. Preczewski*, ___U.S.___ , 141 S.Ct. 792 (2021). Unlike here, no other case has even claimed nominal damages.

As there has been no binding case on point remotely similar to the claims made by Plaintiffs, counsel specifically plotted their course through the maze of legal precedent to formulate their arguments. Dominion is a state actor through its privatization of elections across the country, and its significant participation in the 2020 Presidential election, as such. *See Terry v. Adams*, 345 US 461 (1953). Similar to this case, in *Terry*, the plaintiffs pursued their constitutional claims via a civil rights, class action lawsuit. However, this case is broader, and involves a national interest. Because actions in one state necessarily impact the voting rights in other states, corrupt action in any state by Dominion necessarily extends the class to injured registered voters across the entire nation. *See Anderson v. Celebrezze*, 460 U.S. 780 (1983).

Nonetheless, Plaintiffs' counsel understands that the court has dismissed the case. However, even when claims merit dismissal, punishment is unnecessary unless facts clearly establish unreasonable and vexatious conduct on the part of a party or attorney. Moreover, a district court should not impose sanctions so as to chill creativity or stifle enthusiasm or advocacy. *See Securities Indus. Ass'n v. Clarke*, 898 F.2d 318, 322 (2d Cir. 1990).

## VI.     CONCLUSION

For the reasons stated above, the Plaintiffs' counsel respectfully requests that this Court deny the motion for sanctions filed by Dominion, and award undersigned counsel reasonable attorney fees for the time necessary to respond, and any other relief that this Court deems just under the circumstances.

Dated this 10th day of June, 2021.


Respectfully submitted,

**PLAINTIFFS COUNSEL:**

By: _s/Ernest J. Walker_              By:     _s/ Gary D. Fielder_         
Ernest J. Walker (MI P58635)         Gary D. Fielder (CO 19757)
ERNEST J. WALKER LAW OFFICE      LAW OFFICE OF GARY FIELDER
1444 Stuart St.                             1444 Stuart St.
Denver, CO 80204                    Denver, CO 80204
(720) 306-0007                            (720) 306-0007
ernestjwalker@gmail.com           gary@fielderlaw.net


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 10, 2021, a copy of the foregoing document was electronically filed with the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

_s/Gary D. Fielder_
Gary D. Fielder, Esq.
Law Office of Gary Fielder
1444 Stuart St.
Denver, CO 80204
(720)306-0007
gary@fielderlaw.net