STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF ANTRIM

WILLIAM BAILEY

    Plaintiff

v.

ANTRIM COUNTY, SECRETARY OF STATE JOCELYN BENSON, in her official and individual capacity, JONATHAN BRATER, in his official and individual capacity, SHERYL GUY, in her official and individual capacity, and MILLER CONSULTATIONS & ELECTIONS, INC., d/b/a ELECTION SOURCE, a Michigan corporation

    Defendants.

Case No. 20-9238-CZ

HON. KEVIN A. ELSENHEIMER

---

| Matthew S. DePerno (P52622) | Haider A. Kazim (P66146) |
|---|---|
| DePerno Law Office, PLLC | Allan C. Vander Laan (P33893) |
| Attorney for Plaintiff | Cummings, McClorey, Davis & Acho, PLC |
| 951 W. Milham Avenue | Attorney for Defendant Antrim County |
| PO Box 1595 | 319 West Front Street |
| Portage, MI 49081 | Suite 221 |
| (269) 321-5064 | Traverse City, MI 49684 |
| | (231) 922-1888 |
| | |
| | Heather S. Meingast (P55439) |
| | Erik A. Grill (P64713) |
| | Assistant Attorneys General |
| | Attorneys for Defendant Benson |
| | PO Box 30736 |
| | Lansing, MI 48909 |
| | (517) 335-7659 |

---

**SUPPLEMENT TO PLAINTIFF'S MOTION TO AMEND COMPLAINT**

Plaintiff, WILLIAM BAILEY ("Plaintiff"), by and through his attorney, DePerno Law Office, PLLC, files this Supplement to Motion to Amend Complaint.

1.     Plaintiff's expert witnesses have continued to review the forensic images of the Antrim County EMS in order to refute the report of J. Alex Halderman. With each report, they continue to debunk his findings. As a result, a revised First Amended Complaint is attached hereto at [Exhibit A] with 32 additional exhibits attached.

2.     The results of these additional tests demonstrate the following:

(a)     We are only 6 months into this case. The information reveals that the Dominion Voting System is complex and layered with fraud and ways to subvert the election.

(b)     We have demonstrated that votes can be flipped from one candidate to another at the tabulator level with the erroneous results printed on the tabulator tape and then transferred to the EMS.

(c)     A review of the Antrim County results file indicates duplicate matching ballot indexes, which is evidence of ballot stuffing and fraud.

(d)     The most recent report by Jeff Lenberg [Exhibit 17] reveals that any election can be subverted by changing the date and time at the tabulator, reopening the election, and adding new ballots without any surface trace.

3.     On May 10, 2020, Jeff Lenberg [Exhibit 12] revealed the following fraudulent conduct on behalf of Defendants:

```
Testing of Antrim County project files indicates that
modification of the project files can replicate the
election inaccuracies observed in the November 3, 2020
election. In addition, further testing revealed that
selective modification of the project files resulted
in tailored manipulation of the votes tallied. The
manipulation can be tailored to modify a specific
county, precinct, or race. The steps used to
manipulate the vote tally are listed below:

    •   Modify the specific precinct election files

        o  Edit the VIF_BALLOT_INSTANCE.DVD
```

2

> > o Note: Technical access to ElectionSource corporate resources would allow for these types of manipulations to the elections.
>
> - Burn Compact Flash cards with the configurations for the tabulators
>
> - Run the Election (Process the Ballots through the Tabulator)
>
> The results of the modifications to the project file will show vote totals changed on the tabulator's printed tape as well as modified vote totals in the Results Tally Reporting (RTR) system.
>
> In order to validate these findings; two test cases were run:
>
> > 1. The swap of Trump and Jorgenson vote totals on both the paper tape and the RTR results
> >
> > 2. The swap of Biden and Trump (Presidential Race) and Ferguson and Bergman (Congressional) while leaving the Senate race unmodified on both the paper tape and the RTR results
>
> Exhibit A contains photos of all the ballots that were run for test case number 2 as well as the paper tapes and RTR tallies showing the manipulations.
>
> Both test cases were successful in that the modifications were made without any alerts or error messages being generated by the EMS or the tabulator. The test cases would not have been detected during the canvassing process because both the paper tapes and the RTR results matched.

3. Jeff Lenberg later conducted a test that demonstrated the vote flip in Antrim County was not "human error" and the general election was not "the safest election in history." Rather, the test confirmed that the vote tally errors observed in Antrim County on November 3, 2020 were most likely the result of technical manipulation of the election project file; not human

3

error and not a computer glitch. By conducting a series of tests, Plaintiff's experts were able to replicate the vote tally errors through a method wholly contrary to the "human error" narrative proposed by Alex Halderman. The video can be viewed here:

**https://www.depernolaw.com/dominion.html**

This video demonstrates fraud in the election process and vote tabulation process.

      4.      On May 9, 2021, Jeff Lenberg [Exhibit 14] revealed that the Antrim County election was fraudulent and critical errors were subverted.

      5.      On May 15, 2021, Jeff Lenberg [Exhibit 15] revealed additional facts that show Barry County's November 3, 2020 election was also subverted.

      6.      On May 15, 2021, James Penrose [Exhibit 16] revealed that the "specific incident in Antrim County is related to the features and the functionality outland in the Dominion patent US8,876.002B2. "The patent also indicates that a vote simulation script is used to produce votes and enable counting of votes for [pre-election Logic and Accuracy testing (Pre-LAT)] purposes." This also demonstrates the ability to subvert an election.

