**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:20-cv-03747

KEVIN O'ROURKE, et al.,

Plaintiffs,

v.

DOMINION VOTING SYSTEMS INC., et al.,

Defendants.

---

**RESPONSE TO MOTION FOR SANCTIONS**
**FILED BY DEFENDANTS TOM WOLF AND KATHY BOOCKVAR**

---

COMES NOW counsel for Plaintiffs, and hereby submit the following Response to Motion for Sanctions filed by Defendants, TOM WOLF (Mr. Wolf) and KATHY BOOCKVAR (Ms. Boockvar), and hereby respectfully requests that the Court deny the motion, and award undersigned counsel reasonable attorney fees for the time necessary to respond, and any other sanction that this Court deems just under the circumstances.

I.    **INTRODUCTION**

On December 22, 2020, Plaintiffs filed their Complaint, which named Mr. Wolf and Ms. Boockvar, as defendants in their individual capacity, having operated under color of their official authority as Governor and Secretary of the Commonwealth of Pennsylvania, respectively, for their breach of the U.S. Constitution, as outlined in the Complaint. Doc. 1, ¶¶ 214-257. The original eight (8) Plaintiffs, after having been joined by 152 additional Plaintiffs, eight of whom are registered voters of Pennsylvania, filed a motion to amend the complaint, with an appropriate motion.

Later, after Plaintiffs' counsel determined that personal jurisdiction over these Pennsylvania defendants may be an issue that Plaintiffs could not overcome, Plaintiffs voluntarily dismissed Mr. Wolf and Ms. Boockvar, without prejudice.

The Attorney General of the Commonwealth of Pennsylvania, who only entered his appearance on behalf of Governor Tom Wolf, in his official capacity, and Acting Secretary of the Commonwealth, Veronica Degraffenreid, in her official capacity, now seeks to have this Court sanction Plaintiffs' counsel under its inherent authority, and pursuant to 28 U.S.C. § 1927, for not dismissing the case earlier. Plaintiffs did not file their complaint, nor did Plaintiffs' counsel prepare said complaint to harass these Defendants—neither did Plaintiffs' counsel seek extensions of time, file unnecessary motions, and/or submit pleadings, motions and other responsive pleadings that were not well grounded in fact and law. Pennsylvania's motion should be denied, and attorney fees awarded to Plaintiffs' counsel for the time necessary to respond, herein.

## II.   PLAINTIFFS HAD A RIGHT TO SEEK REDRESS OF THE VIOLATION OF THEIR CONSTITUTIONAL RIGHTS BY BRINGING A FACTUAL AND LEGAL CLAIM AGAINST MR. WOLF AND MS. BOOCKVAR

Pennsylvania begins its motion by stating the Plaintiffs made "demonstrably false accusations to advance frivolous legal arguments." Doc. 101, p. 1. However, the facts presented in the original Complaint and Amended Complaint are not demonstrably false, and legal arguments made were based upon the presentation of a civil rights/class action lawsuit, which no other parties have brought.

The motion for sanctionsd also accuses the Plaintiffs of bringing the action for the "dangerous purpose" of attacking "the Pennsylvania defendants' administration of the 2020 election and to undermine faith in the results of that election." *Id*. Nothing could be further from

the truth. Faith in the results of Pennsylvania's 2020 Presidential election was undermined by the conduct of the Defendants, and others, not the Plaintiffs seeking redress of their claims. The latter simply filed a lawsuit outlining some of the facts to establish their constitutional claims for lack of equal protection and due process, which had the ultimate effect of burdening the right of Plaintiffs' right to vote in the 2020 Presidential election.

Simply put, again, if a person is a registered voter in Pennsylvania, or in another state, and the elected officials involved in the administration of the 2020 Presidential election violated the constitution, that conduct would result in damages beyond the borders of Pennsylvania. Here, Plaintiffs outlined in their Complaint, Amended Complaint and Plaintiffs' Response and Brief in Opposition to Defendants Wolf and Boockvar's Motion to Dismiss, the factual and legal basis for their claims, which are different from every other election case filed.

