IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-03747

KEVIN O'ROURKE, et al.,

Plaintiffs,

v.

DOMINION VOTING SYSTEMS INC., et al.,

Defendants.

---

**PLAINTIFFS' JOINT RESPONSE TO MOTION FOR SANCTIONS
FILED BY DEFENDANTS CTCL AND FACEBOOK**

---

COMES NOW Plaintiffs' counsel, and hereby submits the following Combined Response to Motions for Sanctions filed by Defendants, FACEBOOK, INC. (Facebook), and CENTER FOR TECHNOLOGY AND CIVIC LIFE (CTCL), and hereby respectfully requests that the Court deny the motions, and award undersigned counsel reasonable attorney fees for the time necessary to respond, and any other sanction that this Court deems just under the circumstances.

**I.      STATEMENT OF THE CASE**

On December 22, 2020, Plaintiffs filed their Complaint, which named Facebook and CTCL as Defendants, and other state actors regarding the 2020 Presidential election. Plaintiffs claimed that the CEO of Facebook, Defendant, Mark Zuckerberg, and his wife, Defendant, Priscilla Chan, donated over 350 million dollars to CTCL in a concerted effort to unduly influence the 2020 Presidential election to the benefit of one candidate, then former Vice President, Joseph Biden, over the incumbent President, Donald Trump.

1

CTCL was a relatively small non-profit organization until 2020, when, after and during the time it was receiving hundreds of millions of dollars from Mr. Zuckerberg and Ms. Chan, it started operating all over the country, in over 28 states and 2,500 jurisdictions, including Colorado, despite not being registered to do business outside of Illinois. All of this was alleged in the Complaint, with footnotes to establish where reasonable citation to the information may be found.

Facebook worked directly with CTCL to provide financial and technical know-how and assistance, and also worked separately to use its monopolistic power to censor and shape the media narrative to provide cover for the scheme.

The Navarro Reports are instructive:

> Key methods used by the Democrat Party to strategically game America's presidential election included . . . the aggressive use of so-called "public-private partnerships" to commandeer and manipulate the election process in key Democrat strongholds such as Wayne County, Michigan and Dane County, Wisconsin.
>
> \*     \*     \*
>
> Zuckerberg money–nearly half a billion dollars–helped engineer what was effectively a hostile Democrat Party "public-private partnership" takeover of what should otherwise be a nonpartisan election process in key Democrat strongholds such as Wayne County, Michigan and Dane County, Wisconsin.

Navarro Report Vol. 2, Art of the Steal, (Jan. 5, 2021).

Accordingly, the allegations contained in the Complaint and Amended Complaint were supported by the findings of this report. All the Navarro Reports were cited in the Amended Complaint. In that regard, the reports were listed in the Plaintiffs' requests for judicial notice only as an acknowledgment of their existence, in so far as Plaintiffs' counsel were reasonably relying on the information—which would be more fully investigated during the discovery process.

Other plaintiffs in multiple settings objected to the participation of CTCL, and filed lawsuits against government officials seeking to stop acceptance of the funds. Often those cases were dismissed. Plaintiffs' counsel specifically address the dismissal of *Wis. Voters All. V. City of Racine*, 1:20-cv-1487, in its response to CTCL's motion to dismiss. Doc. 64, p. 11. There, Plaintiffs' counsel cited the actual order of dismissal, but stated, "However, those lawsuits were directed at persons in their official capacity, and seeking injunctive relief under 42 U.S.C. § 1983." *Id*.

Undersigned counsel tracked those cases on a daily basis. Once the 2020 Presidential election was over, the appeals became moot, and the cases reflected the tone set by other courts in denying similar requests for relief. However, from the beginning of this matter, Plaintiffs were not requesting such similar relief. The damage had already been done. The election was over.

## II.    PLAINTIFFS' INJURIES ARE DISTINCT FROM THE GENERAL POPULATION

The events that have transpired over the last six months have proven the Plaintiffs' claims, and illustrated the damages caused by the Defendants. The country is dangerously divided. The Plaintiffs did not cause that. They are observing it happen in real time. Counsel for Plaintiffs filed its Request for Judicial Notice (Doc. 90) out of sense of courtesy and transparency. Accordingly, the documents, books, articles, affidavits and other information contained in the request for judicial notice were cited as information, upon which the Plaintiffs were reasonably relying. Most of the cases were already outlined in Plaintiffs' other pleadings. How that gets translated into a nefarious act of counsel is staggering and confusing. New facts are developing daily that further support the Plaintiffs' claims.

