**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-3747-NRN

KEVIN O'ROURKE, *et al.*,

Plaintiffs,

v.

DOMINION VOTING SYSTEMS INC., *et al.*,

Defendants.

**GOVERNOR TOM WOLF'S AND FORMER SECRETARY KATHY BOOCKVAR'S
REPLY IN SUPPORT OF MOTION FOR SANCTIONS**

Plaintiffs' response to the Pennsylvania defendants' motion for sanctions is notable primarily for its omissions. It omits any substantive defense of plaintiffs' demonstrably false accusations, and it omits any meaningful defense of the obvious frivolousness of plaintiffs' suit. Instead, plaintiffs provide a litany of observations about what makes this case different from all other baseless attacks on Pennsylvania's election, about federal supremacy, and about the national interest in presidential elections. None of that matters for the pending motion. What does matter is that this case, as has been evident since its inception, is an unjustifiable abuse of a federal court, which uses false accusations to trumpet debunked conspiracy theories.[1] For the reasons catalogued in the Pennsylvania defendants' Motion for Sanctions ("Pa. Defs. Mot."), ECF No. 101, and repeated here as needed, plaintiffs' counsel should be sanctioned for this vexatious litigation.

---

[1] The Supreme Court of the State of New York Appellate Division recently suspended the law license of Rudolph Giuliani, who was counsel of record in *Donald J. Trump for President, Inc. v. Boockvar*, 502 F. Supp. 3d 899 (M.D. Pa. 2020), for having made many of the same factual allegations that plaintiffs made. *See In re Rudolph Giuliani* at 11-14, No. 2021-00506 (N.Y. App. Div. June 24, 2021).

I.  **Plaintiffs' Demonstrably False Allegations Exhibit Their Bad Faith**

Bad faith litigation conduct justifies sanctioning an attorney under a court's inherent authority. *Sun River Energy, Inc. v. Nelson*, 800 F.3d 1219, 1227 (10th Cir. 2015). Here, plaintiffs have made demonstrably false accusations that can be explained only by bad faith.

The thrust of all claims plaintiffs intended to bring was, in some form, that the Pennsylvania defendants' modifications and disregard of Pennsylvania election law and procedures violated the federal Constitution. Compl. ¶¶ 295–296, 308, 311, 319, 334–335, 360–361; Am. Compl. ¶¶ 664–666, 668, 693–694, 719–720. Plaintiffs alleged several ways in which the Pennsylvania defendants supposedly violated state law. First, the Pennsylvania defendants supposedly defied a state statute dictating that mail-in ballots undergo a signature comparison. Compl. ¶¶ 217–219, 222, 232(a)–(c); Am. Compl. ¶¶ 530–532, 552–554, 555(a). Second, the Pennsylvania defendants allegedly violated Pennsylvania law by authorizing counties to allow voters to cure ballots cast with technical errors. Compl. ¶¶ 220–221, 224, 232(e); Am. Compl. ¶¶ 533–540. Third, the Pennsylvania defendants allegedly caused certain counties to deny poll watchers the access to pre-canvassing procedures to which they were entitled under Pennsylvania law. *See* Compl. ¶ 232(d); Am. Compl. ¶¶ 39, 555(c), 556.

Each factual premise is manifestly false. Pa. Defs' Mot. at 4-6.[2] Plaintiffs' response supplies nothing suggesting otherwise. For the allegations about signature comparison, plaintiffs first answer that Texas made the same allegation. Pls. Resp. to Pa. Defs. Mot. for Sanctions ("Pls. Resp.") at 7–8, ECF No. 101. Yet Texas's disregard for the truth hardly justifies plaintiffs' similar disregard for it, and plaintiffs furnish no reason why it might. And while plaintiffs also

---

[2] Plaintiffs insist that the Pennsylvania defendants have identified false statements made only in the causes of action. Pls. Resp. at 7. That, like so much else in this case, is false. *See* Pa. Defs. Mot. at 5–7 (identifying false factual allegations made in plaintiffs' complaint).

contend that federal courts may set aside errant state court rulings, that fails to grasp that the import of the Pennsylvania Supreme Court decision in *In re Nov. 3, 2020 Election*, 240 A.3d 591 (Pa. 2020), is not that it forecloses the viability of a federal claim based on a state actor's actual disregard of state election law. Rather, that decision, issued in October 2020, resolved that Pennsylvania law does not allow signature verification for mail-in ballots. So, as a factual matter, Pennsylvania had no signature review requirement for anyone to disregard or modify.

