# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-3747-NRN

KEVIN O'ROURKE, et al.,

Plaintiffs, on their own behalf and of a class of similarly situated persons,

v.

DOMINION VOTING SYSTEMS INC., et al.,

Defendants.

---

# DEFENDANT FACEBOOK, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR SANCTIONS

## I. INTRODUCTION

Plaintiffs' counsel's response to Facebook's motion for sanctions illustrates why sanctions are necessary. Much of their response tries to justify why they brought suit against state officials or other defendants—not Facebook—and it barely responds to many of Facebook's arguments for sanctions here. Instead, they repeat at length the same frivolous legal arguments about Article III standing that this Court and many others already have rejected. Nowhere do they show that they conducted any reasonable pre-filing inquiry into the facts or law. And, as they have from the outset of this action, they misrepresent their pleadings and the record to try to avoid the just consequences of their actions. Plaintiffs' counsel's performance has fallen well below the standard of care required of officers of this court. Sanctions are justified on multiple grounds.

Plaintiffs' counsel never demonstrate that they satisfied Rule 11's requirement to conduct a reasonable pre-filing inquiry into the facts or law underpinning their pleadings. They offer no evidence of having done any inquiry into their core factual allegations at all. To the contrary, they concede that they simply parroted "facts" from other cases or things they read without conducting any independent inquiry into the veracity of those allegations. Nor do they show that they conducted any reasonable inquiry into the many areas of law that bar their case, relying instead on specious attempts to distinguish well-settled Article III standing precedent that foreclose their action. Rule 11 requires not only that counsel investigate the law before filing, but also that they respond reasonably to what they find. Plaintiffs' counsel did neither here.

Sanctions are further warranted given Plaintiffs' counsel's continued disregard of their duty of candor and violation of court rules, which multiplied these proceedings. They now misrepresent the very nature of the suit they filed, claiming they never sought injunctive relief when their

1

pleadings demonstrate otherwise. They also never justify why they still solicit the public and prospective plaintiffs for money on the false premise that they might recover $160 billion in *nominal damages* on behalf of the purported class. They further offer no viable justification for sandbagging the parties and the Court with an improper motion for judicial notice. And their evidence-free, self-serving claim to have acted and continue to act in good faith is irrelevant—sanctions are compelled for reckless disregard of their duties as well. *See, e.g.*, *White v. Gen. Motors Corp., Inc.*, 908 F2d 675, 680 (10th Cir. 1990).

At every step in this litigation, "Plaintiffs were given many advisements and opportunities to reconsider their legal arguments and strategies and refine them accordingly, yet they chose to proceed apace." *Burton v. Vectrus Sys. Corp.*, 2020 WL 614313, at *4 (D. Colo. Feb. 10, 2020). Plaintiffs' counsel not only refused to heed any warning or correct their conduct, they still argue there was nothing wrong with it. "[T]here is no reason to reli[e]ve the Plaintiffs from the normal consequences of bringing a non-viable lawsuit" here. *Id.* Under Rule 11, Section 1927, and/or the court's inherent authority, sanctions are necessary to protect the integrity of the judicial system, enforce a minimal standard of care for practicing attorneys, and compensate defendants for having to defend against a prolonged, baseless proceeding.

## II. PLAINTIFFS' COUNSEL FAIL TO SHOW THAT THEY CONDUCTED A REASONABLE INVESTIGATION BEFORE FILING

Plaintiffs' counsel's response recycles the same baseless arguments that led to dismissal of this suit, demonstrating the very lack of diligence that prompted Facebook's motion for sanctions. Nowhere do Plaintiffs' counsel attest that they conducted a reasonable factual or legal investigation

prior to filing any pleading, much less include a sworn declaration attesting to such facts.[1] Instead, they make a series of admissions that show how their conduct fell short of the duty of care required under Rule 11[2] and other relevant standards.

*First,* Plaintiffs' counsel effectively concede that they failed to conduct a reasonable investigation into the facts underpinning their pleadings. They allege only that they "rented three additional offices and a dedicated phone line as part of the litigation support" and "spent enormous resources on a team of paralegals to check every notary, every voter registration, and every identification, before accepting a client's affidavit."[3] Dkt. 118 at 16. But Plaintiffs' counsel nowhere argue that their clients had any personal knowledge to attest to the sweeping statements of alleged voting improprieties that underpin their claims. *Herron v. Jupiter Transp. Co.*, 858 F.2d 332, 337 (6th Cir. 1988) (affirming Rule 11 sanctions where plaintiffs admitted no personal knowledge to support claims and merely felt alleged practices "seemed unfair"); *White*, 908 F.2d

---

[1] Plaintiffs' counsel's inability to offer any sworn evidence of their pre-filing inquiry is telling. *See, e.g.*, *Galanis v. Szulik*, 841 F. Supp. 2d 456, 461–62 (D. Mass. 2011), *adhered to on reconsideration*, 863 F. Supp. 2d 123 (D. Mass. 2012).

