## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-03747

KEVIN O'ROURKE, et al.,

Plaintiffs,

v.

DOMINION VOTING SYSTEMS INC., et al.,

Defendants.

---

## PLAINTIFFS' RESPONSE TO MOTION FOR SANCTIONS
## FILED BY DEFENDANTS GRETCHEN WHITMER AND JOCELYN BENSON

---

COMES NOW counsel for Plaintiffs, and hereby submit the following Response to Motion for Sanctions filed by Defendants, GRETCHEN WHITMER (Ms. Whitmer) and JOCELYN BENSON (Ms. Benson), and hereby respectfully request that the Court deny the motion, and award undersigned counsel reasonable attorney fees for the time necessary to respond, and any other sanction that this Court deems just under the circumstances.

### I.  INTRODUCTION

On December 22, 2020, Plaintiffs filed their Complaint, which named Ms. Whitmer and Ms. Benson, as Defendants in their individual capacity, having operated under color of their official authority as Governor and Secretary of the State of Michigan, respectively, for their breach of the U.S. Constitution, as outlined in the Complaint. Doc. 1, ¶¶ 127-190. The original eight (8) Plaintiffs, two (2) of whom are Michiganders, after having been joined by 152 additional Plaintiffs, including eight (8) more registered voters from Michigan, filed a motion to amend the complaint, with an appropriate motion.

## II.  DEFENDANTS COULD HAVE CONSENTED TO JURISDICTION

In total, ten (10) Plaintiffs from Michigan chose to voluntarily appear to defend their

rights, and the rights of other registered voters from Michigan and elsewhere, and consented to

the jurisdiction of the District Court of Colorado. This State is a common hub for Plaintiffs'

allegations—not only geographically as being central to the country, but also as the home state of

Defendant Dominion Voting Systems, Inc. (Dominion), and in which the remaining Defendants

were "doing business," and within which they have substantial ties. Dominion and the Center for

Technology and Civic Life (CTCL) were used as tools to privatize the elections in Michigan and

across the country. Facebook, Inc. (Facebook), has substantial ties and is currently doing

business in Colorado. Its participation in the unconstitutional conduct of its CEO, Defendant,

Mark Zuckerberg, and his wife and employee of Facebook, Priscilla Chan, is well documented in

the Plaintiffs' Complaint, Amended Complaint, and Response to Facebook's Motion to Dismiss.

Docs. 1, 40 & 48.

All of these Defendants can dispute the factual allegations in said pleadings, and the

specific evidence of election fraud that has already been exposed. However, their position on the

facts conflicts with the well-grounded averments in the Plaintiffs' complaints. With regard to

Michigan, as stated multiple times, the Plaintiffs have not sued Defendants, Ms. Whitmer and

Ms. Benson, in their respective official capacity. The State of Michigan is not being sued, nor

have the Plaintiffs requested that this Court restrain and enjoin the State of Michigan, or any of

its state actors. This is a class action/civil rights case for damages based upon the completed

constitutional and voting rights violations committed by the Defendants, as outlined in the

Complaint. The Court found that the claims were a generalized grievance against government,

but no government has been sued. Accordingly, the matter is currently on appeal.

### III. THE MICHIGAN ATTORNEY GENERAL SHOULD BE DEFENDING THE REGISTERED VOTERS OF MICHIGAN

Defendants, Ms. Whitmer and Ms. Benson, admitted to service, and submitted to the jurisdiction of this Court for purposes of filing their respective motions to dismiss and objections to the Plaintiffs' motion to amend the complaint. Both could have waived any objection to personal jurisdiction, but instead objected and only entered in their official capacity, through the Office of the Michigan Attorney General. Because of that, counsel for the Plaintiffs could not establish with certainty that these Defendants were subject to Colorado's long-arm statute. Now, instead of litigating the allegations, these Defendants simply declare that the 2020 Presidential election was fairly conducted in Michigan. Thus, these Defendants have chosen to avoid examination and scrutiny of the so-called "most secure election in history" at all costs. Integrity minded voters want the truth. However, these Defendants just want everyone to be quiet, and to sanction any attorney that dares to defend the rights of those damaged.

