# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-3747-NRN

KEVIN O'ROURKE,
NATHANIEL L. CARTER,
LORI CUTUNILLI,
LARRY D. COOK,
ALVIN CRISWELL,
KESHA CRENSHAW,
NEIL YARBROUGH and
AMIE TRAPP,

     Plaintiffs,

v.

DOMINION VOTING SYSTEMS, INC., a Delaware corporation,
FACEBOOK, INC., a Delaware corporation,
CENTER FOR TECH AND CIVIC LIFE, an Illinois non-profit organization,
MARK E. ZUCKERBERG, individually,
PRISCILLA CHAN, individually,
BRIAN KEMP, individually,
BRAD RAFFENSPERGER, individually,
GRETCHEN WHITMER, individually,
JOCELYN BENSON, individually,
TOM WOLF, individually,
TONY EVERS, individually,
ANN S. JACOBS, individually,
MARK L. THOMSEN, individually,
MARGE BOSTELMAN, individually,
JULIE M. GLANCEY, individually,
DEAN KNUDSON, individually,
ROBERT F. SPINDELL, JR., individually, and
DOES1-10,000,

     Defendants.

---

**DEFENDANTS GOVERNOR GRETCHEN WHITMER AND SECRETARY OF STATE JOCELYN BENSON'S REPLY IN SUPPORT OF MOTION FOR SANCTIONS**

Governor Whitmer and Secretary Benson moved for sanctions because counsel engaged in sanctionable conduct by using this Court to pursue vexatious and meritless claims attacking the integrity of Michigan's November 2020 presidential election. Defendants did not do so as a form of "revenge" and to "punish" Plaintiffs and their counsel for speaking as Plaintiffs baselessly assert.

Plaintiffs' claims were frivolous where they alleged no facts supporting personal jurisdiction over the Michigan Defendants, where Plaintiffs lacked standing to sue over their generalized grievances of harm to every voter in the Nation, and where Plaintiffs' substantive constitutional claims were unsupported by the facts and contrary to existing case law. And factually, Plaintiffs' complaint offered nothing other than allegations recycled from other lawsuits that were based on misunderstandings of Michigan law and were unsupported by actual evidence of error or fraud.

Plaintiffs' response to Defendants' motion fails to meaningfully address any of Defendants' arguments, instead offering nonsensical claims such as Defendants should have consented to this Court's jurisdiction and that the Michigan Attorney General's office has improperly appeared and defended Governor Whitmer and Secretary Benson. According to Plaintiffs it is Defendants who have engaged in objectionable conduct by seeking to hide the truth about Michigan's election, and they persist in their claims that Michigan's election was corrupt. But the very assertion of these baseless arguments, in fact, demonstrate that sanctions are fully warranted.

Michigan's presidential election was secure and its result accurate as was confirmed by numerous post-election audits. Further, a report from Michigan's Senate confirmed that there

was no evidence of widespread fraud or error in the conducting of the election. There is no truth to Plaintiffs' claims that the election was corrupt, and there never was.

This Court has the inherent authority to impose sanctions on parties that abuse the judicial process or act vexatiously and in bad faith. Further, this Court has the authority to impose sanctions under 28 U.S.C. § 1927 where a plaintiff vexatiously extends a case past the time a reasonable plaintiff would have ended it. Both grounds for imposing sanctions are satisfied here.

## LEGAL ARGUMENTS

The Michigan Defendants moved for sanctions pursuant to this Court's inherent authority to order sanctions and under 28 U.S.C. § 1927. Defendants make the following points in reply to Plaintiffs' response. (ECF No. 127, Plaintiffs' Resp.)

### A. Plaintiffs' argument that the Michigan Defendants could have "consented to jurisdiction" is without merit and supports the imposition of sanctions.

In their brief, the Michigan Defendants argued that sanctions were appropriate because Plaintiffs never alleged, in either complaint, a colorable basis for exercising personal jurisdiction over Defendants in Colorado. (ECF No. 109, Michigan Defendants Mot., pp 3-5.)

Plaintiffs' respond that Governor Whitmer and Secretary Benson "could have waived any objection to personal jurisdiction" and that Plaintiffs were somehow stymied in their efforts to demonstrate jurisdiction because Defendants appeared and defended in this case "in their official capacity" and that "[b]ecause of that, counsel for the Plaintiffs could not establish with certainty that these Defendants were subject to Colorado's long-arm statute." (ECF No. 127, p 3.) By this argument Plaintiffs appear to concede that they had no factual or legal basis for alleging jurisdiction in Colorado over the Michigan Defendants, and were simply hoping that these Defendants would not contest personal jurisdiction. That is not how the law works—or how

2

licensed attorneys should practice—and is sanctionable conduct. And whether these Defendants were sued in their official or individual capacities—which are principles Plaintiffs' counsel fail to grasp[1]—is irrelevant because the test for personal jurisdiction would still be the same. Indeed, Plaintiffs cite no case law suggesting otherwise. And as explained in Defendants' principal brief, Plaintiffs failed to demonstrate any basis for personal jurisdiction. *See Int' Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).

