**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:20-cv-03747-NRN

KEVIN O'ROURKE, NATHANIEL L. CARTER, LORI CUTUNILLI, LARRY D. COOK, ALVIN CRISWELL, KESHA CRENSHAW, NEIL YARBROUGH, and AMIE TRAPP,

              Plaintiffs, on their own behalf and of a class of similarly situated persons,

    v.

DOMINION VOTING SYSTEMS, INC., a Delaware corporation, FACEBOOK, INC., a Delaware corporation, CENTER FOR TECH AND CIVIC LIFE, an Illinois non-profit organization, MARK E. ZUCKERBERG, individually, PRISCILLA CHAN, individually, BRIAN KEMP, individually, BRAD RAFFENSPERGER, individually, GRETCHEN WHITMER, individually, JOCELYN BENSON, individually, TOM WOLF, individually, KATHY BOOCKVAR, individually, TONY EVERS, individually, ANN S. JACOBS, individually, MARK L. THOMSEN, individually, MARGE BOSTELMAN, individually, JULIE M. GLANCEY, DEAN KNUDSON, individually, ROBERT F. SPINDELL, Jr., individually, and DOES 1-10,000,

              Defendants.

**DEFENDANT CENTER FOR TECH AND CIVIC LIFE'S
BRIEF IN SUPPORT OF FEE REQUEST**

Pursuant to this Court's order granting Defendant CTCL's motion for sanctions against Plaintiffs' counsel, CTCL submits this brief identifying the necessary and reasonable attorney's fees and expenses that CTCL incurred in connection with (1) preparing and arguing its motion to dismiss, and (2) preparing and arguing its opposition to Plaintiffs' motion for leave to amend (collectively, the "Relevant Motions"). ECF 136 at 66-67.[1]

## ARGUMENT

The Court granted CTCL's motion for sanctions under Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and the Court's inherent authority. ECF 136 at 66. For an award of fees under Rule 11 or a court's inherent authority, the Tenth Circuit directs attention to four factors: "(1) the reasonableness of the proposed fees, (2) the minimum amount required to deter misconduct, (3) the offender's ability to pay, and (4) 'other factors' as the court sees fit, such as the offending party's history, experience, and ability; the severity of the violation; and the risk of chilling zealous advocacy." *King v. Fleming*, 899 F.3d 1140, 1155 (10th Cir. 2018); *see also Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246, 1259 (10th Cir. 2015) (inherent authority sanctions). In contrast to a sanctions award under Rule 11 and inherent authority, sanctions under § 1927 are a "victim-centered . . . compensatory mechanism." *Hamilton v. Boise Cascade Express*, 519 F.3d 1197, 1205–06 (10th Cir. 2008). Where the court has imposed sanctions under § 1927, it should award fees sufficient "to compensate victims of abusive litigation practices" without "regard to minimum amount that will serve as a deterrent and the attorney's ability to pay." *Id.*

In light of those settled legal principles—and for the reasons set forth in detail below—CTCL respectfully requests a sanctions award of $64,012.24 in attorney's fees and expenses.

---

[1] The procedural history of this case is recounted in CTCL's motion for sanctions, ECF 102 at 2-3, the Court's order granting sanctions, ECF 136 at 2-19, and CTCL's notice regarding its status report concerning sanctions, ECF 146.

1.      **Reasonableness of Proposed Fees**

Courts in the Tenth Circuit apply the so-called "lodestar method" to assess whether a proposed fee request is reasonable. *See White v. Gen. Motors Corp.*, 908 F.2d 675, 684 (10th Cir. 1990). The lodestar figure is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate, which produces a presumptively reasonable fee." *Anchondo v. Anderson, Crenshaw & Assocs., L.L.C.*, 616 F.3d 1098, 1102 (10th Cir. 2010).

