**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:20-cv-03747

KEVIN O'ROURKE, et al.,
Plaintiff(s),

v.

DOMINION VOTING SYSTEMS INC., et al.
Defendants.

**PLAINTIFF' COUNSEL'S MOTION TO MODIFY THE COURT'S ORDER IMPOSING SANCTIONS, PURSUANT TO FED.R.CIV.P. 59**

COMES NOW Plaintiffs' counsel and hereby respectfully requests that the Court modify its order [Doc. 136] granting the Defendants' motions for sanctions, as outlined below.

## INTRODUCTION

On August 3, 2021, this Court granted the Defendants' several motions for sanctions against Plaintiffs' counsel. See *Order Granting Defendants' Motion for Sanctions (Dkt ##98, 101, 102, 103, & 109)* (*Sanctions Order*). Doc. 136.

This case was brought by eight citizens of the United States, pursuant to 42 U.S.C. 1983, 1985, 1986 & 1988, against the Defendants, here, and others. Doc. 1, ¶¶ 292-387. The Plaintiffs also brought a constitutional challenge against Facebook, Inc. (Facebook). Doc. 1, ¶¶ 388-403. Later, Plaintiffs filed an Amended Complaint, wherein a total of 160 Plaintiffs from 38 States made similar claims against the named Defendants. Doc. 48, ¶¶ 648-746, 784-809. Additionally, RICO and other conspiracy claims were added against Facebook, Center for Technology and

Civic Life (CTCL), Mark Zuckerberg (Zuckerberg) and Priscilla Chan (Chan). Doc. 48, ¶¶ 747-783.

This Court has jurisdiction to hear the claims pursuant to 28 U.S.C. §§1331(a), (federal question), 1332 (diversity), and 1343(a) (civil rights). Doc. 1, ¶ 31; Doc. 48, ¶ 234. However, this Court dismissed the case for lack of standing by finding that the Plaintiffs failed to establish a concrete and particularized injury. Doc. 92. The original Plaintiffs appealed and have filed their Opening Brief, a copy of which is attached as Plaintiffs' Ex. 1, as though fully contained herein.

## ARGUMENT

### I.  Plaintiffs' Counsel Did Not Act In Bad Faith

The Court's finding that Plaintiffs' counsel acted in bad faith is not supported by the record and serves to chill the robust debate necessary for a free society. Both attorneys for the Plaintiffs have decades of experience and spent hundreds of hours researching and preparing the pleadings in this case. Although this Court dismissed the case for lack of standing, the *Sanctions Order* found that Plaintiffs' counsel "acted with objective bad faith in filing this lawsuit and dumping into a public federal court pleading allegations of a RICO conspiracy that were utterly unmerited by any evidence." *Sanctions Order*, p. 61.

First, the Amended Complaint was never accepted by the Court. Nonetheless, the *facts* relied upon Plaintiffs' counsel were all outlined in the complaints. Secondly, it's not the Court's function to determine which facts are true, at this juncture. All of the facts supporting the RICO and conspiracy count are outlined in the Amended Complaint. Only CTCL, Facebook, Zuckerberg and Chan are named in those claims.

The facts speak for themselves. Zuckerberg and Chan funneled over $300 million through CTCL to "fortify" a Presidential election. That's a fact. The Court, nevertheless, made a factual determination, to point of sanctioning lawyers, that the TIME article cited by the Plaintiffs is actually proof of "a valiant effort by both left and right-wing groups, labor organizations, businesses, and non-profit organizations to come together both before and after the election 'to keep the peace and oppose [President] Trump's assault on democracy.'" *Sanctions Order*, p. 62 (quoting from Molly Ball, TIME, *The Secret History of the Shadow Campaign That Saved the 2020 Election* (February 4, 2021)).

