IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-03747-NRN

KEVIN O'ROURKE,
NATHANIEL L. CARTER,
LORI CUTUNILLI,
LARRY D. COOK,
ALVIN CRISWELL,
KESHA CRENSHAW,
NEIL YARBROUGH, and
AMIE TRAPP,

Plaintiffs,

v.

DOMINION VOTING SYSTEMS INC., a Delaware corporation,
FACEBOOK, INC., a Delaware corporation,
CENTER FOR TECH AND CIVIC LIFE, an Illinois non-profit organization,
MARK E. ZUCKERBERG, individually,
PRISCILLA CHAN, individually,
BRIAN KEMP, individually,
BRAD RAFFENSPERGER, individually,
GRETCHEN WHITMER, individually,
JOCELYN BENSON, individually,
TOM WOLF, individually,
KATHY BOOCKVAR, individually,
TONY EVERS, individually,
ANN S. JACOBS, individually,
MARK L. THOMSEN, individually,
MARGE BOSTELMAN, individually,
JULIE M. GLANCEY,
DEAN KNUDSON, individually,
ROBERT F. SPINDELL, JR, individually, and
DOES 1-10,000,

Defendants.

---

**ORDER SPECIFYING THE AMOUNT OF SANCTION AWARD AGAINST
PLAINTIFFS' COUNSEL**

---

**N. REID NEUREITER**
**United States Magistrate Judge**

This matter comes before the Court on Defendant Dominion Voting Systems, Inc.'s ("Dominion") Request for Reasonable Attorneys' Fees and Expenses (Dkt. #150), Defendant Facebook Inc.'s ("Facebook") Application for Sanctions Fee Award (Dkt. #151), and Defendant Center for Tech and Civic Life's ("CTCL") Fee Request (Dkt. #152).

On August 3, 2021, the Court granted various Defendants' motions for sanctions pursuant to Rule 11, the Court's inherent authority, and 28 U.S.C. § 1927. *See* Dkt. #136 (modified on reconsideration per Dkt. #161). It was ordered that "Plaintiffs' counsel shall jointly and severally pay the moving Defendants' reasonable attorneys [fees] for (1) having to prepare and argue the motions to dismiss, and (2) having to prepare and argue the oppositions to the Motion for Leave to Amend." Dkt. #136 at 66–67. I instructed the Parties to confer and attempt to stipulate to an appropriate sanction award for each moving Defendant. *Id.* at 67.

On August 27, 2021, the Pennsylvania Defendants, Governor Tom Wolf and former Secretary of Commonwealth Kathy Boockvar, submitted a notice indicating that they had reached a stipulation with Plaintiffs' counsel that $6,162.50 is an appropriate sanction to compensate the Pennsylvania Defendants. *See* Dkt. #142 (Notice Regarding Sanctions Awards by Defendants Boockvar and Tom Wolf).

Also on August 27, 2021, Michigan Defendants Governor Gretchen Whitmer and Secretary of State Jocelyn Benson submitted a notice indicating that they had reached a stipulation with Plaintiffs' counsel that $4,900.00 was an appropriate sanction. *See* Dkt. #144 (Notice Regarding Sanctions Award).

The same date, Plaintiffs' counsel submitted their own notice indicating that while they "continue to dispute any amounts owed to a State party that was never sued or made a party to this lawsuit by Plaintiffs, and in which no appearance was made on behalf of the state officials who were sued only in their individual capacities," they agreed to the reasonableness of the amounts proposed by the Michigan and Pennsylvania Defendants. *See* Dkt. #147 (Plaintiffs' Notice Re: Attorney Fee Sanctions). Plaintiffs' counsel, however, disputed the reasonableness of the proposed fees requested by Defendants Dominion, Facebook, and CTCL. Plaintiffs' counsel asserted that both the hours spent and billing rates assessed by these three private Defendants "are particularly gross" in light of the arguments made that the case was so frivolous that "any first-year attorney would recognize it." Dkt. #147 at 2. In Plaintiffs' view, the private party Defendants each should not have reasonably expended more than $10,000 on this matter. *Id.*

On September 3, 2021, Dominion, Facebook, and CTCL each filed briefs in support of their respective requests for reasonable attorneys' fees and expenses. *See* Dkt. #150 (Dominion); Dkt. #151 (Facebook); Dkt. #152 (CTCL).