      7.      On May 16, 2021, Jeff Lenberg [Exhibit 17] revealed that further testing shows that any election can be subverted by changing the date and time at the tabulator, reopening the election, and adding new ballots without any surface trace. The significance of this report is the following:

            a.      Election Source conducts thousands of elections across the country, including Antrim County, but there are only 6 accounts names: Ben/Smythe, John/Smith, Ryan/Smoth, MRO/M01, Return Office/Admin, MRESuper/Admin.

            b.      Election workers have the ability to "reopen" an election at any time after the election, add ballots, and set the time on a tabulator to any time in order to print paper tapes that show the appropriate date/time stamp. The process is straightforward and is performed by traversing the menus on the tabulator itself.

4

      c.      An election worker can follow the same process of injecting fraudulent votes and maintaining the exact same date and time for the poll opening, closing, and printout to the minute.

      d.      Any user with access to the EMS using the EMS Admin username and password to log into the Dominion Democracy Suite Election Event Designer (EED) application will appear to be "Ben Smythe" in the log files.

      e.      The EED application is used to design the entire election, it is used to program the election files on to the compact flash cards, and it is used to program the security key fobs that are required to open, close, reopen, or rezero the polls.

      f.      This permits obfuscation of the true user.

      g.      The RTRAdmin username and password can be accessed by anyone and they will appear in the logs as "Ryan Smoth." The RTR application is the one used to import, reject, validate, publish, and unpublish results contained on the compact flash cards. Thus "Ryan Smoth" can enter whatever numbers he would like while ignoring the original values on the encrypted compact flash cards and printed tapes. Mr. Smoth can then go back the next day or any day up until the day the canvass is performed and quietly reopen the polls, add a matching number of votes as he manipulated on election night, change the time to match the original paper tape, and print the results. When the canvass is performed the modified paper tape will match the modified manually entered results.

8.      This work supports Dr. Frank's initial conclusions from May 7, 2021 when he stated that (a) there was a near 100% turnout in the age groups 65-80, (b) 20.3% of mail in ballots were sent to PO Boxes, and (c) there were approximately 1,061 "phantom ballots" counted in the Antrim County general election on November 3, 2020. This number is derived from the 15,962 ballots counted on December 17, 2020 less the 14,901 ballots in Defendant Benson's official database.

9.      This additional information has been added to the proposed First Amended Complaint.

5

10. Defendants contend that a hand recount conducted on December 17, 2020 will catch fraud. However, this has been proved to be false. Indeed, we have now presented significant direct and circumstantial evidence that the election in Antrim County on November 3, 2020 was fraudulent, our elected officials knew or should have known it was fraudulent, the election was subverted intentionally through the voting machines, and that ballot stuffing likely occurred.

11. Plaintiff has a constitutional right to vote and have his vote counted **as he intended**. In 2018, the Michigan Constitution was amended by the people of Michigan. As amended, Const 1963, art 2, §4(1)(h) now provides, in pertinent part:

> (1) Every citizen of the United States who is an elector qualified to vote in Michigan shall have the following rights:
>
> (h) The right to have the results of statewide elections audited, in such a manner as prescribed by law, to ensure the accuracy and integrity of elections. [Emphasis added.]
>
> **All rights set forth in this subsection shall be self-executing. This subsection shall be liberally construed in favor of voters' rights in order to effectuate its purposes. Nothing contained in this subsection shall prevent the legislature from expanding voters' rights beyond what is provided herein. This subsection and any portion hereof shall be severable. If any portion of this subsection is held invalid or unenforceable as to any person or circumstance, that invalidity or unenforceability shall not affect the validity, enforceability, or application of any other portion of this subsection.**

(emphasis added).

12. This provision was amended effective December 22, 2018. According to the Michigan Constitution, there is no threshold requirement that must first be met in order for a citizen to request an audit of an election. This right is self-executing. Const 1963, art 2, § 4. Indeed, the Michigan Constitution requires that the "results" of the election be audited in order to ensure the "accuracy and integrity" of the election.

6

13.     The amendment states clearly that the legislature is permitted to "expand[] voters' rights." There is nothing that states the legislature is permitted to narrow voters' rights. Therefore, the amendment must be permitted.

14.     If Defendants are correct and the December 17, 2020 hand recount definitely proved that the general election was he safest and fairest in this country's history, then they should have no problem permitting the audit contemplated by the Const 1963, art 2, § 4. As it stands, Plaintiff has presented enough evidence to show that the election was fraudulent, thereby violating his constitutional rights.

15.     The notion that this amendment would open up the state to thousands of lawsuits is not realistic. The amendment was passed in 2018 and there have not been thousands of lawsuits. Even if there were, it is still the same statewide audit, so the number of lawsuits would be irrelevant.

16.     Defendants' argument that MCL 168.31a(2) limit the rights granted by the Const 1963, art 2, § 4 are without merit and actually render MCL 168.31a unconstitutional on its face, unconstitutionally applied, or unconstitutional in its effect, to the extent it limits the rights granted to Plaintiff pursuant to Const 1963, art 2, § 4.

WHEREFORE, Plaintiff respectfully requests that this Court grant it leave to amend his complaint by substituting the attached Amended Complaint for his original complaint.

Respectfully submitted

DePERNO LAW OFFICE, PLLC

Dated: May 17, 2021

/s/ Matthew S. DePerno
Matthew S. DePerno (P52622)
Attorney for Plaintiff

7

**PROOF OF SERVICE**

On the date set forth below, I caused a copy of the following documents to be served on all attorneys of record at the addresses listed above

      1.      Supplement to Plaintiff's Motion for Leave to Amend Complaint

Service was electronically using the MiFile system which will send notification of such filing of the foregoing document to all attorneys of record.

Dated: May 17, 2021                               */s/ Matthew S. DePerno*
                                                         Matthew S. DePerno (P52622)

DePerno Law Office, PLLC ● 951 W. Milham Avenue, PO Box 1595 ● Portage, MI 49081
(269) 321-5064 (phone) ● (269) 321-5164 (Fax)