This is not an election case. This is a civil rights case. Every other case filed against officials of the Commonwealth of Pennsylvania named Governor Wolf and Secretaries Boockvar and/or Degraffenreid in their official capacity. Every other case filed against elected officials from Pennsylvania name the Defendants in their official capacity, specifically, because temporary and preliminary injunctive relief had been requested against the Commonwealth of Pennsylvania. Accordingly, a plaintiff's burden of proof initially, when asking for such relief, is to establish a likelihood of success on the merits.

In practically every case, the courts ruled that the various plaintiffs, for one reason or another, either did not have standing, or had violated some other doctrine. None of that exists here. All of the claims against the Pennsylvania defendants are valid. However, although an argument could certainly be made that the actions of Mr. Wolf and Ms. Boockvar subjected them to this Court's jurisdiction in Colorado, Plaintiffs ultimately agreed that they should not proceed

without sufficient certainty that this Court would exercise personal jurisdiction over these Defendants. Because they did not waive personal jurisdiction (which they could have), Plaintiffs voluntarily dismissed these Pennsylvania Defendants, without prejudice. Accordingly, Plaintiffs did not "charge ahead," as alleged, but were thoughtful in their approach and legal strategy, throughout.

Further, Plaintiffs never recycled the same accusations and claims that countless courts already rejected. There are ongoing issues of material fact concerning the 2020 Presidential election in Pennsylvania that have not been resolved and, because other cases (some of which may have a similar factual backdrop) were dismissed on other grounds, the overwhelming majority of facts relied upon by Plaintiffs, here, are in dispute.

Plaintiffs' counsel spent hundreds of hours researching the facts of the case, and just as much time focusing on the damage done to their clients—many of whom were from Pennsylvania. Suffice to say, many reasonable people disagree that the 2020 Presidential election was fair and equal. In fact, even as these motions are being filed, other facts are coming out to substantiate those beliefs. In fact, actions are being taken within the Pennsylvania State Legislature to mimic forensic audit in Arizona, which is being considered by other states.

This case was ultimately dismissed for lack of standing, but that issue is now on appeal in the United States Court of Appeals for the 10th Circuit, referenced by case number 21-1161. Two weeks after the filing of the notice, counsel for Plaintiffs filed the Docketing Statement on May 13, 2021. On that date, Dominion Voting Systems, Inc. filed its motion for sanctions pursuant to Rule 11 and 28 U.S.C. § 1927. Doc. 98. Plaintiffs' counsel has responded to that motion, already. Doc. 110. However, four days later, Pennsylvania filed its motion requesting sanctions, as well. With that, it is clear that the Defendants are desirous of punishing Plaintiffs' counsel and, as a

result, are the ones causing additional pleadings to be filed—all during the time that counsel for Plaintiffs should be preparing their appellate brief. The time necessary to respond to these motions will likely result in further delay to allow adequate time to prepare said brief, and is thus contributing to the delay of the case—and causing unnecessary stress and harm Plaintiffs' counsel.

### III. COUNSEL FOR PLAINTIFFS NEVER ACTED IN BAD FAITH OR UNNECESSARILY, NOR UNREASONABLY MULTIPLIED OR DELAYED THE PROCEEDINGS

In *Sun River Energy, Inc. v. Nelson*, plaintiff's counsel failed to disclose an insurance policy for eighteen months "only after counsel for defendants repeatedly pressed the issue based upon information raising suspicions of an undisclosed policy, [who] then filed a motion to compel its production." 800 F.3d 1219, 1222 (10th Cir. 2015). "By that time coverage under this 'claims made' policy had lapsed." *Id*. The district court imposed sanctions against Plaintiffs' counsel, pursuant to Rule 37(b), which were upheld. However, the 10th Circuit reversed the imposition of sanctions against in-house counsel for Plaintiff, who was not the attorney of record. The *Sun River* Court further declined to uphold the previously imposed sanction against in-house counsel pursuant to the trial court's inherent powers, as the district court "did not find that counsel acted in bad faith, vexatioulsy, wantonly, or for oppressive reasons." *Id*. at 1228.

In *Sun River*, the 10th Circuit stated:

> A court's inherent power gives it the authority to impose "a sanction for abuse of the judicial process, or, in other words, for bad faith conduct in litigation." *Farmer v. Banco Popular of N. Am*., 791 F.3d 1246, 1256 (10th Cir. 2015) (internal quotation marks omitted). The Supreme Court has described the "narrowly defined circumstances [in which] federal courts have inherent power to assess attorney's fees against counsel" as involving actions taken "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc*., 501 U.S. 32, 45-46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (internal quotation marks omitted).