The Plaintiffs were entitled to bring their claims, and the facts that support them. It is up to a fact finder to determine their veracity. The cases cited by Plaintiffs factually support their theory of liability, and standing to bring their claims against these Defendants.

The information cited are matters in the public record that establish genuine issues of material fact. The Defendants can dismiss Mike Lindell and his company, but that is not the point. Expert witness statements are all attached to these complaints. Anyone can read them. An objective fact finder would read them. Having read the reports, independent of anything further alleged by Mike Lindell, the information is relevant. It informs the population—maybe to the chagrin of the Defendants (who so quickly want to dismiss this information as hyperbole), but neither the Defendants, nor the courts, nor the government get to decide what the facts are. That is up the fact finder. Plaintiffs were in the pleadings stage before the case was dismissed for lack of standing. None of the factual issues have been determined by this Court.

Patrick Byrne's book, *The Deep Rig*, outlines, in detail, with expert reports throughout, how the 2020 Presidential election was unfairly influenced. One can shake a finger at Mr. Byrne and call him a charlatan, or one could review the information provided and determine that there are genuine issues of fact. Most of the information contained in the book is already in the Plaintiffs' Complaint and Amended Complaint, in one form or another. That is because Plaintiffs' counsel, their staff, and others, tireless poured over the information as reported through media outlets and other case filings, as it developed.

By the time of the filing of Plaintiffs' complaint, the unconstitutional conduct had been completed and injuries sustained. Since then, countless articles and information have poured forth concerning the integrity of the 2020 Presidential election. The forensic audit happening in Maricopa County, Arizona, establishes this fact. Each Defendant played its role to unlawfully influence the 2020 Presidential election, and each is being exposed for their conduct. The

Plaintiffs outlined all of this in their original Complaint, with citations to the source of the information.

### III.    PLAINTIFFS' DAMAGES ARE CLEARLY TRACEABLE TO DEFENDANTS

This Presidential election has been challenged like no other in recent history. Complaining about the government's administration of the election is a generalized grievance. However, by examining the conduct of Defendants, Facebook and CTCL, leading up to, during, and after the Election, the injury to the Plaintiffs is easily discernable. These Defendants caused a specific injury to all the Plaintiffs *similar* to that suffered by every registered voter. The issue is whether the Plaintiffs, individually and as members of a class of registered voters, had standing to file their claim for damages against these Defendants for the specific conduct alleged.

Undersigned counsel believed the Plaintiffs had standing to pursue their claims, and still believe that their independent rights have been violated *along* with the rights of others. There are tens of millions of other registered voters who have also been damaged. Just because many people's rights were burdened does not mean the damage simply transforms into a generalized grievance.

As part of the request for judicial notice, Plaintiffs' counsel cited the new case of *Prujansky, et al., v. Wolfe, et al*., which was filed on April 21, 2021, before the Wisconsin Election Commission, referenced under case number, EL21-29. There, the plaintiffs filed their compliant against individual government officials, not CTCL, for actions taken with the City of Racine.[1] However, the factual allegations, put forth by the lawyers and sworn to by the Plaintiffs,

---

[1] *See also Carlstedt, et al., v. Wolfe, et al*., EL 21-24 (Apr. 12, 2021) (regarding CTCL and the City of Green Bay); *Thomas, et al., v. Wolfe, et al*. EL 21-30 (May 3, 2021) (regarding CTCL and the City of Kenosha); *Werner, et al., v. Wolfe, et al*., EL 21-31 (May 10, 2021) (regarding CTCL and the City of Milwaukee); and *Liu, et al., v. Wolfe, et al*., EL 21-33 (May 27, 2021) (regarding CTCL and the City of Madison).

specifically outline how CTCL operated at the local level to exert its improper influence over the election process. That case is ongoing. However, the factual basis is similar and supportive of the allegations contained in the Complaint, Amended Complaint, and response to CTCL's motion to dismiss.