As to allowing some voters to cure ballots sent with minor errors on the outer envelope, plaintiffs repeat that the Pennsylvania defendants relaxed laws governing how a county should have handled any such ballot. Pls. Resp. at 8. But there were no relevant rules to relax—Pennsylvania law is silent about what a county should do with a ballot submitted with some technical error. *Donald J. Trump for President, Inc. v. Sec'y of Pennsylvania*, 830 F. App'x 377, 384 (3d Cir. 2020). Here, again, plaintiffs' representation of Pennsylvania law, and thus whether Pennsylvania defendants modified or disregarded relevant law, was false. While plaintiffs go on to describe how their case is different from *Trump for President v. Secretary of Pennsylvania*, *see* Pls. Resp. at 8–9, the ways in which plaintiffs' legal theories or requested relief are distinct from that case is immaterial. Pennsylvania law does not describe how counties should handle mail-in ballots with technical errors. Thus, plaintiffs' have accused the Pennsylvania defendants of debasing standards that do not exist. That plaintiffs may have wanted to use their false allegation for some novel purposes is insignificant.

Similarly, despite plaintiffs' baseless accusation to the contrary, Pennsylvania provided poll watchers during the 2020 general election with all the access Pennsylvania law demands. Irrespective of whether violating state law governing poll watchers might in some circumstance conflict with the federal Constitution, poll watchers who had complained during the 2020 general

election that they were not allowed to stand close enough to canvassing activities were in fact afforded the access required under Pennsylvania law, which requires only that watchers be in the same room as canvassing activities. *In re Canvassing Observation*, 241 A.3d 339, 349–51 (Pa. 2020). The Pennsylvania Supreme Court's conclusion about what Pennsylvania law requires makes the factual allegation underlying plaintiffs' federal theory false.

Next, plaintiffs defend their false allegation that poll workers "participated in a conspiracy to influence the presidential election," Compl. ¶ 75(d); *accord* Am. Compl. ¶ 368(d), as justifiable because it was made at the pleadings stage. While a complaint need not produce evidence in support of its allegations, that is beside the point here. The complaints generally charge poll workers with participating in a conspiracy to interfere with the presidential election, but without any specific allegations of how poll workers were part of that conspiracy or what they did in furtherance of it. The allegations relating to a broader conspiracy also lack any specific details, *see* Pa. Defs. Mot. at 6–7, a point made in the Pennsylvania defendants' motion to which plaintiffs do not respond. By omitting specific factual allegations, plaintiffs' complaints just gratuitously tarnished poll workers—and all defendants—without any details warranting the serious accusations leveled.

Last, plaintiffs' response says absolutely nothing about the false allegation that Pennsylvania failed to segregate a small class of challenged ballots received after November 3. Compl. ¶¶ 225–226; Am. Compl. ¶¶ 545–546. As explained in the Pennsylvania defendants' motion, that allegation was completely false. Pa. Defs. Mot. at 6.

At bottom, plaintiffs fail to understand that their federal constitutional theories depend wholly on the Pennsylvania defendants having violated state law in ways that, as a factual matter, never happened. Plaintiffs repeatedly suggest that decisions establishing what

4

Pennsylvania law requires do not bind this Court on the legal arguments pressed here. But that is not their import. They matter because they exhibit that the Pennsylvania defendants' alleged factual deviations from state law on which plaintiffs' federal claims depended never happened. Making allegations to the contrary reveals plaintiffs' bad faith.

## II.   Plaintiffs' Frivolous Assertion of Jurisdiction Exhibits Their Bad Faith

Plaintiffs' arguments for federal jurisdiction also were "so frivolous as to reflect impermissible conduct." *Mountain W. Mines, Inc. v. Cleveland-Cliffs Iron Co.*, 470 F.3d 947, 954 (10th Cir. 2006).

For both personal jurisdiction and subject matter jurisdiction, plaintiffs never had credible arguments to make. Indeed, after dragging the Pennsylvania defendants into a court across the country and forcing them to file both a motion to dismiss and an opposition to a motion to amend, plaintiffs dismissed the Pennsylvania defendants because of the absence of personal jurisdiction. Pls. Resp. at 3–4. While plaintiffs belatedly realized there was no basis for suing Pennsylvania officials in Colorado for issues related to the administration of an election in Pennsylvania, the absence of personal jurisdiction was evident from the outset. Nothing in either of plaintiffs' complaints hints at a faint connection between the Pennsylvania defendants and Colorado. Without even basic allegations trying to link the Pennsylvania defendants to Colorado, plaintiffs' complaint can be understood only as an effort to harass.