[2] In their response to Dominion's sanctions motion, Plaintiffs' counsel argue that Dominion did not properly serve them with a Rule 11 motion. Dkt. 110 at 2–7. Plaintiffs' counsel make no such argument against Facebook—nor could they, since Facebook properly served Plaintiffs. By failing to raise this argument in their response, Plaintiffs' counsel waived it. *See, e.g.*, *Cole v. New Mexico*, 58 F. App'x 825, 829 (10th Cir. 2003) (holding that "by failing to raise the issue in his initial response to the respondent's motion to dismiss, [Plaintiff] has waived the argument."); *see also Crosby v. Nelson*, 2014 WL 1032951, at *2 n.3 (D. Colo. Mar. 18, 2014) (similar). Similarly, they have waived any argument that this Court cannot issue sanctions under Rule 11 as a result of their complaint having been dismissed before the motion was filed with the Court. There is no such barrier to Rule 11 sanctions where, as here, Facebook served the Rule 11 motion on Plaintiffs' counsel more than 21 days before dismissal, and Plaintiffs' counsel continues to pursue the litigation in a frivolous appeal. Dkt. 103-1 at 4 n.2.

[3] The veracity of even these unattested and insufficient representations is called into serious doubt by Plaintiffs' counsel's failure to realize that their lead plaintiff's sworn affidavit misstated that he did not vote in the 2020 election. Dkt. 103-6 (Lipshutz Decl., Exh. 4) (Hrg. Tr. at 64:6–15).

3

at 681 (affirming Rule 11 sanctions where plaintiffs had no specific factual knowledge).

As to these core factual bases of their claims about the 2020 election, Plaintiffs' counsel never say that they conducted any prefiling inquiry at all. They admit that they merely copied their factual averments from other dismissed cases or self-published books and reports that they read. Dkt. 118 at 1–4, 6. That does not satisfy Plaintiffs' counsel's independent obligation to conduct a reasonable prefiling inquiry into the bases of their pleadings before signing them. *See, e.g., Martinez v. City of W. Sacramento*, 2021 WL 2227830, at *14 (E.D. Cal. June 2, 2021) ("[A]n attorney who signs the pleading cannot simply delegate to forwarding co-counsel his duty of reasonable inquiry.") (quoting *Unioil, Inc. v. E.F. Hutton & Co.*, 809 F.2d 548, 558 (9th Cir. 1986)); *see also Pavelic & LeFlore v. Marvel Entm't Grp.*, 493 U.S. 120, 126 (1989) ("[T]he purpose of Rule 11 as a whole is to bring home to the individual signer his personal, nondelegable responsibility."); *Schutts v. Bentley Nevada Corp.*, 966 F. Supp. 1549, 1563 (D. Nev. 1997) ("A lawyer may not diminish this responsibility by asserting his or her reliance on another lawyer.").[4] "When any counsel seeks to target processes at the heart of our democracy, [one] may well conclude that they are required to act with far more diligence and good faith than existed here." *Wisc. Voters Alliance v. Pence*, 2021 WL 686359, at *2 (D.D.C. Feb. 19, 2021).

Plaintiffs' counsel never clarify why they continue to press these copycat averments after their primary authors have been sanctioned for making them or have acknowledged no reasonable

---

[4] *See also Sec. Farms v. Int'l Bhd. of Teamsters*, 124 F.3d 999, 1016–17, n.23 (9th Cir. 1997) (affirming Rule 11 sanctions for failure to "conduct a reasonable inquiry" where counsel filed statements by its investigator despite receiving prior notice of serious credibility and authenticity issues); *Allen v. Utley*, 129 F.R.D. 1, 4 (D.D.C. 1990) (sanctioning counsel for failing to conduct "objectively reasonable inquiry prior to filing" of alleged facts clients told them).