Reasonable minded people would think that these Defendants, confident in their proclamations of integrity, would want to meet any test to support their claims of election security, particularly when challenged in a court of law. Instead, these Defendants do not want to be subjected to scrutiny, and have fought transparency in every venue—not just here, but also within the State of Michigan. This type of conduct is unconstitutional, in and of itself, and discourages public participation and freedom of expression. These Defendants seek sanctions from this Court to continue their subversive strategy, and to attempt to thwart registered voters of Michigan from coming to this Court, or any other, and demanding protection of and compensation for the violation of their rights. Plaintiffs are working under the assumption that all registered voters demand a system that is accurate and fair; and, when violated, would otherwise demand vindication through the justice system.

Nonetheless, in light of the procedural posture of the case, Plaintiffs' counsel chose to voluntarily dismiss Ms. Whitmer and Ms. Benson, without prejudice. In doing so, the Plaintiffs do not concede the material issues of fact that are contained in their Complaints. With that, because these Defendants were not required to respond to the factual allegations in the Complaints, they cannot now simply state which facts suit them for purposes of their request to sanction undersigned counsel.

Over half the country, including nearly one-third of Democrats, believes that cheating likely affected the outcome the 2020 Presidential election.[1] This was not caused by the Plaintiffs' claims, or anything that undersigned counsel has plead on their behalf. This is because the objective facts (which admittedly may be difficult to acknowledge for those whose candidate won) are overwhelming in their breadth and scope.

For example, on March 9, 2021, the State of Michigan Court of Claims found specifically that Ms. Benson violated state law when she circumvented the legislature with unilateral orders on absentee voting.[2] This precise conduct was complained of here by Plaintiffs. Complaint, ¶ 136-140. In *Genetski v. Benson*, the Court found that:

> [N]owhere in this state's election law has the Legislature indicated that signatures are to be presumed valid, nor did the Legislature require that signatures are to be accepted so long as there are any redeeming qualities in the application or return envelope as compared with the signature on file. Policy determinations like the one at issue — which places the thumb on the scale in favor of a signature's validity — should be made pursuant to properly promulgated rules under the APA or by the Legislature.[3]

---

[1] *Election Integrity:62% Don't Think Voter ID Laws Discriminate*, Rasmussen Reports (Apr. 13, 2021).
[2] Andrew Mark Miller, *Michigan Judge Rules Secretary of State Violate Election Law By Unilaterally Changing Absentee Voting Rules*, Washington Examiner (Mar. 16, 2021).
[3] *Genetski v. Benson*, Case No. 20-216-MM, Michigan Court of Claims, Order of March 9, 2021. *See also* Plaintiffs' Response to Defendant Whitmer and Benson's Motion to Dismiss, Doc. 79.

But Article II of the U.S. Constitution requires election rules to be decided by state legislatures and not elected officials. This violation affected every voter in the country, specifically concerning the 2020 Presidential election.

In that regard, the Court found that these Plaintiffs do not have standing to forward their claims. However, Plaintiffs did not unnecessarily prolong the proceedings. Instead, when it became clear that these Defendants would not voluntarily appear in their individual capacities, Plaintiffs ended that battle, here in the District of Colorado. It is only the Michigan Attorney General who now wants to prolong the matter in this Court, while still seeking to prevent the examination of the disputed facts.

The Michigan Attorney General only appeared on behalf of *Governor* Gretchen Whitmer and *Secretary of State* Jocelyn Benson. Those persons have not been sued, for to do so would be tantamount to suing the State of Michigan. These same parties, in their official capacity, now seek to have this Court sanction Plaintiffs' counsel under its inherent authority, and pursuant to 28 U.S.C. § 1927, for not dismissing the case earlier, despite the fact that Plaintiffs did not sue either of these Defendants in the capacities in which they have appeared. In fact, when these Defendants appeared in their official capacity, Plaintiffs specifically challenged the Michigan Attorney General's appearance, and filed a motion to strike their motion to dismiss, on that same basis. Doc. 68. Even there, however, this Court denied the motion to strike *sua sponte*, and the Plaintiffs filed a response without any additional work required by these Defendants.

Plaintiffs still contend the Michigan Attorney General had no place defending these Defendants in their individual capacity, as the Office of Attorney General owes its duties to the People of the State of Michigan, not specific officeholders who violate the constitution. As stated multiple times in the complaints and other pleadings, when a state official violates the

constitution, she is stripped of her official capacity and is liable in her individual capacity. *Ex Parte Young*, 209 U.S.123 (1908). This is black letter law.