Plaintiffs go on to argue that by defending themselves on the basis of jurisdiction, Governor Whitmer and Secretary Benson are trying to hide the truth about the presidential election in Michigan. (ECF No. 127, pp 3-4.) But nothing could be further from the truth. Aside from this argument not being responsive to the motion for sanctions itself, federal courts are courts of limited jurisdiction and raising the lack of personal jurisdiction over the Defendants was entirely appropriate. Indeed, this Court noted in its order denying Plaintiffs' motion to strike that Defendants "ma[de] predictable arguments, such as lack of personal jurisdiction in Colorado over actions taken by officials located in another state[.]" (ECF No. 70, Order, p 2.) Defendants are not hiding—if the Michigan Plaintiffs want to challenge Michigan's election, they may try but must do so in the Michigan courts. Governor Whitmer and Secretary Benson are certainly

---

[1] As this Court previously explained to Plaintiffs and their counsel, simply alleging that the Michigan Defendants acted unconstitutionally in performing their official duties as Governor and Secretary does not vitiate their status as government officials. (ECF No. 70, pp 2-4.) Under the Eleventh Amendment, a suit for damages may proceed against a state government official where the official is sued in his or her individual capacity as a state officer for performing official duties in an unlawful or unconstitutional manner. *See*, *generally*, *Hafer v. Melo*, 502 U.S. 21 (1991) (analyzing state officer liability under the Eleventh Amendment). The Michigan Attorney General's office routinely represents state officer clients sued in their individual capacities where the allegations are that the officer has acted unlawfully or unconstitutionally in the course of his or her official duties. *See, e.g.*, OAG 1979-1980, No. 5572, (October 4, 1979); 1979 WL 36906 (discussing legal representation). That is the case here. There is nothing improper or unusual regarding the Department of Attorney General's appearance and defense in this matter.

ready to defend the integrity of Michigan's presidential election and again dispel the falsehoods that these Plaintiffs and others continue to perpetuate regarding the election.

But here, Plaintiffs' claims as to personal jurisdiction were plainly "so frivolous as to reflect impermissible conduct," *Mountain W. Mines, Inc. v. Cleveland-Cliffs Iron Co.*, 470 F.3d 947, 954 (10th Cir. 2006), and the imposition of sanctions is warranted, *see Jamieson v. Hoven Vision, L.L.C.,* 2021 WL 1564788 at *2-3, decided 4/21/21 (D. Colo. 2021).

> **B.      Plaintiffs did not have a right to bring factually and legally deficient claims against the Michigan Defendants.**

Plaintiffs maintain that the "material facts presented by Plaintiffs in their original complaint and amended complaint were well researched" and that the "legal claims made were based upon the presentation of a civil rights/class action lawsuit, which no other parties have brought." (ECF No. 127, p 7.)  But Plaintiffs' claims were neither well-grounded in fact or law. See, e.g., *Grynberg v. Ivanhoe Energy, Inc*., 663 F. Supp. 2d 1022, 1025 (D. Colo. 2009) ("Rule 11 therefore imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well-grounded in fact, legally tenable, and not interposed for any improper purpose.")

Plaintiffs state that their claims were not frivolous or made up and that the facts alleged in the complaint "were easily researchable and confirmed by undersigned counsel—most of which were based upon the submission of numerous affidavits filed in multiple other cases."  (*Id*., p 6.) Plaintiffs argue that "Defendants like to call this plagiarism, when, in reality, it is merely the pleading of particular facts, the sources for which were all cited in the original complaint."  (*Id*.)

On the contrary, Defendants do not believe this was plagiarism so much as it was an ethical lapse on Plaintiffs' counsels' part.  As Defendants noted in their principal brief, (ECF No. 109, pp 12-13), and Plaintiffs admit, numerous allegations in Plaintiffs' original complaint

4

of fraud or error were simply repeated from various lawsuits that were rejected or dismissed by federal or Michigan state courts before Plaintiffs even filed their complaint on December 22, 2020.  (*See* ECF No. 1, Compl. ¶¶ 130-131, 135-137, 140, 142-145, 147, 149, 150-162, 164-165, 186.)  Notably, a federal judge in Michigan recently conducted a hearing on Michigan's and the other defendants' motions for sanctions in that election case and expressed doubt—if not shock—over the plaintiffs' counsels' similar conduct there.  (Ex A, 7/12/21 Transcript, *King, et al. v. Whitmer, et al.*, Case No. 20-13134 (E.D. Mich.) (Parker, J.)).