As set forth in CTCL's billing records—attached as Exhibit 8 to the Affidavit of Joshua Matz ("Matz Aff.")—CTCL spent 313.4 hours of attorney and paralegal time on the Relevant Motions. Matz Aff. ¶ 13. That includes time dedicated to analyzing the filings by Plaintiffs' counsel, drafting CTCL's briefs (ECF 41, 62, 81), and preparing for and participating in argument. Consistent with the Court's sanctions order, CTCL multiplied its hours by the median prevailing market rates in Colorado to arrive at its lodestar figure. *See* ECF 136 at 68. After adding $1,082.24 for CTCL's electronic research expenses, CTCL arrived at its requested award of $64,012.24. *See Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1258 (10th Cir. 1998) (affirming award of Westlaw research expenses).

CTCL's lodestar figure is a reasonable award. First, the hourly rates applied to generate CTCL's fee request are reasonable. Pursuant to the Court's order granting its motion for sanctions, CTCL calculated its fees by reference to the Colorado Bar Association *Economics of Law Practice Survey*; specifically, it applied the median hourly rates charged by partners, associates, and paralegals in Colorado with the same years of experience as its own counsel.[2] Matz Aff. ¶¶ 17-21; ECF 136 at 68. Courts in this jurisdiction have deemed comparable rates appropriate in recent

---

[2] Colorado Bar Association, *2017 Economics of Law Practice Survey*, http://www.cobar.org/portals/COBAR/repository/2017EconomicSurvey.pdf ) ("CBA Survey").

2

cases. *See King*, 899 F.3d at 1155 ("$200 hourly fee was 'exceedingly reasonable'"); *see also Asher v. Colgate-Palmolive Co.*, No. 10 Civ. 1468, 2012 WL 370249, at *1 (D. Colo. Feb. 3, 2012) ("[B]illing rate of $250.00 per hour is a reasonable prevailing market rate for the award of fees.").

Second, the 313.4 hours expended is reasonable. Matz Aff. ¶ 13. Of course, "the very frivolousness of the claim is what justifies the sanctions." *White*, 908 F.2d at 684. But here, CTCL's counsel was forced to expend considerable energy—not because Plaintiffs' arguments posed hard legal questions, *contra* ECF 147, but rather because of Plaintiffs' "prolix, vague and unintelligible pleadings," *cf. Guinn v. Zavaras*, 100 F.3d 967 (10th Cir. 1996) (affirming sanctions). The original Complaint contained 82 pages of allegations, culminating in three causes of action invoking several civil rights statutes and constitutional provisions. ECF 1. After CTCL moved to dismiss, Plaintiffs' counsel responded with a motion for leave to file a 116-page amended complaint that added a civil RICO claim against CTCL. ECF 48-1. CTCL was thus forced to defend against two lengthy, rambling pleadings rife with shifting legal theories, confusing causes of action, ever-evolving claims and accusations, and countless factual errors. And while each of these pleadings was patently frivolous, CTCL was well justified in mounting a vigorous defense, given both the breathtaking damages sought and the strong public and private interest in ensuring that these outrageous attacks on our democratic system met a well-deserved dismissal.

Accordingly, CTCL's proposed award of $64,012.24 is reasonable.[3]

---

[3] The rates used to calculate the loadstar figure are significantly lower than those that CTCL's counsel customarily charge for comparable work. CTCL's lead counsel is a law firm partner who served as a Supreme Court law clerk, who twice served as counsel to the House Judiciary Committee in impeachment proceedings, and who has been retained in high stakes matters at every level of the federal courts. CTCL's counsel also included three associates, all of whom clerked for both district and appellate judges (and one of whom also clerked on the Supreme Court). These lawyers possess the experience and expertise in civil litigation—especially in matters of constitutional law and civil rights—that would justify a higher rate. *Cf. Asher*, 2012 WL 370249, at *1 (noting that "expertise or experience" may "substantiate a higher fee" than the prevailing market rate). Further, given the stakes of this case, CTCL was justified in seeking the counsel of attorneys with specialized skill. Nevertheless, in an effort to compromise, CTCL's counsel not only based their proposed fees on the *median* rates applicable in the Colorado market, *cf. id.* ("$350.00 per hour

**2.      A Substantial Award Is Necessary for Both Specific and General Deterrence**

Considerations of deterrence strongly support CTCL's requested award.