Unquestionably, the article was written to support the actions of the progressive cabal organized against the incumbent President, but the Plaintiffs utilized the article to establish its existence and motives—not to establish any unconstitutional behavior. That was established through other evidence. The law makes no distinction between direct and circumstantial evidence. On the other hand, the article clearly establishes the intent of the progressive cabal to influence the 2020 Presidential election. Ordinarily, that would be fine, but these circumstances were different. The Defendants, Zuckerberg, Chan and CTCL, interacted directly with the election machinery and, despite the Court's formed belief that it was "a heroic effort," the Plaintiffs contentions that their conduct unconstitutionally interfered with their rights was not resolved by others attempting to enjoin States and their sub-divisions from accepting the money. *See Opening Brief*, pp. 41-50. Accordingly, there was no effort to mislead the Court. *See Sanctions Order*, p. 61. The Plaintiffs averments were all based upon researched facts, which included a mosaic of evidence, reports, articles and research.

### II.     Plaintiffs' Counsels' Contention That The Plaintiffs had Article III Standing Was Not Unwarranted

The standing of the Plaintiffs is based upon their status as citizens of the United States, who filed their claims pursuant to 42 U.S.C. §§ 1983, 1985, 1986 and 1988. None of the Defendants are government. The Defendants who are natural persons were named in their individual capacity, and the other Defendants are artificial persons. None of them have governmental immunity, and all of them were acting under color of official authority. The original Plaintiffs all filed under oath affidavits with regard to the personalized injuries that they suffered as a result of the violations of their respective rights. The violation of a citizen's rights is damage, particularized and personal to that citizen.

The Court states in its *Sanctions Order* that "the suit was a class action brought on behalf of all American registered voters." *Sanctions Order,* p. 2. However, the class was never certified. With that, the suit was really a case brought by citizens that claim their rights were violated. The Plaintiffs asserted that others similarly situated have also been damaged, but that's the nature of any proposed, class action lawsuit. The standing is based upon the status of the Plaintiffs that filed the suit. Granted, much time was spent establishing the state action of the remaining Defendants, but that was necessary to establish that the Defendants were "persons" pursuant to Section 1983. Elections are a public function. Not one word was spent on that topic by the Court in either of its orders. Just because the conduct of the Defendants affected hundreds of millions of voters, does not absolve them from liability. Nor does it transform the Plaintiffs claims into a generalized grievance.

The Court found that "binding Supreme Court authority (*Lance v. Coffman*) assured that this lawsuit was destined for failure from the beginning." *Sanctions Order*, p. 50. However, as explained in their Opening Brief, *Lance* does not apply to this case. *Opening Brief*, p. 42-43. If the Plaintiffs had sued the States of Georgia, Michigan, Pennsylvania and Wisconsin, in an effort to have the federal court intervene to enjoin some function of the government, that might be considered a generalized grievance. Here, individual parties were sued for damages based upon a completed constitutional rights violation. The matter is not only distinguishable from *Lance* (and all the other cases cited by the Court), but is now before the 10th Circuit on this very issue. Nothing is frivolous about the issue, and the Courts must admit that every case it cited was against persons in their official capacity. As outlined in the Opening Brief, suing a person in their official capacity is tantamount to suing the political body, itself. The Plaintiffs, on the other hand, had done the research. They knew the proper manner in which to bring their claims, and they knew that because of the legal advice they were getting from their attorneys.

### III.   No State Officials Were Ever Sued

The Court found that "it was obvious that there was no personal jurisdiction in Colorado over these Defendants and suit against these state officials should never have been filed in Colorado." *Sanctions Order*, p. 65. However, no state officials were sued. The Court stated in its order that "[v]arious state officials (including governors) from the states of Georgia, Michigan, Pennsylvania, and Wisconsin…were named as defendants in the case…" *Sanctions Order*, P. 2. However, both complaints clearly named any person who may have been holding office at the time of the conduct in their individual capacity. Doc. 1, ¶¶ 19-26; Doc. 48, ¶¶ 218-230. State

officials engaged in ongoing violations of federal law may be sued in their official capacities for prospective relief. *Ex Parte Young*, 209 U.S. 123, 155-56 (1908). However, here, the Plaintiffs sued the individuals named for *retrospective* relief. Not one of the cases cited by the Court are couched within those terms. The Plaintiffs asserted claims for injunctive and declaratory relief, but not in a preliminary fashion. That would have required a *clear showing* of the need for relief, and to establish a substantial likelihood of success on the merits.