Dominion seeks an award of $78,944.00 in attorneys' fees, which it deems reasonable "in light of the complexity of the case, the severity of the allegations made by Plaintiffs, and the frivolous and burdensome strategy employed by Plaintiffs' counsel throughout this litigation." Dkt. #150 at 2. In support of its request, Dominion provided its redacted billing records (Dkt. #150-2) and a supporting declaration by attorney Stanley L. Garnett of the Brownstein Hyatt Farber Schreck ("BHFS") law firm. Dkt. #150-1.

Facebook seeks an attorneys' fee award of $50,000, defending the request as "reasonable and appropriate" in light of the Plaintiffs' demand for $1.6 billion in damages on behalf of a nationwide class of 160 million voters in "a heavily publicized suit challenging the results of the 2020 presidential election in multiple states." Dkt. #151 at 1. Facebook supports its fee request with an affidavit from attorney Ryan Bergsieker of the Gibson Dunn law firm (Dkt. #151-1) and a spreadsheet documenting the time spent by various attorneys and professionals on various tasks and their respective hourly rates.

CTCL seeks an award of $64,012.24 in attorneys' fees and expenses. *See* Dkt. #152. The request is supported by the affidavit of attorney Joshua Motz (Dkt. #152-1), a partner at the firm of Kaplan, Hecker & Fink LLP ("KHF"), who was the lead attorney and supervised all work on CTCL's Motion to Dismiss and Opposition to Plaintiffs' Motion for Leave to File an Amended Complaint. Included with the CTCL request is an accounting of the time various lawyers and legal professionals at the KHF firm spent performing professional services on the relevant motions. *See* Dkt. #152-9.

**Standard for Assessing the Propriety and Reasonableness of Attorneys Fee Sanction Award.**

For an award of fees under Rule 11 or a court's inherent authority, the Tenth Circuit directs attention to four factors: "(1) the reasonableness of the proposed fees, (2) the minimum amount required to deter misconduct, (3) the offender's ability to pay, and (4) 'other factors' as the court sees fit, such as the offending party's history, experience, and ability; the severity of the violation; and the risk of chilling zealous advocacy." *King v. Fleming*, 899 F.3d 1140, 1155 (10th Cir. 2018); *see also Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246, 1259 (10th Cir. 2015) (inherent authority sanctions). Overall, the

Court should consider the degree of counsel's culpability, the degree of prejudice to the defendants, and the interference with the judicial process. *See King*, 899 F.3d at 1156. ("[A]ny interpretation [of Rule 11] must give effect to the rule's central goal of deterrence."); *Cooter & Gell v. Hartmarx*, 496 U.S. 384, 393 (1990) ("It is now clear that the central purpose of Rule 11 is to deter baseless filings district court and thus. . . streamline the administration and procedure of the federal courts.") (citation omitted).

In contrast to a sanctions award under Rule 11 and inherent authority, sanctions under § 1927 are a "victim-centered . . . compensatory mechanism." *Hamilton v. Boise Cascade Express*, 519 F.3d 1197, 1205–06 (10th Cir. 2008). Where the court has imposed sanctions under § 1927, it should award fees sufficient "to compensate victims of abusive litigation practices" without "regard to the minimum amount that will serve as a deterrent and the attorney's ability to pay." *Id.*

As to the reasonableness of the specific amount of fees requested, courts in the Tenth Circuit apply the so-called "lodestar method" to assess whether a proposed fee request is reasonable. *See White v. Gen. Motors Corp.*, 908 F.2d 675, 684 (10th Cir. 1990). The lodestar figure is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate, which produces a presumptively reasonable fee." *Anchondo v. Anderson, Crenshaw & Assocs., L.L.C.*, 616 F.3d 1098, 1102 (10th Cir. 2010). The party seeking fees is to make a good faith effort to exclude from the fee request "hours that are excessive, redundant, or otherwise unnecessary." *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1933)). And the Court is to approach the reasonableness inquiry "much as a senior partner in a private law firm would review the reports of subordinate attorneys

when billing clients." *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998).

But a trial judge must not merely "eyeball" a fee request and cut it down by an arbitrary

percentage. *Id.* Factors to be considered in assessing the reasonableness of a fee after

accepting the lodestar as a starting point include (1) whether the tasks being billed

would normally be billed to a paying client, (2) the number of hours spent on each task,

(3) the complexity of the case, (4) the number of reasonable strategies pursued, (5) the

responses necessitated by the maneuvering of the other side, and (6) potential

duplication of services by multiple lawyers. *Id.*

### Plaintiffs' Counsel's Objections to Reasonableness of Requested Sanction Award to Dominion, Facebook, and CTCL.

On September 29, 2021, Plaintiffs' counsel filed their objection to the attorneys'

fees sanctions requested by Dominion, Facebook, and CTCL. *See* Dkt. #159. The

objection is only three pages long and contains little useful argument and no evidence.