*Id*. at 1227.

In *Farmer*, the parties had reached an agreement in 2012. *Farmer v. Banco Popular of N. Am*., 791 F.3d 1246, 1256 (10th Cir. 2015). From there, the parties engaged in protracted litigation and a number of delays, all associated with Mr. Farmer's conduct in attempting to change the agreement, lower the price and extend its terms—which included an appeal. Ultimately, after the 10th Circuit "affirmed the district court's order enforcing the original settlement agreement," the district court found that Mr. Farmer, a lawyer, had "'multiplied proceedings unreasonably and vexatiously and engaged in bad faith.'" *Id*. at 1253. In upholding the district court's order of sanctions, the 10th Circuit stated:

> Farmer has represented himself throughout the course of the parties' settlement wranglings. The only exception was the post-remand hearing in the district court that addressed the question of fees as a sanction now before us. Because Farmer appears both as a party and an attorney in this matter, the district court relied both on its inherent authority to sanction a party for bad-faith conduct as discussed in [*Chambers v. NASCO, Inc.,* 501 U.S. 32, 45-46 (1991)] and its more limited power to assess fees and costs against an attorney for unreasonable and vexatious multiplication of proceedings as authorized by 28 U.S.C. § 1927.

*Id*. at 1256-57.

In *Chambers*, the Supreme Court affirmed a district court's sanctions imposed against a party for attempting to deprive the court of jurisdiction by acts of fraud, filing false and frivolous pleadings, and employing "tactics of delay, oppression, harassment and massive expense to plaintiff to exhausted compliance." 501 U.S. 32, 41 (1991) (citing *Nasco, Inc. v. Calcasieu Television & Radio, Inc.*, 124 F.R.D. 120, 138 (1989)). In discussing the inherent power of the district court, the Supreme Court stated:

> It has long been understood that "[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution," powers "which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." *United States v. Hudson*, 7 Cranch 32, 34 (1812); *see also Roadway Express, Inc. v.*

*Piper*, 447 U. S. 752, 764 (1980) (citing *Hudson*). For this reason, "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Anderson v. Dunn*, 6 Wheat. 204, 227 (1821); *see also Ex parte Robinson*, 19 Wall. 505, 510 (1874). These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co*., 370 U.S. 626, 630-631 (1962).

*Id*. at 43.

Here, the parties should not be sanctioned. Counsel certainly admits that all of the Plaintiffs and prospective Plaintiffs were relying on the skill and advise of counsel. However, Plaintiffs' counsel never filed any false pleadings or frivolous motions. Plaintiffs' counsel relied upon expert witness statements and affidavits signed under oath. Further, Plaintiffs' counsel relied on statements of counsel and other parties in other cases, only when those facts where readily available and confirmable.

## IV.   PLAINTIFFS' AVERMENTS IN THEIR RESPECTIVE COMPLAINTS WERE MADE IN GOOD FAITH

Pennsylvania claims that the averments made in the Plaintiffs' original Complaint and Amended Complaint were untrue. Compl. ¶¶ 296, 305-309, 334-335, 360-361; and Amended Complaint ¶¶ 665-666, 668, 693, 719-720. However, all of those paragraphs are contained in the various sections of the separate causes of action, and are thus general accusations concerning the elements of the alleged cause of action.

First, the allegations concerning Ms. Boockvar's abrogation of Pennsylvania law concerning the signature verification of absentee or mail-in ballots was addressed by the Pennsylvania Supreme Court in *In Re Nov. 3, 2020 Election*, 240 A.3d 591, 611 (Pa. 2020). However, the facts as outlined by the Plaintiffs were supported by the State of Texas in its Motion for Leave to File Bill of Complaint, *Texas v. Pennsylvania*, case 220155, filed Dec.

7, 2020, with the Supreme Court of the United States. Federal courts may set aside the erroneous findings of a state court, particularly concerning whether conduct committed by a person acting under color of authority violates the constitution, or a statute does the same.