This Court has dismissed Plaintiffs' claims for lack of standing, but has not made factual findings absolving the conduct of CTCL or Facebook. Defendants, however, are using this opportunity to disparage and personally attack counsel for Plaintiffs.

### IV.   PLAINTIFFS' CLAIMS ARE CORROBORATED BY SEVERAL OTHER CASES

Plaintiffs' counsel did not plagiarize other material. The whole of the original Complaint is cited with footnotes. For example, when information was outlined from the pleading filed by the State of Texas in the U.S. Supreme Court, the tense and/or wording was changed, and the information was cited throughout as to the exact paragraph where the information could be found. Additionally, the State of Texas filed over one thousand pages of other information in the form of an Appendix. The information contained in the Appendix exists, and is supportive of the Plaintiffs' claims. The affidavits submitted were under oath and, if believed, create material issues of fact concerning widespread, systemic fraud, organized at an extremely high level, all of which was to the benefit of one candidate, over the other.

### V.   PLAINTIFFS' CLAIMS ARE NOT A GENERALIZED GRIEVANCE

In its order of dismissal, this Court cited *Moore v. Circosta*, a district court case from North Carolina concerning claims brought by a number of plaintiffs that "sought an injunction against the enforcement and distribution of several Numbered Memoranda issued by the North Carolina State Board of Elections pertaining to absentee voting." *Moore v. Circosta*, 297 F.Supp.3d 289, 297 (M.D.N.C.). There the court found that "'[i]t would over-simplify the standing analysis to conclude that no state-wide election law is subject to challenge simply

because it affects all voters.'" *Id.* at 312 (quoting *Martel v. Condos*, 487 F.Supp.3d 247, 252 (Dist. D. Del. 2020). Notably, the district found standing for certain Plaintiffs who had "articulated an injury in fact for an arbitrary and disparate treatment claim." *Id*. at 312-313. In fact, the district court ultimately found that the plaintiffs had demonstrated a likelihood of success on the merits in proving disparate treatment may result from the defendants' actions. *Id*. at 318. Nonetheless, although the court believed "the unequal treatment of voters and the resulting Equal Protection violations as found should be enjoined," the "court [was] of the opinion that it [was] required to find that injunctive relief should be denied at this late date, even in the face of what appears to be clear violations." *Id*. at 331.

The *Moore* case demonstrates the vast differences between the line of cases that are decided involving injunctive relief, against one for damages. The *Moore* case is exactly what counsel for Plaintiffs was talking about when confronted by the Court at the hearing on the motion to dismiss.

This same rationale holds true for the other cases cited by the Defendants. In *Lance v. Coffman*, four Colorado citizens sued the Colorado Secretary of State, in his official capacity, challenging the state's supreme court interpretation of a section of the Colorado Constitution as a violation of their rights under the Elections Clause. In that case, the Supreme Court identified a generalized grievance as when a plaintiff seeks to assert "only the right, possessed by every citizen, to require that the Government be administered according to law and that the public moneys be not wasted." 549 U.S. 437, 439 (2007) (per curiam) (*quoting Fairchild v. Hughes*, 258 U.S. 126, 129 (1922)). This case is a damages case against private companies that transformed into state actors through their own conduct. Plaintiffs' counsel respects this Court's decision, but respectfully disagrees with its conclusions.

In *Wood v. Raffensperger*, 981 F.3d 1307, 1314 (11th Cir. 2020), a private citizen sued the secretary of state regarding the latter's participation in settlement agreement with a voter's rights group, which he claimed violated Georgia's election law and the constitution. The plaintiff requested that the federal court enjoin a sovereign state. That plaintiff did not have standing to make such a request. His claimed interest in ensuring that only lawful ballots are counted was a generalized grievance. Nonetheless, the facts alleged in the plaintiff's complaint were not litigated as matters of facts. However, any reasonable investigation into the veracity of the factual allegations would conclude that there are genuine issues of material fact.

Accordingly, if the secretary state does violate the constitution, and those violations damage registered voters across the country, how could the conduct not be the basis of a claim from those who were damaged—even if it was a lot of people? Even with that, however, Plaintiffs claims, here, go far beyond the facts alleged by Mr. Woods, and others.