With regard to subject matter jurisdiction, it is settled that generalized grievances are not injuries that allow standing to sue in federal court. *Lance v. Coffman*, 549 U.S. 437, 439 (2007). Plaintiffs blatantly ignored that limitation by filing a lawsuit alleging injuries that they affirmatively stated were shared by *every single voter in the country*. Compl. ¶¶ 76, 126, 307, 319, 334; Am. Compl. ¶¶ 240, 369, 664, 677, 693. No matter how many times plaintiffs have

said—and continue to say, *see* Pls. Resp. at 12—that they are not acting based on generalized grievances, the complaints speak for themselves.

Throughout their response to the Pennsylvania defendants' motion for sanctions, plaintiffs sprinkle in language related to standing principles. But nothing plaintiffs say explains why they forged ahead with a lawsuit in which it was clear from the beginning that no plaintiff had been injured under established law governing standing.

As they have before, plaintiffs argue it was reasonable to think every voter in the country had suffered an injury sufficient for standing because plaintiffs were making allegations about the administration of an election in which national offices were on the ballot. Pls. Resp. at 3, 9, 10–11. Plaintiffs continue to invoke the *complaint* filed in *Texas v. Pennsylvania*, Pls. Resp. at 7–8, 13, while ignoring the Supreme Court's *resolution* of that case. Just a few weeks before plaintiffs filed this complaint, the Supreme Court denied Texas's motion to docket its complaint because Texas did not have standing to challenge Pennsylvania's election. *Texas v. Pennsylvania*, 141 S.Ct. 1230 (Mem). (2020). As explained, plaintiffs' theory of standing was indistinguishable from Texas's. *See* Pa. Defs. Mot. at 8–10; *see also* Pa. Defs. Mot. to Dismiss at 9, ECF No. 49; Pa. Defs. Resp. to Mot. to Amend at 5–6, ECF No. 59. Of course, the Supreme Court's resolution in *Texas* was not the first time courts have explained that one voter is not injured because another voter has been allowed to vote in a presidential election. *See* Pa. Defs. Mot. at 9 (summarizing cases); Pa. Defs. Mot. to Dismiss at 9 (same).

Like all their filings in this case, plaintiffs' response does not confront this conclusive authority. Instead, it cites cases with no bearing on plaintiffs' lack of any cognizable injury, or that might suggest plaintiffs had a good faith basis for initiating this lawsuit. Once more, plaintiffs cite *Anderson v. Celebrezze*, 460 U.S. 780 (1983), as justifying a belief in their

6

standing here. *Anderson* is neither about Article III standing nor is it remotely analogous. Plaintiffs there were a presidential candidate seeking to be included on the Ohio ballot, as well as voters who supported that candidate. *Id.* at 783. And the legal question was if a state statute that would have excluded that candidate from Ohio's ballot burdened the right to vote. *Id.* at 782. Although the Court appreciated the unique national interest in the presidential election, *id.* at 795, the Court never said that any voter can sue anyone for any reason so long as there is some connection to a presidential election, the astonishing premise that plaintiffs advocate.

Plaintiffs' response also defends having filed this case by referencing *Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021), and insisting a request for nominal damages is "sufficient to proceed with a claim for a completed constitutional violation." Pls. Resp. at 14. But a request for nominal damages is not "sufficient" for federal jurisdiction, as the Court explicitly said in *Uzuegbunam*. Nominal damages alone may satisfy the redressability element of standing, but that does not mean "a request for nominal damages guarantees entry to court. . . . It remains for the plaintiff to establish the other elements of standing (such as a particularized injury)." *Uzuegbunam*, 141 S.Ct. at 802. Plaintiffs' repeated reliance on *Uzuegbunam* is inexplicable given the self-evident lack of any particularized injuries.

Elsewhere, plaintiffs quote from a district court decision holding that vote denial is an injury sufficient for standing. Pls. Resp. at 9 (quoting *Donald J. Trump for President, Inc. v. Boockvar*, 502 F. Supp. 3d 899, 912 (M.D. Pa. 2020)). But plaintiffs there were legal voters whose votes were not counted. *Donald J. Trump*, 502 F. Supp. 3d at 912. These plaintiffs do not complain of having their vote cancelled, but instead of others having their vote counted in ways plaintiffs dislike.

And finally, plaintiffs list a number of ways in which they believe their case is different from all other attacks on Pennsylvania's election. Those include that this is a "civil rights case" instead of an "election case," Pls. Resp. at 3, that other cases attacking Pennsylvania's election named state officials as defendants in their official capacities, *id.*, that other cases were dismissed for lack of standing or because plaintiffs "had violated some other doctrine," *id.*, that other cases sought broad injunctive relief instead of damages, *id.* at 13, that other cases advanced different legal theories, *id.*, and that no other case was brought on behalf of a class of all registered voters, *id.* True or not, none of that is material. Suffering some concrete and particularized injury is a constitutional predicate to filing any federal lawsuit. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Whatever damages plaintiffs seek, whatever theories they advance, whatever class they are a part of, they still must have suffered some particularized injury. That constitutional requirement was wholly disregarded as plaintiffs filed a suit based on injuries that they alleged were shared by *every voter in the country*. Compl. ¶¶ 76, 126, 307, 319, 334; Am. Compl. ¶¶ 240, 369, 664, 677, 693.