4

person would have believed them.[5]  Nor do they explain their basis for pursuing them after the results of investigations like the one completed by the Michigan Senate Oversight Committee have found their theories "indefensible," "appal[ling]," "demonstrably false," and based only on "willful ignorance or avoidance of th[e] proof."  Mich. S. Oversight Comm., *Report on the November 2020 Election in Michigan* at 2, 6, 16, 17 19 (June 23, 2021), https://misenategopcdn.s3.us-east-1.amazonaws.com/99/doccuments/20210623/SMPO_2020El ectionReport_2.pdf (urging "the attorney general consider investigating those who have been utilizing misleading and false information . . . to raise money or publicity"); *see also* Dkt. 103-6 (Lipshutz Decl., Exh. 4) (Hr'g. Tr. at 50:22-25) (warning counsel against relying on sources like MyPillow CEO Mike Lindell's website, self-published book, and movie).  Plaintiffs' counsel's ongoing lack of any factual inquiry into the veracity of their core allegations warrants sanctions.  *See Herron*, 858 F.2d at 335–36 (Rule 11 imposes a "continuing responsibility to review and reevaluate his pleadings and where appropriate modify them to conform to Rule 11").

*Second,* Plaintiffs' counsel do not attest to a reasonable prefiling inquiry into the legal basis for their pleadings.  They say that "[m]any hours were spent researching and proof reading [sic]" their filings.  Dkt. 118 at 18-19.  They also say they "tracked" the cases from which they copied their claims "on a daily basis."  *Id.* at 3.  Yet even now they reiterate the same frivolous Article III

---

[5] *See, e.g.*, Dkt. 103 at 3 n.1.  On June 24, 2021, the New York Supreme Court Appellate Division also suspended Rudy Giuliani from the practice of law in New York for "communicat[ing] demonstrably false and misleading statements to courts, lawmakers, and the public at large" that "were made to improperly bolster respondent's narrative that due to widespread voter fraud, victory in the 2020 United States presidential election was stolen from his client." *In the Matter of Rudolph W. Giuliani*, No. 2021-00506 at 1 (N.Y. Sup. Ct. App. Div. 1st Dep't. June 24, 2021). These statements included claims about the number of fabricated mail-in ballots sent in Pennsylvania, the number of dead people who voted, and the number of underage people who voted in Georgia, among other claims similar to what Plaintiffs have raised here.  *Id.* at 11, 14, 17.

standing arguments that the courts across the country (and this Court) rejected summarily. Rule 11 not only requires Plaintiffs' counsel to conduct a "reasonable inquiry" into the bases of their pleadings but also to "act reasonably given the results of their inquiries." *White*, 908 F.2d at 682.

Plaintiffs' counsel failed to follow this mandate. They justify their pursuit of this action despite the "veritable tsunami" of decisions that had already dismissed similar actions on the grounds that they are suing private entities or that Facebook was not a party in those suits. Dkt. 118 at 11–12; *id.* at 7 ("[t]his case is a damages case against private companies that transformed into state actors"); *id.* at 13 (claiming prior case "does not stand for the proposition that registered voters . . . cannot sue private companies that act under color of authority"). But specious distinctions of precedent cannot avoid sanctions. *White*, 908 F.2d at 682 (affirming Rule 11 sanctions despite "specious" distinction of precedent); *Herron*, 858 F.2d at 335 (Rule 11 provides for the "imposition of sanctions when warranted by specious arguments" such as where "a cursory inquiry would have disclosed a similar action . . . had been denied just prior."). Plaintiffs' counsel never explain how Facebook's status as a private entity (that they allege acted as a state actor) would change the fact that their Article III standing argument was premised on a generalized grievance common to all voters.[6] *Davis v. MCI Commun. Services, Inc.*, 421 F. Supp. 2d 1178,

---

[6] Plaintiffs' counsel now concede that "[o]f course there was an element of a generalized grievance" in the affidavits of their clients, Dkt. 118 at 13. *Id.* at 5 ("These Defendants caused a specific injury to all the Plaintiffs similar to that suffered by every registered voter."). This ignorance of the law is pervasive throughout Plaintiffs' counsel's response. For example, they assert that Colorado's long-arm statute could have applied to the state defendants because "they were all responsible for allowing a Colorado company, i.e., Dominion, to administer all or some of their respective state's general election." Dkt. 118 at 10. That is not how personal jurisdiction works. *See* Dkt. 23 at 3-4; Dkt. 56 at 2-4; Dkt. 63 at 3-5. And Plaintiffs' counsel still conflate redressability with the independent requirement to show a concrete, particularized injury. Dkt 118 at 14 ("With regard to a concrete and particularized injury, at a minimum, Plaintiffs suffered nominal damages."). They also request in their response attorney's fees for responding to the

1186 (E.D. Mo. 2006) (imposing sanctions where counsel failed to cite case to support theory).