In its order denying the Plaintiffs' motion to strike, this Court noted that "the allegations of the complaint are merely allegations," and the Court believed a preliminary finding of a constitutional violation by these Defendants would be needed to bar the Michigan Attorney General's appearance on behalf of Defendants who were not sued in their official capacities. Doc. 70, p. 4. However, the Plaintiffs do not have to prove their case in the pleading stage. They only had to plead certain well plead facts to establish a case and controversy. In that, the Plaintiffs alleged that these Defendants violated the constitution. The claims were not frivolous or made up out thin air. They were all based upon facts that were easily researchable and confirmed by undersigned counsel—most of which were based upon the submission of numerous affidavits filed in multiple other cases. The Defendants like to call this plagiarism, when, in reality, it is merely the pleading of particular facts, the sources for which were all cited in the original Complaint.

Nevertheless, prior to any ruling on any motion to dismiss, Plaintiffs voluntarily dismissed these Defendants. Accordingly, the only sanctionable conduct concerning these Defendants occurred when the Michigan Attorney General filed its motion seeking sanctions six (6) weeks after Plaintiffs' dismissal, without objection.

Moreover, the Plaintiffs did not file their Complaint to harass these Defendants. Yet, it is clear that these Defendants seek to harass Plaintiffs by filing this motion against their attorneys, with knowledge of Plaintiffs' pending appeal against other Defendants. In fact, the participation of the Michigan Attorney General, and particularly the timing of its sanctions motion, is evidence itself of coordination among all Defendants to brow beat Plaintiffs' counsel into

submission, discourage the Plaintiffs and create confusion and contention between the Plaintiffs and their attorneys.

### IV.  PLAINTIFFS HAD A RIGHT TO SEEK REDRESS OF THE VIOLATION OF THEIR CONSTITUTIONAL RIGHTS BY BRINGING A FACTUAL AND LEGAL CLAIM AGAINST MS. WHITMER AND MS. BENSON

The material facts presented by Plaintiffs in their original Complaint and Amended Complaint were well researched and simply presented. Additionally, the legal claims made were based upon the presentation of a civil rights/class action lawsuit, which no other parties have brought. Plaintiffs were not responsible for guaranteeing the rights of the People of Michigan and the United States. Defendants, Ms. Whitmer and Ms. Benson, are responsible for the protection of those rights, and both took an oath of office to support the Michigan Constitution *and* the Constitution of the United States. These Defendants were responsible for certifying Michigan's' election, and the Defendants can scoff and laugh at Plaintiffs, but those certifications *are* void *ab initio*. The remaining Defendants can deny that averment, but the fact still remains and, if allowed, will be proven by Plaintiffs at trial. This Court does not need to declare the certifications void—they are void, from the start.

As alleged, these Defendants, contrary to their oaths of office, administered the 2020 Presidential election in a manner which was clearly corrupted, in violation of the due process and Presidential voting rights of every registered voter in America. Colloquially, supporters of President Biden call these Presidential election challenges "The Big Lie." Those who believe that there was systemic, wide spread fraud in the 2020 Presidential election call it "The Crime of the Century." Normally, disputes such as these can be handled in a court of law. However, even noting this Court's dismissal, under no circumstances are the claims frivolous, dangerous or

subversive to our democracy. To the contrary, a healthy republic depends upon a robust and free exchange of ideas, and an open courthouse to address these controversies.

Here, Plaintiffs, in honor and with counsel, sought redress against the named Defendants for their respective constitutional violations, all of which, was outlined in their respective complaints. Regarding Michigan, just recently members of the Michigan Senate released a report which concluded that "[t]his Committee found no evidence of widespread or systemic fraud in Michigan's prosecution of the 2020 election." *See Michigan Senate Oversight Committee Report* (June 23, 2021). However, that report is not dispositive of the issue. In fact, the report was immediately scrutinized and contradicted by others close to the situation.[4]

According to former Michigan State Senator Patrick Colbeck, the basic premises of the report are questionable. For example:

- Significant emphasis in the report was placed upon how election SHOULD have worked not how it DID work. Sworn affidavits and eyewitness testimonies from poll challengers on the ground were dismissed as confused, or due to poor training while testimony from election officials were affirmed as a matter of fact whether supported by evidence or not.