In *King*, the plaintiffs had simply repeated many of the same allegations of fraud or error and attached the same affidavits that had been filed in previous cases, regardless of the defects that had been pointed out in the other cases.  The court questioned the counsel numerous times whether they had an "obligation" to review such affidavits for themselves to determine their plausibility before simply filing them in support of their claims.  (*See, e.g.*, *Id*., pp 54-55, 142, 147-148, 150-151).  As that court observed, "every lawyer has that duty to do a minimal amount of investigation before filing evidence or what's purported to be evidence" to the court.  (*Id.*, p 148.)  The same issues and concerns are present here in this case, and this Court should consider conducting a similar inquiry of Plaintiffs' counsel.  It cannot be that attorneys can perpetuate and rely on false claims with impunity simply because another attorney in another case did so.

Further, as Plaintiffs acknowledge, the Oversight Committee for the Michigan Senate, led by a Republican, released a report in which it "found no evidence of widespread fraud or systemic fraud in Michigan's prosecution of the 2020 election."  (Ex B, Michigan Senate Oversight Committee Report, p 3).  The Oversight Committee investigated many of the issues Plaintiffs cited here as to Michigan—including the tabulation error that occurred in Antrim

5

County Michigan, as a result of human error, not fraud. (*Id.*, pp 14-19.) And before that Secretary Benson's office and local clerks, both Democratic and Republican, had conducted 250 post-election audits related to the November 2020 general election, which confirmed the integrity and accuracy of the election. (Ex C, Audit of the November 3, 2020 General Election). [2]

Plaintiffs' allegations of fraud and irregularity were not well taken before, and their continued maintenance of these claims even now in their response in opposition to Defendants' motion for sanctions demonstrates the type of vexatious and wanton conduct that warrants sanctions.

With respect to Plaintiffs' legal claims, Plaintiffs seem to suggest that this case was different from the other pre- and post-election cases that were filed and failed because it was purportedly brought as a civil rights case, not an elections case, and Plaintiffs seek different relief.  (ECF No. 127, pp 7, 10.)

While the relief requested may have been different here, Plaintiffs' substantive claims against the Michigan Defendants where the same or similar to those alleged in other post-election cases.  And as explained in Defendants' principal brief, Plaintiffs' arguments in support of subject-matter jurisdiction were frivolous.  This is especially true with respect to the issue of standing, where Plaintiffs continue to maintain that Defendants alleged actions violated the "voting rights of every registered voter in America." (ECF No. 127, p 7.)  But as the Supreme Court has stated, "a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the

---

[2] *See* More than 250 audits confirm accuracy and integrity of Michigan's election, March 2, 2021, available [SOS - More than 250 audits confirm accuracy and integrity of Michigan's election](#).

public at large—does not state an Article III case or controversy." *Lance v. Coffman*, 549 U.S. 437, 439 (2007). And weeks before Plaintiffs filed their complaint, the Supreme Court rejected similar arguments in *Texas v. Pennsylvania*, 141 S. Ct. 1230 (2020); 2020 WL 7296814, at *1 (U.S. Dec. 11, 2020), a case on which Plaintiffs extensively relied. (ECF No. 1, Compl., ¶¶ 130-131, 133-137, 140, 142-145, 147, 149, 151-161.)

As to their substantive claims, Plaintiffs do not address them in their response to Defendants' motion, but as explained in Defendants' principal brief, those too were frivolous and without merit. (ECF No. 109, pp 10-11.)[3]

### C. Defendants are entitled to the imposition of sanctions under this Court's inherent authority and 28 U.S.C. § 1927.

The U.S. Supreme Court has described the "narrowly defined circumstances [in which] federal courts have inherent power to assess attorney's fees against counsel" as involving actions taken "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45-46 (1991) (internal quotation marks omitted).

Plaintiffs allege that they "did not file their Complaint to harass these Defendants," and have not acted in a "fraudulent or dishonest manner." (ECF No. 127, pp 6, 10.) But as discussed above and in Defendants' principal brief, Plaintiffs had no colorable argument for this Court's exercise of jurisdiction over the Michigan Defendants. Their legal claims were not supported by existing case law or by an extension of the caselaw, and Plaintiffs' factual allegations were either false or otherwise unsupported. As a result, Plaintiffs abused the judicial process, acted vexatiously and in bad faith in pursuing this litigation, and should be sanctioned. *Farmer v.*

---

[3] In their brief, Plaintiffs incorporate the arguments they made in ECF Nos. 110, 114, and 118. (ECF No. 127, p 10.) Because it is not entirely clear to the Michigan Defendants what arguments Plaintiffs believe are responsive to Defendants' arguments, the Michigan Defendants incorporate herein the arguments made in ECF Nos. 121, 122, 125 and 126.