First, the Court should impose an award adequate to specifically deter Mr. Fielder and Mr. Walker from prosecuting "frivolous lawsuit[s] filed without reasonable legal basis and without a reasonable inquiry." ECF 136 at 66. Not only did Plaintiffs' counsel commence this "frivolous, politically motivated" suit in bad faith, *id.*, but they also continued to act in bad faith throughout the litigation, *see* ECF 136 at 61-64 (listing examples); ECF 48-1 (attempting to add RICO conspiracy claim based on a TIME magazine article that did not support such claims); ECF 90 (sandbagging Defendants with improper judicial notice motion). And Plaintiffs' counsel continued that pattern of vexatious conduct throughout the sanctions proceedings, *see* ECF 134 (post-hearing motion for a further evidentiary hearing)—including, most recently, by ignoring CTCL's attempts to meet and confer about the sanctions award, despite this Court's guidance to do so. ECF 136 at 67-68.[4]

Any doubt about the importance of specific deterrence is dispelled by Plaintiffs' counsels' own representations to this Court that "they would file the same Complaint again." ECF 136 at 61. Indeed, even after this Court sanctioned them, Plaintiffs' counsel have publicly restated their false

---

is on the high side of billing rates for attorneys in Colorado"), but also offered to stipulate to a fee award of $37,500 to avoid further litigation and expense. Plaintiffs' counsel ignored and then flatly rejected that offer. ECF 146, 147.

[4] Following the Court's sanctions order, CTCL provided detailed billing records to Plaintiffs' counsel on August 17, 2021. It also sought to initiate a dialogue with Plaintiffs' counsel about a potential stipulation, contacting them on August 12, 16, 17, and 25. Plaintiffs' counsel did not respond to any of these emails until 10:33 p.m. Eastern Time on August 26. In that response, which was addressed to all Defendants, Plaintiffs' counsel stated incorrectly that CTCL had not sent detailed billing records (which it had done on August 17). They also rejected CTCL's proposal out of hand and said they would agree only to a $10,000 award that preserved their rights to continue litigating both in this Court and on appeal. *See* ECF 146. When CTCL attempted to negotiate further, Plaintiffs' counsel rebuffed them outright.

claims and disparaged this Court's ruling on the same YouTube channel they used to induce people to send them a considerable sum of money to fund this objectively frivolous lawsuit.[5]

Second, this case raises important considerations of general deterrence against lawsuits that allege objectively frivolous, unfounded, and uninvestigated claims of a vast conspiracy to steal the 2020 election. Although untethered from reality—and filed in disregard of the rules that apply to all officers of this Court—such suits are harmful to our democracy and risk endangering those who labor to preserve it. *See* ECF 136 at 4-6, 45-48. The fact that lawyers like Mr. Fielder and Mr. Walker consider it appropriate to engage in a "massive cut-and-paste job" from other failed suits confirms the need to deter such continued abuse of the judicial process. ECF 136 at 53-54.

To be clear, suits like this one impose a true burden on their targets. CTCL is a nonprofit organization that provides support on a nonpartisan basis to election administrators nationwide. Plaintiffs' counsel have wasted CTCL's time, money, and attention with this frivolous filing, which followed many other meritless (and failed) suits in seeking to impugn CTCL's nonpartisan efforts to ensure safe, secure, effective elections amid the crisis wrought by COVID-19. Moreover, Plaintiffs' counsel gratuitously laced their filings with offensive, false, and otherwise defamatory charges of unrelated civil and criminal wrongdoing by CTCL—enhancing the burden of this suit and confirming their willingness to level outrageous claims with no basis in fact or law.[6]

CTCL's requested award is thus reasonably necessary to achieve the goal of deterrence.