The Plaintiffs, here, sued natural person defendants in their individual capacity. Unconstitutional acts and omissions of state actors strip those persons of their official and representative character and, thus, subjects them to the consequences of their individual conduct. *Scheuer v. Rhodes*, 416 U.S. 232, 237 (1974) (quoting *Ex Parte Young*, 209 U.S. 123, 159- 160 (1908)). Doc. 1, ¶ 181. With that said, it must be restated that the different attorney generals who entered their appearance only did so in the official capacity of the person named. The individuals never entered into the case, and the Courts is granting relief to parties who have not been sued. With that said, the persons named all sworn an oath to the U.S. Constitution, were responsible for the 2020 Presidential election in their respective States, and knew that a substantial portion of their State's general election was being administered by Dominion, a company from Colorado. Moreover, those claims were dismissed. Neither the Court, nor any party was abused. The claims were all supported by facts as outlined in the complaints, and any party being sued may consent to the jurisdiction of the Court.

### IV.  Plaintiffs' Counsel Conducted a Reasonable Inquiry

The Court explains that because of the "unusual and highly volatile circumstances of this case and the surrounding political environment, Plaintiffs' counsel did not conduct a reasonable

inquiry into whether the factual contentions had evidentiary support." *Sanctions Order*, p. 65. In that regard, the complaints speak for themselves. The Court's resolution of factual matters and misunderstanding of the Plaintiffs' claims should not be the basis for sanctioning counsel. The Court stated in its *Sanctions Order* that the Plaintiff claims were "one enormous conspiracy theory." *Sanctions Order*, p. 5. The true context the Court's reference is unclear, but the inference is obvious: The Plaintiffs claims are unsupported by evidence.

Nonetheless, the basis for the Plaintiffs' claims are cited and footnoted in the complaints. Having cited at least one source for the information in the original Complaint, the Plaintiffs often limited their citations in the Amended Complaint to only information that had not already been cited. For example, in the original Complaint, several averments were based upon a law review article published just months before the 2020 Presidential election.[1]  Doc. 1, ¶¶ 42 a-f. In the Amended Complaint, those same averments were separated into paragraphs, without the citation. Doc. 48, ¶¶ 281-286.

In the Complaint, Plaintiffs noted a media report concerning Governor Kemp signing a bill in April 2019, granting Dominion an estimated $150 million multi-year contract to replace Georgia's voting machines.[2] Doc. 1, ¶ 192, fn. 38. Having noted a source for the information, Plaintiffs simply alleged the fact without citation in the Amended Complaint. Doc. 48, ¶ 275.

---

[1] Andrew W. Appel, Richard A. DeMillo, Philip B. Stark, *Ballot-Marking Devices (BMDs) Cannot Assure the Will of the Voters*, Election Law Journal: Rules, Politics, and Policy, Vol. 19, No. 3, September 17, 2020.

[2] Ben Nadler, *Georgia Gov. Kemp Signs New Touchscreen Voting Machines Bill*, Associated Press, April 4, 2019. *See also*, Greg Bluestein and Mark Niesse, *Georgia Governor Inks Law to Replace Voting Machines*, The Atlanta Journal- Constitution, June 14, 2019.

Plaintiffs' counsel could cite dozens of circumstances throughout the two complaints where this same technique was done.

In the *Sanctions Order*, the Court stated that "it was not enough [for Plaintiffs' counsel] to merely accept as true (or potentially true) what might be stated in the media, what had been pushed out over the internet, or even what was included in other lawsuits filed across the country." *Sanctions Order*, p. 31.  The Court's comments seem to suggest that Plaintiffs' counsel cited wild theories and adopted made up arguments circulating over the internet.  Frankly, the Plaintiffs did not have to cite any source in either complaint. However, Plaintiffs' counsel cited numerous references in the complaints to avoid this issue entirely. Accordingly, very few of the factual allegations are misplaced. Granted, the Pennsylvania Supreme Court and 3rd Circuit Court of Appeals addressed some of the allegations contained therein, but those findings are not dispositive when filing a federal lawsuit. The U.S. Supreme Court chose not to review many of the cases that came before it concerning the 2020 Presidential election. However, in accepting the often-cited case of *Bognet v. Secretary Commonwealth of Pennsylvania*, the Supreme Court vacated the judgement of the 3rd Circuit with instructions to dismiss the case as moot. 980 F. 3d 336, 348 (3rd Cir. 2021), *cert granted*, *Bognet v. Degraffenreid*, ___S.Ct.___(2021).