The only substantive argument Plaintiffs' counsel make to the requested sanction

awards from Dominion ($78,944.00), CTCL ($64.012.24), and Facebook ($50,000) is

that these fee amounts are "grossly disparate" compared to the amounts requested by

the offices of the state attorney generals from Michigan and Pennsylvania. *See id.* at 3,

¶ 9. The objection fails to mention or recognize that the amounts specified by the state

attorneys general were stipulated to. No documented hours or hourly rates for the State

Official Defendants substantiating these amounts have been presented to the Court.

Thus, there is no meaningful way for the Court to compare the stipulated amounts

sought by the state attorneys general and the fees sought by the private party

defendants, which are based on a lodestar method (with substantial discounts applied

to either or both the hours spent and hourly rates charged).

Plaintiffs' counsel make reference to "the punitive nature of sanctions, generally, and the extreme differences in resources available to Plaintiffs' counsel, as opposed to those available to CTCL, Facebook and Dominion" and ask that the Court "impose only a reasonable sanction." *Id.*, ¶ 13. Yet, Plaintiffs' counsel have provided no evidence to support this undeveloped argument, such as affidavits describing Plaintiffs' counsel's financial ability or inability to pay any sanction award. *See Gibbs v. Clements Food Co.*, 949 F.2d 344, 345 (10th Cir. 1991) (explaining that "the party seeking to reduce the amount of attorney's fees because of limited finances has the burden to plead and establish his or her financial status"). Without doing any analysis or review of either the hours spent, or the rates charged by the law firms retained by the three private entity Defendants, Plaintiff's counsel request that the Court limit the award of attorneys' fees to each private party Defendant to the "reasonable amount of $10,000." *Id.* at 3. With no challenge to the actual fees incurred by Defendants in having to defend against this wasteful, extraordinarily overbroad, and dangerous lawsuit, nor any analysis of the multitude of other factors the Court is to consider in assessing the propriety of a sanctions award, Plaintiffs' proposed sanction figure of $10,000 per private party defendant appears to the Court to be completely arbitrary.

### Reasonableness of sanctions requested by Facebook

Facebook proposes a sanction award of $50,000. Mr. Bergseiker has been a central part of the representation of Facebook in this case and has personally performed many of the legal services for Facebook in defending against the claims Plaintiffs asserted in this case. Dkt. #151-1 at 1, ¶ 2 (Bergseiker Aff.). Based on Mr. Bergseiker's Affidavit, all of the Gibson Dunn lawyers who performed work on this

matter are eminently qualified. Mr. Bergseiker himself is a 2004 graduate of Yale Law

School. He is a former federal prosecutor who has tried more than 45 civil and criminal

cases to verdict. He clerked for the Judge David Ebel on the Tenth Circuit Court of

Appeals. *Id.* at 2, ¶ 3. His colleague, Joshua Lipshutz, who also performed legal

services in this case, is Chief Operating Officer of the Gibson Dunn firm. Mr. Lipshutz is

a 2005 graduate of Stanford University's law school and clerked for Judge Alex Kozinski

(ret.) on the Ninth Circuit and Justice Scalia on the United States Supreme Court. Mr.

Lipshutz has participated in recent landmark constitutional rulings before the United

States Supreme Court. *Id.*, ¶ 4. Gibson Dunn Senior Associate Natalie Hausknecht

performed many legal services for Facebook in this matter. Ms. Hausknecht is a 2015

Yale Law school graduate and, as reported on Gibson Dunn's website, clerked at the

federal district court level for Judge James Boasberg of the United States District Court

for the District of Columbia, and Judge Thomas B. Griffith of the D. C. Circuit. Craig

Streit, a former Gibson Dunn associate who performed some of the legal work for

Facebook in this matter, is a 2018 University of Michigan law graduate.

In terms of hourly rates, Facebook used an hourly rate of $500 per hour for Mr.