Secondly, Pennsylvania alleges that Plaintiffs' allegations regarding Ms. Boockvar's conduct concerning the curing of a defective ballot required disqualification of the mail-in ballots casts. In *In Re Canvass of Absentee & Mail-in Ballots,* 241 A. 3d 1058, 1078, the Pennsylvania Supreme Court ruled that Pennsylvania law was not violated by counties that counted certain absentee and/or mail-in ballots, even though the outer envelope was not completely filed out properly. However, Plaintiffs did not argue that the ballots required disqualification. In the Complaint and Amended Complaint, the substance of the allegations there was that Ms. Boockvar relaxed that rules, and created a system whereby local officials could review ballots "without the proper announcements, observation, and security." Comp. ¶ 220(e). In essence, the Plaintiffs, allegations center around Ms. Boockvar's unconstitutional acts, of which the Pennsylvania Supreme Court is not the final arbiter.

In its motion for sanctions, Pennsylvania cites *Donald J. Trump for President, Inc. v. Sec'y of Pa.* ("Trump II"), 830 F. App'x 377, 384 (3d Cir. 2020). There, certain voters and the Trump campaign sought to invalidate a large amount of votes, based upon Ms. Boockvar's notice of cure procedures for procedurally defective mail-in ballots. The 3rd Circuit found that the plaintiffs waited too long to amend their complaint, and denied their request for injunctive relief. Before that, the Trump campaign and two other voters had already lost in the district court, for lack of standing, but only because the court found no causation, as the challenged state action was ultimately determined to be legal under Pennsylvania law. *Donald J. Trump for President, Inc. v. Boockvar* ("Trump I"), 502

F.Supp.3d 899 (M.D. Pa. 2020). However, an otherwise aggrieved party may sue in good

faith to assert rights based in law and fact that are not frivolous, which includes a good faith

argument for an extension, modification or reversal of existing case law. *See* Colorado.

Rules of Professional Conduct Rule 3.1.  Additionally, Plaintiffs here are not suing to

invalidate votes, but for damages associated with the acts of certain state actors that

ultimately effected every registered voter across the country regarding the 2020 Presidential

election. In fact, the district court in *Trump I* stated:

> Individual Plaintiffs have adequately demonstrated that they suffered an injury-in-fact. "[A] person's right to vote is 'individual and personal in nature.'" Accordingly, the denial of a person's right to vote is typically always sufficiently concrete and particularized to establish a cognizable injury. This is true regardless of whether such a harm is widely shared. So long as an injury is concrete, courts will find that an injury in fact exists despite the fact that such harm is felt by many.
>
> This is precisely the situation presented here. Individual Plaintiffs have adequately pled that their votes were denied. As discussed above, the denial of a vote is a highly personal and concrete injury. That Individual Plaintiffs had their ballots cancelled and thus invalidated is sufficiently personal to establish an injury in fact. It is of no matter that many persons across the state might also have had their votes invalidated due to their county's failure to implement a curing procedure. Accordingly, the Court finds that Individual Plaintiffs have established injury in fact.

*Id*. at 912.

Pennsylvania further relies on the holding of *In Re Canvassing Observation*, 241 A.3d

339 (Sup. Ct. Pa. 2020), which also found that certain state action to limit poll worker

observation was compliant with Pennsylvania state law. However, in that case, the Trump

campaign was seeking injunctive relief to gain additional access to poll workers. Further, the

Pennsylvania Supreme Court merely addressed state law issues, and did not address federal

constitutional questions, nor would any federal court be bound by any such state court

interpretation of constitutional law. Although Pennsylvania desperately clings to rulings

regarding its state laws by its own state courts, it ignores the fundamental principal of federal supremacy, and the authority of federal courts to decide federal issues.

Plaintiff counsel never "smeared dedicated poll workers in Pennsylvania and other states." Doc. 101, p. 7. The paragraph referenced in the complaint was specifically with regard to allegations concerning the involvement of Center For Technology And Civic Life, utilizing the money provided to it by other Defendants to train and recruit "poll workers, many of whom participated in a conspiracy to influence the presidential election." The Pennsylvania Defendants can object or deny this factual allegation, as they wish. This allegation is supported by many affidavits submitted from across the country to establish this fact. This case, however, was dismissed in the pleading stage, and Plaintiffs are not bound now to prove their case in response to this motion.