In its motion to dismiss, CTCL cites the failed case of *Wisconsin Voters All. v. Pence*, 20 Civ. 3791, 2021 WL 686359 (D.D.C. Feb. 19, 2021). There, several plaintiffs sued the Vice-President, the House of Representatives, the U.S. Senate, the Electoral College, and several governors and speakers of the House of Representatives from several states, all in their official capacity. The suit was filed "seven weeks after the election," and the by January 4, 2021, the district found that the Plaintiffs "failure to make any effort to serve or formally notify any Defendant—even after reminder by the Court in its Minute Order—render[ed] it difficult to believe that the suit is meant seriously." ECF No. 10, *Memorandum Opinion*, p. 6.

There, the plaintiff approached a district court with a belief that they had standing to bring "constitutional claims to ensure that Presidential elections are constitutionally conducted by Defendants." ECF No. 1, *Complaint*, ¶ 30. The plaintiffs were asking for injunctive relief, which the district court correctly noted was an extraordinary remedy never awarded as of right.

8

ECF No. 10, *Memorandum Opinion*, p. 2. There, plaintiffs were also requesting that, among other things, that the district court issue a declaratory judgment that certain federal and state statutes were unconstitutional and that the defendants had violated the rights of the plaintiff voters. The plaintiffs further asked that the district court enjoin "the Vice President and U.S. Congress, in the current and future elections, from counting Presidential elector votes from states unless their respective state legislatures vote affirmatively in a post-election vote to certify their Presidential electors." ECF No. 1, *Complaint*, Prayer for Relief ¶¶ A-G.

The district court was in no position to issue such an order before the Electoral College met on January 6, 2021. The case was doomed and misguided from the start. However, simply because a set of plaintiffs strain a court to its limits, and ask for relief not cognizable in law, does not mean Plaintiffs, here, are forever foreclosed from suing in another format, concerning damages for the behavior of these Defendants. Those plaintiffs were asking for a court order to stop the Congress from fulfilling its constitutional duty. Plaintiffs here have done nothing close to that. As has been stated on numerous occasions, Plaintiffs have sued private companies as state actors for their conduct in unduly and unfairly influencing and, frankly, subverting the will of the voters in the 2020 Presidential election—not for some extraordinary relief that Plaintiffs cannot claim and the district court has no authority to enter. In that case, the district court noted that the Attorney's declaration "correctly notes that a suit against a state official in his official capacity can be regarded as a suit against a state itself." ECF No. 23, *Order*, p. 2.

Here, Plaintiffs named any persons who held office in their respective *individual* capacity, only. As stated many times throughout the Complaint and Amended Complaint, if a person, acting under color of his or her official capacity violates the Constitution, that person becomes liable in his or her individual capacity, and is stripped of his or her official capacity.

Accordingly, no suit was ever filed against a state, nor was a person sued in his or her official capacity. In that regard, counsel for Plaintiffs dismissed the named state politicians precisely because none of them waived personal jurisdiction, and Plaintiffs' counsel could not *with certainty* advise their clients that they going to be successful obtaining personal jurisdiction over the parties dismissed. Those parties could have waived personal jurisdiction, and because they were all responsible for allowing a Colorado company, i.e., Dominion, to administer all or some of their respective state's general election, Colorado's long-arm stature may have very well applied to each of them. However, that issue was resolved fairly and efficiently, all within two months from the service of those dismissed Defendants. None of them were required to respond to frivolous pleadings, nor did the Plaintiffs make any requests for extraordinary relief.

The election is over and there is nothing the Plaintiffs can do to change it. What can this district court do? Answer: Nothing—except hear the claims of those who were damaged by the unconstitutional conduct of the Defendants, over whom this Court has personal jurisdiction, i.e., Dominion, CTCL, Facebook and any other party so properly joined.

## VI.   PLAINTIFFS ASSERTED GOOD FAITH ARGUMENTS FOR STANDING

CTCL claims that "Plaintiffs' counsel willfully and repeatedly disregarded a solid wall of precedent that any reasonable lawyer would understand to unequivocally preclude Article III standing." Doc. 102, p. 9. However, the precedent set by other cases are clearly distinguishable from the present case, wherein the plaintiffs were suing state officials in their official capacity for injunctive relief. Those cases did not involve CTCL and/or Facebook as parties, were improperly plead, or were otherwise insufficient for a federal court to entertain injunctive relief.