### III.   Plaintiffs' Unreasonably Prolonged this Litigation

The Pennsylvania defendants never should have been involved in this litigation in any capacity. They were, however, because even after the two defendants that were served first filed motions to dismiss based on the obvious lack of standing, plaintiffs went ahead and served the Pennsylvania defendants nine days later. Pa. Defs. Mot. at 13. To justify pushing ahead despite the clear lack of standing noted in those first two motions, plaintiffs assert that they have stated all along that their alleged injuries were not generalized grievances. Pls. Resp. at 12. But saying an injury is not a generalized grievance does not mean an injury is not a generalized grievance. Plaintiffs still have never offered any reasonable explanation for why they thought it was plausible that alleged injuries supposedly shared by every single voter in the country were not

generalized grievances. Nor have they now said why any reasonable attorney would not have understood as much when that point was indisputably made in the first two motions to dismiss.

Additionally, plaintiffs insist that to the extent this litigation has been unreasonably prolonged, it is the Court's doing rather than plaintiffs'. Pls. Resp. at 11. To justify that position, plaintiffs maintain that the Court could have allowed plaintiffs to amend their complaint as of right rather than requiring that plaintiffs seek leave to do so. *Id.* That ignores that plaintiffs sought to amend a futile complaint despite, by that point, having been notified through three motions to dismiss that the case was futile, and being alerted at the Court's March 11, 2021 status hearing that the case had serious jurisdictional defects. All of that would have counseled a reasonable attorney against filing a futile amendment.

## IV. Rule 11's Procedural Requirements Do Not Apply

Finally, plaintiffs' counsel intimate that they should not be sanctioned pursuant to either this Court's inherent authority or under 28 U.S.C. § 1927 because plaintiffs, after having been served by the Pennsylvania defendants with a motion under Rule 11, voluntarily dismissed the Pennsylvania defendants.[3]

While Rule 11 allows a party, once served with a motion under that rule, to avoid sanctions if it withdraws the offending pleading within 21 days of service, that same procedure is not antecedent to the exercise of a court's inherent authority to impose sanctions, or to the imposition of sanctions under 28 U.S.C. § 1927. *Hutchinson v. Pfeil*, 208 F.3d 1180, 1186 n.9 (10th Cir. 2000). Nor does avoiding sanctions because of Rule 11's safe harbor relieve a party from the possibility of sanctions under a separate font of authority. Rule 11 is governed by separate standards than sanctions under either a court's inherent power or § 1927. *Id.* at 1186. In

---

[3] The motion served on plaintiffs' counsel under Rule 11 was in fact a motion for sanctions under both Rule 11 and 28 U.S.C. § 1927. *See* Decl. of Michael J. Fischer, Exhibit 1.

9

fact, using inherent authority to impose sanctions is particularly appropriate when the relevant conduct is "beyond the reach of the Rules." *Chambers v. NASCO, Inc*., 501 U.S. 32, 50–51 (1991); *see also Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246, 1257 (10th Cir. 2015) (upholding exercise of inherent authority to impose sanctions for conduct "unreachable by statute or rule").

Avoiding sanctions under Rule 11 does not mean plaintiffs' counsel necessarily avoids sanctions under separate sources of authority to which Rule 11's procedures do not apply.

\* \* \* \* \*

For these reasons, the Pennsylvania defendants' motion for sanctions should be granted.

Dated: June 28, 2021

Respectfully submitted,

JOSH SHAPIRO
ATTORNEY GENERAL

MICHAEL J. FISCHER
Chief Deputy Attorney General

/s/ *Jacob Boyer*
JACOB BOYER
Deputy Attorney General
Pennsylvania Office of Attorney General
1600 Arch Street, Suite 300
Philadelphia, PA 19103
(267) 768-3968
jboyer@attorneygeneral.gov

*Attorneys for Governor Tom Wolf and Former Secretary of the Commonwealth Kathy Boockvar*

## CERTIFICATE OF SERVICE

I hereby certify that on June 28, 2021 I electronically filed the foregoing Reply in Support of Motion for Sanctions with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ *Jacob Boyer*
Jacob Boyer