Plaintiffs' counsel simply chose, and now continue to choose, to disregard the avalanche of cases holding that their clients lacked standing, that Facebook is not a state actor, and that they did not have personal jurisdiction over defendants in Colorado. *See* Dkt. 56 at 8. While "[e]very party has the right to zealously pursue all legal relief to which they may be entitled," Plaintiffs' counsel "have a concomitant obligation as officers of the court and stewards of the process to discourage the pursuit of frivolous, inconsequential, or ineffective remedies." *Consumer Crusade, Inc. v. Public Telephone Corp. of Am.*, 2006 WL 2434081, at *7 (D. Colo., Aug. 21, 2006). Plaintiffs' counsel failed to abide by this obligation. And their pleas of good faith provide no defense and are belied by their conduct. *Carlson v. Town of Mountain Village, Colorado*, 2019 WL 5819971, at *3 (D. Colo. Nov. 7, 2019) ("[s]anctions may be awarded pursuant to Section 1927 even in the absence of bad faith"); *Shackelford v. Courtesy Ford, Inc.*, 96 F. Supp. 2d 1140, 1145 (D. Colo. 2000) ("inference of bad faith" possible "from the fact that an attorney prosecutes a meritless claim or continues to prosecute a claim after its lack of merit becomes apparent").[7]

## III.    PLAINTIFFS' COUNSEL'S LACK OF CANDOR WARRANTS SANCTIONS

Consistent with their conduct throughout this litigation, Plaintiffs' counsel's response

---

motion for sanctions and other sanctions (Dkt. 118 at 1, 19), yet offer no legal or factual basis upon which this Court could give them either. "Counsel can no longer avoid the sting of Rule 11 sanctions by operating under the guise of a pure heart and empty head." *Smith v. Ricks*, 31 F.3d 1478, 1488 (9th Cir. 1994) (quotation omitted); *see also Collins v. Daniels*, 916 F.3d 1302, 1320 (10th Cir. 2019).

[7] At the very least, Plaintiffs' counsel should have realized their error when Facebook (and others) served them with Rule 11 letters and filed motions to dismiss, detailing the many fundamental deficiencies with their pleadings. Yet Plaintiffs' counsel continued to impose unreasonable litigation expenses on Facebook in defending against a frivolous opposition, motion for leave to amend, and proposed amended complaint that multiplied these proceedings. Dkt 103 at 1, 11–12.

mischaracterizes the substance of their pleadings and demonstrates a continued lack of candor. Their ongoing misconduct has multiplied these proceedings and falls well below the standard of care required of practicing attorneys. Sanctions are warranted on this additional ground under Rule 11, Section 1927, or the court's inherent authority.

Plaintiffs' counsel's misrepresentations about this suit are confounding. They now claim that their action was justified as they were not trying to overturn the 2020 election and try to distinguish other failed election cases on the ground that those plaintiffs sought injunctive relief. *See* Dkt. 118 at 3, 9, 15 (asserting this "case is not for injunctive relief"). But both Plaintiffs' original and amended Complaints sought injunctive relief. Dkt. 1, ¶¶ 2, 407-09 (seeking "permanent injunctive relief"); Dkt. 48-1, ¶¶ 880-82 (same). They also sought a declaratory judgment that the actions of numerous state officials in certifying the election results were "ultra vires" and "legal nullities" and that the election laws of these states were unconstitutional as applied to the 2020 election. Dkt. 1 at 83; Dkt. 48–1 at 114–115. Even now, they justify their suit by alleging "the results of the 2020 Presidential election may not be legitimate" and "the voters must demand that those responsible be held accountable." Dkt. 118 at 17. Plaintiffs' counsel cannot rewrite the record, and their continued attempts to misrepresent their own pleadings should doom their effort to avoid sanctions now.

Likewise, Plaintiffs' counsel's response misdescribes their conduct that multiplied these proceedings and that show a lack of due care. They did not just "file one complaint" (Dkt. 110 at 13) that was dismissed. They also filed: 1) a motion for leave to amend with an increasingly voluminous Amended Complaint that added 150 named plaintiffs, 400 new paragraphs, six new counts (four voluntarily dismissed), and four more state defendants (all voluntarily dismissed)

(Dkt. 48); 2) an opposition brief to Facebook's motion to dismiss that was 10 pages over the limit prescribed by this Court's practice standards (Dkt. 40); and 3) an improper motion to take judicial notice the night before the hearing on the motions to dismiss without meeting and conferring (Dkt. 90).[8] They have misstated defendants' position in filings and repeatedly missed filing deadlines. *See, e.g.*, Dkt. 120 (admitting misrepresentation); Dkt. 115 (request to extend time for response to Facebook's motion for sanction a day after it was due); Dkt. 78 (seeking leave to file reply out-of-time). This sort of reckless and willful disregard for their duties—particularly when considered as a whole—is subject to sanction, *e.g., Ricks,* 31 F.3d at 1488, and that Plaintiffs' counsel still try to deny these verifiable facts makes sanctions all the more appropriate to deter its repetition.