- The Committee repeatedly pushed the responsibility for investigating evidence to the citizens offering the evidence. These citizens often did not have access to the information needed to investigate further. In fact, the Michigan Secretary of State and Dominion lawyers waged an aggressive campaign to block any attempts by citizens to access this information via clerks willing to cooperate with such an investigation. In contrast, the Committee would have been able to access this information via legislative subpoena authority, yet, when they did so, they required non-disclosure agreements for anyone in the legislature seeking to view the data gathered from the subpoena.

- There was a remarkable lack of substantive footnote references in the Committee report that would allow interested observers to review the sources for themselves. The appendix, for example, which in scholarly papers features a bibliography, simply provides a table of Antrim County election results by precinct plus images of precinct tape printouts from each precinct without explanation, or appropriate timestamps.

---

[4] Patrick Colbeck, *Oversight Report is Full of Oversights*, Let's Fix Stuff (June 23, 2021).

- The report consistently repeats the flawed assertion that the integrity of the election can be demonstrated simply by running ballots through the tabulator. Using their logic, if the tabulation yields the same results as the tape printouts from election day, then all is good. In order to demonstrate the integrity of an election, however, it is critical that the chain of custody for election materials is maintained. The report asserts that insisting that election officials demonstrate that the chain of custody has been secured is "incredibly misleading, demeaning, and irresponsible." However, demonstration of the integrity of the chain of custody is an important factor in the call by citizens for a forensic audit. The report's dismissal of the importance of the chain of custody demonstrates why the pursuit of a forensic audit has been dismissed by members of the Michigan Senate. Their failure to understand the importance of the chain of custody is a serious issue.

- The Committee appears to be operating under an extremely unique definition of "election fraud" that dismissed evidence of fraud if it did not add up to the 154,188 votes promoted as the margin of victory for Joe Biden. This failure of reasoning dismisses the cumulative effect of breaches in the chain of custody and violations of existing statute.

- The report further appeared to be designed to intimidate anyone asserting election fraud, rather than to inform reasonable observers. The Chair of the Senate Oversight Committee, Senator Ed McBroom has a well-known visceral dislike of Attorney Matt DePerno, who is leading the investigation into Antrim County election fraud. This bias appears to have significantly influenced the chairs willingness to "investigate" allegations of election fraud. In fact, the report calls for criminal investigation of people such as Matt DePerno by the attorney general of "those who have been utilizing misleading and false information about Antrim County to raise money or publicity for their own ends."

- In a constitutional republic, we have a right to free speech. We have a right to freedom of assembly. We have a right to freedom of the press. We have a right to seek redress of our grievances. Under the Michigan Constitution, we also have a right to an audit. The Committee investigation seems to be focused more upon settling personal vendettas rather than respecting the rights of our citizens.[5]

In a subsequent rebuttal, Mr. Colbeck stated that each section of the report contains glaring errors.[6] Notably, according to Mr. Colbeck, the same individuals who issued the report are also making claims of "severe weaknesses in our election system," and are now seeking

---

[5] Patrick Colbeck, *MI Senate Election Report: #BigLie vs. #BigTruth*, Let's Fix Stuff (June 29, 2021).
[6] *Id.*

"statutory improvements to [Michigan's] election system."[7] Further, since dismissal of these Defendants, other Michigan state legislators are seeking to replicate the forensic audit occurring in Maricopa County, Arizona.[8]

## V.  SANCTIONS AGAINST PLAINTIFFS COUNSEL PURSUANT TO 28 U.S.C. § 1927 ARE NOT APPROPRIATE

28 U.S.C. § 1927 provides in pertinent part that:

> Any attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

So as to not duplicate any previous arguments made in response to other similar motions for sanctions filed by other Defendants, Plaintiffs' counsel hereby incorporates by reference their other arguments made in said responses. Docs. 110, 114, and 118.