7

*Banco Popular of North America,* 791 F.3d 1246, 1256 (10th Cir. 2015).  The recklessness of Plaintiffs' action here was amplified by the subject-matter of this lawsuit.  Again, this case was not some garden-variety civil litigation.  Rather, Plaintiffs attacked the integrity of Michigan's election of the President of the United States, and the votes of millions of citizens.  And given the lack of merit of Plaintiffs' claims, the only apparent purpose of this lawsuit was to foment and perpetuate distrust in the electoral process and provide a false narrative upon which individuals could advocate for overturning the votes in the Defendant states.  This was a clear and dangerous abuse of the judicial process, and Plaintiffs' counsel should be sanctioned as a result.

Under 28 U.S.C. § 1927 sanctions are "appropriate when an attorney acts recklessly or with indifference to the law.  They may also be awarded when an attorney is cavalier or bent on misleading the court; intentionally acts without a plausible basis; [or] when the entire course of the proceedings was unwarranted."  *Steinert v. Winn Grp., Inc.*, 440 F.3d 1214, 1221 (10th Cir. 2006) (alteration in original).

Plaintiffs argue that they "did not unnecessarily prolong the proceedings," but rather ended it "when it became clear that these Defendants would not voluntarily appear in their individual capacities."  (ECF No. 127, p 5.)  Plaintiffs argue instead that it is Defendants and the Michigan Attorney General who have prolonged this case by seeking sanctions.  (*Id.*)  But as argued in Defendants' principal brief, Plaintiffs were on notice as early as February 16, 2021, that they were acting without a plausible basis for jurisdiction through the filing of Defendants Dominion and Facebook's motions to dismiss, which clearly articulated that Plaintiffs lacked standing to sue under existing case law based on their generalized grievances.  (*See* ECF No. 22, Dominion Mot, pp 7-9; ECF No. 23, Facebook Mot., pp 3-6.)  And at the March 11, 2021, status

8

conference this Court questioned its jurisdiction over the state Defendants, which should have caused reasonable Plaintiffs to re-examine the issue of personal jurisdiction as to their original complaint and with respect to their wish to file an amended complaint. Instead, Defendants were forced to file their own motion to dismiss and a response in opposition to Plaintiffs' motion to amend the complaint. (ECF No. 46, Michigan Mot.; ECF No. 60, Michigan Resp.) And Defendants did so only to have Plaintiffs later voluntarily dismiss Defendants because of lack of jurisdiction. (ECF No. 109, p 6.)

Plaintiffs acted recklessly and demonstrated indifference to the law when they pursued this case against the Michigan Defendants long after they should have been aware that they had no plausible grounds for doing so. As a result, Plaintiffs can and should be sanctioned under § 1927 as well.

## CONCLUSION AND RELIEF REQUESTED

For the reasons set forth above and in their principal brief, Defendants Governor Gretchen Whitmer and Secretary of State Jocelyn Benson request that this Court, pursuant to its inherent authority, order that Plaintiffs' attorneys be sanctioned by being required to pay all reasonable attorneys' fees and costs incurred by Defendants as a result of this case. In addition to or alternatively, this Court should order that Plaintiffs' attorneys pay all attorneys' fees and costs reasonably incurred after Plaintiffs' attorneys served the Michigan Defendants or after Plaintiffs' attorneys moved to amend the complaint, which actions unreasonably multiplied this proceeding.

Dated: July 15, 2021

Respectfully submitted,

Dana Nessel
Michigan Attorney General

9

*s/Heather S. Meingast*
Heather S. Meingast (P55439) (Michigan)
Michigan Assistant Attorney General
Attorney for Defendants Whitmer & Benson
PO Box 30736
525 West Ottawa
Lansing, Michigan 48909
517.335.7659
meingasth@michigan.gov

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 15, 2021, a copy of the foregoing document was electronically filed with the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*s/Heather S. Meingast*
Heather S. Meingast (P55439) (Michigan)
Michigan Assistant Attorney General
Attorney for Defendants Whitmer & Benson
PO Box 30736
525 West Ottawa
Lansing, Michigan 48909
517.335.7659
meingasth@michigan.gov