---

[5] *See Updates on Dominion Class Action from August 8th 2021*, YOUTUBE (Aug. 11, 2021), https://www.youtube.com/watch?v=Gip2BoSTR5o ("YouTube Video") ("[W]e're not giving up, and that we're going to continue this fight, . . . to win this case, and hold those who are responsible . . . legally responsible for their conduct."); *see id.* ("If you take a look at the judge's ruling, it becomes pretty evident that the court looked at the facts as parroted by the mainstream media, as opposed to facts that were actually admitted into court. . . . He has . . . completely discounted all evidence that has come to light to date."); *id.* ("I'm not ashamed of anything I've done. I'm not ashamed of anything that we've filed. . . . And we think we're going to win.").

[6] These false allegations included baseless claims that CTCL engaged in a wide-ranging fraudulent conspiracy to skew the 2020 election under the "false excuse" of providing COVID-19 relief (*e.g.*, ECF 1 ¶¶ 69, 72, 106, 244); and accusations that CTCL participated in a racketeering scheme engaged in serious *criminal activity*, including witness tampering and criminal conspiracy against federal rights (*e.g.*, ECF 48-1 ¶¶ 758-83).

### 3. Counsels' Ability to Pay

CTCL has little information about Mr. Walker and Mr. Fielder's ability to pay. This lack of information is attributable solely to Plaintiffs' counsel, who refused to engage in a good faith meet and confer process when invited to do so. *See King*, 899 F.3d at 1156 ("The sanctioned party bears the burden to prove its inability to pay an otherwise-appropriate sanction."). As a result of this decision by Plaintiffs' counsel, CTCL does not know whether they have available professional funds (or in what amount)—or whether they have insurance that would cover this circumstance. Plaintiffs' counsel have asserted that they are experiencing financial hardship but have provided no support for that claim. Nor have they clarified whether they have raised any additional funds from their continued online appeals over the past months (including their videos criticizing this Court's decision to award sanctions and indicating that they intend to continue challenging it).

If Plaintiffs' counsel object to CTCL's requested fee award based on an alleged inability to pay, they should be expected to provide detailed information covering all these points, rather than a broad assertion of financial difficulty. In any event, Plaintiffs' counsel have already confirmed that they fundraised approximately $95,000 from roughly 2,100 individuals during this litigation. ECF 133 at 22. That should be considered in assessing their ability to pay. CTCL respectfully submits that, notwithstanding any expenditures they have made against that figure, the global sanctions award should exceed the total amount they induced people to pay them.

### 4. Other Relevant Factors

Finally, "the court may consider factors such as the offending party's history, experience, and ability, the severity of the violation, the degree to which malice or bad faith contributed to the violation, the risk of chilling the type of litigation involved, and other factors as deemed appropriate in individual circumstances." *King*, 899 F.3d at 1156. This catch-all "overlaps

6

substantially with the [other] factors discussed above: [Plaintiffs' counsel's] culpability, the degree of prejudice to the Defendants, and the interference with the judicial process." *Id.* Importantly, the fee award that CTCL requests does not risk chilling other appropriate litigation. "To the contrary, the sanctions the Court has imposed are intended to ensure more effective advocacy by encouraging counsel to inquire reasonably into the factual circumstances of a case before filing papers with the Court in the future." *King v. Fleming*, No. 16 Civ. 2108, 2017 WL 1135579, at *3 (D. Kan. Mar. 27, 2017), *aff'd*, 899 F.3d 1140 (10th Cir. 2018); *see also* ECF 136 at 64-65.

## CONCLUSION

For the foregoing reasons, CTCL respectfully requests that the Court award it sanctions in the amount of $64,012.24.

Respectfully submitted,

_____
Joshua Matz
Louis W. Fisher
Marcella Coburn
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Telephone: 212.763.0883
Facsimile: 212.564.0883
Email: jmatz@kaplanhecker.com
   lfisher@kaplanhecker.com
   mcoburn@kaplanhecker.com

*Attorneys for Defendant Center for Tech and Civic Life*

7

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 3, 2021, a true and correct copy of the foregoing brief in support of CTCL's fee request was electronically filed with the Court using the CM/ECF system which will send notifications of such filing to all counsel of record.

_____
Joshua Matz

8