Plaintiffs' counsel further provided citation for review to provide a reference, if necessary. With that, Plaintiffs' counsel didn't rely on any media article that could not be otherwise verified. Plaintiffs' counsel cited the associated press to buttress an allegation that Zuckerberg and Chan "used their alter-ego, Facebook, to dominate the competition in business, and now in politics, by funding their political ideology, such as CTCL." Doc. 1, ¶ 56, fn. 11. Plaintiffs counsel wasn't relying upon those newspaper article to establish that, in fact,

Zuckerberg and Chan had provided over $400 million in funding "for the election…the same amount that Congress allocated in March [2020] to help fund election offices as they dealt with the difficulties of adapting to new voting behavior during the coronavirus pandemic."[3] That information was available from a myriad of sources, and could be confirmed by reading the research on a plethora of sources on the subject.

Sometimes, however, the citation in the Complaint mirrored a similar citation in the Amended Complaint, e.g., the Plaintiffs structured an averment around a report prepared by the Secretary of State for the State of Texas in both complaints. Doc. 1, ¶ 43, fn.5; Doc. 48, ¶ 272. Whatever the case maybe, the Plaintiffs often cited at least one source of the information in either the Complaint or Amended Compliant. Ironically, the Court uses media sources to attack the credibility of the Plaintiffs' cited evidence. For example, the Court attacks the credibility of the *Navarro Reports* by referencing an article from the Washington Post. *Sanctions Order*, p. 42, fn. 5. The Court maligns the cited ASOG report with a press release from the Michigan Attorney General, who was opposing counsel in the case in which the report was filed. *Id.* at 42. Plaintiffs' counsel understands that the Michigan Senate Oversight Committee issued a report, which was accompanied by a letter from the Chair who stated that "a so-called forensic audit is not justifiable." *Id.* at 40-41. Nonetheless, even if there is some dispute regarding a misstatement in one affidavit filed, that does make an expert incredible as a matter of law. (*See Sanctions Order*, p. 42, discussing confusion in population numbers in an affidavit filed by Russell Ramsland of

---

[3] Nicholas Riccardi, *Mark Zuckerberg Donates $100M More to Help Election Offices*, Assoc. Press, October 13, 2020.

ASOG, as reported by USA Today and Politifact.com). The evidence, in that regard, goes to weight, not admissibility—and that's at trial, not in a motion concerning whether counsel's citation of certain reports amount to being frivolous.

### V. The Court Can Not Simply Opine That The Case Should Never Have Been Filed

The Court's citation of *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, does not support the Court's finding that no reasonable lawyer would have filed this lawsuit. 793 F.3d 1177 (10th Cir. 2015). First, the 10th Circuit reversed the district court imposition of sanctions against counsel. Secondly, the facts are entirely different and concern whether a lawyer was unwarranted in filing a motion to supplement and amend his client's complaint. Third, right after the citation quoted by this Court in its *Sanctions Order*, p. 65, concerning whether a reasonable lawyer would file such a document (*See Adamsson v. Bowen*, 855 F.2d 668, 673 (10th Cir. 1988)), the 10th Circuit stated:

> Because our adversary system expects lawyers to zealously represent their clients, this standard is a tough one to satisfy; an attorney can be rather aggressive and still be reasonable. Even if a legal position in a pleading is clearly contrary to current law, it is not sanctionable if the position is warranted "by a nonfrivolous argument for extending, modifying, or reversing existing law or for the establishing new law." Fed.R.Civ.P. 11(b)(2).