Bergseiker and Mr. Lipshutz for purposes of calculating the sanctions fee award

request. Facebook used the rate of $350 per hour for Ms. Hausknecht's time on the

matter, and $300 per hour for Mr. Streit's time. According to Mr. Bergseiker, these are

below the rates regularly charged by Gibson Dunn and below the published rates

charged by Gibson Dunn's peer firms. *See id.* at 3, ¶ 7. In support of the

reasonableness of the fees charged, Gibson Dunn has submitted excerpts from the

*Survey of Law Firm Economics, 2019 Edition*, published by the National Law Journal

and ALM Intelligence, which reflects that in the Rocky Mountain Region, billing rates for equity partners/shareholders range from $468 to $650 per hour, while rates for associated for firms with over 150 lawyers range from $310 to $570 per hour. *See* Dkt. #151-3.

In terms of the reasonableness of these hourly rates, I accept that Gibson Dunn likely charges higher hourly rates for its typical clients than the fee rates sought here. Judges in this District in civil fee shifting cases have approved higher rates than those that Facebook seeks. *See*, *e.g. Snyder v. Acord Corp.*, No. 14-cv-01736-JLK, 2019 WL 319407, at *8–9 (Jan. 24, 2019) (approving rates of $625 per hour for partners, $425 per hour for associates, and $200 for paralegals). However, in my order awarding sanctions, I specifically indicated that I would be looking to the Colorado Bar Association's *Economics of Law Practice Survey* ("CBA Survey") for guidance of the reasonableness of the rates charged. *See* Dkt. #136 at 68. It is true that the utility of that survey as a sound measure of reasonable hourly rates in Colorado has been questioned by some judges of this Court. *See Vanech v. Acosta*, No. 13-cv-00168-RPM, 2019 WL 3938065, at *5 (D. Colo. April 9, 2019) (noting that the 2017 CBA Survey "provides some evidence of prevailing market rates, but is not entitled to great weight"); *Stroup v. United Airlines, Inc.*, Civ. No. 15-cv-1389-WYD-STV, 2018 WL 10613861, at *7 (D. Colo. Dec. 5. 2018) (disregarding the results of CBA survey, noting that it had a 6.7% response rate); *Merrill v. Contract Freighters, Inc.,* Civ. No. 19-cv-02309-CMA-SKC, 2021 WL 3742242, at *4 (D. Colo. Aug. 24, 2021) (rejecting use of CBA survey and finding 2019 National Law Journal Survey to be "more reflective" of

hourly rates for large national law firm in Denver and approving hourly rates between $335 per hour and $460 per hour in employment case where sanctions were awarded).

The rates requested of between $500 and $300 per hour, depending on the experience level of the attorney, although higher than the rates reflected in the CBA Survey, are generally within the range of hourly rates approved by other judges of this Court in other fee shifting or sanctions matters. *See*, *e.g., Restore Life USA, Inc. v. Life News.com,* No. 1:18-cv-02472-DDD-MEH, 2020 WL 5221766, at *2 (D. Colo. Aug. 17, 2020) (approving rates of $425 an hour for partner in a national law firm with 14 years of experience and $205–$250 for associates at the same national firm in prosecuting a sanctions motion); *Waller v. Lovingier,* No. 14-cv-02109-WYD-NYW, 2017 WL 11545516, at *5 (D. Colo. Dec. 5, 2017) (approving rates of $450 per hour for lead counsel); *White v. Chafin,* No. 13-cv-01761-CMA-MJW, 2016 WL 9735066, at *4 (D. Colo. Sept. 23, 2016) (approving rates of $500 per hour for lead counsel and $275–$450 per hour for co-counsel)*; Ebonie S. v. Pueblo School District 60*, No. 09-cv-0858-WJM-MEH, 2016 WL 1110442, at *3 (D. Colo. March 22, 2016) (approving rates of $260-$475 per hour for attorneys with varying years of experience)*; Martinez v. Valdez,* 125 F. Supp. 3d 1190, 1212 (D. Colo. 2015) (approving rates of $300–$500 per hour for counsel)*; Barnett v. Bd. of County Commissioners of Montrose,* No. 14-cv-01765-JAP-GPG, 2015 WL 13614118, at *5 (D. Colo. Dec. 14, 2015) (approving rates of $400 per hour for lead counsel with nine years of experience and $300 per hour for two attorneys with seven years' experience).