As to Plaintiffs' claims regarding a lack of equal protection, Plaintiffs' counsel agrees that the Equal Protection Clause applies only to the treatment of persons with a state's jurisdiction. However, if the actions of certain state actors violate the equal protection of persons in that state, and the impact of those violations affect people outside the state, that conduct is actionable by those out of state persons as well. *See Anderson v. Celebrezze*, 460 U.S. 780 (1983).

As stated throughout the pleadings by the Plaintiff, the right to vote for President and Vice-President is a national right. There is only one national election. That election happens every four years, and is expressed through the ballots of registered voters across the country. Because actions in one state necessarily impact the voting rights in other states, corrupt action in any state extends to the class of injured registered voters across the entire nation. *See Id.* Accordingly, if the actions of a governor and/or secretary of state are unconstitutional as it

relates to a Presidential election, that harm negatively affects every registered voter. With that, all completed acts of unconstitutional behavior infer a damage of at least one dollar—the only issue is who has standing to claim the violation. Plaintiffs believe they have been damaged by the acts of all the Defendants. This Court disagreed and dismissed the case for lack of standing. Nonetheless, sanctioning their attorneys for standing up for Plaintiffs' rights is neither appropriate nor or authorized, under this circumstances.

## IV.     SANCTIONS AGAINST PLAINTIFFS COUNSEL PURSUANT TO 28 U.S.C. § 1927 ARE NOT APPROPRIATE

28 U.S.C. § 1927 provides in pertinent part that:

> Any attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Plaintiffs filed their Complaint on December 22, 2020. Doc. 1. After the Pennsylvania Defendants were served, the Pennsylvania Office of Attorney General filed its Motion to Dismiss on March 18, 2021. Doc. 49.  Before that, on March 15, 2021, the Plaintiffs filed their Motion for Leave to Amend, with an attached copy of their Amended Complaint—that included the addition of eight Pennsylvanians who sought to join the suit. Doc. 48.

However, after the filing of the motion to amend, instead of finding that the original complaint was moot in light of the filing of the amended complaint, this Court allowed the Defendants to continue with the filing of their motions to dismiss, if they chose to do so, *and* any objection that the Defendants had with regard to the Plaintiffs' request to amend the complaint.

Accordingly, Plaintiffs contend that it was error by the Court to essentially dual track the issues, instead of simply allowing Plaintiffs to amend the complaint pursuant to Rule 15. Only a small number of the Defendants had filed a responsive pleading at the time of the amendment.

Accordingly, Pennsylvania was required by the Court's procedure to file two motions: one for dismissal, and the other objecting to the amendment. Had the Court allowed the amended complaint by rule, noting Pennsylvania's objection to personal jurisdiction (which they could have waived), Plaintiffs could have made the same decision to dismiss the case without prejudice, without the necessity of Pennsylvania filing a motion to dismiss, at all.

Plaintiffs' counsel disagrees with Pennsylvania's opinion that a reasonable attorney would have stopped pursuing the case against all Defendants after receiving the first two motions to dismiss from Facebook, Inc., and Dominion Voting Systems, Inc. Plaintiffs stated in every response that their claims were not generalized grievances, but were based upon the concrete, particularized injury of every Plaintiff. These arguments were also included in the response filed to Pennsylvania's motion to dismiss. Doc. 49, pp. 8-10.

As noted in its motion for sanctions, Pennsylvania sent a Rule 11 motion to Plaintiffs' counsel on March 26, 2021, approximately one month after being served. Doc. 101, fn. 1. Because of the uncertainty of the issue concerning personal jurisdiction, Plaintiffs ultimately made the decision to dismiss the Pennsylvania Defendants without prejudice. By that time, Pennsylvania had already filed its objection to the amended complaint and motion to dismiss, and Plaintiffs' counsel took no further actions to unreasonably delay the proceedings, or file additional and unnecessary pleadings.