In *Collins v. Daniels*, 916 F.3d 1302, 1311 (10th Cir. 2019), the "Plaintiffs sued the New Mexico Supreme Court, the Second Judicial District Court, and the Bernalillo County Metropolitan Court for declaratory and injunctive relief." The plaintiffs also sued the justices of

the New Mexico Supreme Court and other court executive officers "in their individual capacities for damages…" *Id*. There, plaintiffs claimed to have "associational standing," and "third-party standing to assert the constitutional rights of potential customers [who will be] denied bail." *Id*. at 1312. The 10th Circuit found that the plaintiffs did not have associational standing because its members "are not criminal defendants" and "do not possess the Eighth and Fourteenth Amendment rights asserted in Plaintiffs' complaint." Further, the court determined that the majority of the plaintiffs lacked third-party standing because those plaintiff "and its members have 'no relationship at all [citation] with 'potential customers denied bail'" under the challenged rule. *Id*. (quoting *Kowalski v. Tasmer*, 543 U.S. 125, 131 (2004)). Plaintiff Collins was "the only Plaintiff with standing, but Defendants are immune to her claims" under the doctrine of judicial immunity. *Id*. at 1318-1319. With regard to sanctions, the Court of Appeals upheld the trial courts grant of sanctions, as the "Plaintiffs standing arguments ignored controlling precedent." *Id*. at 1321. Additionally, "Plaintiffs' arguments regarding immunity suffer[ed] from similar infirmities." *Id*.

  Here, there is no similar case from the U.S. Supreme Court that has a set of similar circumstances involving Facebook and CTCL's unconstitutional conduct regarding the 2020 Presidential election. Facebook alleges that this case is a "copycat" of other cases that were dismissed. Plaintiffs' counsel is not aware of any case involving Facebook that was recently dismissed concerning its conduct in this last general election—and the cases involving CTCL have been discussed and distinguished. In fact, on the day of the hearing on the motion to dismiss, the non-profit group, Judicial Watch, revealed "that it received 540 pages and a supplemental four pages of documents for the office of the Secretary of State of California revealing how state officials pressured media companies (Twitter, Facebook, Google (You

Tube)) to censor posts about the 2020 election."[2] This is one of multiple examples of how Facebook cooperates with government and Democrat officials to censor information. Ordinarily, this may be lawful, under the protections provided by 47 U.S.C. 230. However, noting the conduct of Facebook's CEO, Mark Zuckerberg, as outlined in the Complaint and Amended Complaint, Facebook became a tool of Mr. Zuckerberg's unconstitutional conduct and involvement in the 2020 Presidential election.

The theory of the Plaintiffs is not that "any registered voter, anywhere in the country, whether they actually voted, can file suit in any federal court against anyone who they believe did anything improper affecting a presidential election." *See* Doc.102, p. 9. The Plaintiffs theory is that as registered voters from across the country, they have standing in Colorado to sue Facebook and CTCL for their specific state action, which affected the outcome of the 2020 Presidential election.

Conversely, the Defendants seem to argue that no one has standing to object to their conduct, no matter what it is, and no matter how it unconstitutionally affected the outcome of the 2020 Presidential election. Further, the concept that Facebook and CTCL's conduct was so pervasive that any objection to the damage caused to voters injury to transform into a generalized grievance is not based upon the cases involving that doctrine. The "veritable tsunami" of precedent are all the same. None of the cases involve Facebook, CTCL or Dominion, yet every single one of them involve plaintiffs suing municipalities, officers and/or election commissions in their official capacity for injunctive relief.

CTCL alleges that Plaintiffs "filed a proposed amended complaint that made no effort whatsoever—that did not even try—to remedy the glaring Article III deficiency." Doc. 102, p.

---

[2] https://www.judicialwatch.org/press-releases/ca-state-officials-big-tech/

10. However, Plaintiffs never conceded that the original Complaint did not establish standing. Plaintiffs filed an amended complaint to update and further expand the factual basis for the case, and to add the additional Plaintiffs that wished to join the lawsuit. *See* Declaration of Counsel, Doc. 48, Ex. 3. At that juncture, the affidavits were not attached so as to specifically not require the Court and counsel to pour over hundreds of affidavits claiming injury. Simply put, the Amended Complaint had not even been accepted by the Court, and was accordingly not subject to any motion to dismiss, at that time, by anybody.