Finally, Plaintiffs' counsel should face a consequence for their effort to mislead this court by citing cases without noting that the suits already had been dismissed. *See* Dkt. 103 at 3. Plaintiffs' counsel continue to rely on these cases to support their suit, Dkt. 118 at 6, and by including them in the Complaint and doubling down in their Amended Complaint (*e.g.*, Dkt. 48 at ¶ 366), they asked this Court to treat their allegations as true. Plaintiffs' counsel offer no reason for their failure to note that these cases were dismissed and say it was fine to just cite them. Where counsel's citations are this "cavalier," sanctions are "not only proper, they are also necessary" and a "lack of good faith . . . manifest." *Herzfeld & Stern v. Blair*, 769 F.2d 645, 646 (10th Cir. 1985).

---

[8] In their response, Plaintiffs' counsel claim that they filed the motion for judicial notice "out of sense of courtesy and transparency" and are "stagger[ed] and confus[ed]" over how this "translated into a nefarious act." Dkt. 118 at 3. If Plaintiffs' counsel had read any of this circuit's case law on judicial notice, they would not be confused. *See Simon v. Taylor*, 794 F. App'x 703, 720 (10th Cir. 2019) (observing that judicial notice is generally limited to "commonplace matters like the timing of a sunrise, geographical boundaries, or matters of political history"); *Zeier v. G.F. Investment Servs., LLC*, 2019 WL 1244968, at *3 n.2 (D. Colo. Feb. 28, 2019) (taking "judicial notice of the fact that Palm Beach and Fort Lauderdale are in" certain counties).

## IV. SANCTIONS ARE NEEDED TO DETER ATTORNEY MISCONDUCT

Plaintiffs' counsel provide no justification for their misrepresentation to their clients and the public that this suit could result in $160 billion in *nominal* damages for the class. Dkt. 1 at 82; Dkt. 103-7 (Lipshutz Decl., Exh. 5). They certainly cite no instance of a court making such an award of nominal damages. And they now admit that thousands of people gave them money under this pretense that they had no reasonable legal basis to make. Dkt. 118 at 16–17.

The First Amendment does not protect the solicitation of money under false pretenses, nor do the ethical rules of conduct allow attorneys to deceive members of the public about the potential recovery in a suit. *Fla. B. v. Went For It, Inc.*, 515 U.S. 618, 623–24 (1995) ("[T]he government may freely regulate [attorney] commercial speech that . . . is misleading."); *Holley v. Gilead Scis., Inc.*, 2021 WL 940594, at *1 (N.D. Cal. Mar. 12, 2021) ("Making false statements in attorney advertising harms the legal profession as a whole and damages the credibility of the lawyers making or authorizing the statements."); Colo. R. Prof. Conduct 7.1 (forbidding misrepresentations). An attorney is required "to dissuade a client from pursuing specious claims, to avoid possible sanctions by the court, as well as unnecessary costs of litigating a worthless claim." *Martinez*, 2021 WL 2227830, at *14 (citation omitted). Plaintiffs' counsel here took the opposite tack and should bear associated costs. *Erickson v. Newmar Corp.*, 87 F.3d 298, 303 (9th Cir. 1996) ("District judges have an arsenal of sanctions they can impose for unethical behavior[,] … includ[ing] monetary sanctions.").

## V. CONCLUSION

For the reasons stated above, sanctions under Rule 11, 28 U.S.C. § 1927, and this Court's inherent authority should be granted to cover Facebook's attorneys' fees, expenses, and costs.

Dated: July 6, 2021

Respectfully submitted,

*/s/ Josh Lipshutz*

Joshua S. Lipshutz
**GIBSON, DUNN & CRUTCHER LLP**
1050 Connecticut Avenue, NW
Washington, DC  20036
Telephone:	202.955.8217
Facsimile:	202.530.9614
Email:	jlipshutz@gibsondunn.com

Ryan T. Bergsieker
Natalie J. Hausknecht
**GIBSON, DUNN & CRUTCHER LLP**
1801 California Street, Suite 4200
Denver, CO  80202-2642
Telephone:	303.298.5700
Facsimile:	303.298.5907
Email:	rbergsieker@gibsondunn.com
	nhausknecht@gibsondunn.com

*Attorneys for Facebook, Inc.*

**CERTIFICATE OF SERVICE**

      I hereby certify that on July 6, 2021, I electronically filed a copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to the email addresses denoted on the Court's Electronic Mail Notice List.

*/s/ Joshua S. Lipshutz*
Joshua S. Lipshutz