Suffice it say, Plaintiffs' counsel never acted in a fraudulent or dishonest manner. Plaintiffs' counsel never filed multiple, unnecessary pleadings or motions in a vexatious or unreasonable manner. Despite the Michigan Attorney General's attempt to characterize Plaintiffs' Complaint otherwise, Plaintiffs' Complaint was distinguishable from every other election related lawsuit brought, in every other jurisdiction. Unlike here, every lawsuit filed by either a State, or individual voters, sought extraordinary relief in the form of injunctive relief. As stated many times by Plaintiff, this case was and is a damages case based upon a number of different acts of the Defendants, which violated the due process and voting rights of every registered voter. In those other cases, the plaintiffs sought to enjoin the acts of defendants in their official capacity, which, based upon the relief sought, required the respective courts to analyze the facts with a higher standard of proof required, i.e., a substantial likelihood of success. Here,

---

[7] *Id.*
[8] Samuel J. Robinson, *Michigan Lawmaker Introduces Bill Calling for "Forensic Audit" of 2020 Election*, M-Live (June 22, 2021).

the Plaintiffs claims were required to be plausible. Nonetheless, this Court found that the Plaintiffs' averments were a generalized grievance of government, which did not confer standing to proceed.

That issue is now on appeal in the United States Court of Appeals for the 10th Circuit, referenced by case number 21-1161. However, Plaintiffs' counsel never filed any false pleadings or frivolous motions. Plaintiffs' counsel relied upon expert witness statements, and other affidavits signed under oath. Further, Plaintiffs' counsel relied on statements of counsel and other parties in other cases, only when those facts where readily available and confirmable.

Based upon those alleged facts, Plaintiffs' counsels' focus was on the damages suffered by individual voters across the country. Plaintiffs' counsel and staff poured over hundreds of affidavits from prospective plaintiffs from 48 states, all of which expressed dismay, anger, disillusionment, worry, fear, apprehension, and disappointment in how these Defendants, and each of them, unconstitutionally affected the outcome of the 2020 Presidential election. It is not enough to just dismiss these Plaintiffs as "Trump supporters," or "Qanons." Those are derogatory terms that dismiss Plaintiffs as crazy, and their attorneys as partisan zealots. None of that is true. The Plaintiffs are all Americans, from every walk of life and across the political spectrum, all of whom care deeply about the integrity of the country's Presidential election process. Obviously, the country has been damaged by the events surrounding the 2020 Presidential election, but registered voters have been uniquely damaged by Defendants. Accordingly, these concerns simply cannot be dismissed as conspiracy theories, and "lies" based upon misinformation and conjecture. These are serious issues that need to be handled in a serious manner. The future of the country depends upon it. If Plaintiffs do not have standing, then so be it. The Court of Appeals and/or the Supreme Court will decide that issue. In the meantime, it is

unfair to sanction the lawyers that brought the issue to the Court for determination. The Plaintiffs here have not asked for extraordinary relief. Plaintiffs never once requested that this Court confer standing, but instead have insisted from the beginning that, based upon their claims and damages, they *have* standing. Obviously, the Defendants disagreed, and the Court ruled in their favor. That does not mean that Plaintiffs' asserted frivolous arguments or misrepresented factual assertions. Nor does it mean that the Plaintiffs are even wrong. That is to be determined by another court, on another day. In the interim, the Defendants seek to punish counsel for even broaching the topic. That is not justice. That is revenge for disagreeing with a set of facts, and the law—which is still developing in this area. Moreover, it is revenge which has been dastardly deployed to create a chilling effect against those who seek justice for the violation of rights.

## V.  CONCLUSION

For the reasons above, Plaintiffs' counsel respectfully request that this Court deny the motion for sanctions, and award undersigned counsel reasonable attorney fees for the time necessary to respond, and any other sanction that this Court deems just and proper under the circumstances.

Dated this 8th day of July, 2021.

Respectfully submitted,

***PLAINTIFFS COUNSEL:***

By: *s/Ernest J. Walker*               By: *s/ Gary D. Fielder*
Ernest J. Walker (MI P58635)          Gary D. Fielder (CO 19757)
ERNEST J. WALKER LAW OFFICE            LAW OFFICE OF GARY FIELDER
1444 Stuart St.                        1444 Stuart St.
Denver, CO 80204                       Denver, CO 80204
(720) 306-0007                         (720) 306-0007
ernestjwalker@gmail.com                gary@fielderlaw.net

**CERTIFICATE OF SERVICE**

       The undersigned hereby certifies that on July 8, 2021, a copy of the foregoing document was electronically filed with the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*s/Gary D. Fielder*
Gary D. Fielder, Esq.
Law Office of Gary Fielder
1444 Stuart St.
Denver, CO 80204
(720)306-0007
gary@fielderlaw.net