*Predator Int'l, Inc.*, 793 F.3d at 1182.

### VI. Plaintiffs' Amended Complaint Was Not an Effort to Unreasonably and Vexatiously Multiply the Proceedings

Although the Court obviously does not agree with the Plaintiffs' theory of the case, it is not up to the Court to prejudge the matter. The addition of the RICO was justified under the circumstances. In fact, since the election, eight states have passed bans on donations to election offices in their states.

As recently reported by the Associated Press:

> The response is spurred by anger and suspicion on the [political] right that Zuckerberg's money benefited Democrats in 2020. Conservatives have long accused the tech mogul's social media platform [Facebook] of censoring right-wing voices as part of its campaign against misinformation.[4]

The claims would have been the same had a so-called conservative provided funding to "2500 election offices nationwide." *Id*. Particularly if that person was in control of the most powerful social media platform in the world and it was censoring *progressive* voices in the name of a "campaign against misinformation." *Id*. As stated in the Plaintiffs' Opening Brief:

> The Plaintiffs take no political position, except to adhere to and defend the Constitution, and their own rights to vote for their candidate of choice for President and have that vote count in a fundamentally fair process; and, to express themselves, accordingly, while enjoying the rights and privileges of all citizens of the United States—which include the right to counsel, due process, equal protection, to petition government for a redress of grievances, and have a jury decide the issues of material fact that are in dispute, here.

*Opening Brief*, p. 13, fn. 5.

### VII. Counsels' Reference To A Tweet By the President Is Not Sanctionable

The Court found that Plaintiffs' counsel "improperly included in a federal complaint highly disputed and inflammatory statements by the former President stating categorically the "DOMINION DELETED 2.7 MILLION TRUMP VOTES NATIONWIDE" without doing anything to independently verify the truth of that statement." *Sanctions Order*, p. 66.

In the complaints, the Plaintiffs alleged:

After the Election, the President of the United States tweeted:

---

[4] Nicholas Riccardi, *Zuckerberg's Cash Fuels GOP Suspicion and New Election Rules*, Assoc. Press, August 8, 2020.



Doc. 1, ¶ 248, Doc. 48. ¶ 579.

Plaintiffs' Counsel verified that the President actually made the quote. The tweet is not photoshopped, or faked, and the tweet was made by the sitting President of the United States. The tweet, itself, is quoted as coming from Chanel Rion of One America News Network, but is actually based upon an analysis by cyber expert, Ron Watkins, from the official Edison election data feeds used by the major news networks.

The allegation itself is true: The President did make the tweet. Whether the tweet was highly inflammatory is matter of interpretation. Discounting everything a sitting President states on his official Twitter account is not objective. Additionally, the Plaintiffs claims are not based upon the tweet. Suffice it to say that statement was made by the office holder of the most powerful seat in the world, and the Commander and Chief of the Armed Forces.

VIII. **Sanctions Pursuant to Rule 11 and 28 U.S.C. § 1927 Are Not Merited**

Rule 11 requires that a "pleading be, to the best of the signer's knowledge, well grounded in fact, warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and...not interposed for any improper purpose." *Coffey v. Healthtrust, Inc.*, 1 F.3d 1101, 1104 (10th Cir.1993).

Here, Plaintiffs' counsel researched the facts surrounding the 2020 Presidential election and most certainty plead the case with well-grounded facts that were true to the best of counsel's

knowledge and belief. There was no improper purpose. On their face, the complaints were filed on behalf of real citizens, concerning real events that took place concerning the 2020 Presidential election. No attempt is being made to politicize the situation or overturn a Presidential election. The Plaintiffs have not asked this Court for extraordinary relief of any kind and, in fact, has not requested that the Court do anything. The Plaintiffs filed their complaint and then amended it. The Plaintiffs were represented by competent and experienced counsel. The overwhelming majority of asserted facts are from expert witness reports, law review articles and other trusted sources.