Gibson Dunn spent 166.8 hours of legal professional time preparing and arguing Facebook's motion to dismiss and opposing Plaintiffs' motion to amend. Dkt. #151-2

(Ex. A to Bergsieker Aff.). According to Facebook's submission, this 166.8 is already a reduction, based on "billing judgment," from the actual number of hours spent by legal professionals and support staff. Dkt #151 at 2. The Court has reviewed the entries on the print-out from Gibson Dunn's billing records. The amount of time spent is reasonable given the scope of Plaintiffs' filings (spanning hundreds of paragraphs of allegations), the multiple constitutional issues and claims, and the claimed $1.6 billion in damages. *See Ramos v. Lamm*, 713 F.3d 546, 553 (10th Cir. 1983) (reasonableness of hours expended in civil rights cases can be determined by number of factors, including (1) whether tasks being billed would normally be billed to paying client; (2) the number of hours spent on each task; (3) the complexity of the case; (4) number of reasonable strategies pursued; (5) the responses necessitated by the maneuvering of the other side; and (6) the potential duplication of services by multiple lawyers).

Multiplying the 166.8 hours times the hourly rates of the lawyers who were involved in the various tasks gives a lodestar of $59,760. Facebook is not seeking the full $59,760 in fees as a sanction, but instead has reduced its fee request to $50,000, a 16.3 percent reduction from the calculated lodestar. Dkt. #151 at 2.

Facebook's lawyers spent 166 attorney hours to obtain the dismissal of an arguably frivolous and groundless case. The potential costs of having to defend a case like this—where more than a billion dollars in damages is claimed and where the suit raises numerous constitutional issues and is a purported nationwide class action of covering 160 million voters—beyond the motion to dismiss phase, including responding to fact or class discovery on a matter of such claimed magnitude, justified the devotion

of significant attorney hours and resources in order to ensure the case was nipped in the bud. The $50,000 sanction sought by Facebook is reasonable.

### Reasonableness of attorney fee sanction requested by CTCL

CTCL seeks a sanctions award of $64,012.24 in attorneys' fees and expenses. Dkt. #152 at 2. CTCL spent 313.4 hours of attorney and paralegal time on the relevant motions. Dkt. #152-1 at 5, ¶ 13 (Matz Aff.).

Like the lawyers working for Facebook, the CTCL lawyers are eminently qualified with specialized expertise in federal law and constitutional issues. Lead counsel Mr. Matz is himself a *magna cum laude* Harvard Law graduate who has authored two books with constitutional law expert Professor Laurence H. Tribe. Mr. Matz served as a law clerk to Judge Oetken of the Southern District of New York, Judge Reinhardt of the U.S. Court of Appeals for the Ninth Circuit, and Justice Kennedy on the U. S. Supreme Court. Dkt. #152-1 at 2, ¶ 4. KHF associate Louis Fisher is another *magna cum laude* Harvard Law graduate with experience in high-impact civil rights litigation. Mr. Fisher also clerked for Judge Oetken of New York's Southern District and Judge Reinhardt of the Ninth Circuit Court of Appeals. *Id.* at 3, ¶ 6. Marcella Coburn has been an associate at KHF since August 2020. Prior to joining KHF, Ms. Coburn was a supervising attorney and clinical teaching fellow at the Georgetown University Law Center Appellate Litigation Clinic. Ms. Coburn clerked for Judge Pamela Harris of the U.S. Court of Appeals for the Fourth Circuit and Judge David Bunning of the U.S. District Court for the Eastern District of Kentucky. Ms. Coburn graduated from Yale Law School. Other KHF associates (or former associates) who worked on this case include Michael Skocpol, who is a graduate of Stanford Law School and clerked for Justice Sonia Sotomayor of

the U.S. Supreme Court, as well as for Judge Cornelia T.L. Pillard of the U.S. Court of Appeals for the District of Columbia Circuit and Judge Gary S. Feinerman of the U.S. District Court for the Northern District of Illinois. *Id.* at 4, ¶ 7. Associate Molly Webster previously worked for Quinn Emanuel Urquhart & Sullivan, LLP, where her practice included work on complex commercial and civil litigation as well as constitutional law matters. She clerked for Judge Cathy Seibel of the U.S. District Court for the Southern District of New York. Ms. Webster graduated *magna cum laude* from the Fordham University School of Law, where she was inducted into the Order of the Coif and was an associate editor of the Fordham Law Review. *Id.*, ¶ 8.