Accordingly, the Plaintiffs accepted Pennsylvania's offer of safe harbor, not because Plaintiffs' counsel believed the factual content of the complaints were false, but solely because of the issue of personal jurisdiction. After offering safe harbor, Pennsylvania now seeks to have the Court sanction counsel based upon the same grounds as mentioned in their prospective motion—but under a different legal theory, neither of which apply. Plaintiffs' counsel never

acted in a fraudulent or dishonest manner. Plaintiffs' counsel never filed multiple, unnecessary pleadings or motions in a manner to bring this Court's ire, pursuant to § 1927.

Despite Pennsylvania's attempt to characterize Plaintiffs' complaint otherwise, Plaintiffs' Complaint was distinguishable from every other election related lawsuit brought. Unlike here, every lawsuit filed by either a sovereign state, or individual voter, sought extraordinary relief in the form of injunctive relief. As stated many times by Plaintiff, this case was and is a damages case based upon a number of different acts of the Defendants, which violated the due process rights of every registered voter. These are not "far-fetched conspiracy theories" that create a "dangerous narrative." Much of the information provided in the Plaintiffs' complaint was based upon reports and other complaints filed by Pennsylvania state senators, and expert reports signed under oath—not to mention the Texas Office of Attorney General, joined in by 19 other attorney generals from across the country in *Texas v. Pennsylvania*. The difference is, those plaintiffs sought standing to object to the unconstitutional acts of the Pennsylvania Defendants on different grounds than the Plaintiffs, here.

Those cases sought to decertify elections in a number of states, or have the federal court intervene in the decisions of a state as to which Electors to send to Washington, D.C., to participate in the Electoral College. This is a damages case, arising from the acts and omissions of several state actors, all of whom have participated in an unprecedented, Presidential election that tens of millions do not think was fair.

Unlike here, no other "election case" sought monetary damages only. Unlike here, no other case distinguished the class of registered voters (who have a due process right associated with their right to vote for President) as a unique class that suffered a distinct injury separate and apart from the general population (who do not have a right to vote that can be violated).

Moreover, even if nominal damages would be considered by many in the class to be insufficient to be made whole, the Supreme Court recently clarified that pleading nominal damages was sufficient to proceed with a claim for a completed constitutional violation. *See Uzuegbunam v. Preczewski*, ___U.S.___ 141 S.Ct. 792 (2021). Unlike here, no other case claimed nominal damages.

As there is no binding case on point remotely similar to the claims made by Plaintiffs, counsel specifically plotted their course through the maze of legal precedent to formulate their arguments. With regard to the Pennsylvania Defendants, the Plaintiffs sued Mr. Wolf and Ms. Boockvar in their individual capacities. As argued in the Plaintiffs' response to their motion to dismiss, "when state actors violate the Constitution, they are stripped of their official capacity and are liable in their individual capacity." Doc. 72, ¶ 1. *See Ex parte Young*, 209 U.S. 123 (1908). *See also Tanzin v. Tanvir*, 141 S.Ct. 486, 491 (2020).

In the end, Plaintiffs' counsel did not file any unreasonable or vexatious pleadings. To the contrary, it is Pennsylvania's pursuit of sanctions in this manner that more clearly meets the standard for sanctionable conduct.

## CONCLUSION

For the reasons above, Plaintiffs' counsel respectfully requests that this Court deny the motion for sanctions, and award undersigned counsel reasonable attorney fees for the time necessary to respond, and any other sanction that this Court deems just and proper under the circumstances.

Dated this 14th day of June, 2021.

Respectfully submitted,

***PLAINTIFFS COUNSEL:***

By: *s/Ernest J. Walker*          By:    *s/ Gary D. Fielder*
Ernest J. Walker (MI P58635)       Gary D. Fielder (CO 19757)
ERNEST J. WALKER LAW OFFICE       LAW OFFICE OF GARY FIELDER
1444 Stuart St.                             1444 Stuart St.
Denver, CO 80204                  Denver, CO 80204
(720) 306-0007                        (720) 306-0007
ernestjwalker@gmail.com         gary@fielderlaw.net

## CERTIFICATE OF SERVICE

     The undersigned hereby certifies that on June 14, 2021, a copy of the foregoing document was electronically filed with the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*s/Gary D. Fielder*
Gary D. Fielder, Esq.
Law Office of Gary Fielder
1444 Stuart St.
Denver, CO 80204
(720)306-0007
gary@fielderlaw.net