Additionally, by the time of the hearing on the motion to dismiss, counsel for Plaintiff had received over 500 affidavits from registered voters from 48 states. Of course there was an element of a generalized grievance. But each affidavit was signed, under oath, as a testament to the damage incurred by those wishing to join. Before the hearing, Plaintiffs' counsel met and conferred with defense counsel regarding the joining of the additional Plaintiffs. However, on the eve of the hearing, Plaintiffs' counsel was also desirous of outlining the documents and case filings that it was relying upon for purposes of the hearing. Instead of attaching thousands of pages of expert reports, other complaints, law review articles and documentaries, counsel for the Plaintiffs took the time necessary to correctly cite the material it was relying upon in its motion for judicial notice. Plaintiffs was not requesting the Court to take judicial notice of the facts as alleged in the cases and other information, but that the material, in fact, does exists.

At no time did Plaintiffs' counsel lack candor with the Court. Plaintiffs' counsel noted that *Texas v. Pennsylvania* had been dismissed. There, the holding stands for the proposition that one, or several other sovereign states, do not have standing, even on behalf of their own constituents, to request relief sought. The holding does not stand for the proposition that registered voters, all of whom have a national right to vote for President, cannot sue private companies that act under color of authority to compromise their rights.

Plaintiffs' counsel articulated a credible and meaningful difference between the general public and every registered voter. The former does not have a right to vote for President. The latter does. Additionally, the definition of a generalized grievance centers around citizens that sue to require *government* to perform its duty.

With regard to a concrete and particularized injury, *at a minimum*, Plaintiffs suffered nominal damages. Every constitutional right violation infers damage. The issue concerning standing is based upon who incurred the damage. Here, it is the registered voters, of whom over 150 have appeared, with an additional 350, who also claim to have been damaged.

### VII. PLAINTIFFS' COUNSEL DID NOT HAVE AN IMPROPER MOTIVE FOR FILING THE CASE

Facebook and CTCL claim that Plaintiffs' counsel filed the case for an improper purpose. First, the Plaintiffs' claims are not frivolous. CTCL and Facebook engaged in the conduct alleged in the Plaintiffs' Complaint and Amended. Allegations regarding CTCL's violations of the *Help America Vote Act* and the *National Voter Registration Act* are averments that CTCL can admit or deny. The violations of those statutes form only *part* of the basis of the Plaintiffs' § 1983 claims. The fact that another case outlined the same allegations does not vitiate the veracity of the allegation. Plus, Plaintiffs' counsel specifically drew attention to the case cited by CTCL by placing it in a footnote in the allegations of fact concerning Wisconsin. Doc. 1, fn. 60-61. There is nothing to hide, or be ashamed of, there. The facts as alleged are true, to the best of counsel's knowledge and belief, after reasonable inquiry.

Further, the allegations were factual in nature, not legal. That case, again, was not against CTCL, but the City of Racine. The request was not for damages from CTCL to the Plaintiffs injured, but to enjoin a municipality. Plaintiffs, here, are not moving to enjoin the City of Racine. The claims and parties in that matter are different than this case. With that, if the facts alleged are

true, another set of harmed parties are not precluded from making additional claims based upon those same facts as against the actual party causing the damage.

CTCL complains Plaintiffs' counsel improperly questioned CTCL's legal capacity to enter into contracts outside of Illinois, and that it was gratuitous to challenge the deductibility of the so-called "contributions," or seek an investigation. Of course, there should be an investigation concerning these so-called contributions, and an audit of where all the money was spent. Just because CTCL does not like public exposure of facts, does not mean that Plaintiffs' counsel is making "outrageous" or "defamatory claims." The fact remains that CTCL is organized as a non-profit organization, and is registered to do business only in Illinois. The public record reflects that CTCL's non-profit status requires that it not be for political purposes. Plaintiffs allege that CTCL's grants were made for a political purpose. CTCL can deny the allegations, but facts indicate otherwise. Nonetheless, at this juncture, Plaintiffs' counsel understands that the case has been dismissed for lack of standing, not because the averments are not supported by actual evidence.