Plaintiffs' counsel did not cut and paste the allegations. Although some of the allegations may have been similar to other lawsuits, those cases were noted by Plaintiffs' counsel and changed to reflect the proper tense, factual circumstance and party involved. The Plaintiffs never filed unnecessary or duplicative pleadings. Until necessity required during this second phase of the case concerning these motions for sanctions, Plaintiffs' counsel never requested one extension of time to file any pleading. All of the pleadings and arguments were professionally presented, in honor, at all times. Plaintiffs' counsel never grandstanded, insulted opposing counsel or the parties, or disrespected the Court. Plaintiffs' counsel was aware of the other failed lawsuits and to this day believes that this matter is different, in that: the Plaintiffs are not requesting that this Court intervene in a Presidential election, or the business of a sovereign State. This is a damages case, plain and simple. It is against the remaining Defendants, none of whom govern the Plaintiffs, but all of whom used their power and influence in a manner that amounted to state action. Accordingly, Plaintiffs' counsel respectfully requests that the Court modify its order and withdraw its imposition of sanctions against Plaintiffs' counsel. None of the

Plaintiffs had an ill motive. All of them believe their rights were violated. They all have right to counsel and, under these circumstances, the right to file their claims in federal court. Michigan never filed a motion pursuant to Rule 11. The fact that this Court made a mistake in that regard is not unusual. To err is human. However, to find Plaintiffs' counsel frivolous, which is already having the result of tarnishing the career and reputation of two attorneys in good standing, is unnecessary and not supported by the well plead and cited complaints filed by the Plaintiffs, through counsel.

## IX. Sanctions Are Not Merited Under the Court's Inherent Authority

The complaints filed herein were never meant to harass or injure any party. As stated, Plaintiffs' counsel were always respectful and professional in their pleadings and dealings with the Defendants. In that regard, neither the Plaintiffs, nor their counsel are responsible for the events surrounding January 6, 2021. To this day, the country is embroiled in a national conversation concerning the 2020 Presidential election. Of course, it's painful. All things concerning something as important as this issue are difficult on the people of the country. However, as important is the free and unfettered ability to defend one's freedoms and rights—particularly concerning the issue of one's right to vote in a Presidential election.

Federal courts follow the "American Rule," which generally bars the prevailing party from recovering attorney fees in the absence of a contract or statute. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975). One exception is when the losing party has "acted in bad faith, faith, vexatiously, wantonly, or for oppressive reasons. *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116, 129 (1974). "[T]he imposition of sanctions under the bad-faith exception depends not on which party wins the lawsuit, but on how

the parties conduct themselves during the litigation." *Chambers v. Nasco, Inc.*, 501 US 32, 53 (1991). Here, it cannot be said that Plaintiffs' counsel conducted themselves with decorum and professionalism, at all times.

### X.     Sanctions Are Not Required To Deter The Filing of Similar Lawsuits

Plaintiffs' counsel requests that the court modify its findings with regard to its perceived necessity in sanctioning counsel to deter further lawsuits. No attorney should ever file a frivolous lawsuit, but imposing sanctions here will certainly have a chilling effect on other parties asserting their rights in federal court. The rationale in imposing sanctions "is, of course, punitive." *Hall v. Cole*, 412 US 1, 4-5 (1973). In that regard, a punitive sanction against Plaintiffs' counsel is neither warranted, or necessary.

### CONCLUSION

For the reasons above, the Plaintiffs respectfully requests that this Court, pursuant to Fed.R.Civ.P. 59, modify its *Sanctions Order* as outlined and argued above.

By:    *s/ Gary D. Fielder*
       Gary D. Fielder  (CO 19757)
       1435 Stuart St.
       Denver, CO 80204
       (303) 650-1505
       gary@fielderlaw.net

By:    *s/Ernest J. Walker*
       Ernest J. Walker (MI P58635)
       3368 Riverside Road
       Benton Harbor, Michigan
       (303)995-4835
       ernestjwalker@gmail.com

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 29, 2021, a copy of the foregoing document was electronically filed with the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*s/Gary D. Fielder*
Gary D. Fielder, Esq.
1435 Stuart St.
Denver, CO 80204
(303)650-1505
gary@fielderlaw.net