In contrast to Facebook, CTCL (and KHF firm) in calculating the lodestar did use median hourly rates reflected in the CBA survey. I have no doubt that, as Mr. Matz says, these rates "represent a substantial discount on KHF's customary hourly rates." *See id.* at 6, ¶17.

In terms of the hours expended on this matter, 313.4 hours of attorney and paralegal time spent on a motion to dismiss and motion to amend is a lot. It exceeds significantly the amount of time spent by Facebook in addressing the same motions. Nevertheless, I find that in light of the magnitude of this case, the number of factual allegations raised in the Complaint and the Amended Complaint, and the claimed damages at stake (in excess of $1 billion dollars), the amount of time falls within the realm of reasonableness. In addition, it should be noted that the hourly rate used by CTCL is well below what has been previously approved by judges in this District, and below the hourly rates used by Facebook. It is also consistent with my directive in the order granting sanctions. I find that the lodestar itself is reasonable.

One part of CTCL's fee request I do not consider to be reasonable is the request for $1,082.24 in computerized legal research costs. Computerized legal research is the norm today. It has probably been some time since a working lawyer actually cracked open a hard-copy volume of the Federal Reporter series. In 1994, the Seventh Circuit explained that computerized research and the costs associated with that research could be recoverable as part of attorneys' fees because, theoretically, an attorney doing computerized research would spend much less time than if he were working with physical volumes of books in a law library:

> Computerized legal research involves an attorney sitting down in front of a computer and researching legal issues by searching through a database which now includes almost every resource one would find in the country's largest law libraries. In addition to the attorney charging the client for the time he or she spends doing this research, the companies that offer the computerized legal research services also charge a fee. Theoretically, even though the clients now pay two fees, their ultimate bill should be lower because the attorney should be able to do the research more quickly and efficiently. If this research had been done manually by an attorney sitting in the library reading through books rather than sitting before a computer screen, nobody would dispute that the attendant fees would be properly classified as attorney's fees and not costs.

> Recognizing this, we have previously held that computer research costs "are more akin to awards under attorney's fees provisions than under costs." *McIlveen v. Stone Container Corp.*, 910 F.2d 1581, 1584 (7th Cir. 1990). In fact such costs are indeed to be considered attorney's fees. The added cost of computerized research is normally matched with a corresponding reduction in the amount of time an attorney must spend researching. Therefore, we see no difference between a situation where an attorney researches manually and bills only the time spent and a situation where the attorney does the research on a computer and bills for both the time and the computer fee.

*Haroco, Inc. v. Am. Nat. Bank and Trust Co. of Chicago*, 38 F.3d 1429, 1440-42 (7th Cir. 1994).

But times have changed since 1994. I view computerized legal research as part of what a client both expects and is entitled to when hiring a high-powered law firm at a high hourly rate. Most firms have contracts with legal research providers, such as Westlaw and LexisNexis, that allow for unlimited research at a set monthly fee. That is part of the overhead associated with running a modern law firm.

As one court has explained:

> An attorney's time spent performing computerized research is properly compensable. However, the cost of the computer service used in the research is no more reimbursable than the cost of the West's Keynote Digests and the volumes of the Federal Reporter and the Federal Supplement that lawyers used to use (and many still use) to find authority and research issues of law. Westlaw fees are simply an item of overhead, and as such should be built into the fees charged, rather than unbundled and reimbursed separately. . . . Whether one reads a case from a book or a screen, the attorney's time is the compensable element—not the medium that delivers the message.

*BD v. DeBuono*, 177 F. Supp. 2d 201, 209 (S.D.N.Y.2001) (citing to *U.S. ex rel. Evergreen Pipeline Constr. v. Merritt–Meridian Constr. Corp.*, 95 F.3d 153, 173 (2d Cir.1996)). I concur that the costs of legal research should be built into a litigation attorney's hourly rate. For this reason, I will disallow the $1,082.24 requested for legal research costs. This said, I believe a reasonable award of attorneys' fees to CTCL would be the requested amount minus the $1,082.24 claimed in computerized legal research, for a total of $62,930.00.

### Reasonableness of Attorney Fee Sanction Requested by Dominion

Dominion seeks $78,944 in attorneys' fees incurred in relation to preparing and arguing its motion to dismiss and preparing and arguing the opposition to the motion for leave to amend the complaint, an amount which Dominion describes as "a reasonable figure in light of the complexity of this case, the severity of the allegations made by

Plaintiffs, and the frivolous and burdensome strategy employed by Plaintiff's counsel throughout this litigation." Dkt. #150 at 2.