The fact that CTCL also complains about the timing of the lawsuit establishes its general misunderstanding of Plaintiffs' claims. The case is not for injunctive relief. It is a damages case. Accordingly, there was no requirement that the case be file at any time before the expiration of the applicable statute of limitations. The facts indicate that a very powerful and rich billionaire, along with many others, conspired to unconstitutionally influence and determine the outcome of the 2020 Presidential election. COVID relief was thus the cover used to implement a series of election law changes, and other procedures, such as the use of ballot drop boxes, contractually mandated at the behest of CTCL.

Concurrently, Facebook, as one of the most powerful media outlets in the world, actively supported the political ideology of its CEO, and censored some information, while advancing

other information, in a concerted effort to beat President Trump and elect then former Vice-President Biden. If the shoe were on the other foot, it would be just as bad. Accordingly, the case is not about advocating "politically inflammatory claims," but, to the contrary, holding the Defendants responsible for the overwhelming damage they have done to the integrity of our Presidential election process and, more specifically, provide at least partial compensation to registered voters whose rights were violated during the 2020 Presidential election by Defendants.

**VIII. PLAINTIFFS COUNSEL WAS REQUIRED UNDER RULE 23 TO INQUIRE AS TO WHETHER OTHER PLAINTIFFS EXIST AND HAD A FIRST AMENDMENT RIGHT TO SPEAK ABOUT IT.**

Facebook complains that Plaintiffs' counsel constructed a website and took contributions to help pay for the costs of litigation. Plaintiffs' counsel have a First Amendment right to speak, and accepting contributions to cover the costs of litigation. Neither is unethical or improper. None of the Plaintiffs were ever asked to donate to the expense of the litigation, not once. Nor were any promises made to anyone about collecting any damages on their behalf. On the other hand, if an individual freely wanted to contribute, he or she could. Counsel for Plaintiffs rented three additional offices and a dedicated phone line as a part of the litigation support. Thousands of people did contribute, in most cases anywhere from five to twenty dollars. Counsel for Plaintiffs spent enormous resources on a team of paralegals to check every notary, every voter registration and every identification, before accepting a client's affidavit. Hundreds of real people who care deeply about this country and our voting process reached out to Plaintiffs' counsel, and our staff. One of the best ways to communicate was through the website, email and by making short videos. All of this is common practice in today's world, and there is nothing illegal or unethical about how Plaintiffs' counsel communicated with those interested in the suit, and the general public at large.

Plaintiffs' counsel never promised any compensation to anyone, and only used the moniker of damages of "one thousand dollars per registered voter" as a minimum reference as to what the actual damages are worth. Plaintiffs' counsel assumes that all of this must be upsetting to opposing counsel. Their pleadings are fraught with accusations of improper conduct and insults. Yet, the truth is that the most treasured right that a person can have is to be able to vote for his or her President and Commander in Chief. That right is the basis of every other right. The President of the United States is the most powerful person in the country, and the right to vote for that person is priceless. Of course, at first, if a voter supports the candidate that ultimately succeeds, that person may be less willing to hear evidence of systemic fraud. That is normal. Conversely, just because Donald Trump was the one that lost, does not mean that everyone that supports voter integrity is a "Trump supporter" or right-wing conspiracy theorist associated with the so-called "Qanon" movement. Every registered voter is vested with the national right to vote for President. When that right is burdened to the degree that has been established by the evidence, here, and the facts lead to a conclusion that the results of the 2020 Presidential election may not be legitimate. As such, the voters must demand that those responsible be held accountable. That is the purpose of this lawsuit, which is ongoing, and is presently in the 10th Circuit.

## IX.     RULE 23 GOVERNS CLASS ACTIONS

Pursuant to Rule 23, one or more members of a class may sue as representative parties on behalf of all members only if the class is so numerous that joinder of all members is impracticable, there are questions of law or fact common to the class, the claims or defenses of the representative parties are typical of the claims or defenses of the class, and the representative parties will fairly and adequately protect the interest of the class. Fed.R.Civ.P. Rule 23(a)(1-4). Here, the first eight, original Plaintiffs qualified to be "one or more members of a class," under

the rule. However, the Amended Complaint addressed the deficiencies in the original Complaint, concerning the Class Allegations. Doc. 48, pp. 30-35, ¶¶ 240-264. All of the necessary averments were truthfully made, concerning the creation of the class, as were all the other necessary allegations concerning Rule 23.