Dominion too was represented by able counsel from BHFS, a Denver-based firm. Lead counsel Stanley L. Garnett served for a decade as the elected District Attorney for Boulder County, Colorado, before returning to private practice with BHFS. Associate David B. Meschke is a *magna cum laude* graduate of Middlebury College and received his J.D., Order of the Coif, from the University of Colorado Law School. He served as a law clerk to Colorado Supreme Court Justice Brian Boatright. Associate Bridget C. DuPey received her B.A. from the University of Tennessee at Chattanooga, and her law degree from the University of Denver, Sturm College of Law. She also served as a law clerk to Justice Boatright. Associate Sean S. Cuff received his B.A. from the University of Wisconsin-Madison and his law degree from the University of Denver. He was a judicial law clerk to Justice Robyn M. Brody of the Idaho Supreme Court and as judicial intern to Magistrate Judge Kristen Mix of this Court.

Per the Declaration of BHFS lead counsel, Stanley L. Garnett, BHFS attorneys and paralegals spent a total of 242.3 hours (1) preparing and arguing Dominion's Motion to Dismiss and (2) preparing and arguing Dominion's opposition to Plaintiffs' Motion for Leave to Amend the Complaint. Dkt. #150-1 at 2, ¶ 6. This total hourly figure includes work performed by four separate attorneys and one paralegal over the span of more than four months.

At BHFS's regular rates, the total amount of fees incurred in the submitted unredacted billing records is $98,046.70. *Id.*, ¶ 5. BHFS's standard rates are $656.25 for shareholder Mr. Garnett; $330.00 per hour for associate David B. Menschke; $270

per hour for associate Bridget DuPey; $360 per hour for associate Sean Cuff; and $310 per hour for paralegal Catherine Olguin. *Id.* at 3, ¶ 7. In an effort to comply with my directive that rates should be consistent with the CBA Survey, Dominion has reduced the rates sought to $475 per hour for Mr. Garnett, $300 per hour for Mr. Meschke, $270 per hour for Mr. Cuff, and $150 per hour for paralegal Catherine Olguin. There was no reduction below $270 per hour for Ms. DuPey. *Id.*, ¶ 9. Based on this reduction, Dominion seeks a total of $78,944.

According to Mr. Garnett, he has reviewed the billings and has made adjustments and write-downs that he deemed appropriate. I, too, have reviewed the individual time entries and find the tasks engaged in and the time spent is not out-of-line with what is reasonable for a case of this magnitude, with both reputational risk and litigation risk to Dominion. It is significantly less time than was spent by CTCL's counsel.

That said, I find it somewhat incongruous that CTCL, which took seriously my directive to use the CBA Survey rates as a guide for hourly rates in calculating the lodestar, seeks approximately $64,000 request for 313 hours of time, while Dominion asks for $78,944 for spending 242 hours on the case. This difference is attributable the fact that CTCL's used lower hourly rates to calculate the lodestar. In fairness, I conclude that both CTCL and Dominion should receive the same sanction award—$62,930— given the work required and the appropriate hourly rate. Given the number of hours spent by Dominion, the $62,930 figure means that Dominion is being compensated for its legal professional time at an average of approximately $260 per hour. With a $50,000 sanction award, Facebook's attorney time is being compensated at $299 per

hour. However, the total amount of sanctions awarded to Facebook is still more than $12,000 less than is being awarded to CTCL and Dominion.

Thus, I find that a reasonable attorney fee award for the three private Defendants is $50,000 to Facebook and $62,930 each to Dominion and CTCL. I make this finding after considering the factors required to be assessed under the *King v Fleming* case.

The sanction awards that I impose are reasonable in light of the magnitude of the case and the number of issues to be addressed. Indeed, the sanction award is probably lower than it would be if market lawyer rates were being used. The total amount the two Plaintiffs' counsel will have to jointly pay, adding in the stipulated awards to the States, will be approximately $186,922, which I find to be an adequate sanction award to send the appropriate message and deter such misconduct in the future, without being unnecessarily punitive.

I do recognize that the two Plaintiff's counsel are individuals, and not corporate entities, and that regardless of how successful their law practices may be, a more than $90,000 sanction award (per lawyer) will likely impose a degree of financial hardship. To this extent, I have tried to take into account their respective abilities to pay. That was the reason for originally designating the CBA Survey as the touchstone for hourly rates, recognizing that using the normal rates of these national law firms would likely double, or even triple, the potential sanction.