Pursuant to Rule 23, "a court that certifies a class must appoint class counsel." Rule 23(g)(1). In appointing counsel, the court must consider "the work counsel has done in identifying or investigating potential claims in the action." Rule 23(g)(1)(A)(i). Here, Plaintiffs' counsel paid for all of the costs associated with constructing a fair and truthful website used to communicate with interested parties. Any interested party was welcome to send an under oath affidavit, with a photo identification, and a statement of their individual situation and damages, if any. From there, the parties' communication is protected by the attorney/client privilege. Suffice it say, Plaintiffs' counsel received an overwhelming response.

Further, a company of paralegals was hired, and three additional offices were rented, with a dedicated phone line. The paralegals double checked the notary and registration information and cataloged the affidavits. Once the original Compliant was in need of Amendment, over one hundred a fifty Plaintiffs from 38 states had become clients, and had submitted their affidavits. None of these are nefarious or improper. These are people, registered to vote, who feel like their right to vote in the 2020 Presidential election was burdened by the conduct of the Defendants. Voters get discouraged when the clear evidence is that the election was unduly influenced by large private companies, and other individuals that had a common scheme or plan to unduly affect a Presidential election. Now, many voters do not have confidence in the reliability of the vote count in many states. That is a fact. No reasonable person can deny that. That confidence is the basis of the whole system. Without confidence in the integrity of a Presidential election, the whole system is at risk. It cannot be frivolous to make such a claim. This is how many citizens

18

are feeling, but only those who have a right to vote can stand up if that right is burdened or violated.

From the prospective of undersigned counsel, an objective viewing of the record would reveal a great degree of care that went into the pleadings. Many hours were spent researching and proof reading. In the end, Plaintiffs' counsel has always stayed in honor. We were never unprofessional. We never asked for one extension, except recently when having to response to these endless stream of motions for sanctions. We never multiplied work, or filed frivolous motions. Plaintiffs filed a lawsuit, and made a plain statement of facts outlined the general allegations that formed the basis of the suit. We allowed counsel for Facebook and Dominion to have a 21-day extension to answer, and offered to stay the case to allow us to amend the complaint. Both Dominion and Facebook denied our request. Accordingly, we served the other parties, and Facebook and CTCL filed their motions to dismiss. They argued their cases, and we responded to establish our independent case for standing.

Never did counsel have an improper or unethical motive to file the case. Plaintiffs' counsel set out to prosecute a civil rights, class action lawsuit.  Ever since, Plaintiffs' counsel has been under a barrage of accusations, and threats of sanctions. Plaintiffs' counsel should not be punished for trying to stand up for the rights of the regular voter. Here, a class of registered voters had counsel to forward their claims—well founded in fact and based upon the Constitution. How could that be considered improper and sanctionable?

## X.     CONCLUSION

For the reasons above, the Plaintiffs respectfully requests that this Court deny the motion and award undersigned counsel reasonable attorney fees for the time necessary to respond and any other sanction that this Court deems just under the circumstances.

Dated this 21st day of June, 2021.

Respectfully submitted,

**PLAINTIFFS COUNSEL:**

| | |
|---|---|
| By: *s/Ernest J. Walker* | By: *s/ Gary D. Fielder* |
| Ernest J. Walker (MI P58635) | Gary D. Fielder (CO 19757) |
| ERNEST J. WALKER LAW OFFICE | LAW OFFICE OF GARY FIELDER |
| 1444 Stuart St. | 1444 Stuart St. |
| Denver, CO 80204 | Denver, CO 80204 |
| (720) 306-0007 | (720) 306-0007 |
| ernestjwalker@gmail.com | gary@fielderlaw.net |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 21, 2021, a copy of the foregoing document was electronically filed with the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*s/Gary D. Fielder*
Gary D. Fielder, Esq.
Law Office of Gary Fielder
1444 Stuart St.
Denver, CO 80204
(720)306-0007
gary@fielderlaw.net