I have also considered the severity of the violation here, which was expounded upon at length in the original sanctions order. But it bears repeating that, as officers of the Court, these attorneys have a higher duty and calling that requires meaningful investigation before prematurely repeating in court pleadings unverified and

uninvestigated defamatory rumors that strike at the heart of our democratic system and were used by others to foment a violent insurrection that threatened our system of government.

In assessing the amount of the sanction, I also take into account the fact that Plaintiffs' counsel made a public appeal for financial contributions from arguably innocent and gullible members of the public in order to supposedly hire experts to support this case. *See* Dkt. #133 at 22:8–12 (statement of Mr. Fielder at hearing on motion for sanctions of July 21, 2021 explaining that Plaintiffs' counsel had raised approximately $95,000 from approximately 2,100 contributors). In reality, as disclosed at the hearing on sanctions, Plaintiffs' counsel hired no experts, either before or after filing the Complaints, and did not speak to any of the alleged experts that were being used in other cases around the country. Given the apparent lack of standing to bring this case—and its likely failure given the existing Supreme Court precedent on the issue of standing—as well as the failure to hire or speak to any expert witnesses to support the underlying factual assertions in the Complaints, this financial appeal to the public for financial contributions was arguably deceptive.

I also take into account the risk that this substantial sanction might chill zealous advocacy for potentially legitimate claims. But I conclude that the repetition of defamatory and potentially dangerous unverified allegations is the kind of "advocacy" that needs to be chilled. Counsel should think long and hard, and do significant pre-filing research and verification, before ever filing a lawsuit like this again. As explained previously, this was a damages case with no need for urgency or immediate injunctive relief, and therefore there was no legitimate basis for filing suit without being certain

about the claims. I do not believe that sanctioning these lawyers for this lawsuit threatens to chill appropriate legitimate legal advocacy in the future.

I have also considered the degree of counsel's culpability, which is significant. This was not a client-generated lawsuit. This is exclusively a creation of the Plaintiff's counsel. They are experienced lawyers who should have known better. They need to take responsibility for their misconduct. Defendants have been significantly prejudiced, not just because they have had to incur legal fees to defend this pointless and unjustified lawsuit, but because they have been defamed, without justification, in public court filings. Finally, I believe that rather than a legitimate use of the legal system to seek redress for redressable grievances, this lawsuit has been used to manipulate gullible members of the public and foment public unrest. To that extent, this lawsuit has been an abuse of the legal system and an interference with the machinery of government. For all these reasons, I feel that a significant sanctions award is merited. I also feel that the amounts awarded are to some degree consistent with the "victim-centered . . . compensatory mechanism" of sanctions anticipated under 28 U.S.C. § 1927. *See Hamilton*, 519 F.3d at 1205–06.

**Conclusion**

For the reasons stated above, it is hereby

**ORDERED** that Defendant Dominion Voting Systems, Inc.'s Request for Reasonable Attorneys' Fees and Expenses (Dkt. #150), Defendant Facebook Inc.'s Application for Sanctions Fee Award (Dkt. #151), and Defendant Center for Tech and Civic Life's Fee Request (Dkt. #152) are **GRANTED in PART**. It is further

**ORDERED** Plaintiffs' Counsel, Mr. Gary D. Fielder and Mr. Ernest John Walker, jointly and severally, are to pay the following amounts to the Defendants as sanctions:

1. To Defendants Gretchen Whitmer and Jocelyn Benson (state officials from the State of Michigan), the sum of $4,900;

2. To Defendants Tom Wolf and Kathy Boockvar (state officials from the State of Pennsylvania), the sum of $6,162.50;

3. To the Defendant Facebook, Inc., the sum of $50,000.00;

4. To the Defendant Center for Tech and Civic Life, the sum of $62,930.00;

5. To the Defendant Dominion Voting Systems, Inc., the sum of $62,930.00.

It is further **ORDERED** that because this entire matter, as well as this Court's sanction order, presently are on appeal to the United States Court of Appeals for the Tenth Circuit (*see*, *e.g.,* Dkt. #164 (Notice of Appeal of Order Granting Defendants' Motions for Sanctions)), the obligation to pay this sanction award is **STAYED** pending resolution of all appeals.

**SO ORDERED.**

Date: November 22, 2021      _____
                             N. Reid Neureiter
                             United States Magistrate Judge